**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | **Case No. 1:10-cr-00485-LMB** |
| ) | |
| **JEFFREY ALEXANDER STERLING,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION FOR A BILL OF PARTICULARS**

COMES NOW Jeffrey Alexander Sterling (hereinafter "Mr. Sterling"or "Defendant'), by

counsel, and for his Memorandum of Points and Authorities in Support of his Motion for a Bill

of Particulars, states as follows:

A.      Standard of Review.

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the Court may direct

the Government to file a bill of particulars.  The decision whether to grant or deny a motion for a

bill of particulars rests with the sound discretion of the trial court.  United States v. Anderson,

481 F.2d 685, 690 (4th Cir. 1973).  The purpose of a bill of particulars is "to enable a defendant to

obtain sufficient information on the nature of the charge against him so that he may prepare for

trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction

in bar of another prosecution for the same offense."  United States v. Schembari, 484 F.2d 931,

934-35 (4th Cir. 1973)(citing United States v. Dulin, 410 F.2d 363, 364 (4th Cir. 1969)).  A bill of

particulars is not intended to "be used to provide detailed disclosure of the government's

evidence in advance of trial." United States v. Automated Medical Labs, Inc., 770 F.2d 399, 405

(4th Cir. 1985)(citing Anderson, 481 F.2d at 690).  Instead, a bill of particulars serves to amplify

the indictment "by providing missing or additional information so that the defendant can

effectively prepare for trial." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996)(citations

omitted).  If "the indictment adequately details the charges, or the information requested is

otherwise available, then no bill of particulars is required." United States v. Esquivel, 755 F.

Supp. 434, 436 (D.D.C. 1990)(citing United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir.

1987)).  In this case, the "national defense information" at issue is central to the case yet entirely

undefined in the Indictment.  Therefore, a bill of particulars defining the "national defense

information" is appropriate and mandated.

        B.     The Indictment Provides No  Notice as to the National Defense Information at
             Issue.

On December 22, 2010, a Grand Jury in the Eastern District of Virginia returned a 10

count indictment against Mr. Sterling.  Mr. Sterling is charged with three counts of Unauthorized

Disclosure of National Defense Information, 18.U.S.C. § 793(d) (Counts One, Four and Six);

three additional counts of Unauthorized Disclosure of National Defense Information, 18. U.S.C.

§ 793(e) (Counts Two, Five and Seven); one count of Unlawful Retention of National

Information, 18 U.S.C. §793(e); one count of Mail Fraud, 18 U.S.C. § 1341 (Count Eight); one

count of Unauthorized Conveyance of Government Property, 18 U.S.C. § 641 (Count Nine) and

one count of Obstruction of Justice in violation of 18 U.S.C. § 1512 (c)(1)(Count Ten).  This

motion seeks a Bill of Particulars as to Counts One through Seven.

Throughout the Indictment, the "national defense information" that is alleged to have been possessed and disclosed illegally is never defined or set forth in any legally meaningful manner.  The Indictment alleges that Mr. Sterling was employed by the CIA and was given a top secret clearance.  (Indictment ¶ 7.)  The Indictment states that there is a person known to the Grand Jury as Human Asset No. 1 (Indictment ¶ 14) who was involved in Classified Program No. 1.  (Indictment ¶¶ 15 & 16.)  According to the Indictment, unidentified Author A then published a book that, among other topics, discussed Classified Program No. 1.  (Indictment ¶ 17.)  The Indictment does not identify Human Asset No.1, Classified Program No.1 or Author A.

Count One states that Mr. Sterling, from on or about December  24, 2005, and on or about January 5, 2006, after having lawful possession of information about Classified Program No. 1 and Human Asset No. 1, delivered that information to Author A in violation of 18 U.S.C. § 793 (d) and 2.  (Indictment  ¶ 55.)

Count Two states that in the same time period, from on or about December 24, 2005, and on or about January 5, 2006, Mr. Sterling delivered a letter relating to Classified Program 1 to persons not entitled to receive it, through the publication of Author A's book in violation of 18 U.S.C. § 793 (e) and 2. (Indictment ¶¶ 56 & 57.)

Count Three states that from on or about January 31, 2002 to on or about April 30, 2003, Mr. Sterling possessed some unidentified  letter regarding Classified Program No. 1 that he failed to return to an officer or employee of the United States in violation of 18 U.S.C. § 793 (e). (Indictment ¶¶ 58 & 59.)

