IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 1:10cr485 (LMB) |
| | ) | |
| JEFFREY ALEXANDER STERLING | ) | |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT'S DISCOVERY MOTION
[UNCLASSIFIED]**

The United States, through the undersigned counsel, hereby responds to the defendant's motion for additional discovery (Docket No. 116). The motion was filed under seal.

The defendant's motion addresses the issue of "national defense information." The defendant is charged in Counts One, Four and Six of the indictment with the communication and attempted communication of information relating to the national defense, in violation of Title 18, United States Code, Section 793(d), and in Counts Two, Five and Seven with the communication and attempted communication of a document relating to the national defense, in violation of Title 18, United States Code, Section 793(e). To convict on any of these six counts, the government must prove that the information and/or document at issue relates to the national defense.

In *Gorin v. United States,* 312 U.S. 19, 28 (1941), the Supreme Court held that the phrase "national defense information" in Section 794 is "a generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness." *See also United States v. Truong*, 629 F.2d 908, 918 (4th Cir. 1980) (finding that the legislative history of the espionage statutes demonstrates that Congress intended national

defense to encompass a broad range of information and rejected attempts to narrow the reach of the statutory language); *United States v. Rosen*, 445 F.Supp.2d 602, 620 (E.D. Va. 2006) (asserting that the phrase "has consistently been construed broadly to include information dealing with military matters and more generally with matters relating to United States foreign policy and intelligence capabilities").

The Fourth Circuit, in *United States v. Morison*, 844 F.2d 1057, 1070-71 and 1076 (4th Cir. 1988), added a "judicial gloss" to this element to avoid vagueness concerns or conflict with the First Amendment.  Specifically, the court held that to prove the defendant communicated "information relating to the national defense," the government must *also* prove that the information be "closely held," and be "potentially damaging to the United States or might be useful to its enemies." *Id*. at 1071-72.

The indictment identifies the national defense information at issue in Counts One, Four and Six as "information about Classified Program No. 1 and Human Asset No. 1," and in Counts Two, Three, Five, and Seven as "a letter relating to Classified Program No. 1."  Counts Three, Four and Five allege communications of national defense information by the defendant as of April 2003; and Counts Six and Seven allege attempted communications of national defense information as of April 2003.  The indictment further describes Classified Program No. 1 in paragraph no. 15 and Human Asset No. 1 in paragraph no. 14.  The letter relating to the classified program is mentioned in the indictment and, of course, quoted in the book.

The government has produced documents providing the defense with detailed information

about both Classified Program No. 1 and Human Asset No. 1.[1] The government will, as the defendant surmises in his motion for discovery, present expert testimony as to why information about this program, this individual and the letter constitutes national defense information within the meaning of 18 U.S.C. § 793 and the case law referenced above. In rendering an opinion, the expert will rely, in part, on unclassified versions of the documents already provided on classified discovery. Under the current Discovery Order (Docket No. 15), the government's expert notice and report must be filed by August 26, 2011, ten business days before trial.[2]

The defendant thus has in his possession the information he now seeks in the discovery motion, namely the specific facts about the program and human asset upon which the government will rely and which also appear in Chapter 9 of Mr. Risen's book, *i.e.*, facts the government represents as true. To the extent "facts" appear in the book that are not documented in the classified discovery materials, those "facts" are incorrect and were communicated by the defendant in a false and misleading manner as alleged in the indictment; and the government will not rely on those purported "facts" to prove that the defendant communicated national defense

---

[1] Early in the discovery process the government produced and identified for the defense the specific CIA cables upon which the government would rely in proving the facts alleged in the indictment, including the facts establishing that the information communicated related to the national defense. The government intends to use unclassified versions of these cables at trial.

[2] This was an agreed upon order, but if the defendant objects to this schedule, that should be brought to the attention of the Court as soon as possible. It is possible that the filing of the government's expert notice, and the filing of a rebuttal expert notice by the defendant, could result in additional CIPA and/or discovery litigation, which may be difficult to accomplish in the two weeks before trial. As we previously informed the Court and defense counsel, we are working diligently with the intelligence community to declassify documents and information upon which the government and its expert(s) will rely in proving the information disclosed is national defense information. It would be difficult for the government to submit an expert notice without first completing this process.

information through Chapter 9 of the book. In other words, the defendant already has the 'exculpatory" information which would "demonstrate[] that any item in Chapter 9 is false." Discovery Motion at 10, request no. 4.

