IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:10cr485 (LMB) |
| | ) | |
| JEFFREY ALEXANDER STERLING | ) | |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT'S MOTION FOR ISSUANCE OF RULE 17(c) SUBPOENAS**

The United States, through the undersigned counsel, hereby responds to the defendant's

motion for the issuance of four trial subpoenas pursuant to Rule 17(c) of the Federal Rules of

Criminal Procedure.[1]

The defendant asks the Court to authorize the issuance of a subpoena to the United States

Senate Select Committee on Intelligence (SSCI) for the production or certain records and

documents on or before August 17, 2011, two months prior to trial.  The defendant also seeks

subpoenas for the testimony at trial of three individuals: Lorenzo Goco, the current Deputy Staff

Director of SSCI, and Vicki Divoll and Donald Stone, former SSCI staff members, and for the

pre-trial production of similar documents from these individuals.  The United States objects to

the subpoena directed to the committee and to the Rule 17(c) component of the subpoenas

directed to the three individuals.  The government does not object to the issuance of subpoenas

directing these witnesses to testify at trial, as the government most likely would have sought their

testimony as well.  Notwithstanding these objections, however, we ask that the Court defer ruling

---

[1] The motion was docketed as no. 130.  The memorandum in support of the motion is docket
no. 131; the four subpoenas are nos. 131-1 through 131-4; and the proposed order is no. 131-5.

on the defendant's motion so that the parties and counsel for the committee have an opportunity to resolve this matter without the need for further litigation, as more fully discussed below.

The basis for the defendant's motion is simple. The defendant maintains that he was not the source for the classified information disclosed to James Risen as detailed in the indictment. In March 2003, the defendant met with Ms. Divoll and Mr. Stone in their capacities as SSCI staff members and discussed with them Classified Program No. 1. Ms. Divoll and Mr. Stone subsequently discussed their meeting with Sterling with Mr. Goco. About one month later, in April 2003, James Risen contacted the CIA about an article he was writing about this program. That Risen was in the process of writing his article within a month of Sterling's meeting with SSCI staff members suggests, according to the defendant, that "it was one of the staff members and *not* Mr. Sterling who unlawfully disclosed classified information." Defendant Memorandum at 3.[2]

## DISCUSSION

The United States obviously agrees that the March 5, 2003 meeting between the

---

[2] The defendant contends that this "temporal link" is further buttressed by the fact that "[d]iscovery produced to date reveals that at least one of the staffers in question served as source for Mr. Risen with respect to matters that came before the United States Senate Committee on Intelligence." That is a gross misrepresentation of the discovery materials. The defense is referring to an interview with Ms. Divoll, memorialized in an FBI 302 report, during which she discusses an incident involving a conversation she had with another Senate staff member in May 2003. The incident did not involve classified information, nor did Ms. Divoll ever speak to Mr. Risen. We have provided the Court with copies of the FBI 302 report of this interview with Ms. Divoll. We have also provided the Court with five additional FBI 302 reports memorializing other interviews with Divoll, Stone and Goco and a memorandum written by Mr. Stone memorializing the March 5, 2003 meeting with Sterling. These documents are classified and have not been filed with this response. The defense has copies of them.

defendant and the SSCI staff members is relevant.[3]  The meeting is discussed in the indictment

(at p. 13, ¶ 36) and mentioned in Chapter 9 of Risen's book, *State of War*:

> The CIA case officer was deeply concerned by the ease with which the
> Russian had discovered the flaws in the design . . . .  He grew so concerned about
> whether he had aided the Iranian nuclear program that he went to the Senate
> Select Committee on Intelligence to tell congressional investigators about the
> problems with the program.  But no action was ever taken.

