# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Case No. 1:10-cr-00485-LMB |
| ) | |
| JEFFREY ALEXANDER STERLING, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION IN LIMINE REGARDING
## EXPERT WITNESSES PROFFERED BY THE UNITED STATES

**COMES NOW** Jeffrey Sterling, by counsel, and for his Motion in Limine Regarding

Expert Witnesses Proffered by the United States, states as follows:

**1.    The Testimony Of The Government's Proposed "Experts" Are Not Admissible Because
the Disclosures are Inadequate and Unconstitutionally Vague.**

### A.  Elements of the Espionage Act Charges.

On December 22, 2010, more than 10 years after Mr. Sterling was employed by the CIA, a

grand jury in this district indicted Mr. Sterling alleging seven violations of 18 U.S.C. § 793, the

Espionage Act.  Counts One, Four and Six allege violations of 18 U.S.C. § 793 (d).  Counts Two,

Five and Seven allege violations of 18 U.S.C. § 793 (e) and Count Three alleges a violation of 18

U.S.C. § 793 (e) for allegedly retaining National Defense Information.

In order for the Government to sustain its burden on each of these Counts, it must prove

beyond a reasonable doubt that the information that Mr. Sterling allegedly either disclosed or

retained was closely held by the United States government and that the disclosure of the information

would be damaging to national security.  The Government must also prove beyond a reasonable

doubt that the person who allegedly received the National Defense Information was not authorized to receive it and that the defendant had reason to believe that the information disclosed could be used to the potential injury of the United States or to the aid of a foreign nation and that such injuries or aid was intended. United States v. Morison, 844 F.2d 1057, 1071-72 (4th Cir. 1988); see also United States v. Rosen, 445 F. Supp.2d 602, 620-22 (E.D. Va. 2006).

With these elements in mind, on August 12, 2011, the Government served its Notice of Intent to Use Expert Testimony ("Notice"). A copy of that Notice is attached hereto. The defendant submits that the Notice is inadequate as it fails to provide proper notice to the defendant as to what opinions are proffered, is not sufficiently detailed and cumulative, and contemplates the use of anonymous testimony which would violate the defendants due process, confrontation and public trial rights. As such, the Notice should be stricken.

B.      **Standards for Expert Testimony.**

Rule 16 (a)(G) of the Federal Rules of Criminal Procedure governs the disclosures required by Government in the event it seeks to introduce expert testimony. That rule provides as follows:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . The summary provided under this paragraph must describe the witness' opinion, the bases and reasons for those opinions and the witness's qualification.

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 assigns to the district court the role of gatekeeper and charges the court with assuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The Court has articulated a two-step inquiry for determining whether such evidence or testimony is admissible. *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002), citing *Daubert*, 509 U.S. at 591-93, 595. First, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.,* quoting *Daubert*, 509 U.S. at 592-93. The Court cautioned that the district court must focus "on [the] principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Second, the court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact." *Id.* at 592-93.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the Supreme Court made it clear that the district court's duty to act as gatekeeper and to assure the reliability of expert testimony before admitting it applies to all expert testimony, not merely scientific expert testimony. *See also United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). The Supreme Court has identified some factors for the trial court to consider when exercising its gatekeeper role: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 592-94.

Under these standards, and under Rule 16 (a)(G) of the Federal Rules of Criminal Procedure,

-3-

the Government has failed, by this Notice, to provide proper notice as to the identity of the proposed

expert witnesses; to identify the basis for any of the opinions being offered as required under Federal

Rule of Evidence 703; to disclose any reasoning or methodology underlying any testimony; or to

identify how, if at all, these opinions are derived and thus reliable.  For these reasons, and for other

constitutional reasons identified below, the Notice should be stricken, or, in the alternative, the Court

should order for a *Daubert* hearing.[1]

### C.      The Notice Itself.

In the Notice, the Government has purported to identify nine expert witnesses.  Six of those

witnesses are identified only by initials and are thus unknown to the defense.[2]  They are Mr. C., Mr.

