**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:10cr485 (LMB) |
| JEFFREY ALEXANDER STERLING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT EXHIBITS 129
THROUGH 132 BY THE USE OF CONVENTIONAL CIPA SUMMARIES AND
SUBSTITUTIONS OR, ALTERNATIVELY, THROUGH THE SILENT WITNESS RULE**

The United States, by and through its attorneys, hereby responds to this Court's Order of

August 30, 2011 (Dkt. 172) and files this motion to admit CIPA exhibits 129 through 132

through the use of conventional CIPA summaries and substitutions or, in the alternative, through

the silent witness rule. *See* Dkt. 153, Exs. 129-132.  Exhibits 129 through 132 are admissible

under Rule 404(b) because those exhibits prove the defendant's knowledge and intent related to

his possession of the classified document charged in Counts Three and Five; his plan in retaining

classified documents in his residence; the defendant's identity as Risen's source for the national

defense information published in Chapter Nine; and venue for Counts Three and Five.  In light of

the current unavailability of Risen's testimony, and the need for this evidence given that the

government must proceed with a circumstantial case, the admission of these exhibits easily

satisfies the three prong test of relevance, need, and reliability required under Rule 404(b).

If the Court adopts the summaries and substitutions currently proposed for the contents of

Exhibits 129 through 132, the government will not need to use the silent witness rule to discuss

these exhibits in open court.  To date, the defendant has made no objection to the summaries or

substitutions proposed for Exhibits 129 through 132.  However, if the Court ultimately rules that

the currently proposed summaries and substitutions for Exhibits 129 through 132 are not

acceptable, or the government cannot create summaries or substitutions acceptable to the Court ,

then the government seeks permission to admit and discuss those exhibits through the use of the

silent witness rule.

## **BACKGROUND**

On December 22, 2010, a federal grand jury in the Eastern District of Virginia returned a

ten-count Indictment against defendant Sterling, charging him with unauthorized disclosure of

national defense information, in violation of 18 U.S.C. §§ 793(d) and (e), in Counts One, Two,

and Four through Seven; unlawful retention of national defense information, in violation of 18

U.S.C. § 793(e), in Count Three; mail fraud, in violation of 18 U.S.C. § 1341, in Count Eight;

unauthorized conveyance of government property, in violation of 18 U.S.C. § 641, in Count

Nine; and obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1), in Count Ten.  The

Indictment alleges that Sterling engaged in a scheme to disclose national defense information

relating to Classified Program No. 1 and Human Asset No. 1 to Risen and a member of the

public, including foreign adversaries, from on or about August 2000 to or about January 2006.

Ind. ¶¶ 5-54.  More specifically, the Indictment alleges that Sterling attempted to cause the

disclosure of national defense information through a newspaper article to be written by Risen in

early 2003; and then, after the article was not published, caused the disclosure of the national

defense information through a book authored by Risen in 2006.  *See id.* at ¶¶ 34-55.

The scheme that the defendant employed to disclose the national defense information

included the disclosure of both oral and documentary national defense information.  The

defendant did so by "stealing classified documents and other information from the CIA and unlawfully retaining those documents without the authority of the CIA," *id.* at ¶ 19(a), and "meeting with [Risen] in person to orally disclose classified information to Author A and to provide documents containing classified information to Author A for review or use." *Id.* at ¶ 19(c).  Indeed, as early as April 25, 2003, Risen confirmed to the Office of Public Affairs for the CIA that his draft newspaper article about Classified Program No. 1 "had been sourced in part on government documents in his possession," and five days later acknowledged that he possessed a letter relating to Classified Program No. 1.  *Id*. at ¶¶41, 42.  Count Three charges the defendant with having unlawfully retained that classified letter relating to Classified Program No. 1, within the Eastern District of Virginia between the dates of January 31, 2002 and April 30, 2003.  *Id*. at 21.  Count Five charges the defendant with having unlawfully disclosed the same letter relating to Classified Program No. 1 to Risen within the Eastern District of Virginia between the dates of February 12, 2003 and April 30, 2003.  *Id*. at 23.

