IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 1:10CR485 |
| v. ) | |
| ) | Hon. Leonie M. Brinkema |
| JEFFREY ALEXANDER STERLING, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## GOVERNMENT'S MOTION IN LIMINE TO
## EXCLUDE CERTAIN EVIDENCE AND ARGUMENTS

The United States of America, by and through the undersigned, respectfully moves *in limine* to exclude certain evidence and arguments. More specifically, that evidence and those arguments consist of the following:

(1) the defendant's self-serving hearsay statements made during his proffer on June 19, 2003, his March 2004 letter seized from his computer, and his draft memoirs;

(2) any evidence or argument of any alternative perpetrators absent some non-speculative evidence of a connection to Risen and some knowledge of or access to Classified Program No. 1;

(3) any evidence or argument of selective prosecution or that everybody leaks classified information;

(4) any evidence of specific instances of discrimination or permitting the defendant to re-litigate the underlying merits of his alleged employment discrimination or Publication Review Board litigation;

(5) any justification defenses or any form of nullification arguments; and,

(6) any evidence or any argument that the CIA has manipulated documents or is out to get the defendant.

Such evidence and arguments are inadmissible under Rules 801 and 403 of the Federal Rules of Evidence.

I. **The Defendant's Statements Made During His Proffer on June 19, 2003, His March 2004 Letter Seized From His Computer, and His Draft Memoirs Are Inadmissible, Self-Serving Hearsay Statements**

Rule 801 of the Federal Rules of Evidence excepts from the hearsay rule statements offered *against* a party-opponent. The Supreme Court has recognized that there is no such exception to the hearsay rules. *See Williamson v. United States*, 512 U.S. 594, 599 (1994) (finding that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts [which are hearsay]"). Similarly, the Fourth Circuit has stated that there is no hearsay exception for a defendant's statements offered by or on behalf of a defendant. *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008)(affirming district court's exclusion of various self-serving, exculpatory statements and hearsay statements because Rule 106 "does [not] require the admission of 'self-serving, exculpatory statements made by a party which are being sought for admission by that same party.'"); *United States v. Bolin*, 264 F.3d 391, 414 (4th Cir. 2001) (affirming district court's exclusion of exculpatory statements in grand jury testimony as inadmissible hearsay without more); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (affirming district court's exclusion of statements made to FBI agent during interview because the evidentiary rules do not "provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party.")

The defendant consented to a proffer on June 19, 2003. Represented by his attorney, who was present for the proffer, the defendant signed a use immunity proffer agreement, thus clearly putting the defendant on notice of the existence of a criminal investigation. Indeed, as a condition of the proffer, the defendant's attorney secured an agreement that the defendant would

not be arrested at the FBI. During the proffer, the defendant made a number of false self-serving, exculpatory statements. For example, the defendant denied that he disclosed any national defense information to Risen, and he claimed that he fully disclosed all of the details about Classified Program No. 1 to the SSCI staffers.

Similarly, in March 2004, approximately nine months after his proffer, the defendant created a letter on his personal computer. In this letter, addressed to "Jim," the defendant told "Jim" that he could not describe any details about Classified Program No. 1, thus implicitly denying that he had been Risen's source for the failed *New York Times* article. In addition, the defendant stated in the letter that he would be willing to go on the record and state that he fully disclosed all of the details about Classified Program No. 1 to the SSCI staffers. On October 5, 2006, the FBI seized the defendant's personal computer from his residence pursuant to a search warrant and found his letter saved on his hard drive.

Finally, beginning in January 2002, after he had received notice of his termination from the CIA, the defendant began writing a book about his career at the CIA. The book is a "rags to riches," self-laudatory description of his life and an unflattering depiction of discrimination at the CIA. The book naturally puts the defendant in a good light and the CIA in a bad light.

The government now moves to bar any references to the defendant's statements from his June 2003 proffer, his statements contained within the March 2004 letter, or his statements contained within his draft memoirs in the direct or cross examination of any witness and in any arguments or comments to the jury. The statements are clearly self-serving, inadmissible hearsay statements of the defendant. There is no hearsay exception for any of these statements. Of

3

course, if the defendant testifies, then the rules change, and the government has the right to impeach the defendant with his own statements.

