IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:10cr485 (LMB) |
| | ) |
| JEFFREY ALEXANDER STERLING | ) |

**NOTICE BY THE UNITED STATES
OF INTENT TO USE EXPERT REBUTTAL TESTIMONY**

The United States, through the undersigned counsel, hereby gives notice pursuant to Fed. R. Crim. P. 16(a)(1)(G) of the government's intent to use expert testimony in its rebuttal case.

As indicated in our revised expert notice, filed under seal on October 4, 2011, the government may call any one of the witnesses named in that notice to testify on rebuttal regarding the subject matters discussed in the notice, *i.e.*, classification procedures, training and experience, and potential damage to the United States. In addition, the government may call Charles A. Duelfer to testify on rebuttal, as more fully described below.

**I.    EDUCATION AND EXPERIENCE**

Mr. Duelfer was formerly Special Advisor to the Director of Central Intelligence for Iraq WMD. He led the Iraq Survey Group (ISG) that conducted the investigation of the scope of Iraq's WMD. The ISG was a unique intelligence organization of over 1700 military and civilian staff that investigated Iraq WMD programs. It used all available collection and analytic capabilities in a hostile environment. The Duelfer Report is the definitive work on the relationship of the Saddam Regime to WMD and was presented to the President and Congress in October 2004 (*Comprehensive Report of the Special Advisor to the DCI on Iraq's WMD*, GPO

stock number: 041-015-00244-9; *see* Hearing of the Senate Armed Services Committee, October 6, 2004).

Previously, Mr. Duelfer was the Deputy Executive Chairman and then acting Chairman of the UN Special Commission on Iraq (UNSCOM) from 1993 until its termination in 2000.  The Commission was established following the Gulf War by the UN Security Council to monitor and eliminate Iraq's WMD.  Before joining UNSCOM, he was Deputy Assistant Secretary of State for arms control and multilateral defense matters.  From 1990 to 1992, Mr. Duelfer was in charge of defense trade matters as the director of the Center for Defense Trade and Deputy to the Assistant Secretary of State for politico-military affairs.  In this capacity, he had responsibility for arms transfers, munitions licensing, and conventional arms control.  From January to March 1991, he directed the State Department's Task Force in support of Desert Storm.

Mr. Duelfer joined the Politico-Military Bureau of the State Department in 1983 and was responsible for special regional activities including conflicts in Chad, Libya and Grenada and ongoing strategic verification, space and strategic defense issues.  In 1984, he became Deputy Director of the Office of International Security Policy and was responsible for European, African and Latin American regions.  He became Director, with responsibility for regional security issues worldwide, in 1985.  During this period, Mr. Duelfer also worked with the special coordinator for counterterrorism to develop, implement and exercise the State Department's terrorism response system.  Before joining the Department of State, Mr. Duelfer worked at the White House Office of Management and Budget (1977-1983), where he was responsible for Department of Defense strategic nuclear forces and space programs.

Mr. Duelfer holds a B.A. from the University of Connecticut and an M.Sc. from the

Massachusetts Institute of Technology. He is the author of numerous articles and the book, *Hide and Seek: The Search for Truth in Iraq*. Mr. Duelfer has a website at www.charlesduelfer.com.

**II.     TESTIMONY**

Mr. Duelfer will testify in response to the testimony of Mr. W. Patrick Lang, the defense expert. Mr. Duelfer will address Mr. Lang's analysis generally and, more specifically, his analysis and opinion as expressed in part 7 of his expert notice regarding the Iranian nuclear weapons program.

Mr. Duelfer will testify that Mr. Lang's analytical process is flawed, and the conclusions reached do not necessarily follow from the facts presented. For example, at the bottom of page 7 and continuing on page 8, Mr. Lang relates certain "facts" about the classified program at issue in this case, makes a number of assumptions based on those facts, and eventually renders an opinion that the revelations in State of War "of the U.S. government origin of this ineffective project would not have been an advantage to the Iranian government or damaging to the interests of the U.S." Mr. Duelfer will testify that Mr. Lang's opinion is highly speculative and not the product of a sound and rigorous analytical process. Numerous other, equally plausible conclusions could be reached based on the same data.

