TOP SECRET//

Filed with Classified
Information Security Offic
CISO _Mccvy_
Date _9/16/11_

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**UNCLASSIFIED/REDACTED**

UNITED STATES OF AMERICA,       )
                                )
vs.                             )       Case No. 1:10-cr-00485-LMB
                                )
JEFFREY ALEXANDER STERLING,     )
                                )
Defendant.                      )
                                )

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT EXHIBITS 129-132 BY THE USE OF ALTERNATIVE CONVENTIONAL CIPA SUMMARIES AND SUBSTITUTIONS OR, ALTERNATIVELY, THROUGH THE SILENT WITNESS RULE

COMES NOW Jeffrey A. Sterling, by counsel, and for his Opposition to the Government's Motion in Limine to Admit Exhibits 129-132 by the Use of Conventional CIPA Summaries and Substitutions or, Alternatively, Through the Silent Witness Rule (Docket No. 181), states as follows:

1.      **Initial Objection.**

The defendant objects in all regards to the admissibility of Exhibits 129, 130, 131 and 132 on the grounds that they are all inadmissible under Rule 404 (b) which is the only legal basis cited by the Government for their admissibility. The defendant further objects to Exhibit 132 as hearsay.[1]  In addition, the defendant objects to the use of most

---

[1] The Government proffers that these documents were seized from Mr. Sterling's residence in Missouri during the execution of a search warrant there in 2006. Exhibits 129-131 are all essentially the same, a document with a list of [          ] that Mr. Sterling might need to use when out of the office. Exhibit 132 is a 1993 performance evaluation for Mr. Sterling, a document that pre-dates the events in this case by six years.

TOP SECRET/                                                                    1



TOP SECRET

of the CIPA substitutions proposed as they do not provide the defendant with the same ability to defend this case as would the unredacted exhibits. Lastly, the defense objects to the use of the silent witness rule on the grounds previously set forth in its prior CIPA filings as unnecessary, prejudicial and unconstitutional.

## 2.    The Government Lays No Foundation for the Relevance of the Documents.

The defense would like to believe that by now the Government would know the facts of the case and would not mislead the Court about the state of the evidence produced so far. Yet, this Motion contains sufficient obvious factual errors - contradicted by CIA reports and the Bruce declaration - to bring that into question. The Court should not be surprised by this development because of the context of this Motion. The Government hereby admits that that it has no actual and admissible evidence of venue, which is why it admits that it needs 404 (b) evidence to "fill the hole." (Motion at 13.) Then, in an amazing feat of circular logic, it argues that because it cannot make its case with traditional admissible evidence an unusual and unprecedented avenue of relief must be provided to the Government. That avenue is thinly disguised character evidence.

"Rule 404 (b) mandates admission of the evidence rather than the much more draconian dismissal of charges." Id. Of course, the Government could also admit that having no proof of venue is fatal to its case and dismiss charges it cannot prove. Instead, it seeks to offload that obligation on the Court by asking this Court to find that grossly attenuated and irrelevant evidence can be admitted under Rule 404 (b) to prove venue. In that light, here are the most glaring factual errors in the Government's Motion.

First, because the Governments wants to expand the time in which Mr. Sterling could have had the opportunity to obtain the classified letter at issue, it states in this

TOP SECRET                                                      2

TOP SECRET/ [                                    ]

Motion that Mr. Sterling lost "access to any classified documents at the CIA as of January 31, 2002." (Motion at 4.) This is false and intentionally misstates the evidence in this case. The fact is that Mr. Sterling actually lost access to classified [            ] documents in May of 2000, at the latest, and would have to have "printed" the classified [    ] pertaining to an on-going CIA covert operation and taken it home by then, and then saved it for three years so that he could give it to Mr. Risen in spring 2003. Of course, there is no evidence that this occurred, which is the presumption of this Motion.[2]

As to the issue of when Mr. Sterling lost access to [            ] documents, the Court does not have to take counsel's or Mr. Sterling's word for this assertion of fact that it was in 2000, not in 2002 as the Government claims in its Motion. Indeed, this fact has been established as true as long ago as March 7, 2008, when Mr. Eric Bruce presented his declaration to the Court. See Bruce Decl. at 11. In that Declaration, Mr. Bruce stated, pursuant to Title 28, United States Code § 1746, under penalty of perjury, that Mr. Sterling had no further access to classified cables concerning the [            ] Operation after May of 2000.

