TOP SECRET [redacted] | Filed with Classified Information Security Officer

CISO [signature]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA Date 9/16/11

Alexandria Division

**UNCLASSIFIED//REDACTED**

UNITED STATES OF AMERICA, )
)
vs. ) Case No. 1:10-cr-00485-LMB.
)
JEFFREY ALEXANDER STERLING, )
)
Defendant. )

### DEFENDANT JEFFREY STERLING'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR ISSUANCE OF A RULE 17(c) SUBPOENA TO "HUMAN ASSET NO. 1"

COMES NOW Jeffrey A. Sterling, by counsel, and for his Reply in Support of the Defendant's Motion for Issuance of a Rule 17 (c) Subpoena to Human Asset No. 1, states as follows:

The Government, in opposing the issuance of a trial subpoena for documents returnable in advance of trial, improperly conflates the standard for admissibility at trial with the standard required to obtain compulsory process. The Government in its opposition argues without support as to what Mr. Sterling's defense in this case is going to be. For example, it argues that: (1) Mr. Sterling will "invite the jury to speculate" that someone other than Sterling was the source of the information received by Mr. Risen (Opp. at 1); (2) that "he plans to point the finger at then-staffers at the Senate Select Committee on Intelligence" (*id.* at 1-2); (3) that "his intent [is] to blame other CIA employees" (*id.* at 2); (4) that Human Asset No. 1 is "on the substantial list of those whom at trial he plans to accuse" (*id.*); and (5) finally that "[t]he defense plans to point

TOP SECRET [redacted]

**UNCLASSIFIED // REDACTED**

**TOP SECRET/** [ ]

fingers at other possible 'suspects' and ask the jury to speculate" (*id.* at 2-3)). Having set up this straw army (primarily in yet another blatant attempt to get the Court to reconsider its previous ruling on the Government's Motion *in Limine* with respect to Mr. Risen), the Government knocks it down by claiming that Mr. Sterling has embarked on a fishing expedition. This is simply untrue.

As an initial matter, Mr. Sterling must state the obvious. At this stage in the proceedings, he has not committed to any particular defense or even to putting on a defense in this case. Given the Government's recent admissions as to how weak its case is, even as to a threshold matter such as venue, Mr. Sterling may not have to put on any case at all. Yet the matter pending before the Court is a motion for the issuance of a trial subpoena with documents returnable in advance of trial. The Court must decide the motion in the context of whether or not Mr. Sterling has demonstrated that his right to access the evidence and whether compulsory process extends to the documents sought, not whether or not the documents would be admissible in the context of any particular defense, much less in the context of the Government's imagined scatter shot trial defenses that the Government claims will amount to invitations to the jury to speculate. Indeed, even the Government grudgingly acknowledges that "the defendant certainly has a right to develop and put forth his defense as he sees fit." *Id.* at 3. Viewed in this proper context, Mr. Sterling is plainly entitled to access to the documents sought and has established a good faith basis for requesting the enumerated documents. The Government's knee-jerk charge of fishing expedition is as inapt as it is overused.

TOP SECRET [redacted]

## ARGUMENT

**I. Mr. Sterling is Entitled to Use of Compulsory Process to Develop a Potential Defense for Which He Has Set Forth a Sufficient Basis in the Record.**

"Rule 17(c) reflects the command of the Sixth Amendment that the full power and processes of the courts are available to defendants in criminal cases to help them defend against the charges brought by the Government." *United States v. Beckford*, 964 F. Supp. 1010, 1016 (E.D. Va. 1997) (Payne, J.). Thus, "Rule 17(c) is more far reaching than testimonial subpoenas." *Id.* (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). While Mr. Sterling does not take issue with the line of cases cited by the Government that stand for the proposition that a Rule 17(c) document subpoena must be based on something more than conjecture or speculation, in order to obtain documents from Human Asset No. 1, Mr. Sterling need not prove that Human Asset No. 1 has in his possession admissible evidence, merely that there is "a sufficient likelihood" that materials sought are "relevant to the offenses charged in the indictment." *United States v. Nixon*, 418 U.S. 683, 700 (1974). Mr. Sterling easily meets that burden.

