**REDACTED / CLEARED FOR PUBLIC RELEASE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Filed with Classified
Information Security Office
CISO Wickersn
Date 10/11/2011

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:10CR485 |
| | ) | |
| v. | ) | Hon. Leonie M. Brinkema |
| | ) | |
| JEFFREY ALEXANDER STERLING | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT JEFFREY STERLING'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENTS [DE 234]

On October 4, 2011, the Government moved *in limine* to exclude certain evidence and arguments it anticipated Mr. Sterling may raise in his defense. Most of the issues the Government anticipates would only arise if the Government opened the door to such evidence and arguments and, accordingly, the Court need not decide them at this time. In other instances, the Government seeks to preclude probative evidence that Mr. Sterling may wish to introduce, or arguments he may wish to make, and in doing so attempts to undermine Mr. Sterling's constitutional right to present a defense. Mr. Sterling will address each of categories of evidence and argument identified in the Government's motion *in limine* in turn.

### ARGUMENT

I. **Statements Made by Mr. Sterling in his Immunized Proffer Session, a Letter Seized from his Computer, and his Draft Memoirs**

The Government seeks to preclude the introduction of three categories of statements made by Mr. Sterling. As set forth below, Mr. Sterling does not intend to introduce statements from either of the first two categories assuming the Government likewise does not do so. With

REDACTED / CLEARED FOR PUBLIC RELEASE

respect to the third category, Mr. Sterling may seek to introduce statements that rebut evidence adduced by the Government.

### A. Statements From Mr. Sterling's Immunized Proffer Session

On June 19, 2003, Mr. Sterling voluntarily agreed to an interview with the Government in return for a promise that statements made in that interview would not be used against him other than to cross-examine him to the extent he should choose to testify and in doing so makes statements "materially different" from the statements made in the proffer session. See Proffer Letter (attached as Exhibit 1). The proffer letter specifically exempts from the scope of the immunity the use of any statements made by Mr. Sterling in a prosecution for false statements under 18 U.S.C. § 1001. *Id.* Thus, while the Government characterizes the statements made by Mr. Sterling pursuant to the proffer agreement as "self-serving," the fact of the matter is that Mr. Sterling had immunity for any statement unless he made a materially false statement, so his statements during that proffer have heightened reliability. Moreover, the Government has not charged Mr. Sterling with any violation of § 1001 based on his statements in the proffer session.

Nonetheless, Mr. Sterling recognizes that as a general matter Federal Rule of Evidence 801(d)(2) does not allow Mr. Sterling to introduce his own prior statements, even if they have an indicia of reliability. Thus, Mr. Sterling does not intend to seek to introduce statements from his proffer session other than: 1) to the extent the Government seeks to introduce some portion of his statements and he seeks to introduce additional statements for the sake of completeness; 2) under Rule 801(d)(1) to rebut any express or implied claim of recent fabrication by Mr. Sterling; or 3) to the extent statements from the proffer session are otherwise admissible to rebut evidence introduced by the Government.

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

### B. A Letter Seized from Mr. Sterling's Computer

On October 5, 2006, the Government executed a search warrant and seized a personal computer from Mr. Sterling's residence. On that computer was a letter drafted by Mr. Sterling, presumably to James Risen, that appears to have been drafted eighteen months earlier, in March 2004. The Government contends, with no evidence, that in March 2004, nine months after his proffer session, Mr. Sterling (who was not informed in his June 2003 proffer session, or at anytime in the nine months thereafter, that he was a target of the Government's investigation), drafted this letter for the purpose of falsely exculpating himself in an investigation in which he had no expectation of being charged for the purpose of retaining a copy to use in his defense in the event that he was ultimately charged. Putting aside the far-fetched nature of the Government's attempt to undermine the reliability of the statements made by Mr. Sterling in the letter seized from his computer, Mr. Sterling again recognizes that that as a general matter Federal Rule of Evidence 801(d)(2) does not allow Mr. Sterling to introduce his own prior statements, even if they have an indicia of reliability. Thus, Mr. Sterling does not intend to seek to introduce statements from the letter seized from his computer other than: 1) to the extent the Government seeks to introduce some portion of his statements and he seeks to introduce additional statements for the sake of completeness; 2) under Rule 801(d)(1) to rebut any express or implied claim of recent fabrication by Mr. Sterling; or 3) to the extent statements from the letter are otherwise admissible to rebut evidence introduced by the Government.

