IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:10CR485 |
| | ) | |
| | ) | |
| | ) | Hon. Leonie M. Brinkema |
| v. | ) | |
| | ) | |
| JEFFREY ALEXANDER STERLING | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT JEFFREY STERLING'S MOTION TO COMPEL**

On October 9, 2014, Defendant Jeffrey Sterling filed a motion to compel the United States to produce all of the *Giglio* material in its possession that was set forth in the Government's previous letters to defense counsel in October 2011. (DE 324). On October 24, 2014, Mr. Sterling filed a supplemental memorandum in support of his motion to compel. (DE 328). On October 27, 2014, the Government filed its opposition to Mr. Sterling's motion to compel ("Government's Opp."). (DE 330). On November 5, 2014, the Government disclosed additional *Giglio* material to Mr. Sterling. On November 10, 2014, the Government filed a Motion *In Limine* to Exclude Cross-Examination of Certain Government Witnesses Concerning Specific Instances of Prior Conduct (DE 336) ("Motion to Exclude Cross-Examination"). In its Motion to Exclude Cross-Examination, the Government offered additional reasons why, in its view, it need not disclose the underlying documents that constituted the *Giglio* material, but rather could satisfy its *Brady* obligations by disclosing a summary of those documents and argued that Mr. Sterling should be precluded from cross-examining its witnesses about much, if not all, of the *Giglio* material it has disclosed. While Mr. Sterling will respond separately to the

1481838.1

Government's Motion to Exclude Cross-Examination, Mr. Sterling respectfully submits this reply in support of his motion to compel.

## ARGUMENT

In its opposition, the Government contends that "the law does not support production to the defense of the underlying documents." Gov't's Opp. at 2. In its Motion to Exclude Cross-Examination, the Government cites several cases not cited in its opposition to the motion to compel in an effort to support the argument that it can satisfy its obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by providing Mr. Sterling with summaries of the source documents reflecting the exculpatory material rather than the source documents themselves. The Government also argues that it has no obligation to produce the requested underlying material because it is not "admissible impeachment" under the Federal Rules of Evidence. Gov't's Opp. at 2-3. Mr. Sterling respectfully submits that the Court should reject these arguments for the following reasons.

I. **The Cases Cited by the Government Apply a Standard Not Applicable in the Pretrial Posture of this Case and Moreover the Cases are Otherwise Distinguishable**

   A. **The Cases Cited by the Government Apply a Post-Conviction Standard**

First, as an important threshold matter, all four of the cases cited by the Government involve applications for post-conviction relief and therefore apply a standard not applicable to the pretrial posture of this case. *See United States v. Moussaoui*, 591 F.3d 263, 285-88 (4th Cir. 2010) (appeal of denial of the defendant's motion to withdraw his guilty plea); *Fullwood v. Lee*, 290 F.3d 663, 686-87 (4th Cir. 2002) (considering habeas petition challenging death sentence for murder conviction); *United States v. Diaz*, 922 F.2d 998, 1007 (2nd Cir. 1990) (appeal of conspiracy convictions); *Rivera v. United States*, 494 F. Supp. 2d 383, 387-88 (E.D. Va. 2007) (considering motion to vacate sentence). In the post-conviction cases cited by the Government,

the courts applied a very high standard, *i.e.*, a required showing by the defendant that the results of the trial or plea would have been different had the exculpatory information been produced to the defense. *See Moussaoui*, 591 F.3d at 288, n.18 ("Evidence is material, and prejudice ensues for purposes of *Brady*, 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'") (internal citations omitted); *Fullwood*, 290 F.3d at 687 ("Rather, materiality under *Brady* means that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'") (internal citations omitted); *Diaz*, 922 F.2d at 1007 ("Moreover, even where there has been a *Brady* violation, a defendant is not entitled to reversal unless he can show that the delayed disclosure caused him prejudice."); *Rivera*, 494 F. Supp. 2d at 388 ("Also worth noting is that Rivera's *Brady* claim also fails . . . because it is clear none of this information was 'material,' insofar as there is no reasonable probability that its disclosure would have produced a different outcome at trial.") (internal citations omitted).

In contrast to the standard applied in the post-conviction context, where a defendant is seeking *Brady* material *before* trial, the standard is different and the court need only determine whether the evidence may be favorable to the accused, in which case it must be produced by the government. *See*, *e.g.*, *United States v. Danielczyk*, No. 1:11cr85, 2013 WL 142460, *2 (E.D. Va. Jan. 10, 2013) (citing *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (citing *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1198-1199 (C.D. Cal. 1999)).