Count Four states that from on or about January 31, 2002 to on or about April 30, 2003,

Mr. Sterling after having lawful possession of information about Classified Program No. 1 and

Human Asset No. 1, delivered that information to Author A in violation of 18 U.S.C. § 793 (d).

(Indictment ¶¶ 60 & 61.)

Count Five states that  from on or about February 12, 2003 to on or about April 30, 2003,

Mr. Sterling had unauthorized possession of a letter related to Classified Program No. 1 and then

delivered it to Author A in violation of 18 U.S.C. § 793 (e).  (Indictment ¶¶ 62 & 63.)

Count Six states that between on or about February 27, 2003 to on or about April 30,

2003, after having lawful possession of information about Classified Program No. 1 and Human

Asset No. 1, Mr. Sterling delivered that information to an unnamed newspaper  in violation of 18

U.S.C. § 793 (d) and 2.  (Indictment ¶¶ 64 & 65.)

Finally, Count Seven states that in the same time frame as Count Six, Mr. Sterling

attempted to deliver a letter about Classified Program No. 1 to a newspaper in violation of 18

U.S.C. § 793 (e) and 2.  (Indictment ¶¶ 66 & 67.)

Nowhere in any of these counts is Classified Program No. 1, Human Asset No. 1 or

Author A identified.  Even the alleged letter that, as set forth in Count Five, was supposedly

delivered between February 27, 2003 and April 30, 2003 is not identified.  As such, and upon the

grounds set forth below, the defendant is entitled to a Bill of Particulars.

> C.      A Bill of Particulars is Required to Give Adequate Notice and Prevent Successive
>         Trials.

As was set forth in detail above, pursuant to Rule 7 (f) the Court may direct the

Government to file a Bill of Particulars "to enable the defendant to obtain sufficient information

on the nature of the charge against him so that he may prepare for trial, minimize the danger of

surprise at trial, and enable him to plead his acquittal or conviction of another prosecution for the same offense. United States v. Schembari, 484 F.2d 931, 934-935 (4th Cir. 1973)(citing United States v. Dulin, 410 F.2d 363, 364 (4th Cir. 1969)). Here, this defendant requires a bill of particulars, not as a means of discovery, but in order for Mr. Sterling and his counsel to properly prepare for trial and to prevent a subsequent prosecution.

For the government to prevail on all seven counts at issue here, it will be required to show that the defendant obtained "national defense information" as that term is defined in 18 U.S.C. § 793, and then communicated that information to someone not entitled to see it.[1] United States v. Rosen, 445 F. Supp.2d 602 (E.D.Va. 2006). The term "national defense information" has been defined as information that is closely held and so intimately related to the national defense that the security of the United States is implicated. Id. at 645. Indeed, in order to prevail, the government must prove beyond a reasonable doubt that the material at issue in this case is "national defense information." United States v. Rosen, 487 F. Supp.2d 703, 704 (E.D.Va. 2007) (citing In re Winship, 397 U.S. 358, 364 (1970)). The fact that the information at issue may be classified[2] is not conclusive and is insufficient to carry the burden of proving "national defense information." As a result, unless the defendant knows what "national defense information" is at

---

[1] The defense reserves the right to challenge the constitutionality of 18 U.S.C. § 793 as applied in this case. It is noted that in the Rosen case, Judge Ellis rejected that argument.

[2] In this case, the government makes no claim that Mr. Sterling violated 18 U.S.C. § 798 which prohibits the disclosure of classified information. By charging under 18 U.S.C. § 793 the Government must meet the enhanced burdens of that statute regardless of what it labels each of charges One through Seven which are styled as "Unauthorized Disclosures of Classified Information" and not "Gathering, Transmitting or Losing Defense Information."

issue, he cannot prepare for trial or protect his constitutional right against double jeopardy.[3]

The defense is mindful that a bill of particulars cannot be used as a substitute for a discovery request and that a demand for a bill of particulars can, in theory, be cured by discovery. See, e.g., Schembari, 484 F.2d at 935 (upholding the trial judge's denial of a bill of particulars because "the underlying objectives of a Rule 7(f) motion were fully satisfied by the government's voluntary disclosure of its entire file . . ."); United States v. Duncan, 598 F.2d 839, 849 (4th Cir. 1979) (finding that the "apprisal function of an indictment" may be satisfied if the Government opens its investigative file for the Defendant's inspection.) In this case, for example, the United States has provided in unclassified discovery various telephone records showing calls made by the author James Risen. It has provided three credit reports - Equifax, TransUnion and Experian - for Mr. Risen. It has produced Mr. Risen's credit card and bank records and certain records of his airline travel. The government has also provided a copy of the cover of the book State of War written by Mr. Risen and published in 2006. It has provided receipts and shipping records from Borders and Barnes and Noble indicating that State of War was sold in this District between November 1, 2005 and March 1, 2006.[4] From this document production, it can be inferred that Mr. Risen is Author A and that the "national defense information" at issue can perhaps be found