The United States also disagrees with the defendant's characterization that evidence of actual harm resulting from the defendant's disclosures of national defense information (or the absence thereof) or evidence that the classified program "failed or otherwise did not accomplish the specific purposes for which it was designed" is exculpatory. Discovery Motion at 10, request nos. 1, 2, 3, and 5. As noted above, the definition of national defense information is information that is "potentially" damaging to the United States and/or useful to a foreign power. *Morison*, 844 F.2d at 1070-71. In *Morison*, one of the specific issues on appeal was whether the trial court properly defined national defense information as "potentially damaging." The defendant claimed that the word "actual" should have been used instead of "potentially." The Fourth Circuit disagreed, citing to Justice White's concurring opinion in *New York Times v. United States*, 403 U.S. 713, 739 (1971), and *United States v. Dedeyan*, 584 F.2d 36, 40 (4th Cir. 1978).[3] This is simple common sense. A defendant should not escape criminal responsibility for the disclosure of national defense information because the government took steps to minimize the damage caused by his disclosures or because the government was not able to quantify with precision the

---

[3] The jury in *Dedeyan* was instructed that, in order to show the necessary relationship to the national defense, the government must prove that disclosure of information would be potentially damaging to the national defense or that the information might be useful to an enemy of the United States.

damage the disclosures may have caused.[4]  For example, in this case, the disclosure by the defendant about the human asset has ramifications well beyond the more limited issue of the human asset's personal safety and whether an enemy of the United States "ever learned the true identity of location of Human Asset No. 1.  Discovery Motion at 10, request no. 2.  The CIA's relationship with any human source rests with the knowledge that the CIA will preserve the confidentiality of that relationship and do everything in its power to maintain its secrecy.  That a CIA case officer would reveal publicly information about a source in violation of his sworn duties has potentially harms the ability of the CIA to recruit new sources and undermines ongoing relationships having absolutely nothing to do with this case.  This type of damage is not easily quantified but will be the subject of expert testimony. .

Notwithstanding this disagreement as to the exculpatory nature of the information requested by the defendant in his motion, the government represents the following:

Request No. 1:  The government has produced documents responsive to this request regarding the time frame 2003 through 2006.  There is nothing to produce after publication of the book in early 2006.

Request No. 2:  The government has produced documents responsive to this request.

Request No. 3:  The government has produced documents responsive to this request.

Request No. 5:  The government is the process of searching for and reviewing documents that may fall within the scope of this request.

The government is willing to meet with defense counsel to review with them the

---

[4] In this case, of course, two of the counts in the indictment allege the attempted disclosure of national defense information, and the indictment discusses specific actions the government took to minimize the harm caused by the defendant.  *See* Indictment ¶¶ 39 through 43.

information the government has previously provided which the government believes is responsive to these discovery requests.

                Respectfully submitted,

                Neil H. MacBride
                United States Attorney

                William M. Welch II
                Senior Litigation Counsel
                Criminal Division
                United States Department of Justice

                Timothy J. Kelly
                Trial Attorney
                Public Integrity Section
                United States Department of Justice

                James L. Trump
                Senior Litigation Counsel
                United States Attorney's Office
                Eastern District of Virginia

By:           /s/          
     James L. Trump
     Attorney for the United States of America
     United States Attorney's Office
     Justin W. Williams U.S. Attorney's Building
     2100 Jamieson Avenue
     Alexandria, Virginia 22314
     Phone: 703-299-3726
     Fax: 703-299-3981
     Email Address: jim.trump@usdoj.gov

## CERTIFICATE OF SERVICE

     I hereby certify that I caused an electronic copy of the foregoing *Response of the United States to Defendant's Discovery Motion* and served via ECF on Edward B. MacMahon, Jr., and Barry J. Pollack, counsel for the defendant.

By:          /s/
     James L. Trump
     Attorney for the United States of America
     United States Attorney's Office
     Justin W. Williams U.S. Attorney's Building
     2100 Jamieson Avenue
     Alexandria, Virginia 22314
     Phone: 703-299-3726
     Fax: 703-299-3981
     Email Address: jim.trump@usdoj.gov