Chapter 9 at p. 197.  Given the author's focus on the "case officer" throughout this chapter,

coupled with the discussion of very specific details about conversations and meetings between

the case officer and Human Asset No. 1, this particular passage points directly to Sterling -- the

case officer at the time of the events depicted in Chapter 9 -- as the source for Risen's

information, not to one of these SSCI staff members.[4]  During the meeting with Ms. Divoll and

Mr. Stone, Sterling never discussed most of the very specific details about the program revealed

in the book, nor are any of these specific details memorialized in Mr. Stone's memorandum of

the meeting.  No documents were exchanged or reviewed at the meeting.  More importantly, each

one of the staff members the defendant accuses of having leaked information to Risen has

unequivocally stated that he/she did not provide Risen with any information.  Mr. Stone wrote in

his memorandum that Risen attempted to contact him directly, but, without even knowing the

---

[3]  For some reason, the defendant repeatedly refers to the "alleged" meeting in the
memorandum in support of his motion.  The meeting was arranged through Sterling's civil attorney,
Mark Zaid, and both Sterling and Zaid have acknowledged that Sterling met with SSCI on March
5, 2003.  Their names are also reflected on the SSCI sign-in sheet for the March 5, 2003 meeting.

[4]  Risen's testimony regarding the authenticity of Chapter 9 of his book -- a point he has
already conceded -- necessarily would include testimony regarding the meaning and accuracy of
words and phrases used in the chapter, *e.g.*, the case officer referenced in the quoted passage is the
same case officer referenced elsewhere in the chapter.

nature of the inquiry, Risen was told that any staff communications must come from the staff directors. Mr. Divoll stated that she has never spoken with or met Risen. Mr. Goco similarly stated that he had never spoken with Risen.

At the outset, the government notes that this is precisely the scenario the government predicted would occur should the Court determine that James Risen's interest in not testifying in this case outweighs the government's and the public's interest in seeking the truth at trial. Although at the hearing on July 7, 2011, defense counsel was unwilling or unable to provide the Court with any insight into the defendant's defense theory, this motion squarely puts that theory before the Court.[5] The defense plans to point fingers at other possible "suspects" and ask the jury to speculate that someone other than Sterling was Risen's source. And while the defendant certainly has a right to develop and put forth his defense as he sees fit, the only reason he can proceed down this path is because he believes that the government will not be able to compel Risen to identify his source or even testify as to who was not a source. In other words, the First Amendment interests advocated by Risen have become both a sword and shield for the defendant, and he has used the current impasse over Risen's testimony to accuse falsely other individuals of serious crimes and ask this court to enforce speculative and largely frivolous requests to search for information in support of that defense. This should not be countenanced.

The United States agrees that certain specific documents about the SSCI meeting should be made available to both parties, and we are hopeful that whatever is obtained voluntarily from SSCI will satisfy the defendant's needs (see discussion below). Nevertheless, the subpoenas as

---

[5] At the July 7 hearing, counsel stated "[b]ut I don't think at this stage in time that it's fair or appropriate to ask what we are going to do as a defense strategy, what we intend to do, evidence to put on or anything in the realm, in this motion." Tr. at 19.

drafted are objectionable and should be quashed.  It is well settled that a Rule 17(c) subpoena does not provide a means of discovery for criminal cases.  *See, e.g., United States v. Nixon*, 418 U.S. 683, 698 (1974); *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980)("Courts must be careful that rule 17(c) is not turned into a broad discovery device."); *United States v. Caro*, 461 F.Supp.2d 478, 481 (W.D.Va. 2006)("[U]se of a Rule 17 subpoena duces tecum cannot substitute for limited discovery otherwise permitted in a criminal case and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena."); *United States v. Fletcher*, 461 F.Supp.2d 1101, 1102 (D.Ariz. 2006)("Subpoenas issued pursuant to Rule 17(c) are not discovery devices . . . . "); *United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991)("Rule 17(c) . . . is not a discovery device.").

    The subpoenas here are clearly for discovery and not for the production of evidence known to exist at this time and otherwise relevant and admissible at trial.  The defendant acknowledges as much in his pleadings.  He says that "[i]n order to fully develop this defense, Mr. Sterling requires access to documents . . . . " (Defendant Memorandum at 2); and "Mr. Sterling cannot develop this defense without access to the staff members' records . . . . " (Defendant Memorandum at 4).  Rule 17(c) subpoenas are not to be issued to see if a defense theory pans out.  Indeed, in meeting with counsel for SSCI (see discussion below), defense counsel conceded that he does not even know whether most of the requested documents even exist.  And, although the defendant represents that the requests are "narrowly tailored to capture only those documents necessary to develop fully his defense" (Defendant Memorandum at 5),[6]

---

[6] The defendant claims, however, that these "narrowly tailored" requests are likely to result in a "voluminous" number of records.  Defendant Memorandum at 5.  It is hard to imagine how both statements could be true.

the requests are actually worded quite broadly,[7] and the United States cannot fathom how they

meet the relevancy, admissibility and specificity requirements of *Nixon*.  They lack even a veneer

of specificity and are precisely the generalized fishing expeditions expressly prohibited by the

courts.  Requesting entire files instead of specific documents indicates a fishing expedition.