S. 2, Mr. M.., Mr. W., Mr. F., Mr. S.  Three witnesses are identified by name.  They are David

Shedd, Elizabeth Culver and Jill. M Eulitz but the defense knows little about who they are.  In the

Notice, the Government states that all of the witnesses but Ms. Eulitz are current or former members

of the CIA.  Without the promised information about the identity, background or experience of any

of these people, the defense cannot challenge the credentials of any of the experts and the

Government cannot be said to have complied with its notice obligations under either the Federal

Rules of Criminal Procedure or the Federal Rules of Evidence.  When the Government receives a

detailed notice from the defense as the identity and qualifications of the defense expert, the

---

[1] The defense has asked in discovery for evidence of any actual, as opposed to potential harm, alleged to have been caused by these disclosures.  Though the Court has not yet ruled on the Motion, the defense again requests reciprocal discovery pursuant to Section 6(f) of CIPA.

[2] The defense restates any objections set forth in its Opposition to the Government's Motion for an *In Camera* Hearing and Motion for Order Pursuant to Sections 6 and 8 of the Classified Information Procedures Act.  In short, no provision of CIPA or any other applicable law allows for expert testimony from anonymous experts using the silent witness rule who cannot be properly investigated much less cross-examined in public.

-4-

Government will begin an earnest investigation in an effort to learn prior testimony and actions of the expert. As currently disclosed, none of this, which investigation is necessary for the adequate representation of Mr. Sterling, can be done by the defense.

What the defense can now challenge is the sufficiency of the notice as it relates to the opinion of any one person as opposed to an opinion held individually by a group of witnesses. Of course, it is common for an expert witness disclosure to be made for individual witnesses in a disclosure under F.R.E. 712. In addition, the defense cannot determine which expert is cumulative of the other and thus an unnecessary or cumulative witness under F.R.E. 403. At a minimum, the Notice must be amended to include the names of the witnesses, their qualifications, their specific opinions, and the complete disclosures required by F.R.E. 702. The Government cannot rely upon anonymous witnesses to prove elements of its case.

> **D.      Objections to Specific Areas of Testimony.**

The Notice sets forth several areas of proposed expert testimony. The first area is Classification Procedures. Since Mr. Sterling is not charged with unauthorized disclosure of classified information, this area of expert opinion is not relevant. If the Government has documents or information that it believes Mr. Sterling disclosed or retained that are marked classified, it can surely seek to introduce those documents into evidence showing the classification marks. Otherwise, this testimony has the potential to confuse the jury by interjecting issues of classification when the issue to be resolved is whether the information allegedly disclosed was national defense information.

The second area is Training and Experience. While it is possible that an expert could opine as to the nature and extent of training given to CIA officers to protect classified information, this is not a case in which classified information is at issue. Moreover, this Notice is not adequate to

identify any opinion as to what training is given to officers so that they may know the "actual and potential harm" caused by the unauthorized disclosure of classified information. (Notice at 2.) Moreover, the Government cannot use expert testimony about training procedures to seek to show that Mr. Sterling acted with the specific intent required to obtain a conviction. (Notice at 2.)

Lastly, the Government offers three examples of alleged harm caused by the alleged unauthorized disclosure of classified information. Those areas are described as (1) damage caused by the disclosure of intelligence methods; (2) damage caused by the disclosure of intelligence sources; and (3) damage to foreign relations. As is true with the above referenced areas of alleged expert testimony, there is not disclosure as to the qualifications of any particular anonymous expert nor is the opinion given in any clear and concise manner that give adequate notice to the defense as to the methodology employed by any particular expert. Indeed, all that we are given is generalizations of harm and no particulars whatsoever. For example, there is no disclosure given as to what damage was caused in the area of nuclear proliferation whatsoever.

## CONCLUSION

WHEREFORE, the defendant requests that the instant motion be granted.

_____/S/_____
Edward B. MacMahon, Jr.
VSB No. 25432
Law Office of Edward B. MacMahon, Jr.
P.O. Box 25
107 East Washington Street
Middleburg, VA   20118
(540) 687-3902
(540) 687-6366
ebmjr@verizon.net

-6-

_____/S/_____

Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered
655 Fifteenth St. N.W. Suite 900
Washington, DC 20005
(202) 626-5830
(202) 626-5801 (facsimile)
bpollack@milchev.com

*Counsel for Defendant Jeffrey A. Sterling*