Risen's publication of Chapter Nine in *State of War* confirmed that the defendant's disclosure of oral and written national defense information was an integral part of the defendant's scheme to disclose national defense information.  In Chapter Nine, Risen re-printed a copy of a letter relating to Classified Program No. 1 charged in Counts Three and Five.  *See State of War*, 204-05.  Although not charged as separate counts, the evidence will show that the defendant provided to Risen other classified documents, including, but not limited to, "[o]ne secret CIA report" that discussed Human Asset No. 1 as a "known handling problem," *id*. at 197, and a copy of a written report relating to Human Asset No. 1's trip to Vienna.  *Id*. at 206.  The quotation

3

from the "secret CIA report" appearing in Chapter Nine is a direct quote from the defendant's CIA personnel evaluation report for the year 2000.

The defendant lived in Herndon, Virginia from approximately August 2000 through August 2003.   While residing in Herndon, Virginia, he worked at the CIA until his termination on January 31, 2002.  His termination from the CIA meant that the defendant lost all access to any classified documents at the CIA as of January 31, 2002.  The government's theory, supported by Exhibits 129 through 132, is that the defendant retained a copy of the classified letter charged in Counts Three and Five in his residence after his termination from the CIA and then provided the letter to Risen before the time that he acknowledged having it on April 30, 2003.

The defendant moved to Missouri from Herndon, Virginia in August 2003.  On October 5, 2006, the FBI executed a search warrant at the defendant's residence in Missouri.  The FBI seized three CIA operational documents, all marked "Secret," that dealt with the use of telephones.  *See* Dkt. 153, Exs. 129, 130, 131.  In addition, the FBI seized the defendant's CIA personnel evaluation report for the year 1993, also marked "Secret."  *Id*. at Ex. 132.  The CIA forbids any individual from removing any classified documents from the CIA without the CIA's express authority.

## ARGUMENT

**I.    The Seized Classified Documents Are Admissible Under Rule 404(b) to Prove the Essential Elements of the Charged Crimes, the Defendant's Plan to Retain Classified Documents at Home, His Identity As Risen's Source , and Venue for the Charged Crimes.**

"Rule 404( b) prohibits evidence of 'other crimes, wrongs, or acts'  solely to prove a defendant's bad character, but '[s]uch evidence ... may "be admissible for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" " *United States v. Byers*, 2011 WL 1718895 at *6 (4th Cir. 2011)(citations omitted)).  "Rule 404(b) is a rule of inclusion, 'admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.'"  *Id.*  (quoting *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001) (internal quotation marks omitted)).

Rule 404(b) "'covers evidence of both prior and subsequent acts.'"  *United States v. Mohr*, 318 F.3d 613, 617(4th Cir. 2003) (quoting *United States v. Germosen,* 139 F.3d 120, 128 (2nd Cir. 1998).  "There is no distinction between 'prior' bad acts and 'subsequent' bad acts for the purposes of Rule 404(b), which speaks only of 'other' bad acts."  *United States v. Lighty,* 616 F.3d 321, 352 n.33 (4th Cir. 2010).  *See also United States v. Hadaway,* 681 F.2d 214, 217–18 (4th Cir. 1982) ("[S]ubsequent conduct may be highly probative of prior intent.").  The bar against other act evidence is meant to exclude evidence "of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Rooks,* 596 F.3d 204, 211 (4th Cir.  2010).

For evidence to be admissible under Rule 404( b), "the proffered evidence (i) 'must be . . . relevant to an issue other than character,' such as identity or motive, *United States v. Siegel,* 536 F.3d 306, 317–18 (4th Cir. 2008) (internal quotation marks omitted); (ii) 'must be necessary to prove an element of the crime charged,' *United States v. Queen,* 132 F.3d 991, 995 (4th Cir. 1997), or to prove context, *see id.* at 998; and (iii) 'must be reliable.' *Id.* at 995."  *Byers*, 2011 WL 1718895 at *6.  "In addition, 'the probative value of the evidence must not be substantially outweighed by its prejudicial effect,' which 'involves a Rule 403 determination," *United States v. Lighty,* 616 F.3d 321, 352 (4th Cir. 2010)."  *Byers*, 2011 WL 1718895 at *6.

A.   Relevance

Relevance "means evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would

be without the evidence." Fed.R.Evid. 401. *See also Byers*, 2011 WL 1718895 at \*9-10; *United*

*States v. Williams*, 445 F.3d 724, 736 (4th Cir. 2006) . "`[R]elevance typically presents a low

barrier to admissibility.'" *United States v. Basham*, 561 F.3d 302, 332 (4th Cir. 2009) (quoting

*United States v. Leftenant,* 341 F.3d 338, 346 (4th Cir. 2003)). "`Thus, evidence is relevant if it

is "worth consideration by the jury" or has a "plus value."'" *Basham*, 561 F.3d at 332 (internal

citations omitted)).