**II.     The Court Should Bar The Defendant From Presenting Any Evidence or Argument of Any Alternative Perpetrators Absent Some Non-Speculative Evidence of a Connection to Risen and Some Knowledge of or Access to Classified Program No. 1.**

Although a defendant has a constitutional right to present evidence in his favor, "'a defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial.'" *United States v. Lighty,* 616 F.3d 321, 358 (4th Cir. 2010) (quoting *United States v. Prince–Oyibo,* 320 F.3d 494, 501 (4th Cir. 2003). *See also United States v. Hicks*, 307 Fed.Appx. 758, 761 (4th Cir. 2009)(unpublished). "When proffered evidence deals with a defense theory of an alternative perpetrator, additional considerations arise." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) . "As the Supreme Court recently noted in reviewing the constitutionality of a South Carolina statute that excluded third-party guilt evidence, '[e]vidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded.' *Holmes v. South Carolina,* 547 U.S. 319, 503 (2006) (Third-party guilt evidence may also be excluded 'where it does not sufficiently connect the other person to the crime ... [such as where it is] speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial.')." *Jordan*, 485 F.3d at 1218-19.

"When determining whether evidence of an alternative perpetrator should be admitted at trial, courts have found that such evidence 'is relevant, but there must be evidence' of a

'connection between the other perpetrators and the crime, not mere speculation on the part of the defendant.'" *Lighty,* 616 F.3d at 358 (quoting *DiBenedetto v. Hall,* 272 F.3d 1, 8 (1st Cir. 2001)). *See also Jordan,* 485 F.3d at 1219 (holding that there must be a nexus between the crime charged and the alleged alternative perpetrator); *Wade v. Mantello,* 333 F.3d 51, 60 (2d Cir. 2003) (finding that third-party animus did not establish sufficient connection to permit an alternative perpetrator defense); *United States v. Patrick,* 284 F.3d 11, 21 (1st Cir. 2001) (holding that there must be evidence "that there is a connection between the other perpetrator and crime, and not mere speculation."); *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998) (holding that "[i]t is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime" because such "speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice").

In *Lighty*, 616 F.3d at 358, the defendant sought to introduce testimony from two witnesses concerning a third party's possession of a firearm. According to the proffer from the two witnesses, the witnesses would have testified that they each saw the third party, Mathis, with a firearm that looked similar to the murder weapon. *Id*. The district court refused to permit the testimony, noting that the proposed testimony was "just too tenuous," finding that the "proffered testimony provided no nexus between [the charged] kidnapping and murder and [the third party]." *Id*.

The Fourth Circuit affirmed the district court's ruling, finding that "the proffered testimony would have caused the jury to rankly speculate that the gun allegedly possessed by Mathis" was the murder weapon and used to commit the charged murder. *Id*. at 358-59.

5

According to the Fourth Circuit, "Rule 403 is designed to, among other things, prevent the jury from engaging precisely in this type of speculation." *Id*. at 359. Given the lack of any evidence regarding why the two witnesses thought Mathis' firearm looked like the murder weapon, the lack of any close temporal proximity between the possession and the charged kidnapping and murder, and the fact that "the proffered testimony would have shed no light on what transpired during Hayes' kidnapping and murder," the Fourth Circuit upheld the exclusion of evidence. *Id*. *See also Hicks*, 307 Fed.Appx. at 761 (excluding evidence evidence that his estranged wife and her boyfriend placed the child pornography on the defendant's computer because the defendant could not establish any prior "connection between such evidence and the child pornography found on Hicks's computer.").

    The court should bar the defendant from presenting any evidence or any argument regarding alternative perpetrators absent some non-speculative evidence of a connection to Risen *and* some knowledge of or access to Classified Program No. 1. Specifically, absent such non-speculative evidence, the caselaw forecloses the defendant from presenting any evidence or making any argument regarding the following:

        1.    Arguments or comments that others at the CIA were Risen's source(s) and disclosed the national defense information contained in Chapter 9;

        2.    Arguments or comments that Human Asset No. 1 was Risen's source and disclosed the national defense information contained within Chapter 9;

        3.    Arguments or comments that the SSCI staffers, including Vicki Divoll, were Risen's sources and disclosed the national defense information contained with Chapter 9; and,

        4.    Evidence, arguments or comments that Risen had sources for other chapters of *State of War*. This would mean that the defendant cannot introduce the other chapters contained within *State of War*.