Mr. Lang also makes a number of statements about the 2007 National Intelligence Estimate (NIE) on Iran and subsequent statements by the Director of National Intelligence on Iran, concluding that Iran does not have nuclear weapons or an ongoing nuclear weapons program. Mr. Lang's analysis of the 2007 NIE and the status Iran's nuclear weapons program is similarly flawed. The NIE states that Iran had a nuclear weapons program but halted it in the fall of 2003. Critical nuclear weapons infrastructure, however, has remained intact. United States

officials, including the DNI, have publicly maintained that Iran is keeping open the option of developing nuclear weapons and continues to work on components of a weapons program with relatively long development time lines such as uranium enrichment and a ballistic missile system.

Mr. Duelfer will testify that Iran remains a nuclear threat. The most recent report of the International Atomic Energy Agency (IAEA) clearly expresses serious concerns that Iran is not in compliance with its non-proliferation agreement and may be using its nuclear technology and resources for military purposes.[1] IAEA inspectors report Iran continues to expand its nuclear activities, particularly its uranium enrichment, despite U.N. sanctions.[2]

Mr. Duelfer will also testify that, contrary to Mr. Lang's analysis, the need for any information about Iran's nuclear weapons program and its intentions has been and remains extremely important to the United States. He will testify that nuclear proliferation is a huge issue for us and our allies, and understanding it and getting as much data about it as possible are critical. Anything that interferes with our ability to gather information or limits our data about Iran's nuclear intentions has an effect on our national security, and the 2007 NIE did not change our national intelligence priorities in that regard. He further will explain that the experience in Iraq teaches us that we must always look for additional intelligence formation and new ways to

---

[1] The IAEA was created in 1957 as an agency of the United Nations. All of the information relied upon by Mr. Duelfer about the IAEA can be found at www.IAEA.org.

[2] The most recent report states: "While the Agency continues to verify the non-diversion of declared nuclear material at the nuclear facilities and LOFs [locations outside of facilities] declared by Iran under its Safeguards Agreement, as Iran is not providing the necessary cooperation, including by not implementing its Additional Protocol, the Agency is unable to provide credible assurance about the absence of undeclared nuclear material and activities in Iran, and therefore to conclude that all nuclear material in Iran is in peaceful activities." IAEA Board of Governors Report, September 2, 2011, at page 9.

obtain intelligence information about WMD. Mr. Duelfer will testify that if the unauthorized disclosures of classified information in this case have compromised any potential source of information about Iranian nuclear weapons capabilities, that compromise was damaging to our national security.

      Mr. Duelfer's opinion is limited to the facts and opinions expressed in Mr. Lang's expert notice. To the extent Mr. Lang expands on his analysis or renders an opinion that differs from that expressed in the notice, the government reserves its right to respond accordingly on rebuttal.

Respectfully submitted,

Neil H. MacBride
United States Attorney

William M. Welch II
Senior Litigation Counsel
Criminal Division
United States Department of Justice

Timothy J. Kelly
Trial Attorney
Public Integrity Section
United States Department of Justice

James L. Trump
Senior Litigation Counsel
United States Attorney's Office
Eastern District of Virginia

By:       /s/
James L. Trump
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3726
Fax: 703-299-3981
Email Address: jim.trump@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused an electronic copy of the foregoing *Notice by the United States of Intent to Use Expert Rebuttal Testimony* to be served via ECF on Edward B. MacMahon, Jr., and Barry J. Pollack, counsel for the defendant.

By:         /s/
James L. Trump
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3726
Fax: 703-299-3981
Email Address: jim.trump@usdoj.gov