[                                                  ]

In his declaration, at footnote 6, Mr. Bruce cites to a Declaration from a Ms. _____ as support for this statement. Now that the Government has apparently

---

[2] The Government proffers no evidence that Mr. Sterling could have physically ever printed any of the [            ] documents and taken them home. There is no evidence of any such documents in Mr. Sterling's possession at any time and the SSCI reports do not show that Mr. Sterling had any [            ] documents in 2003. Mr. Sterling cannot be convicted on such speculative evidence.

TOP SECRET [                                              ]        3

TOP SECRET [_____]

abandoned this position as to when Mr. Sterling's access to classified information about [_____] ended, the Court should order that the declaration of Ms. _____ be provided in a full and unredacted form to the defense so that she may be called as a witness. That specific Declaration is plainly <u>Brady</u> since it undercuts the Government's newest theory that Mr. Sterling had access to the [_____] documents until December of 2002 to somehow print and retain the classified letter so that that he could give it to Mr. Risen a few months later.

Further, despite the Government's new theory, the evidence is that Mr. Sterling was taken off the [_____] matter in May of 2000 and then reassigned from New York to Langley in August of 2000 and had no access to any additional classified information. At that time, his badge was taken and the Government offers no evidence at all that he had further access to the any CIA offices or computers much less access to classified information related to the [_____] operation. From May of 2000 until today, Mr. Sterling has had no access whatsoever to any classified [_____] information at the CIA and surely had no access to any [_____] information after May of 2000, which is the latest possible date that he could have printed the letter and retained a copy. The Government makes no proffer it has any real evidence that Mr. Sterling ever possessed the letter, printed the letter or that he took it with him in 2000 when he left the CIA and lost access to the files.

To believe this occurred, the Government has to argue that the document was retained for almost three years in supposed preparation for the scheme described in the Indictment which starts in the spring of 2003.[3] Of course, by the time that Mr. Sterling

---

[3] In fact, the documents that the Government seized from his home in Missouri and that it wants to admit under Rule 404(b) are not documents pertaining to any covert CIA operation. The Government proffers no

TOP SECRET [_____] 4

TOP SECRET☐☐☐☐☐☐☐

was removed from the ☐☐☐☐☐ Operation, he had not even sued the CIA which further undercuts the theory that these documents were retained in 2000 as part of a revenge plot tied to his lawsuit.

But the actual evidence is even weaker than that.  It is clear that the Government cannot show that Mr. Sterling ever retained or even enjoyed any access to the classified cables at issue in this case while the proof is that dozens of others did.  Again, there is no need to even speculate about this matter or take counsel's word for this.  CIA documents produced in this case show there is no evidence of any access by Mr. Sterling to any of these cables at any time. Here is what the CIA wrote about this topic:

(Mr. Sterling's Fourth CIPA Notice tab 161, Bates No. Q00638.)

With this background, the Court can see why there is no evidence proffered that Mr. Sterling ever actually had a paper or electronic copy of ☐☐☐ letter at his disposal. This is why there is no evidence as to when and where Mr. Sterling was when he allegedly gave the paper or electronic copy to Mr. Risen.  It is because the evidence does not exist.  Instead, in its place, the Government offers the Court, and intends to tell the

---

evidence that these documents were surreptitiously printed out by Mr. Sterling. Rather, they are the types of documents that one would expect would be given to a CIA employee -- a performance evaluation and a list of ☐☐☐ that he might need outside the office.

TOP SECRET☐☐☐☐☐☐☐                                                             5

TOP SECRET

jury, the pure unsupported speculation that Mr. Sterling somehow and somewhere retained a "copy of the classified letter" charged in Counts Three and Five in his residence in Virginia after his termination from the CIA in and then provided that letter to Mr. Risen somewhere before the time Mr. Risen acknowledged having it on April 30, 2003.[4]  Because it has no admissible proof to support this claim - and because the Government's investigation has produced no such evidence - the Government claims it needs to rely on Exhibit 129-132, admissible only under Rule 404 (b), to show that Mr. Sterling may have possessed the letter in Virginia.  This argument must fail as unsupported by law and grossly prejudicial even as a matter of argument.