Mr. Sterling's requests are narrowly tailored to capture only those documents necessary to develop fully the possible defense that Human Asset No. 1 was the source of some or all of the alleged national defense information that that appears in <u>State of War</u>, information that the Government contends was disclosed by Mr. Sterling. The document requests fall into three general categories: (1) documents related to "Classified Program No. 1"; (2) documents related to the employment of "Human Asset No. 1" with the CIA;

TOP SECRET [redacted]   3

TOP SECRET/

and (3) documents evidencing communications between "Human Asset No. 1" and Mr. Risen.[1]

The Government always presupposes Mr. Sterling's guilt in its efforts to defeat any discovery request. But the Court, and not the Government, must act to give Mr. Sterling a fair trial. This is especially true now that, as the Government itself has conceded in various pleadings, its evidence in this case is remarkably thin. Mr. Risen has never told the Government that Mr. Sterling or anyone else was a source for Chapter Nine of State of War, much less the source for the alleged national defense information that appears in that Chapter. Mr. Sterling has previously denied being a source of information about Classified Program No. 1. The Government has executed search warrants on his home, seized his computer and has never found any information showing any disclosures of national security information to Mr. Risen. No such warrant was ever executed on Human Asset No. 1's residence or workplace.

The Government also has no documentary evidence that Mr. Sterling was a source for the discussion of Classified Program No. 1 in Chapter Nine. For example, the Indictment alleges that Mr. Sterling provided Mr. Risen a copy of a letter that was classified. *See* Indictment at 21. The Government parrots this allegation over and over again with no evidence to support the claim. There is, of course, another possible source.

The

---

[1] To the extent that the Government takes issue with the breadth of certain categories, that might be a basis for Human Asset No. 1 to file a motion for a protective order to narrow the scope of the subpoena if it would be unduly burdensome for him to respond, it is not a basis for the Court to deny the subpoena in its entirety. The Court should know that the defense asked the Government to arrange service of the subpoena if issued so that Human Asset No. 1's identity could be protected in this process and the Government agreed.

TOP SECRET/

4

TOP SECRET/

Government executed a search warrant on Mr. Sterling's home and found that he did not possess a copy of any version of that letter. Moreover, Mr. Sterling had no ability to access that letter in 2003, when the Government now contends the letter was leaked to Mr. Risen. Mr. Sterling left Classified Program No. 1 in 2000. *See* Bruce Decl. at 11. *See also* CIA Cable dated May 2000 Bates No. C02630 (tab 117 of Mr. Sterling's Fourth CIPA § 5 Notice). In fact, Mr. Sterling had no access to any classified [ ] (Classified Program No. 1) information after May of 2001 no matter how often the Government argues to the Court to the contrary. *See* Bruce Decl. at 11.

The Government exhaustively investigated Mr. Sterling for eight years, from the time of the leak in 2003 to his Indictment in 2011. Yet, it has little evidence to support its theory that Mr. Sterling was the source. And, significantly, the Government neglected to perform any serious investigation of anyone other than Mr. Sterling as alternative possible sources. This includes Human Asset No. 1.[2]

Human Asset No. 1 obviously had knowledge of almost all of the information that appears in Chapter Nine. Indeed, there are portions of that Chapter that detail actions about which only Human Asset No. 1 had first-hand knowledge and those portions of the Chapter are written from the perspective of Human Asset No. 1. *See, e.g.*, State of War at 194-95 ("*I'm not a spy*, he thought to himself. *I'm a scientist. What am I doing here?*"); ("He [Human Asset No. 1] still couldn't believe the orders he had received from CIA headquarters.")