### C. Mr. Sterling's Draft Memoirs

Mr. Sterling drafted an autobiography that discusses his career at the CIA and the discrimination he believes that he faced at the CIA, which ultimately led to his termination from the Agency. Mr. Sterling, as he did in making an EEO discrimination claim against the Agency,

REDACTED / CLEARED FOR PUBLIC RELEASE

followed proper and lawful channels. Specifically, he submitted his draft manuscript to the CIA Publication Review Board. When the Publication Review Board continually sought to preclude him from making certain statements in the manuscript that Mr. Sterling did not believe should be classified, Mr. Sterling again pursued a lawful and proper course to obtain relief: he filed a lawsuit against the Agency.

The Government seeks *in limine* the wholesale exclusion of Mr. Sterling's autobiographical manuscript. The Government in conclusory fashion pronounces the entire manuscript hearsay and asserts that no hearsay exception applies. The Court should decline the Government's invitation to decide this issue in a vacuum with no context to do so. Mr. Sterling can envision numerous non-hearsay uses of portions of his manuscript. For example, in discovery, the Government has produced to Mr. Sterling witness statements from witnesses who may testify that Mr. Sterling told the witness, *inter alia*, that he worked for the CIA, that he worked on ____ issues, that he was trained in ____ that he worked in ____ and that he worked in ____. Presumably, the Government may seek to introduce this testimony to argue, implicitly or explicitly, that Mr. Sterling engaged in a pattern of behavior in which he did not adhere to his confidentiality obligations to the Agency or even that he was disclosing national defense information. Yet, the same or even identical information appears throughout the draft manuscript in passages to which the Publication Review Board raised no objection. Thus, these passages of the manuscript would be admissible both: 1) not as to the truth of the matters asserted (for example, that Mr. Sterling was trained by the CIA in ____ ), but as substantive evidence that the disclosure of this type of information is not inconsistent with Mr. Sterling's confidentiality obligations, much less is it national defense information; and 2) for the non-hearsay purpose of demonstrating Mr. Sterling's state of mind, i.e., that he would not

REDACTED / CLEARED FOR PUBLIC RELEASE

4

reasonably believe that his disclosure of this type of information is inconsistent with his confidentiality obligations, much less that this type of information constitutes national defense information.

## II. Evidence or Argument About "Alternative Perpetrators"

In seeking to impede Mr. Sterling's ability to put on a defense, the Government attempts to erect an evidentiary condition precedent to putting on a defense for which the Government cites no authority and for which no authority exists. In other words, the Government attempts to shift the burden of proof to the defendant and preclude him from raising a theory of the defense unless the defendant can prove the validity of the proffered defense. Specifically, the Government argues that Mr. Sterling can neither put on evidence or make arguments that anyone other than Mr. Sterling was the source of any alleged national defense information that appeared in Chapter 9 of State of War unless Mr. Sterling first proves that the other person had access to the national defense information and had a connection to Mr. Risen. See Gov't Motion *in Limine* at 6. It is, of course, the Government's burden to prove its theory of Mr. Sterling's guilt beyond a reasonable doubt and this includes the burden of disproving reasonable alternative hypotheses.

The Government bases its novel and constitutionally flawed burden-shifting argument on a line of cases that stands only for the mundane proposition that a defendant must have a good faith basis to present evidence or argument and therefore may not present a theory of the defense that is wholly speculative. Mr. Sterling does not disagree with this proposition. *United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010) (precluding "mere speculation on the part of the defendant").[1] However, Mr. Sterling vehemently disagrees with the Government's effort to

---

[1] *Lighty* was a kidnapping/murder case in which defense's only evidence of an alternative perpetrator was that two witnesses saw another man with a firearm "that looked similar to the murder weapon." The Fourth Circuit noted that the witnesses were not gun experts, they did not see the supposed alternative
(footnote continued on next page)

5

REDACTED / CLEARED FOR PUBLIC RELEASE

bootstrap this line of cases to not only preclude the defendant from engaging in wholesale speculation, i.e., requiring *some* evidence in support of the theory of defense, but rather to shift the burden to the defendant to present a quantum of evidence that establishes each element in a case against an alleged alternative perpetrator.