As Judge Friedman explained in *Safavian*:

> The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed-with the benefit of hindsight-as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or

1481838.1

> evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. Because the definition of 'materiality' discussed in *Strickler* and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase. *The only question before (and even during) trial is whether the evidence at issue may be 'favorable to the accused'; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.*

233 F.R.D. at 16 (internal citations omitted) (emphasis added). If this Court were to apply the post-conviction standard, effectively, the Court would be allowing the Government to violate its obligations of disclosure, as long as those violations were not significant enough that it is anticipated they will cause reversible error. The objective of this Court should not be to allow the Government to err as much as possible without being reversed. Rather, this Court should require that the Government meet all of its disclosure obligations in full. Accordingly, the Court should require the Government to produce the underlying exculpatory information to the defense now, without regard to the Government's self-assessment of the information's materiality.

### B. The Cases Cited by the Government Are Distinguishable

Three of the four cases cited by the Government do not really address the question of summaries and simply hold that the Government did not violate *Brady* in not producing exculpatory information because the defendant in those cases already had the information in question, and the Government is not required to produce information available to the defense from other sources. *See Moussaoui*, 591 F.3d at 288, n.18 ("The *Brady* material that Moussaoui claims he was entitled to pre-plea was either produced post-plea or was cumulative to evidence that was produced. Yet, Moussaoui did not seek to withdraw his guilty plea until *after* he had

1481838.1

successfully defended against the sentence of death.") (emphasis in original);[1] *Fullwood*, 290 F.3d at 686 ("The *Brady* rule 'does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense'") (internal citations omitted); *Diaz*, 922 F.2d at 1007 ("First, there is no improper suppression within the meaning of *Brady* where the facts are already known by the defendant.").

Moreover, in at least two of these three cases on which the Government relies, the specific information was known to the defendant not because he had received it in summary form, but because the defendant had actually participated in the activity he claimed had not been disclosed; in other words, the defendant had first-hand knowledge of the information allegedly suppressed. For example, in *Fullwood*, the defendant argued that the Government violated *Brady* by failing to disclose the defendant's own statement to law enforcement on the night of the offense. 290 F.3d at 684. The court rejected that argument, finding that "Fullwood, better than anyone, knew about his cocaine use on the night prior to the stabbing and knew that he had recounted this fact to [the detective]." *Id*. at 686. Similarly, in *Diaz*, the defendant maintained that the Government violated *Brady* when it did not disclose that a witness would testify at trial that the defendant had not been in the witness's apartment during the transaction in question. 922 F.2d at 1007. The court dismissed this argument because "[i]f, in fact, as Araya testified, Diaz was not in her apartment during the [transaction], Diaz knew that fact." Unlike in *Fullwood* and *Diaz*, here the information sought by Mr. Sterling is not information known to him first-hand and therefore these cases are not on point.

---

[1] In *Moussaoui*, the exculpatory information was not produced in original form in order to comply with the Classified Information Protection Act (CIPA). 591 F.3d at 287. Here, the government is not arguing that CIPA requires the use of substitutions or summaries.

1481838.1

Finally, the Government cites one case in which the court found (post-conviction) no *Brady* violation where the Government did not disclose a psychological evaluation of its witness and other documents containing exculpatory or impeachment evidence, but where the Government had produced to the defense the substance of the evaluation and the other information in another form. *See Rivera*, 494 F. Supp. 2d at 387 and n.7. It is unclear from the *Rivera* decision what exactly was provided to the defense, but it appears that the difference between what was provided and the actual documents may have been minimal. *Id.* at 387 ("Specifically, as the . . . letter from [the AUSA] reflects, Rivera's counsel was provided with ample information-in both the letter and a report-describing Paz's criminal history, prior drug use, mental health, and affiliation with MS-13. . . . The documents that Rivera now contends the government should have provided merely reiterate what was elicited during Hunter's testimony: that Paz abused drugs, was immature, and had a long-standing affection for MS-13. The jury had before it these issues pertaining to the credibility of Paz's statement and chose, nonetheless, to convict Rivera of Diaz's murder.").

As noted in the *Danielczyk* and *Safavian* decisions, the appropriate question at this pretrial stage is whether the information is favorable to the defense and, if it is, it must be produced. The Government has offered no compelling reason for refusing to produce the source documents.

## II. The Government's *Brady/Giglio* Obligations Are Not Limited to Admissible Evidence and the Court Should Consider the Cumulative Impact of the Requested Information

The Government also argues that it is not obligated to produce the requested information because: (1) the information is not admissible impeachment under the Federal Rules of Evidence

and (2) the law requires inquiry into "each of the disclosures on an individual basis[.]" Gov't's Opp. at 2-3. The Government is mistaken on both grounds.