---

[3] In the Rosen case, it appears that the Indictment described the "National Defense Information" in some detail. Judge Ellis describes a CIPA § 5 notice as broad "in part because the indictment alleges a number of distinct elements of NDI covering a large range of distinct subjects..." United States v. Rosen, 487 F.Supp. 2d 703, 704 (E.D.Va. 2007)

[4] Count Eight is a mail fraud count under 18 U.S.C. §§1341 & 2, that seeks to hold Mr. Sterling criminally liable for the decision of Author A's publisher to sell in the Eastern District of Virginia a book allegedly containing "national defense information" obtained from Mr. Sterling. Author A and his publisher are not charged with any crime.

somewhere in State of War.

But State of War is a long book containing many chapters.  Just pointing the defense to

the book, or even a particular chapter in the book, is not legally sufficient to provide notice.

Each chapter is long and contains hundreds of items of information that may or may not be at

issue.  Simply put, the defense is constitutionally entitled to know what the "national defense

information" is and should not be obligated to search for it. The defense is entitled to know, for

example, if different information is at issue in Count One as opposed to Counts Six or Seven

much less Count Two versus Count Three.  Is the information in Count Five the same as the

information in Count Four?  Or Two?  Or One?  A bill of particulars is the only way to give the

defense the disclosure  needed to defend this case and the Government cannot hide behind a

claim of national security as an excuse not to provide the information to the defense and the

Court in a binding and public fashion.

Similarly, it cannot bury the "national defense information" in a mountain of discovery

and then expect counsel and Mr. Sterling to prepare adequately for trial.  It cannot tell counsel to

just read State of War, or a particular chapter, and figure it out.  Fundamental concepts of fair

play and notice prohibit this result.  Counsel needs to know precisely what information is at issue

so that they can investigate and seek exculpatory evidence that could undermine the

government's case without chasing potentially hundreds of leads that have no bearing on the

case.

A brief review of cases brought under 18 U.S.C. § 793 demonstrates that prosecution for

the alleged oral disclosure of "national defense information" is not common which may be why

the Indictment incorrectly lists these charges as classified information disclosures.  In the

majority of the cases, the information at issue was documentary and could be easily identified by

the defense and the Court.  Set forth below is a list of such cases complied in the <u>Rosen</u> case

which indicates, like in <u>Rosen</u>, that the issue of what information was at issue in those cases was

not left to guesswork.

> <u>United States v. Poulsen</u>, 41 F.3d 1330, 1333 (9th Cir. 1994)
> (charged with the willful retention of stolen computer tapes
> containing air tasking orders); <u>United States v. Pollard</u>, 959 F.2d
> 1011, 1015-16 (4th Cir. 1992) (transmission of photocopies of
> documents to Israeli intelligence services); <u>United States v.
> Morison</u>, 844 F.2d 1057, 1061 (4th Cir. 1988) (transmission of
> stolen documents and satellite photos to British news magazine);
> <u>United States v. Zettl</u>, 835 F.2d 1059, 1060 (4th Cir. 1987)
> (delivery of classified Navy documents; <u>United States v. Walker</u>,
> 796 F.2d 43, 45 (4th Cir. 1986) (transmittal of Navy documents
> containing classified information to the Soviets); <u>United States v.
> Truong Dinh Hung</u>, 629 F.2d 908, 911-12 (4th Cir. 1980)
> (transmission of documents relating to the national defense to
> Socialists Republic of Vietnam during the 1977 Paris peace
> negotiations); <u>United States v. Kampiles</u>, 609 F.2d 1233, 1235 (7th
> Cir. 1980) (delivery of military technical manual to the Soviets);
> <u>United States v. Lee</u>, 589 F.2d 980, 982-83 (9th Cir. 1999)
> (transmittal of documents relating to a covert communications
> satellite study to the Soviets); <u>United States v. Doe</u>, 455 F.2d 1270,
> 1272 (1st Cir. 1972) (transmittal of the "Pentagon Papers"
> ultimately published by the New York Times and the Washington
> Post); <u>United States v. Ntube</u>, 1996 U.S. Dist. LEXIS 20617, No.
> 93-0322-2, 1996 WL 808068 (D.D.C. 1996)(delivery of classified
> documents to certain African countries).
>
> <u>Gorin v. United States</u>, 111 F.2d 712, 715 (9th Cir. 1940) <u>aff'd</u> 312
> U.S. 19, 61 S.Ct. 429 (1940) (describing the oral transmission of
> the substance of reports); <u>United States v. Pelton</u>, 835 F.2d 1067,
> 1070-71 (4th Cir. 1987) (oral transmission of information relating
> to the national defense to Soviets); <u>United States v. Rosenberg</u>, 195
> F.2d 583, 588 (2d Cir. 1952) (describing the transmission of
> documents, writings, sketches, notes and information relating to