*United States v. Ruedlinger*, 172 F.R.D. 453, 456 (D.Kan. 1997)(granting government's motion

to quash Rule 17(c) subpoena for any and all IRS reports pertaining to defendant's business);

*United States v. Modi*, 2002 WL 188327, *2 (W.D.Va. 2002)(denying Rule 17(c) subpoenas for

"any and all documents, records, correspondence, emails and data")[8]; *United States v. Reed*, 726

F.2d 570, 577 (9th Cir. 1984)(affirming district court's quashing of subpoena for all records of

arson investigation); *United States v. Morris*, 287 F.3d 985, 981 (10th Cir. 2002)(holding that

requests for an entire file are evidence of an impermissible fishing expedition and affirming

district court's quashing of subpoena for all records of FBI investigation for lack of specificity);

*United States v. Noriega*, 764 F. Supp 1480, 1493 (S.D. Fla. 1991)(holding that a prosecution

trial subpoena for all recordings of the defendant's jailhouse telephone calls improper, as

---

[7]  Each proposed subpoena is accompanied by a set of directions and a nearly identical list
of 11 categories of purportedly relevant documents.  The very words used in defining these
categories reveals the speculative nature of the subpoenas (*e.g.*, "documents, including but not
limited to, notes, draft memoranda, memoranda . . . , reflecting any . . . . "; "documents related to any
. . .  possible misconduct by . . . .").

[8]  The district judge in *Modi* reasoned that the broad nature of the requested subpoenas led
to the conclusion that the defendants were using Rule 17 improperly as a discovery device: "It is
clear that the defendants in this case are engaging in the type of fishing expedition that is prohibited
in criminal cases.  They are not seeking a particular document or specific set of materials that they
know exists.  Rather, they request 'any and all documents, records, correspondence, emails and data'
relating to a series of broad subjects, with the hope of uncovering something useful to their defense
. . . .  However, the 'mere hope' of discovering favorable evidence is insufficient to support issuance
of a subpoena duces tecum" (footnote omitted).

government did not know what was on the tapes)[9];  *United States v. Tokash*, 282 F.3d 962, 971

(7th Cir. 2002)(affirming district court's denial of broadly worded subpoenas for all prison

records because the information sought was nothing but a fishing expedition).[10]  Moreover, the

specificity requirement of *Nixon* cannot be satisfied by simply naming the document or class of

documents sought.  The moving party must specify why the materials are wanted, what

information is contained in the documents, and why those documents would be relevant and

admissible at trial.  *See United States v. Arditti*, 955 F.2d 331, 345-46 (5th Cir. 1992); *United

States v. Jackson*, 155 F.R.D. 664, 668 (D.Kan. 1994)("Conjecture and speculation will not

provide the lift to carry a movant over the three hurdles."); *United States v. Hang*, 75 F.3d 1275,

1283 (8th Cir. 1996)("[A] Rule 17 subpoena cannot properly be issued upon a 'mere hope.'");

*United States v. Anderson*, 31 F.Supp.2d 933, 944-45 (D.Kan. 1998).  It is apparent here that

conjecture, speculation and hope are the bases for the defendant's motion for the issuance of

---

[9]  The district judge in *Noriega* stated: "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused . . . .  The subpoena thus constituted a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue.  This is precisely the kind of unwarranted expedition which Rule 17(c) does not permit." 764 F.Supp. at 1493.

[10]  On appeal, the defendants in *Tokash* (who were charged with possessing weapons in a federal prison) argued that the district court's denial of their Rule 17(c) subpoenas created a chicken or egg dilemma, *i.e.*, that they first needed to review all of the BOP records in order to make out their defense at trial.  In rejecting their argument, the court of appeals stated: "But Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial.  282 F.3d at 971, *citing Nixon*, 418 U.S. at 700, and *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992).

- 7 -

these subpoenas.