The seized classified documents are relevant in three ways.  First, they tend to prove the

defendant's possession and knowledge of the classified letter charged in Counts Three and Five;

second, the seized classified documents tend to prove the defendant's identity as Risen's source

for Chapter Nine and rebut the central defense in this case that someone else committed the

charged crimes; and third, the seized classified documents tend to prove venue for the charged

offenses.

The defendant's possession of the seized classified documents makes it more probable that

the defendant possessed with the requisite knowledge and intent the classified letter relating to

Classified Program No. 1 charged in Counts Thee and Five.  As noted, Risen ultimately

published that letter in Chapter Nine. *See State of War*, pg. 197.  The import of the defendant's

possession of the seized classified documents, and the inferences drawn therefrom, "rests on a

logic of improbability that recognizes that a prior act involving the same knowledge decreases

the likelihood that the defendant lacked the requisite knowledge in committing the charged

6

offense." *United States v. Moran*, 503 F.3d 1135, 1145 (4th Cir. 2007) (citing *Queen,* 132 F.3d at 996)).

Here, that inference is even stronger and the logic more compelling because the defendant possessed the seized classified documents *at the same time* he possessed and then provided the classified letter relating to Classified Program No. 1 to Risen in approximately March and April 2003. In addition, the seized classified documents and the classified letter all came from the CIA; the seized documents and the letter relating to Classified Program No. 1 were all classified; and the seized classified documents and the classified letter were uniquely accessible to the defendant.[1] Put simply, the defendant's possession of the seized classified documents demonstrates that the defendant knowingly took classified documents home, thus making it more probable that the defendant unlawfully retained the classified letter relating to Classified Program No. 1 at his residence and later provided it to Risen. *See also United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) ("in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge or intent with regard to the crime charged.").

The defendant's possession of the seized classified documents in his residence also explains how the defendant had access to classified documents after his termination from the CIA on January 31, 2002. Absent this extrinsic evidence, the jury will wonder how the defendant could have provided the classified letter charged in Counts Three and Five to Risen in

---

[1] Although the uncharged classified documents were seized from the defendant's residence in Missouri on October 5, 2006, the defendant had to have moved those documents from his residence in Herndon, Virginia to his residence in Missouri in August 2003. The defendant had no access to classified information while residing in Missouri, and no longer had access to any classified documents when the CIA terminated him on January 31, 2002.

March and April 2003 when the defendant no longer worked at the CIA.  The defendant's

retention of the seized classified documents in his home explains how the defendant could have

given the classified letter to Risen in the relevant time frame while not having access to classified

documents generally at the CIA.

Second, in addition to establishing the essential elements of possession, knowledge and

intent, the defendant's possession of the seized classified documents also tends to prove the

defendant's identity as Risen's source for national defense information.  Risen's source for

Chapter Nine had access to highly specific oral *and* documentary information relating to

Classified Program No. 1 and Human Asset No. 1 in April 2003 and later in 2005 shortly before

publication of his book.  The defendant's possession of the seized classified documents in his

residence makes it more probable that the defendant had access to other classified documents,

such as the letter later published in Chapter Nine, even after his termination from the CIA on

January 31, 2002.  Indeed, the defendant's possession of his classified CIA personnel evaluation

report for the year 1993 in his residence tends to prove that the defendant retained his CIA

personnel evaluation report for the year 2000 in his residence as well, thus affording the

defendant the ability to provide that document to Risen for later use in Chapter Nine.  Thus, the

seized classified documents establish the defendant's identity as Risen's source both for the

unsuccessful newspaper article in April 2003 and later for Chapter Nine because that evidence

demonstrates the defendant's access and ability to provide both documentary and oral national

defense information about Classified Program No. 1 to Risen.

The defendant's possession of the seized classified documents also rebuts the central

defense in this case, i.e. that someone else, not the defendant committed the charged crimes.  *See*

Dkt. 131 at 3 (stating that "it was one of the [SSCI] staff members and *not* Mr. Sterling who

unlawfully disclosed classified information"); Dkt. 160 at 2  (stating that "one obviously likely

defense at trial will be that individuals other than [the defendant] are responsible" for the charged

crimes).  For a jury to accept the defendant's defense, the jury must believe that some other

unnamed confidential source(s) surreptitiously acquired the classified letter, the defendant's CIA

personnel evaluation report for the year 2000, and other classified documents and provided those

documents to Risen.  The defendant's possession of the seized classified documents, such as the

classified CIA personnel evaluation report for the year 1993, debunks that defense, showing

instead that the defendant retained in his residence the very same type of document that Risen

eventually cited to and quoted from in Chapter Nine.  Thus, the extrinsic evidence undermines

the central defense in this case because the defendant's possession of that extrinsic evidence

strengthens the defendant's connection to the classified letter charged in Counts Three and Five,

bolstering the inference that he knowingly possessed that classified document as well and was

Risen's source for the national defense information appearing in Chapter Nine.