The defendant must establish a connection between any particular individual and the disclosure of national defense information to Risen. The defendant has not produced any such nexus, and may not rely upon rank conjecture and speculation that any anonymous individual on Capitol Hill or within the CIA or Human Asset No. 1 "could have been" a source for Risen. *See United States v. Waters*, 627 F.3d 345, 352 (9th Cir. 2010) (excluding highly speculative evidence that government conspired to engage in misconduct).

Regarding the SSCI staffers, including Ms. Divoll, the defendant has attempted to establish a connection between the SSCI staffers and Risen, but there is none. All of the SSCI staffers have denied being a source for Risen, and the defendant has proffered no evidence to suggest otherwise. The termination of Ms. Divoll did not involve the disclosure of classified information. Instead, Ms. Divoll broke a Committee rule by disclosing unclassified, committee information to a staffer employed by a different Senate committee. Ms. Divoll was never a source for Risen, and the article published by Risen contained no classified information. *See* http://www.nytimes.com/2003/05/02/international/worldspecial/02TERR.html?scp=1&sq=risen%20may%202%202003%20committee%20&st. Instead, the basis for the defendant's unfounded allegation is the double hearsay statement of the now-deceased former head of the CIA's Office of Congressional Affairs who had been simply repeating unsubstantiated and speculative gossip. Thus, given the lack of any connection to Risen, any argument that any SSCI staffer, including Ms. Divoll, was Risen's source should be barred.

Moreover, since Ms. Divoll never disclosed any information or served as a source for Risen, the Court should bar any cross-examination about the May 2, 2003 article. Ms. Divoll cannot be held responsible for the decisions and actions of other staffer, and cannot be examined

about what others staffers decided to do with information that Ms. Divoll may have disclosed to them. It is precisely this type of misleading and speculative inference - that Ms. Divoll must be a source if Risen published information that Ms. Divoll provided to others - that Fourth Circuit law forbids.

**III.     The Court Should Bar The Defendant From Presenting Any Evidence or Argument of Selective Prosecution or That Everybody Leaks Classified Information.**

The "everybody does it" defense is irrelevant and inadmissable under Rule 403. *See United States v. Fowler*, 932 F.2d 306, 316 (4th Cir. 1991). In *United States v. Oldbear*, 568 F.3d 814, 621 (10th Cir. 2009), the defendant, who had been indicted for embezzling federal tribal funds, sought to call several witnesses who "would have testified that they, like Oldbear, were allowed to use tribal funds to pay for personal transportation expenses." *Id*. The district court barred their testimony as irrelevant and inadmissible under Rule 403. *Id*.

The Tenth Circuit affirmed the district court, ruling that "only Oldbear's actions and state of mind were material to her guilt." *Id*. According to the Court, the mere fact "that others may have been the beneficiaries of improper conduct does nothing to excuse Oldbear." *Id*. This type of "everybody-is-doing-it" defense was immaterial to the defendant's guilt and would have created a "sideshow from which the jury could have gleaned little valuable information." *Id*.

The Court should bar the defendant from presenting any evidence, argument or comments of selective prosecution or that everybody leaks classified information. Specifically, the caselaw forecloses the defendant from presenting any evidence or making any argument regarding the following:

    1.    Evidence, arguments or comments that everyone at the CIA or on Capitol Hill leaks information, classified or otherwise, or that "everybody does it";

> 2. Evidence, arguments or comments regarding specific instances or examples of the leaking of classified information, whether prosecuted or not; and
>
> 3. Evidence, arguments or comments relating to the other chapters of *State of War*.

Such evidence is inadmissible under Rule 403. Not only is such evidence not probative on the issue of whether the defendant committed the charged crimes, but the introduction of such evidence or arguments would force mini-trials over the similarities and differences between the present prosecution and every other specific instance of leaked classified information. Fights over the classification levels of the information, the potential damage caused to the United States, and a host of other issues would consume and overwhelm the real issues in this case. *See also United States v. Dooley*, 578 F.3d 582, 590-91 (7th Cir. 2009) (affirming exclusion of evidence of possible previous thefts as irrelevant and potentially confusing and distracting to the jury); *United States v. Henderson*, 409 F.3d 1293, 1304 (11th Cir. 2005) (excluding evidence of the statistics of the actions of other police officers and proper police procedures as irrelevant and confusing).