### 3. The Government Only Seek to Use these Exhibits to Show Criminal Character and Disposition.

Though the Government valiantly seeks to argue to the contrary, its only goal in seeking to admit Exhibits 129-132 is to show Mr. Sterling's alleged criminal character and predisposition.  It cannot admit that it offers the evidence simply to try and show that because Mr. Sterling possessed is the type of person who would retain classified documents -- the classified documents that found in his residence in Missouri that do not pertain to any CIA covert operation -- he thus possessed the classified letter pertaining to _____ that the Government charges contained national defense information. This type of evidence is specifically proscribed by Rule 404 (b).[5]  "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person to show action in conformity therewith."  Yet,  this is exactly why it wants to admit the evidence.

---

[4]  The defendant objects to any hearsay testimony from any person regarding what Mr. Risen supposedly told anyone he possessed. That includes emails from government officials one to other or relating conversations with Mr. Risen.

[5]  The Government apparently concedes that the proffered evidence is not admissible if not admitted under 404 (b).

TOP SECRET/

"...The defendant possessed the seized documents at the same time he possessed and then provided the classified letter relating to Classified Program No. 1 to Risen in March or April of 2003." (Motion at 7.)

Significantly, there is no connection or similarity whatsoever between the documents that were seized from Mr. Sterling's home and the letter related to Classified Program No. 1. As such, they are not even relevant. As an initial matter, it would be helpful if the CIA would actually explain to the Court what it is looking at in Exhibits 129, 130 and 131. As the defense understands it, Mr. Sterling was given this information at the time that he joined the CIA in 1993 at a time when he had

This rebuts any claim that Mr. Sterling committed a crime or did anything wrong, much less was retaining documents he was unauthorized to retain that contained national defense information, by retaining these documents, which would be a predicate under Rule 404 (b).

Regardless, the Government should make some proffer as what this information is and how it relates, if at all, to the possession and dissemination of national security information which is what is charged here. These documents are so attenuated -- by form, content, time and substance -- from the documents charged in this case that the Court simply cannot find any link between them and the charges in this case. There is nothing in any of these documents that show Mr. Sterling was a source for Mr. Risen's book. They certainly cannot be admitted to show any motive, opportunity, intent, plan, knowledge, or absence of mistake or accident.

TOP SECRET

They also cannot be admitted to prove venue. Indeed, the Government cites the Court to no authority for the proposition that 404 (b) evidence can be introduced to prove venue. Certainly venue is not one of the listed purposes of the Rule and venue relates to the site of a crime, not the habits or knowledge of a defendant.

Finally, the Government returns to the old saw that it needs these exhibits for rebuttal. As stated above, these exhibits are not remotely even the same kind of alleged national security documents that someone gave to Mr. Risen though the Government attempts to dress them up. Certainly if the Government thought these exhibits were national defense information or classified information, it would have brought those charges as well.

An analogous case is <u>United States v. Johnson</u>, 617 F. 3d 286 (4th Cir. 2010). In that case, the defendant was convicted on drug charges and the trial court admitted evidence of alleged drug dealing that predated the charges by 9 years. The Court reversed the conviction finding that the evidence was too remote and should not have been admitted. "The more closely the prior act is related to the charged conduct - either in time, pattern, or state of mind, - the more probative it is of the defendant's intent or knowledge in relation to the charged conduct." <u>Id.</u> at 297. "The fact that a defendant may have been involved in drug activity in the past does not in and of itself provide a significant nexus to the charged conduct where the activity is not related in time, manner or place, or pattern of conduct." <u>Id.</u> The Court reversed the conviction finding the Rule 404 (b) too tenuous and remote. The proffered evidence here is also far too remote and tenuous to show any pattern of conduct much less to prove venue.