---

[2] The Government's investigation of Human Asset No. 1 appears to have been limited to asking him whether he was the source, which he denied, and asking him to [ ] Opp. at 9. Thus, Mr. Sterling takes little comfort in the Government's assertion that "there is no evidence suggesting [Human Asset No. 1 and Mr. Risen] have ever been in contact." *Id.* There is presently no such evidence because the Government never seriously attempted to determine whether such evidence exists. The Government's negligence in this regard cannot be the basis for circumscribing Mr. Sterling's defense. The Government concedes that Mr. Sterling has the right to develop a defense. That right includes the right to compulsory process.

TOP SECRET

5

**TOP SECRET/** [redacted]

Not only did Human Asset No. 1 have the requisite knowledge, as set forth in Mr. Sterling's memorandum of law in support of his motion for the issuance of a subpoena to Human Asset No. 1, he had a motive to leak the information and leak it in a manner that cast the CIA and Mr. Sterling in a bad light. Ironically, the Government minimizes Human Asset No. 1's belief that [redacted] [redacted] (Opp. at 8) and dismisses it as a possible motive on his part to leak information that would cast the CIA in a bad light; whereas the Government's theory of prosecution in this case is that Mr. Sterling was the source and that his motive was that he believed his services were undervalued by the CIA so he wanted to leak information that would cast the CIA in a bad light. Likewise, the Government argues that Human Asset No. 1 could not be the source because the portrayal of Classified Program No. 1 in Chapter Nine is [redacted] [redacted] [redacted] Classified Program No. 1. *Id.* at 9. Of course, the same is equally true with respect to Mr. Sterling. *See* FBI 302 Report for [redacted] [redacted] dated 6/26/2003 at Bates No. F00188. [redacted] [redacted]. Indeed, the Government has repeatedly noted that it believes that much of the information in Chapter Nine is false.[3]

And, unlike Mr. Sterling, Human Asset No. 1 is known to have had [redacted]

[redacted]

---

[3] The Government ignores altogether the evidence of Human Asset No. 1's [redacted] against Mr. Sterling, which serves as a motive to leak information that shows the CIA in a bad light and simultaneously placed Mr. Sterling under suspicion as being the source.

**TOP SECRET/** [redacted]   6

**TOP SECRET**/ [redacted]

[redacted]

[redacted] *See* Exhibit 1 Q00570, 583-84. Thus, it would appear no one at the CIA, including Mr. Sterling, would have had access to the [redacted] and that Human Asset No. 1 is the only person [redacted] who has ever had [redacted] in Chapter Nine of <u>State of War</u>.

The Government discounts the possibility that Human Asset No. 1 was a source for Mr. Risen, noting that the publication of <u>State of War</u> made Human Asset No. 1 [redacted] Opp. at 8.[4] [redacted]

[redacted]

[redacted] The Government argues that "[i]f Human Asset No. 1 had simply wanted to embarrass the CIA or the defendant[redacted] *Id.* Yet, Mr. Risen's source(s) did not [redacted] Chapter Nine does not disclose the [redacted] of Human Asset No. 1. *See* Defense Expert Opinion of Mr. Lang at 10. And, evidence produced in this case shows that Human Asset No. 1 [redacted]

[redacted]

And Chapter Nine did not, as a matter of fact [redacted] Human Asset No. 1. After the book was published, Human Asset No. 1's [redacted]

[redacted]

---

[4] The defense, of course, has not seen unredacted versions of some of the cables. At the hearing on August 30, 2011, the Court suggested that an unknown redaction may no longer be proper. The defense reiterates its request for reciprocal discovery under CIPA which might require the disclosure of that information.

**TOP SECRET/**[redacted] 7

**TOP SECRET//**[ ]

him it would not. Indeed, the evidence in the record is that the [ ] [ ] based on the publication of State of War, and, in fact, [ ] described in the book was a [ ] See FBI 302 Report of Human Asset No. 1 dated 6/07/2010 Bates No. F00143 - 44 [ ] [ ] about the material in State of War, [ ] [ ]

II. **Mr. Sterling is Entitled to the Specific Documents Sought.**

A. **The Category of Documents.**

The Government has agreed to produce records responsive to the first category of documents sought pertaining to Human Asset No. 1's telephone numbers. Opp. at 9.