If the evidence, or a fair inference from the evidence, presented by the Government or Mr. Sterling is that others had access to the alleged national defense information that appears in Chapter 9, he has a constitutional right to argue the inference or to put on the evidence to raise doubt as to whether or not Mr. Sterling was Mr. Risen's source for that information.[2] In other words, the evidence that others had access to the same information brings the alternative perpetrator theory beyond the realm of mere speculation. Mr. Sterling need not also as a prerequisite to arguing that others possessed the same information also prove a connection between the others who held the information and Mr. Risen. Not only does the case law not support such a burden by the defendant in an ordinary case, but here, Mr. Risen has used anonymous sources and exercised his constitutional right not to reveal them. Thus, the Government not only seeks to shift the burden of proof to the defendant, it seeks to do so on a point that the Government knows the defendant cannot obtain evidence.

The prohibition on mere speculation does not extend nearly as far as the Government argues. For example, *United States v. Crosby*, 75 F.3d 1343 (9th Cir. 1996) (Kozinski, J.),

---

(footnote continued from previous page)
perpetrator with the gun "in close temporal proximity" to the charged acts, and the testimony would not have shed light on the kidnapping and murder. *Id.* As discussed below, here, conversely, the evidence at issue would be probative as to whether people other than the defendant possessed the very same information that appears in Chapter 9 of State of War in close temporal proximity to when Mr. Sterling possessed that information and/or when that information was apparently obtained by Mr. Risen.

[2] Separately, the evidence may be admissible to demonstrate that the information at issue was not "closely held" and therefore was not, as the Government alleges, national defense information.

involved the physical assault of the defendant's girlfriend where everyone involved was in a "drunken stupor at the time." *Id.* at 1345. The prosecution relied primarily on the testimony of the girlfriend, whose memory was hazy. The defendant sought to introduce evidence that the woman's husband, to whom she was still married, may have been the assailant. Such evidence included that the husband lived five miles away and had previously assaulted the defendant.

The Ninth Circuit reversed the district court decision excluding the evidence on the grounds that it would confuse the jury. It found that the evidence showed "that someone other than [the defendant] had the opportunity, ability and motive to commit the crime." *Id.* at 1347. The court continued, "[t]his argument was crucial to the defense. Because the assault occurred in a remote place and [the defendant] was the only other person known to be at the scene of the crime, the jurors would naturally ask themselves, 'If the defendant didn't beat Dorothy, who did?' Introduction of the [husband] evidence would have answered this question, rebutting the inference that [the defendant] must have committed the assault." *Id.* Moreover, the court noted that the "[husband] evidence was also significant because there was so little direct evidence of what actually happened." *Id.*[3]

Likewise, if the Government here were allowed to preclude Mr. Sterling from eliciting evidence or arguing that others also possessed the alleged national defense information that appears in Chapter 9, the jury would be left to ask themselves, "If Mr. Sterling did not disclose

---

[3] The evidence of a potential alternative perpetrator was also relevant and admissible with respect to the thoroughness of the Government's investigation. The court in *Crosby* noted that "[b]ecause he was barred from introducing the [husband] evidence, [the defendant] couldn't fully argue his sloppy investigation theory. While he could point out what the police hadn't done, he could suggest no exculpatory evidence the police might have found had they conducted a more thorough investigation. ... Rather than being limited to poking holes in the prosecution's case, [defendant's] counsel could have plausibly argued that a more thorough investigation would have produced evidence incriminating [the husband]." *Id.* at 1347-48.

the information, who did?" and Mr. Sterling would be left unable to offer an answer. As the Ninth Circuit has observed more recently, "[t]he district court is not free to dismiss logically relevant evidence as speculative: '[I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.'" *United States v. Stever*, 603 F.3d 747, 754 (9th Cir. 2010) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir. 2001), which was in turn quoting Wigmore, *Evidence in Trials at Common Law* Sec. 139 (1983));[4] see also *United States v. Freeman*, No. 06-20185, 2010 U.S. Dist. LEXIS 105544, *7-12 (E.D. Mich. Oct. 4, 2010) (allowing defendant to present alternative perpetrator theory when he presented "[e]vidence that three days prior to the [victim's] murder, another individual not only robbed [the victim], but shot at him" -- such evidence "could cause a jury to doubt [defendant's] guilt").