First, as most Circuits have recognized, the Government's *Brady/Giglio* obligations are not limited to admissible evidence, but rather the Government is obligated to produce information that might reasonably lead to admissible evidence. *See*, *e.g.*, *United States v. Morales*, 746 F.3d 310, 314-15 (7th Cir. 2014) (discussing the "majority position" that, based on *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995), the question is whether the withheld evidence might have led to some "additional evidence that could have been utilized.") (citing *Johnson v. Folino*, 705 F.3d 117, 130 (3d Cir. 2013); *Ellsworth v. Warden*, 333 F.3d 1, 5 (1st Cir. 2003) (en banc); *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002); *Bradley v. Nagle*, 212 F.3d 559, 567 (11th Cir. 2000); *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991)) (additional citations omitted). The *Morales* court also noted that the majority's position was further supported by "[t]he fact that evidence that can be used only for impeachment is subject to the *Brady* rule[.]" 746 F.3d at 315 (citing *Giglio v. United States*, 405 U.S. 150 (1972)).

Mr. Sterling recognizes that the Fourth Circuit has not squarely adopted the majority view and instead has, at least in a footnote, implied that to be "material" for purposes of a *Brady* violation analysis, the withheld information must be "admissible." *See Hoke v. Netherland*, 92 F.3d 1350, 1356, n.3 (4th Cir. 1996). In *Hoke*, the court noted that the withheld information at issue – specifically statements from three men who had previously had consensual sex with the woman the defendant was convicted of raping and murdering – was likely inadmissible under

Virginia's Rape Shield Statute (as defense counsel had acknowledged) and therefore "as a matter of law, 'immaterial' for *Brady* purposes." *Id.*[2]

Mr. Sterling respectfully submits that the *Hoke* case does not preclude a finding here that the Government must produce the underlying exculpatory documents. First, unlike in *Hoke*, the information sought here is not only potential substantive evidence, but also potential impeachment information, which, by its nature, need not be independently admissible.[3] Second, in *Hoke*, the Fourth Circuit's decision to reverse the trial court was based on its determination that the information, if produced, would not have made a difference in the outcome of the case. *Id.* at 1357 ("That Stell, a 56-year-old, single woman, had previously had sexual intercourse with Eastes and Jones, is arguably altogether irrelevant, but at the very least is not material, to whether she consented to have sex with Hoke on the night of the murder. There is, in our judgment, no chance at all that the outcome of Hoke's capital murder trial would have been different had the defense known of these prior incidents of sexual intimacy."). As discussed above in Section I.A, that is not the appropriate standard by which to analyze this question in the pretrial context.

Finally, the Government argues – without citation to any authority – that "the law requires inquiry into each of the disclosures on an individual basis to determine whether each piece of information is permissible grounds for impeachment under the Rules of Evidence." Gov't's Opp. at 3. This is incorrect. Rather, courts should consider the net effect of the evidence

---

[2] The Fourth Circuit has also recognized (in a non-*Brady* context) that many rulings on admissibility can only be meaningfully assessed in the context of trial. *See United States v. Moussaoui*, 819 F. Supp. 2d 538, 472 (4th Cir. 2004).

[3] As noted above, Mr. Sterling in his opposition to the Government's Motion to Preclude Cross-Examination will separately address the Government's argument that not only is the *Giglio* material not admissible as substantive evidence, but also that Mr. Sterling should be precluded from even cross-examining Government witnesses with this material.

and, in fact, the Government also has an obligation to do so. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 436 (1995) ("The fourth and final aspect of *Bagley* materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item by item."). As the Supreme Court has repeatedly recognized, in carrying out this obligation, prosecutors should err on the side of production. *Id.* at 439 ("This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. . . . This is as it should be.") (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure.")).

Here, the prudent and appropriate course is to disclose the underlying source documents containing exculpatory material. Once the defense has had the opportunity to review the exculpatory documents, to the extent that Mr. Sterling seeks to admit such documents into evidence, the Court can decide the appropriate evidentiary considerations.

## CONCLUSION

For the foregoing reasons, Mr. Sterling respectfully requests the Court grant his Motion to Compel.

Dated: November 18, 2014                    Respectfully submitted,

                                            JEFFREY A. STERLING

                                            By: _____/ s/_____
                                                Edward B. MacMahon, Jr. (VSB # 25432)
                                                Law Office of Edward B. MacMahon, Jr.
                                                107 East Washington Street
                                                P.O. Box 25
                                                Middleburg, VA 20118
                                                (540) 687-3902
                                                (540) 687-6366 (facsimile)
                                                ebmjr@verizon.net

1481838.1

        / s /
_____
Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered
655 Fifteenth St. N.W. Suite 900
Washington, D.C. 20005
(202) 626-5830
(202) 626-5801 (facsimile)
bpollack@milchev.com

*Counsel for Jeffrey A. Sterling*

10

1481838.1

## CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of November, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By:     / s/
      Edward B. MacMahon, Jr. (VSB # 25432)
      Law Office of Edward B. MacMahon, Jr.
      107 East Washington Street
      P.O. Box 25
      Middleburg, VA 20118
      (540) 687-3902
      (540) 687-6366 (facsimile)
      ebmjr@verizon.net

      *Counsel for Jeffrey A. Sterling*