the national defense to the Soviets).

Rosen, 445 F. Supp.2d at 614 fn8 and 9.

Beyond the simple issue of fairness and notice, there are substantial double jeopardy

issues at stake.  Mr. Sterling has not been employed at the CIA for 10 years and certainly cannot

be said to have had access since then to any "national defense information."  In this case, the

Government will surely claim that there is a ten year statute of limitations applicable to violations

of 18 U.S.C. 793.  See Internal Security Act, Ch. 1024, 64 Stat. 987, P.L. 831 (§19) (1950).

As set forth in the statute, this law was passed, by its terms, because of the then existing

threat of global communism.

> There exists a world Communist movement which, in its origins,
> its development, and its present practice, is a world-wide
> revolutionary movement whose purpose is by treachery,
> deceit...espionage, sabotage, terrorism, and any other means
> necessary, to establish a Communist totalitarian dictatorship in the
> countries throughout the world through the medium of a world-
> wide Communist organization.

Id. at § 2 (1)

In this regard, the Court can see that when this law was passed in 1950, it appears that the

Congress extended the statute of limitations applicable to 18 U.S.C. § 793 because the "agents of

communism have devised clever and ruthless espionage and sabotage tactics which are carried

out in many instances in form and manner successfully evasive of existing law."  Id. at § 2 (11).

 As such, the defense reserves the right to challenge the application of this McCarthy era law to

the charges in this case which challenge would result in the application of the general five year

statute applied to felonies.  18 U.S.C. § 3282.

Regardless, if the Court does not require a bill of particulars, the Government can seek to bring successive prosecutions almost at will until it gets a conviction each time alleging some new item of "national defense information."  A bill of particulars is especially appropriate in this case to prevent such an eventuality which cannot be considered as hypothetical given the long passage of time between the filing of the Indictment and the facts at issue here.

> D.      In the Circumstances of this case a Bill of Particulars would be helpful to the
>         Court and the Defense.

In addition, a bill of particulars will be helpful to both the parties and the Court as discovery proceeds and CIPA hearings begin.  With the aid of a bill of particulars, the Court would have  a detailed, binding and public disclosure to use as the Court  proceeds to make rulings  determining the relevance and admissibility of any information submitted by the defense pursuant to CIPA § 5 and by the United States under CIPA §§ 4 & 6.  Likewise, the defense would know precisely what information was at issue and could make Brady requests and CIPA disclosures  targeted to learning and disclosing the identities of others who had access to this information and to identify other source materials for the information.  The public nature of the filing would also serve to vindicate Mr. Sterling's public trial rights and perhaps assist him in obtaining witnesses.  A public filing would also vindicate the public's interest in a public trial. All of this is necessary for an adequate defense.

WHEREFORE, the defendant requests that the instant motion be granted.

**JEFFREY A. STERLING**
**By Counsel**


_____/s/_____
Edward B. MacMahon, Jr. (VSB # 25432)
Law Office of Edward B. MacMahon, Jr.
107 East Washington Street
P. O. Box 25
Middleburg, Virginia  20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Counsel for Jeffrey A. Sterling*


_____/s/_____
Barry J. Pollack
Miller & Chevalier Chartered
655 Fifteenth St., NW, Suite 900
Washington, DC    20005
(202) 626-5830
bpollack@milchev.com
*Counsel for Jeffrey A. Sterling*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24th, 2011, I caused an electronic copy of Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for a Bill of Particulars to be served via ECF upon William W. Welch, II, James L. Trump, United States Attorney's Office.

_____/s/_____

Edward B. MacMahon, Jr. (VSB # 25432)
Law Office of Edward B. MacMahon, Jr.
107 East Washington Street
P. O. Box 25
Middleburg, Virginia  20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Counsel for Jeffrey A. Sterling*