The government similarly does not believe that the defendant can show that much of what is sought through the requested subpoenas would result in evidence admissible at trial.  At best, the defendant is looking for impeachment information.  Anticipating that the government will call Ms. Divoll and Mr. Stone at trial to relate what Sterling told them during the March 5, 2003 meeting, the defense would like to have something to undermine their testimony and suggest that these witnesses, not Sterling, might have leaked information to Risen.  But impeachment information generally is not obtainable in advance of trial through the issuance of a Rule 17(c) subpoena.  *Nixon*, 418 U.S. at 701 ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c) ]"; *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000); *United States v. Clark*, 2001 WL 759895, *2 (W.D.Va. 2001); *United States v. Dale*, 155 F.R.D. 149, 152 (S.D.Miss. 1994); *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir.1990) (Rule 17(c) subpoena to third party for impeachment material improper; internal documents are not required to be produced when the witness's testimony at trial provides the same information as the requested documents); *United States v. Jenkins*, 895 F.Supp. at 1394 (Rule 17(c) not to be used to gather impeachment material).

## NEGOTIATIONS WITH SSCI

On July 18, 2011, counsel for the government and the defendant met with counsel for SSCI in an attempt to satisfy the defendant's requests for documents without having to litigate the subpoena issue.  As the defendant correctly surmises in his motion, seeking documents by

compulsory process from the legislative branch touches on complex and potentially thorny constitutional issues, which the parties would prefer not litigating. SSCI has graciously agreed to conduct a limited search for documents relating specifically to the March 5, 2003 meeting between Sterling and its staff as well as for a limited class of documents reflecting communications between SSCI and the CIA about that meeting and the 2006 publication of James Risen's book. SSCI may also be able to locate some telephone and other records the defendant seeks.[11] Internal records, however, such as email between staff members or memoranda reflecting staff or committee meetings or deliberations about the meeting with Sterling, raise the legal and policy issues alluded to above and quite possibly would involve very time-consuming and burdensome manual searches for such records. SSCI staff were able to identify some documents responsive to the defendant's requests, some of which the government has produced in discovery. As of this date, SSCI believes there may be two CIA documents reflecting communications between SSCI and CIA about Sterling and Risen's book of which we previously were not aware. We are attempting to locate these documents, and, if we do and they are, in fact, discoverable, the documents will be provided to the defense.[12]

---

[11] The prosecution cannot, of course, speak for SSCI as to what information or documents it will provide voluntarily to the defendant and is not here representing what SSCI will ultimately decide to search for or turn over. We have provided the defendant with a summary of what SSCI has done voluntarily in response to the defendant's requests, a copy of which is included in the discovery materials provided to the Court.

[12] As noted, the government has produced in discovery FBI 302 reports of interviews with Divoll, Stone and Goco and the April 2003 Stone memorandum. We have produced the SSCI sign-in sheet for the March 3, 2003 meeting. We have produced documents from the CIA's Office of Congressional Affairs, which include regular reports to SSCI on certain CIA matters, including Classified Program No.1.

## CONCLUSION

In sum, the United States asks that the Court defer action on the defendant's requests for Rule 17(c) subpoenas until the defendant determines whether he is satisfied with the voluntary production of information and documents by SSCI.

Respectfully submitted,

Neil H. MacBride
United States Attorney

William M. Welch II
Senior Litigation Counsel
Criminal Division
United States Department of Justice

Timothy J. Kelly
Trial Attorney
Public Integrity Section
United States Department of Justice

James L. Trump
Senior Litigation Counsel
United States Attorney's Office
Eastern District of Virginia

By: _____/s/_____
James L. Trump
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3726
Fax: 703-299-3981
Email Address: jim.trump@usdoj.gov

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that I caused an electronic copy of the foregoing *Response of the United States to Defendant's Discovery Motion* and served via ECF on Edward B. MacMahon, Jr., and Barry J. Pollack, counsel for the defendant.

By:                 /s/                
            James L. Trump
            Attorney for the United States of America
            United States Attorney's Office
            Justin W. Williams U.S. Attorney's Building
            2100 Jamieson Avenue
            Alexandria, Virginia 22314
            Phone:  703-299-3726
            Fax: 703-299-3981
            Email Address: jim.trump@usdoj.gov