Finally, the defendant's possession of the seized classified documents in his residence in

Herndon, Virginia proves venue within the Eastern District of Virginia for Counts Three and

Five.  Because the defendant's possession of the seized classified documents in his residence in

Herndon, Virginia makes more probable his knowing possession of the classified letter charged

in Counts Three and Five and his identity as Risen's source for Chapter Nine, then this extrinsic

evidence provides proof of venue for the charged crimes exists within the Eastern District of

Virginia.  Given that "[t]he prosecution bears the burden of proving venue by a preponderance of

the evidence" as to each count, evidence of venue is clearly relevant.  *United States v. Ebersole*,

411 F.3d 517, 524 (4th Cir. 2005) (citing *United States v. Bowens,* 224 F.3d 302, 308 (4th Cir.

2000)).

    B.   <u>Necessary</u>

Evidence is necessary "where it is an essential part of the crimes on trial, or where it

furnishes part of the context of the crime." *Byers*, 2011 WL 1718895 at *9 (quoting *United*

*States v. Mark,* 943 F.2d 444, 448 (4th Cir. 1991) (internal quotation marks and citation

omitted)). *See also United States v. Smith,* 441 F.3d 254, 262 (4th Cir. 2006) ("Evidence is

necessary, even if it does not relate to an element of a charged offense, when it furnishes part of

the context of the crime." (internal quotation marks omitted)).

"That the evidence was not critical to the prosecution's case against [a defendant] does not

render it unnecessary for purposes of Rule 404(b)." *Rooks,* 596 F.3d at 211.  This is because the

"necessary" prong "focuses on whether the evidence is necessary in the sense that it is probative

of an essential claim or an element of the offense." *Id.* at 211–12 (quoting *Queen*, 132 F.3d at

997).

Courts must determine whether other acts "evidence is 'necessary' under Rule 404(b) in

'light of other evidence available to the government.'" *Byers*, 2011 WL 1718895 at *9 (quoting

*Queen*, 132 F.3d at 998 (internal quotation marks omitted)).  "Thus, 'as the quantum of other non

Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the

Rule 404(b) evidence decreases.'" *Byers*, 2011 WL 1718895 at *9 (quoting *Lighty,* 616 F.3d at

354).  Conversely, "Rule 404(b) evidence is more likely to become necessary where the evidence

intrinsic to the crime at issue is sparse or weak." *Byers*, 2011 WL 1718895 at *10 (citing *United*

*States v. Wilson,* 624 F.3d 640, 654 (4th Cir.2010); *United States v. DiZenzo*, 500 F.2d 263, 266

(4th Cir.1974)).  "Logically, then, when the evidence presented to the jury 'generate [s] uncertainty' about motive or identity, resort to ... other crimes evidence [may be] appropriate.'" *Byers*, 2011 WL 1718895 at *10 (quoting *Hadaway*, 681 F.2d at 218 ).  *See United States v. Lamarr,* 75 F.3d 964, 970–71 (4th Cir. 1996) (evidence necessary to prove lack of credibility is an issue separate from character and satisfies Rule 404(b)).

The evidence of the defendant's possession of the seized classified documents is necessary because the letter charged in Counts Three and Five no longer exists.  Absent Risen's testimony, the evidence of the defendant's possession of the letter charged in Counts Three and Five is solely circumstantial, based largely on inferences drawn from the defendant's involvement in Classified Program No. 1, his access to certain CIA cables containing drafts of the letter, and the small number of individuals who would have had access to a paper copy of the letter.  The defendant's possession of the seized classified documents in his residence is direct evidence of the fact that the defendant unlawfully removed classified documents from the CIA and retained them at home.  Thus, absent Risen's testimony, the defendant's possession of the seized classified documents and the inferences drawn therefrom is the best and most direct available evidence of the defendant's unlawful retention of the letter charged in Counts Three and Five. There is no other available non-Rule 404(b) evidence that establishes as directly the fact of the defendant's unlawful possession of the classified letter charged in Counts Three and Five in his residence.