**IV. The Court Should Bar The Introduction of Any Evidence of Specific Instances of Discrimination and Should Not Permit the Defendant to Re-litigate the Underlying Merits of his Alleged Employment Discrimination or Publication Review Board Litigation.**

"[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) "Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of

9

harassment, prejudice, [or] confusion of the issues." *Id*. at 326-27 (citations omitted). The cases are legion in which courts of appeal have upheld a district court's decision to limit or exclude evidence notwithstanding a defendant's claim that the evidence was central to his or her defense. *See United States v. Miller*, 394 Fed.Appx. 18, 22-23 (4th Cir. 2010) (excluding evidence of defendant's Social Security appeal in Social Security fraud case); *United States v. Iskander*, 407 F.3d 232, 237-40 (4th Cir. 2005) (affirming testimony of defense expert regarding depreciation schedules because such evidence was irrelevant in a personal income tax evasion case); *United States v. Prince-Oyibe*, 320 F.3d 494, 501-02 (4th Cir. 2003) (affirming exclusion of defense of religious persecution as irrelevant in fraudulent visa case).

The government does not object to the admission of some evidence relating to the defendant's pending administrative and civil litigation with the CIA. The government has charged those pending administrative and civil actions as affirmative evidence of the defendant's intent and motive, and some evidence of the nature of those allegations, the timing of various litigative acts and settlement offers, and the fact of decisions by various courts is relevant.

However, what is irrelevant and inadmissible under Rule 403 is any extrinsic evidence that the defendant would seek to admit supporting or attacking the legal merits of the defendant's or the CIA's litigation positions or the rulings by the federal district courts, the Fourth Circuit or the Supreme Court, or eliciting the personal views or beliefs of any witness regarding the legal merits of those positions. Such evidence is simply irrelevant and would cause mini-trials within the criminal case.

In any event, extrinsic evidence admitted to show that the "defendant was right, and the CIA was wrong" is not favorable to the defendant. Such evidence would support the

government's evidence that the defendant felt wronged by the decisions made during his administrative and civil litigation with the CIA. Moreover, even if the defendant were right, and the CIA or the various federal courts were wrong, the decisions by the CIA and the federal courts would be mistakes of law upon which the defendant cannot rely as an affirmative defense. *See United States v. Passaro*, 577 F.3d 207, 220 n.7 (4th Cir. 2009) (defendant's reliance on OLC memorandum of law would "simply amount to a mistake of law, which provides no defense to the assault charges."). Finally, the legal decisions involve complex, confusing areas of the law, such as the state secrets privilege. To permit evidence of and questioning of witnesses regarding the legal merits and reasoning behind some of those concepts or their personal views and beliefs regarding the litigation positions taken by the CIA would be highly confusing for the jury and inject issues that are simply irrelevant and would cause a needless waste of time and resources.

### V. The Court Should Bar Any Justification Defenses or Any Form of Nullification Arguments.

The Fourth Circuit has adopted a clearly defined test for defendants seeking to offer a necessity or justification defense. The "essential elements of the defense are that defendants must have reasonably believed that their action was necessary to avoid an imminent threatened harm, that there are no other adequate means except those which were employed to avoid the threatened harm, and that a direct causal relationship may be reasonably anticipated between the action taken and the avoidance of the harm." *United States v. Cassidy*, 616 F.2d 101, 102 (4th Cir. 1979) (internal citations omitted). The Fourth Circuit also has held that "the courts of appeals have construed the justification defense 'very narrowly' and applied it 'only on the rarest of occasions.'" *United States v. Gilbert*, 430 F.3d 215, 219 (quoting *United States v. Perrin*, 45

F.3d 869, 874, 875 (4th Cir. 1995)). Failure to establish any of these three elements means that a defendant may be precluded from, among other things, receiving discovery, having experts appointed, or offering evidence to support the alleged defense at trial. *Cassidy*, 616 F.2d at 102. Cases that reject proffered justification defenses, after applying the test espoused in *Cassidy*, are legion. *See, e.g., United States v. Maxwell*, 254 F.3d 21 (1st Cir. 2001) (upholding exclusion of proffered evidence of necessity); *United States v. May*, 622 F.2d 1000 (9th Cir. 1980) (upholding exclusion of evidence and denial of discovery motion for the production of documents); *United States v. Dorrell*, 758 F.2d 427 (9th Cir. 1985) (upholding government motion in limine to exclude evidence and redact irrelevant portions of defendant's statement); *United States v. Ayala*, 289 F.3d 16 (1st Cir. 2002) (upholding exclusion of entire necessity defense); *United States v. Sued-Jimenez*, 275 F.3d 1 (1st Cir. 2001) (upholding exclusion of proffered evidence and expert testimony, and denial of discovery requests related to the necessity defense).