TOP SECRET

The Government desperately seeks to have the Court find that these exhibits somehow show identity. Frankly, the argument in this regard is difficult to discern. There is no question as to Mr. Sterling's identity and no witness is proffered who says that he can identify Mr. Sterling with the assistance of these documents. Rule 404 (b) evidence is admissible to show identity: (1) when the evidence proves indirectly that the defendant is the person who committed the charged act, or (2) when the evidence relates directly to identity. United States v. Joseph, 310 F. 3d 975, 978 (7th Cir. 2002) (trial court properly permitted the prosecution to introduce evidence of defendant's uncharged act of stealing letter addressed to another person to link defendant with another person's name, which he used as an alias in charged scheme to defraud); see also United States v. Fountain, 2 F.3d 656, 68 (6th Cir. 1993) ("When identity is in issue, the trial court may admit evidence that the defendant previously committed a different crime using the same or similar modus operandi as was employed in the commission of the crime charged to show the same actor committed both crime.").

Here, there is no evidence that Mr. Sterling ever provided any of these proffered exhibits to Mr. Risen so the jury is being asked to assume far too much in this regard. The Government cannot argue that Mr. Sterling possessed these documents so he must have given national security information to Mr. Risen. This is a baseless non-sequitor. Nonetheless, Rule 404 (b) evidence offered to prove identity must satisfy a particularly stringent analysis which is not here satisfied. United States v. Phaknikone, 605 F. 3d 1099, 1107-1111 (11th Cir. 2010). As such, these exhibits are not admissible under this prong of Rule 404 (b).

TOP SECRET

Similarly, the Government cannot seriously claim that these documents are admissible under Rule 404 (b) to show motive. The Indictment suggests that the motive was revenge on the Government for discriminating against Mr. Sterling. Indictment ¶ 18 ("Defendant STERLING's anger and resentment toward the CIA grew over time as the CIA rejected the defendant's settlement offers and made other legal decisions. In retaliation for the CIA's refusal to settle on terms favorable to defendant STERLING, as well as other decisions made by the CIA, defendant STERLING caused and attempted to cause the publication of classified information about Classified Program No. 1 and Human Asset No. 1.") The Government does not even articulate a plausible theory of how possessing certain documents would show Mr. Sterling's motive.

### 4. The Documents Should Not Be Admitted As Unduly Prejudicial and Confusing.

In addition, this evidence should not be admitted because its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury. F.R.E. 403. The Government readily admits that it wants to argue to the jury that because Mr. Sterling possessed these documents, he must have possessed more and then provided these records to Mr. Risen. This is just the sort of propensity and character evidence prohibited by Rule 404 (b). The Government barely even hides its intention. "Put simply, the defendant's possession of the seized classified documents demonstrates that the defendant knowingly took classified documents home, thus making it more probable that the defendant unlawfully retained the classified letter relating to Classified Program No. 1." (Motion at 7.) It makes this claim knowing it has no evidence that Mr. Sterling ever took the actual document at issue home. This is the proverbial tail wagging the dog and should not be allowed by Rule 404 (b) evidence.

TOP SECRET

United States v. Zeleke, No. 1:11cr248, 2011 U.S. Dist. LEXIS 98591 (E.D. Va. August 31, 2011) at *14.

In addition to having no foundation in fact, this same argument is grossly unfair and misleading and is unsupported even by the evidence that the Government has produced and created in this case. It plainly admits that it has no evidence that Mr. Sterling possessed that letter and no evidence that he gave it to Mr. Risen much less that it knows where or when this supposedly occurred. It only thus serves to confuse this jury by allowing it to consider Rule 404 (b) in evidence that serves only to pretend to replace evidence they now admit they do not have.

For example, the fact that Mr. Sterling, who was engaged in EEO litigation with the CIA, may have retained a copy of his 1993 evaluation report (Exhibit 132), proves nothing about whether, as the Government is attempting to prove, he retained and gave a personnel document relating to his performance in 2000 to Mr. Risen in 2003. It certainly would be helpful to the Government if it found a copy the 2000 document in Mr. Sterling's residence, but they did not. It cannot just argue to the contrary.

Similarly, the fact that Mr. Sterling possessed three documents (Exhibits 129-131) that he was given in 1993 and told to retain does not mean that he possessed the _____ letter in 2003, much less that he possessed it in Virginia (Count Three) and gave it to Mr. Risen in Virginia (Count Two). None of these proposed exhibits were ever given to anyone by Mr. Sterling and none of them relate to Classified Program No. 1 or even constitute national defense information. In short, the only connection that exists between these exhibits and the issues in this case exists in the minds of the Government, which wants the jury to be able to consider and assume facts not in evidence so they can

TOP SECRET                                                                                    11

TOP SECRET/

obtain a conviction.   This is nothing more than an invitation to speculate that is grossly

prejudicial to Mr. Sterling and is premised upon far too flimsy a reed upon which such a

case should rest. The evidence should not be admitted.  No limiting instruction can cure

this issue.