B. **The Second Category of Documents.**

The Government argues that Mr. Sterling's second category of requested documents, documents pertaining to Classified Program No. 1, is overbroad and that the "defendant has not even attempted to explain how such documents are admissible at trial." *Id.* at 10. This is truly a remarkable statement. The Government has argued - improperly - that Mr. Sterling's possession at his home of CIA documents wholly unrelated to Classified Program No. 1 (including a 1993 personnel form that predates Mr. Sterling's involvement in Classified Program No. 1 by [ ] years) is admissible evidence that Mr. Sterling was Mr. Risen's source for national defense information about Classified Program No. 1. *See* August 30, 2011 Hearing Transcript at 52. Yet, the Government cannot understand what possible relevance the possession by Human Asset No. 1 of documents related to Classified Program No. 1 could have to this case.

**TOP SECRET** [ ] 8

**TOP SECRET/**

Obviously, the possession by Human Asset No. 1 of any documents pertaining to Classified Program No. 1 could make it more likely that he provided information about that program to Mr. Risen. Indeed, he may actually have

### C. The Third, Fourth and Fifth Category of Documents

The Government argues that Mr. Sterling is not entitled to documents reflecting communications between Human Asset No. 1 and Mr. Risen requested in the third, fourth and fifth category of documents. Opp. at 10. The Government argues that Mr. Sterling is not entitled to the issuance of the requested subpoena because there is no such evidence, yet simultaneously argues that Mr. Sterling should seek to obtain this evidence from Mr. Risen before seeking to obtain it from Human Asset No. 1. *Id.* While the Government may not like the Court's rulings with respect to Mr. Risen, the Court could not have been clearer that Mr. Risen maintains a broad privilege and that he is not the first resort for obtaining evidence. *See generally* Court's Order dated July 29, 2011. Regardless, this is no reason to give Human Asset No. 1 immunity from the process of this Court.

### D. The Sixth Category of Documents

Finally, the Government argues that Mr. Sterling is not entitled to the documents he seeks in the sixth requested category, documents related to [    ] Human Asset No. 1 received from the CIA, because it is potential impeachment material and is cumulative. Opp. at 11. The Government does not cite any authority making impeachment material *per se* unavailable pursuant to a Rule 17(c) subpoena. Here, Human Asset No. 1's motives are crucial to a potential defense Mr. Sterling may raise. The documents sought do not relate to a collateral matter, but go to the heart of Human

**TOP SECRET/** 9

TOP SECRET

Asset No. 1's relationship with the CIA. To the extent that information sought in this request has already been produced by the CIA, Mr. Sterling has no need for cumulative information. However, he is entitled to documents in Human Asset No. 1's possession, custody or control that are not cumulative of what the CIA has produced.

## CONCLUSION

For the reasons set forth in his memorandum of law in support of his motion fro the issuance of a Rule 17(c) subpoena to Human Asset No. 1 and for foregoing reasons, Mr. Sterling respectfully asks this Court to issue the requested Rule 17(c) Subpoena to Human Asset No. 1.

Dated: September 16, 2011

JEFFREY A. STERLING
By counsel

By: /s/
Edward B. MacMahon, Jr. (VSB #25432)
Law Office of Edward B. MacMahon, Jr.
107 E. Washington Street, P.O. Box 25
Middleburg, VA 20118
(540) 687-3902
ebmjr@verizon.net

By: /s/
Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered

TOP SECRET

10

**TOP SECRET**

655 Fifteenth St. N.W. Suite 900
Washington, D.C. 20005
(202) 626-5830
bpollack@milchev.com

*Counsel for Jeffrey A. Sterling*

TOP SECRET [redacted]

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I delivered an original of the following Reply of Defendant Jeffrey Sterling to the Government's Opposition to Defendant's Motion for Issuance of a Rule 17(c) Subpoena to Human Asset No. 1 with attachments in support to the CISO as directed by the Classified Information Protective Order issued in this case.

By: _____
Edward B. MacMahon, Jr. (VSB #25432)

*Counsel for Jeffrey A. Sterling*