None of the cases cited by the Government conflict with the holding in these cases. As discussed above, *Lighty*, the Fourth Circuit case on which the Government relies, is inapposite. It precludes rank speculation, i.e., the introduction of evidence that someone other than the defendant possessed a weapon that may or may not have been the same type of weapon as the murder weapon on another occasion not close in time to when the murder occurred. Similarly, the Government cites *United States v. Hicks*, 307 F. App'x 758 (4th Cir. 2009), a child pornography possession case in which defendant sought to introduce evidence that his estranged

---

[4] In the *Stever* case, the defendant was convicted of conspiracy to manufacture mass amounts of marijuana after federal agents found it growing in an isolated corner of defendant's mother's 400 acre property. The Ninth Circuit reversed the district court's ruling denying the defendant's request for discovery of government files discussing the propensity of Mexican drug trafficking organizations to trespass on properties for marijuana-growing purposes. "The district court's conclusion was illogical. Evidence is relevant if it has '*any* tendency to make the existence of any fact . . . more probable or less probable.'" *Id*. at 753 (quoting Fed. R. Evid. 401).

REDACTED / CLEARED FOR PUBLIC RELEASE

wife and her boyfriend planted the pornography on his computer -- a theory that had absolutely no evidentiary support. *Id.* at 761.

Implicitly recognizing that the Fourth Circuit law it cites is not on point, the Government relies heavily on *United States v. Jordan*, 485 F.3d 1214 (10th Cir. 2007), in which the Tenth Circuit held that "a defendant . . . must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence on the record, to show a nexus between the crime charged and the asserted 'alternative perpetrator.'" *Id.* at 1219 (internal quotation marks omitted).

The district court applied this test in a prison stabbing case to preclude evidence that an inmate other than the defendant possessed the same weapon six months prior to the stabbing for which the defendant inmate was on trial. The Tenth Circuit ultimately concluded that while it was a close call, the district court had not abused its discretion. However, what the Government neglects to note in its motion is that in dicta the court stated that "[i]n hindsight, we might have evaluated [the defendant's] proffer somewhat differently." *Id.* at 1222. Thus, the appellate court was viewing this case through the lens of an abuse of discretion standard, and even so found the case to be a close call and noted that it may have reached a different result as the finder of fact.

At least one court has had the opportunity to apply the rule articulated in *Jordan* and it declined to impose the burden on the defendant that the Government here invites this Court to impose. See *United States v. Kulatunga*, No. 10-10057-01-EFM, 2010 U.S. Dist. LEXIS 103383, *7-9 (D. Kan. Sept. 29, 2010) (allowing defendant to introduce evidence suggesting that an alleged alternative perpetrator had the motive and opportunity to commit arson to conceal a theft of a large sum of money from the business that burned down). The court wrote: "Although the nexus between [the alleged alternative perpetrator] and the arson is not strong, it appears to

9

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

the Court that it is at least as strong as the nexus between the defendant and the crime in *Jordan*, a case which the Tenth Circuit affirmed on an abuse of discretion standard, but where is indicated in dicta that it nonetheless disagreed with the lower court's decision." *Id.* at *9.

In this case, ample evidence has been adduced in discovery that any number of people -- CIA employees, Hill staffers,[5] and Human Asset No. 1 -- possessed information that ultimately appeared in Chapter 9 of *State of War*. Accordingly, neither the introduction of that evidence, nor argument about reasonable inferences to be drawn from that evidence, constitutes mere speculation. Rather, it is evidence that has a tendency to make the jury doubt whether or not Mr. Sterling was Mr. Risen's source for that information. It is therefore relevant, probative, and admissible. To deprive Mr. Sterling of this evidence and argument would improperly interfere with his constitutional right to present a defense.