Second, the defendant's possession of the seized classified documents is necessary to rebut the central defense in this case, i.e. that someone else, not the defendant committed the charged crimes.  The defendant has cast a wide net in making this defense, focusing his attention on any

individual who may have had access to any of the information relating to Classified Program No. 1. The defendant's possession of the seized classified documents in his residence undermines that defense because his possession of those documents strengthens the defendant's connection to the letter and his personnel evaluation report for the year 2000 and proves that he knowingly possessed those classified documents in his residence as well. In addition, the extrinsic evidence explains the defendant's access to and ability to provide classified documents to Risen at a time when the defendant no longer had access to classified documents at the CIA. Where the defendant claims that other unnamed sources committed the crimes charged in the Indictment, and those unnamed sources purportedly had access to the same classified documents charged in the Indictment or cited in Chapter Nine, the defendant injects uncertainty into the case and creates doubt over identity. By definition, such a defense satisfies the "necessary" prong. *See Byers*, 2011 WL 1718895 at *9-10 (defendant's "created an issue over the identity of [the victim's] assailant and made it central to the case," thus generating uncertainty over the issue of identity and satisfying the "necessary" prong of Rule 404(b)); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2006)(affirming admission of Rule 404(b) evidence to rebut defense that defenddant's ex-fiancee had "manufactured" a photo album containing child pornography).

Finally, absent Risen's testimony, the possession of the seized classified documents is necessary to establish venue for Counts Three and Five. As this Court previously stated, the government "has a compelling interest in establishing venue." *See* 2010 Memorandum Opinion, Dkt. 118 at 23. Once again, the evidence of the defendant's possession of the classified letter charged in Counts Three and Five within the Eastern District of Virginia is solely circumstantial, based largely on his termination from the CIA on January 31, 2002; his residency in Herndon,

Virginia; Sterling's contacts with Risen in February, March and April 2003; and Risen's statements to the CIA's Office of Public Affairs in April 2003.  It is self-evident that, should the Court view the government's venue evidence as weak, then its proof contains a hole that the Rule 404(b) evidence can fill.  Put another way, Rule 404(b) mandates admission of the evidence rather than the much more draconian alternative of dismissal of charges.

C.    Not Prejudicial

A district court should exclude relevant evidence only when "its probative value is 'substantially outweighed' by the potential for undue prejudice, confusion, delay or redundancy." *Queen,* 132 F.3d at 994 (quoting Fed.R.Evid. 403).  *See also Old Chief v. United States*, 519 U.S. 172, 182-186  (1997) (evidence may be excluded under Rule 403 if its probative value is substantially outweighed by certain dangers, including unfair prejudice, confusion of the issues, or misleading the jury); *United States v. Aramony,* 88 F.3d 1369, 1378 (4th Cir. 1996) (internal quotation marks omitted)(stating that evidence is unfairly prejudicial and excludable under Rule 403 "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and ... this risk is disproportionate to the probative value of the offered evidence.").

The test is always one of *unfair* prejudice, and "'[t]he mere fact that the evidence will damage the defendant's case is not enough.'" *United States v. Benkahla*, 530 F.3d 300, 310 (4th Cir. 2008)(quoting *United States v. Hammoud,* 381 F.3d 316, 341 (4th Cir.2004))(en banc), *vacated on other grounds*, 543 U.S. 1097 (2005)).  *See also Williams*, 445 F.3d at 730.  "'[T]he evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence.'" *Benkahla*, 530 F.3d at 310 (quoting *Hammoud,* 381 F.3d at 341)(internal quotations omitted, emphasis in original)).  *See also Williams*, 445 F.3d at 730.