Any argument or evidence, implied or otherwise, that the defendant was justified in disclosing the national defense information, or that the jury should nullify the charged criminal conduct should be precluded. Applying the three factors laid out in *Cassidy*, it is clear the defendant cannot demonstrate that his conduct was remotely justified or deserving of nullification. More specifically, the caselaw precludes the defendant from presenting any evidence or making any argument regarding the following:

1. Arguments or comments that any alleged discrimination suffered at the CIA justified his conduct;

2. Arguments that leaks are good or necessary, or that he was a whistleblower, thereby justifying his conduct or negating his criminal intent; and,

        3.        Arguments that the Iranian nuclear weapons program may have discovered the flaws and fixed the schematics, thus justifying his conduct.

There is not a shred of evidence that would satisfy any of the three prongs of the *Cassidy* test. For example, the first prong of the *Cassidy* test requires the defendant to demonstrate he chose the lesser of two evils, and that the evil avoided was an imminent harm. As explained in *Maxwell*, "the term 'imminent harm' connotes a real emergency, a crisis involving immediate danger to oneself or to a third party." 254 F.3d at 27 (citing *United States v. Newcomb*, 6 F.3d 1129, 1135–36 (6th Cir. 1993), and *United States v. Seward*, 687 F.2d 1270, 1276 (10th Cir. 1982)). The defendant simply never gets past the first prong of *Cassidy*.

### VI. The Court Should Bar Any Evidence or Any Argument That The CIA Has Manipulated Documents or Is Out to Get the Defendant.

In *Waters*, 627 F.3d at 352, the defendant sought to admit evidence and present a defense that the government conspired to conceal exculpatory evidence from her. The defendant contended that the omission of certain nicknames from a FBI 302 was intentional, and wanted to implicate the prosecutor involved in the interview memorialized by the FBI 302. *Id*. The district court denied the defendant's motion to dismiss the indictment and her motion to disqualify the prosecutor, and simultaneously granted a motion *in limine* brought by the government to restrict any argument that the defendant was the victim of government misconduct or a conspiracy to conceal exculpatory evidence. *Id*. The Ninth Circuit affirmed the district court's ruling, stating that "the probative value of Waters' evidence of a government conspiracy was quite low," and that the defendant's "evidence of a larger government conspiracy was highly speculative." *Id*. See also *United States v. Sarno*, 73 F.3d 1470, 1489 (9th Cir. 1995) (affirming exclusion of evidence of a "grand conspiracy" between bank president and federal regulators because such

evidence would have "induced confusion in the minds of the jury and distracted them from the true issue-whether the financial documents had the capacity to influence a *disinterested*" financial institution").

There is absolutely no evidence that the CIA was out to get the defendant, or that the CIA orchestrated some grand conspiracy to blame the defendant for the leaks to Risen. Any arguments or comments that the CIA engages in misconduct or has manipulated documents or evidence in order to blame the defendant for the disclosure of national defense information appearing in Chapter 9 lacks any merit and will needlessly send the Court, the parties, and the jury down an endless Alice-in-Wonderland rabbit hole.

## **CONCLUSION**

WHEREFORE, the government respectfully requests that the Court grant its Motion in Limine to Exclude Certain Evidence and Arguments.

Respectfully submitted,

Neil H. MacBride
United States Attorney
Eastern District of Virginia

Lanny A. Breuer
Assistant Attorney General
Criminal Division
U.S. Department of Justice

William M. Welch II
Senior Litigation Counsel
Criminal Division

Timothy J. Kelly
Trial Attorney
U.S. Department of Justice

        James L. Trump
        Senior Litigation Counsel
        United States Attorney's Office

By:    /s/
        William M. Welch II
        Attorney for the United States
        United States Attorney's Office
        Justin W. Williams U.S. Attorney's Building
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: (703) 299-3700
        Fax: (703) 299-3981
        Email: William.Welch3@usdoj.gov

## CERTIFICATE OF SERVICE

       I hereby certify that on October 4, 2011, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

       Edward B. MacMahon
       107 East Washington Street
       Middleburg, VA 20118
       (703) 589-1124

       Barry J. Pollack
       Miller & Chevalier
       655 Fifteenth Street, NW
       Suite 900
       Washington, DC 20005-5701
       (202) 626-5830
       (202) 626-5801 (fax)

                                                     /s/
                                          William M. Welch II