### 5.    The Proposed Redactions Do Not Give Mr. Sterling the Same Ability to Defend This Case as the Actual Documents.

Under CIPA, the Government argues that it can offer substitutes for its own

evidence after the Court makes a finding that the evidence is relevant and admissible.

CIPA § 6 (a).  Here, the defendant has already shown why the evidence is not relevant or

admissible and if the Court agrees, there is no reason to consider the proposed

substitutions.

However, if the Court finds the documents relevant and admissible, then and only

then can the Government propose substitutions under CIPA § 6 (c) (B) only if the

proposed substitution or summary will provide the defense with substantially the same

ability to make his defense as would disclosure of the specific classified information.[6]

The defense will set forth below its objections to each summary:

Exhibit 129-131 – The Government's proposed substitutions are grossly unfair to Mr.

Sterling.  The unredacted exhibit needs to be used to show the jury the innocuous nature

of the information contained in the exhibit which, among other things, was, by definition,

intended to be used outside of the office. The blacked-out portions unfairly suggest to the

jury that the matters in this document are national defense information or are somehow,

as the Government plans to argue, related to Classified Program No. 1, which they are

---

[6]  The defense does not waive its objection to this process whereby the Government invokes CIPA to propose summaries for its own evidence.

TOP SECRET

not. The redactions also unfairly highlight the words "warning notice" and "intelligence sources and methods" which is inappropriate and prejudicial.

The defense does not object to the redaction of the phone numbers on these exhibits.

**Exhibit 132** – This report is inadmissible as hearsay. In addition, the proposed redaction of obviously harmless information only serves to assist the Government in portraying this document as somehow involved in or related to Classified Program No. 1. The defense has no objection to the continued redaction of the officer.

The defense would object to a limiting instruction that essentially warned the jury that none of these documents relate to Classified Program No. 1 and that there is no evidence that these documents were ever disseminated or shared with anyone by Mr. Sterling. This instruction shows only why these exhibits should not be admitted in the first place.

6.     **The Silent Witness Rule Is Not Justified.**

The defense reiterates its opposition to the use of the silent witness rule in this case under any circumstances and adopts its argument in that regard set forth completely in the defendants Response to Government's Motion for *In Camera* Hearings and Motion for an Order Pursuant to Sections 6 and 8 of the Classified Information Procedures Act. (Docket No. 158.) In short, the use of the Silent Witness Rule in this case is entirely unwarranted. The Government has not even bothered to tell the Court the age or subject matter of the documents at issue. It has, as outlined above, not even shown why the exhibits are relevant or admissible. As such, depriving Mr. Sterling of a public trial on this record is not justified.

TOP SECRET

exhibits are relevant or admissible.  As such, depriving Mr. Sterling of a public trial on

this record is not justified.

JEFFREY A. STERLING
By Counsel

Edward B. MacMahon, Jr.
VSB No. 25432
Law Office of Edward B. MacMahon, Jr.
P.O. Box 25
107 East Washington Street
Middleburg, VA   20118
(540) 687-3902
(540) 687-6366
ebmjr@verizon.net

Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered
655 Fifteenth St. N.W. Suite 900
Washington, DC 20005
(202) 626-5830
(202) 626-5801 (facsimile)
bpollack@milchev.com

*Counsel for Defendant Jeffrey A. Sterling*

TOP SECRET                                                                14

**TOP SECRET/**

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I delivered an original of the

following Defendant Opposition to Government's Motion *In Limine* to Admit Exhibits

129-132 by the Use of Alternative Conventional CIPA Summaries and Substitutions or,

Alternatively, Through the Silent Witness Rule to the CISO as directed by the Classified

Information Protective Order issued in this case.

By:_____
Edward B. MacMahon, Jr. (VSB #25432)

*Counsel for Jeffrey A. Sterling*

**TOP SECRET**                                                                 15