III. Selective Prosecution or "Everybody Does It"

The Government seeks to preclude Mr. Sterling from arguing to the jury that he was selectively prosecuted or that everybody leaks classified information as a defense to the charges against him. Discovery recently produced to Mr. Sterling does suggest that he has been selectively prosecuted in this case. Mr. Sterling will present that evidence in a separate motion to the Court. Mr. Sterling does not intend to present selective prosecution as a defense to the

---

[5] The Government's argument with respect to Hill staffers illustrates the height of the evidentiary hurdle it asks the Court to require the defendant to clear before he may put on a defense. The Government does not contest that a Senate Select Committee on Intelligence (SSCI) staffer who -- as a result of her position on SCCI's staff, had information that ultimately appeared in Chapter 9 of *State of War* -- in close temporal proximity to when she learned that information, in violation of SSCI rules disclosed other information that she had obtained as a result of her position on SSCI's staff and that the information she disclosed almost immediately came into the possession of James Risen. Yet, even on these facts, the Government contends that a sufficient nexus does not exist to allow Mr. Sterling to even cross-examine on this issue. See Gov't Motion *in Limine* at 7. The Government cites no precedent, and the defense as aware of none, that would make this even a colorable argument.

REDACTED / CLEARED FOR PUBLIC RELEASE

jury. Nor does he intend to present as a defense, evidence that others have leaked classified information.

### IV. Specific Instances of Discrimination and Re-Litigation of Mr. Sterling's Employment Discrimination and Publication Review Board Claims

The Government seeks to set ill-defined parameters in advance of trial as to what evidence, if any, pertaining to Mr. Sterling's other litigation against the CIA will be probative and admissible in his criminal trial. The Government does not contend that all such evidence is necessarily inadmissible. Indeed, the Government states that it "does not object to the admission of some evidence relating to the defendant's pending administrative and civil litigation with the CIA." See Gov't Motion *in Limine* at 10. Thus, short of articulating the rule the Government seems to seek -- if the evidence is helpful to the Government it should be admitted, but if it is helpful to the defendant it should not -- it is difficult to see how this issue can be addressed in a pre-trial motion *in limine*. To the extent the Government simply seeks to have the Court state in advance of trial that Rules 401, 402 and 403 will be in effect during the trial, Mr. Sterling does not object.

### V. Justification or Nullification

The Government seeks to preclude a justification or nullification defense. Mr. Sterling does not intend to present either.

### VI. CIA Manipulation of Documents or that the CIA is "Out to Get the Defendant"

Finally, the Government seeks to preclude additional defenses Mr. Sterling does not anticipate: document manipulation and a CIA conspiratorial vendetta. The Court need not address document manipulation as a defense. Documents will be admitted if they are authenticated and otherwise admissible.

REDACTED / CLEARED FOR PUBLIC RELEASE

Any theory that the CIA is "out to get the defendant" would seem to be a variation on a defense based on selective prosecution or "everybody does it." Mr. Sterling's response with respect to such a defense is set forth in Point III, above.

## CONCLUSION

For the reasons set forth above, the Government's Motion *in Limine* should be denied. The denial would be without prejudice to the Government's ability to argue the inadmissibility of any particular piece of evidence in the context of the trial or to argue the impropriety of any argument in the context of the trial. However, the Court should not accept the Government's invitation to prejudge issues, many of which will likely never arise, and others for which in the context of the trial there may be a legitimate basis, and in some instances a compelling and constitutionally-protected basis, for the defense to raise.

Dated: October 11, 2011

Respectfully submitted,
JEFFREY A. STERLING

By: /s/ Edward B. MacMahon, Jr.
Edward B. MacMahon, Jr. (VSB # 25432)
Law Office of Edward B. MacMahon, Jr.
107 East Washington Street
P.O. Box 25
Middleburg, VA 20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net

/s/ Barry J. Pollack
Barry J. Pollack (admitted pro hac vice)
Miller & Chevalier Chartered
655 Fifteenth St. N.W. Suite 900
Washington, D.C. 20005
(202) 626-5830

12

REDACTED / CLEARED FOR PUBLIC RELEASE

(202) 626-5801 (facsimile)

bpollack@milchev.com

Counsel for Jeffrey A. Sterling

REDACTED / CLEARED FOR PUBLIC RELEASE

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th, day of October 2011, I delivered an original of the following Defendant Jeffrey Sterling's Opposition To Government's Motion *In Limine* To Exclude Certain Evidence And Arguments to the CISO as directed by the Classified Information Protective Order issued in this case.

By: _____
Edward B. MacMahon, Jr. (VSB # 25432)
Law Office of Edward B. MacMahon, Jr.
107 East Washington Street
P.O. Box 25
Middleburg, VA 20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net

*Counsel for Jeffrey A. Sterling*

REDACTED / CLEARED FOR PUBLIC RELEASE