13

"When proffered evidence relates to the central issue in a case, it is a difficult matter indeed to show that the prejudicial effect of that evidence substantially outweighs its highly probative nature, as Rule 403 requires." *Rubert Torres v. Hospital San Pablo, Inc.*, 205 F.3d 472, 479 (1st Cir. 2000). "[T]he more essential the evidence, the greater its probative value, and the less likely a trial court should order the evidence excluded." *King*, 713 F.2d at 631. *See also United States v. Cruz-Kuilan*, 75 F.3d 59, 61 (1st Cir. 1996)(stating that "it would be surpassingly difficult to justify a finding of unfair prejudice" stemming from the introduction of evidence "so tightly linked to guilt as defined by" the offense's elements.). Accordingly, the Fourth Circuit has rejected Rule 403 challenges to the admission of evidence of terrorism, *Benkahla*, 530 F.3d at 310, *United States v. Chandia,* 514 F.3d 365, 375 (4th Cir.2008); uncharged murder, *Williams*, 445 F.3d at 730; *United States v. Myers,* 280 F.3d 407, 413-14 (4th Cir.2002); *United States v. Grimmond,* 137 F.3d 823, 833 (4th Cir.1998); and uncharged sexual assaults. *Aramony,* 88 F.3d at 1378.

There is no unfair prejudice caused by the admission of the seized classified documents. First, the admission of this evidence pales in comparison to the admission of other extrinsic evidence, such as murder, sexual assaults, and terrorism, affirmed by the Fourth Circuit. Second, there is little or no difference between the evidence relating to the charged crimes and the uncharged, classified documents. If anything, the similarity of the documents and the requisite state of mind warrants admission, not a finding of unfair prejudice. *See Mohr*, 318 F.3d at 621 (similarity can be established not only through the physical similarity of the acts, but also "'through the defendant's indulging [her]self in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'")(quoting *Queen,* 132 F.3d at 996 )). Third, the

14

seizure of the classified documents from the defendant's residence did not result in an arrest or a

conviction, and the government does not intend to put on any evidence that the seized classified

documents contained national defense information.  Instead, the defendant's removal of

classified documents from the CIA, his retention of those documents within his residence, and

the nature of those documents, e.g. that Exhibit 132 was the defendant's 1993 personal

evaluation report, are the probative facts necessary to prove the essential elements of the charged

crimes.  Finally, jury instructions can cure any possible prejudice that could conceivably flow

from the admission of this evidence.  *See United States v. Hodge*, 354 F.3d 305, 312 (4th Cir.

2003) ("[l]imiting jury instructions explaining the purpose for admitting prior bad acts evidence

and advance notice of the intent to introduce such evidence provide additional protection to

defendants).  There is no reason to believe that a jury could not or would not follow limiting

instructions for this evidence.  *See United States v. Johnson*, 587 F.3d 625, 631 (4th Cir.

2009)(stating that "[w]e presume that juries follow such instructions) (citing *Richardson v.

Marsh*, 481 U.S. 200, 206 (1987)); *United States v. Basham*, 561 F.3d 302, 335 n.15 (4th Cir.

2009)(stating that "we presume the jury follows instructions,  *Jones v. United States,* 527 U.S.

373, 394 (1999) ("The jurors are presumed to have followed ... [the] instructions.")).

     The passage of time between the defendant's retention of the uncharged, classified

documents within the Eastern District of Virginia and their discovery in the defendant's house in

Missouri is not a basis to exclude the evidence.  As an initial matter, there was no passage of

time.  The defendant possessed the charged and uncharged classified documents

contemporaneously within the Eastern District of Virginia while he resided there after his

termination from the CIA on January 31, 2002.  The discovery of the uncharged classified

documents at his residence in Missouri is simply probative of his possession of those same classified documents in his residence in the Eastern District of Virginia.  The only way those documents ended up in his Missouri residence is if the defendant brought the documents with him when he moved from Herndon, Virginia in August 2003.

However, even if one credits the passage of time argument, "[t]he passage of time [does] not require the exclusion of this relevant, probative evidence." *United States v. Brown*, 2010 WL 4244589 at *2 (4th Cir. 2010)(unpublished).  Under the law, there is no distinction between subsequent act evidence and prior act evidence.  Moreover, the Fourth Circuit as well as other circuits have routinely affirmed the admission of Rule 404(b) evidence older than three years. *See, e.g. Brown*, 2010 WL 4244589 at *2-3 (affirming admission of twelve year old uncharged firearm possessions to prove possession, knowledge and intent for charged offenses); *Hodge*, 354 F.3d at 312 (affirming admission of three year old uncharged drug transactions to prove knowledge and intent for charged offenses); *United States v. Yearwood*, 518 F.3d 220, 229-30 & fn.* (4th Cir. 2008)(affirming admission of three year old drug conviction to prove defendant's knowledge and intent in committing charged drug offenses).[2]

## II.   There Is No Need For the Silent Witness Rule if the Court Adopts the Government's Summaries and Substitutions Proposed for Exhibits 129 through 132.

The government has proposed summaries to replace classified information appearing within Exhibits 129, 130, and 131.  *See* Dkt. 153, Exs. 129-131.  As previously stated, Exhibits 129 through 131 are all documents marked "Secret" that the FBI found and seized during the

---

[2]  Reliability is the third prong of the Rule 404(b) test.  However, because the uncharged documents were seized from the defendant's residence, the defendant cannot credibly argue that the classified documents are not reliable.

16

execution of a search warrant at the defendant's personal residence in Missouri in October 5, 2006.  The unclassified summaries replace the classified information that appears within Exhibits 129 through 131 and provide context for what the documents are.  It is the fact of the defendant's unlawful retention of documents marked "Secret" and "Sources and Methods," rather than the substantive contents of the documents themselves, that is the probative fact that the government seeks to admit.  To date, the defendant has not offered any substantive objections to these summaries.

Similarly, the government has proposed substitutions to replace some classified information appearing within Exhibit 132.  As previously stated, Exhibit 132 is the defendant's 1994 personnel evaluation report from the CIA.  Once again,  the fact of the defendant's unlawful retention of his 1993 personnel evaluation report marked "Secret", not the substantive contents of the evaluation report itself, is the probative fact that the government seeks to admit.  To date, the defendant has not offered any substantive objections to these substitutions.

If the Court authorizes the government's proposed summaries for Exhibits 129 through 131, and the substitutions for Exhibit 132, then there will be no need for the silent witness rule. The government and the parties will be free to question witnesses about Exhibits 129 through 132 with no restraints (other than abiding by the authorized summaries and substitutions).

III.  **If the Court Does Not Accept the Government's Proposed Summaries and Substitutions for Exhibits 129 through 132, the Use of the Silent Witness Rule Satisfies the *Press-Enterprise* Test.**

Partial closure of a trial may occur where (i) a compelling interest exists to justify the closure, (ii) the closure is no broader than necessary to protect that interest, and (iii) no reasonable alternatives exist to closure.  *Press-Enterprise Co. v. Superior Court of California,*

464 U.S. 501 (1984); *Waller v. Georgia,* 467 U.S. 39, 48 (1984).  *See also United States v.*

*Rosen*, 520 F.Supp.2d 786, 797 (E.D.Va. 2007); *United States v. Aleynikov*, 2010 WL 5158125 at

*1 (S.D.N.Y. 2010) (finding that complete closure of the courtroom satisfies *Press-Enterprise*

test in trade secrets case).  The court must make its findings concerning the *Press-Enterprises*

test on the record.  *See Press-Enterprise,* 464 U.S. at 510; *Bell v. Jarvis,* 236 F.3d 149, 166 (4th

Cir. 2000); *v. Rosen*, 520 F.Supp.2d at 797.

    A.   <u>National Security Is A Compelling Interest</u>

    The Supreme Court has noted that "[i]t is 'obvious and unarguable' that no governmental

interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307

(1981).  "'The Government has a substantial interest in protecting sensitive sources and methods

of gathering information,'" *United States v.  Abu-Ali*, 528 F.3d 210, 247 (4th Cir. 2007) (quoting

*Smith*, 780 F.2d at 1985), and "'in protecting both the secrecy of information to our national

security and the appearance of confidentiality so essential to the effective operation of our foreign

intelligence service.'" *Abu Ali*, 528 F.3d at 247 (quoting *C.I.A. v. Sims*, 471 U.S. 159, 175

(1985)).

    Because national security is such a compelling interest, it is one such exception that

justifies closure.  *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 598 n.24 (1980)

(concurring opinion of Justices Brennan and Marshall citing "national security concerns" as an

example of a possible basis for closure); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d

1165, 1179 (6th Cir. 1983) (stating that "courts have carved out several distinct but limited

common law exceptions to the strong presumption in favor of openness", including privacy

rights, trade secrets and national security); *Rosen*, 520 F.Supp.2d at 797 (finding national security a justification for partial closure).

The government does not suggest that the mere invocation of national security trumps the First Amendment.  However, the fact that this case involves national defense information and Exhibits 129 through 132 contain classified information satisfies the first hurdle of *Press-Enterprise*.

### B.    The Silent Witness Rule is Narrowly Tailored

The silent witness rule as applied in this case is narrowly tailored and no broader than necessary to protect national security concerns.  Under the silent witness rule, the government or the defendant would question a witness about Exhibits 129 through 132, but the witness would discuss the exhibit generically and not identify or describe the classified information contained within the exhibit.  The only information that the government intends to elicit is a brief description of the type of document seized, such as the fact that Exhibit 132 was the 1993 personnel evaluation report of the defendant; the markings on the exhibits indicating that the documents had been labeled "Secret;" the underlying reason for the classification markings, such as the appearance of the phrase "Sources and Methods" on the exhibits; and the fact that the exhibits had been seized from the defendant's residence.  The jury could read the entire contents of the exhibits to themselves.  The government estimates that the direct examination for these four exhibits would not last longer than five to ten minutes.[3]

---

[3]  To date, the CIA has approved the currently proposed conventional CIPA summaries and substitutions for Exhibits 129 through 132.  In the event that the government had to use the silent witness rule, the government would need to double check with the CIA that the use of unredacted Exhibits 129 through 132 is acceptable.

The direct and cross examination would be conducted by asking questions in an unclassified fashion, just as the parties would ask unclassified questions if conventional CIPA summaries and substitutions were used.  The witness would respond with unclassified answers, just as he or she would respond while using conventional CIPA summaries or substitutions.  Conventional CIPA summaries and substitutions have already been created, so those summaries and substitutions could be used for the public.  Therefore, the public would be in the same position as if conventional CIPA summaries and substitutions had been used.

If necessary, conventional CIPA summaries and substitutions could be used as props for cross-examination.  The summaries and substitutions would be no different than similar types of substitutions and summaries routinely used every day in courts throughout the country in unclassified settings, *see, e.g. United States v. Akinkoye*, 174 F.3d 451, 456-57 (4th Cir. 2007) (retyping confession and substituting neutral phrases for references to co-defendants cured any potential *Bruton* concerns)., and the defendant would be in no worse position strategically or tactically under the silent witness rule than he would be in the *Bruton* setting.

C.    No Reasonable Alternatives Exist

For the jury to see the classified documents exactly as the defendant possessed them, and know what the defendant saw when he retained them, there are no reasonable alternatives.  Absent acceptable summaries or substitutions, either the jury sees the classified documents in their native form, or they do not.  There are no other alternatives.  Declassification of the classified exhibits is not an option.

The use of the silent witness rule does not impair the cross-examination of the defendant in any way.  As noted above, the defense can use conventional CIPA summaries and substitutions

20

to cross-examine witnesses.  The conventional CIPA substitutions can be admitted as

demonstrative exhibits.  Therefore, the defendant is in the exact same position as he would have

been if the silent witness rule was not used.  In any event, while the Confrontation Clause

guarantees the opportunity for effective cross-examination, it does not guarantee cross-

examination "that is effective in whatever way, and to whatever extent, the defense may wish.'"

*Delaware v. Fensterer,* 474 U.S. 15, 20 (1985).

There is no inherent prejudice from the procedure itself.  The parties or the Court could

fashion limiting instructions to cure any alleged prejudice.  There is no reason to believe that a

jury could not or would not follow those limiting instructions.  *See Johnson*, 587 F.3d at 631.

Finally, there is no prejudice to the public or deprivation of the defendant's Sixth

Amendment right to a public trial.  The conventional CIPA summaries and substitutions put the

public and the defendant in the exact same position as they would have been if the silent witness

rule was not used.  Of course, the public does not get to see the classified documents in their

original form, but they would not under CIPA anyway.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court grant its motion and admit Exhibits 129 through 132 through the use of conventional CIPA summaries and substitutions or, in the alternative, through the silent witness rule.

Respectfully submitted,

Neil H. MacBride
United States Attorney
Eastern District of Virginia

Lanny A. Breuer
Assistant Attorney General
Criminal Division
U.S. Department of Justice

William M. Welch II
Senior Litigation Counsel
U.S. Department of Justice

Timothy J. Kelly
Trial Attorney
U.S. Department of Justice

James L. Trump
Senior Litigation Counsel
United States Attorney's Office

By: _____/s/_____
William M. Welch II
Attorney for the United States
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: William.Welch3usdoj.gov

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September, 9, 2011, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

Edward B. MacMahon
107 East Washington Street
Middleburg, VA 20118
(703) 589-1124

Barry J. Pollack
Miller & Chevalier
655 Fifteenth Street, NW
Suite 900
Washington, DC 20005-5701
(202) 626-5830
(202) 626-5801 (fax)


_____/s/_____
William M. Welch
Senior Litigation Counsel
United States Department of Justice