FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 DEC 24 A 11: 30

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA,

v.

JEFFREY STERLING,

Defendant.

Case No. 1:10-CR-00485

Hon. Leonie M. Brinkema

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF NON-PARTY MICHAEL W. SHEEHY FOR PROTECTIVE ORDER

Defendant Jeffrey Sterling – a former employee of the Central Intelligence Agency ("Agency") – is charged with the unauthorized retention and disclosure of classified information, mail fraud, and obstruction of justice. *See* Indictment ¶¶ 55-75 (Dec. 22, 2010) (ECF No. 1). The prosecution has subpoenaed Michael W. Sheehy – at all pertinent times Minority Staff Director and Chief Counsel to the Permanent Select Committee on Intelligence of the U.S. House of Representatives ("House Intelligence Committee" or "Committee") – to testify at Mr. Sterling's trial which is scheduled to begin January 12, 2015. We understand the prosecution intends to question Mr. Sheehy at trial about a meeting between Mr. Sterling and Committee staff (including Mr. Sheehy) which occurred in or about August 2000.

The House Intelligence Committee is responsible for conducting oversight of the Agency, and the intelligence-related activities of other government agencies, all in furtherance of the broad intelligence-related legislative jurisdiction delegated to the Committee by the House. *See* Rule X.11(b), (c), Rules of the House of Representatives, 113th Cong. (2013) (describing jurisdiction of Committee which includes "proposed legislation, messages, petitions, memorials,

and other matters relating to" the Agency, and "[a]uthorizations for appropriations, both direct and indirect, for" the Agency), *available at* http://clerk.house.gov/legislative/house-rules.pdf; House Rule X.2 (describing general oversight responsibilities of House committees); House Rule X.3(m) (describing special oversight responsibilities of House Intelligence Committee).[1]

As a result, and as discussed below, the discussions between Mr. Sterling and Committee staff about which the prosecution seeks to question Mr. Sheehy – as well as other information Mr. Sheehy might possess regarding Mr. Sterling and matters pertinent to this case obtained by Mr. Sheehy in the course of his employment by the Committee – are absolutely privileged as to the Committee and Mr. Sheehy by the Speech or Debate Clause. *See* U.S. Const. art. I, § 6, cl. 1 ("for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place"); *Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 501, 503, 506, 507, 509 & n.16, 510, 515 (1975) (protections of Speech or Debate Clause are "absolute"); *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (privilege applies to all activities "within the 'legislative sphere'" (quoting *Gravel v. United States*, 408 U.S. 606, 624-25 (1972))); *Gravel*, 408 U.S. at 616, 618 (Clause's protections apply "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the

---

[1] The House Rules for the 106th Congress, when the meeting took place, were similar. *See* Rules X.11(b), (c), X.2, Rules of the House of Representatives, 106th Cong. (1999), *available at* http://www.gpo.gov/fdsys/pkg/HMAN-106/pdf/HMAN-106-houserules.pdf.

The Rules of the House are adopted pursuant to the Rulemaking Clause, U.S. Const., art. I, § 5, cl. 2, which is a "broad grant of authority," *Consumers Union of U.S. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1343 (D.C. Cir. 1975), *cert. denied*, 423 U.S. 1051 (1976), that sits "[a]t the very core of our constitutional separation of powers." *Walker v. Jones*, 733 F.2d 923, 938 (D.C. Cir. 1984) (MacKinnon, J., concurring in part and dissenting in part), *cert. denied*, 469 U.S. 1036 (1984). They, therefore, "have the force of law." *Shape of Things to Come v. Cnty. of Kane*, 588 F. Supp. 1192, 1193 (N.D. Ill. 1984).

Member himself"; thus, in applying Speech or Debate Clause, "a Member and his aide are to be treated as one" (quotation marks omitted)).

In this case, the Committee has elected to not assert the privilege with respect to – and expressly has authorized Mr. Sheehy to testify regarding – the meeting with Mr. Sterling.[2]

> [T]he Committee has authorized Mr. Sheehy to discuss matters involving a meeting held by Mr. Sterling with Committee staff on or about August 8, 2000, and to provide testimony about that meeting in the trial of United States v. Sterling, so long as appropriate protections are in place to prevent the public disclosure of any classified information.

Letter from Christopher Donesa, Chief Counsel, Comm., to William M. Welch II, Sr. Litig. Counsel, U.S. Att'y's Office for E.D. Va. (Oct. 12, 2011), attached as Ex. A; *see also* Letter from Mike Rogers, Chairman, and C.A. "Dutch" Ruppersberger, Ranking Member, Comm., to Eric Olshan, Deputy Chief, Pub. Integrity Section, Criminal Div., U.S. Dep't of Justice (Dec. 4, 2014), attached as Ex. B.[3]

The Committee's authorization and its non-assertion of the Speech or Debate privilege, however, do not extend to other matters. Accordingly, to the extent, if any, that the prosecution and/or counsel for the defense seek to question Mr. Sheehy at trial about Committee legislative

---

[2] Committee Rule 12 prohibits Committee staff from "discuss[ing] either the substance or procedure of the work of the Committee with any person not a member of the Committee or the Committee Staff in connection with any proceeding, judicial or otherwise, . . . except as directed by the Committee in accordance with the Rules of the House and these Rules." Rule 12, Rules of the Comm., 113th Cong. (2013), *available at* http://intelligence.house.gov/sites/intelligence.house.gov/files/documents/HPSCI%20Rules%20of%20Procedure%20-%20113th%20Congress.pdf; Rule 12, Rules of the Comm., 112th Cong. (2011), *available at* http://intelligence.house.gov/sites/intelligence.house.gov/files/documents/112th%20Committee%20Rules%20Chairman's%20Mark.pdf.

[3] We anticipate that the House will extend this authorization into the 114th Congress when it organizes itself for the 114th Congress on January 6, 2015. *See* H.J. Res. 129, 113th Cong. (2014) (enacted) ("[T]he first regular session of the One Hundred Fourteenth Congress shall begin at noon on Tuesday, January 6, 2015.").

matters that fall outside the narrow scope of the Committee's authorization, Mr. Sheehy intends to object on Speech or Debate grounds.

Under these circumstances, a protective order is appropriate and will promote the efficiency of trial. Clearly defining the scope of permissible questioning in advance of trial will greatly reduce (and hopefully eliminate) the need for counsel to interpose objections at trial. Other courts have granted similar relief in similar cases. *See* Order, *United States v. Renzi*, No. 4:08-cr-00212-DCB-BPV (D. Ariz. May 14, 2013) (ECF No. 1183), attached as Ex. C; *United States v. Suarez*, No. 5:13-cr-00420-PAG (N.D. Ohio June 9, 2014) (ECF No. 229), attached as Ex. D.

## ARGUMENT

We first provide the Court with an overview of the relevant constitutional landscape (Part I). We then explain how the Speech or Debate Clause applies here to Mr. Sheehy's trial testimony, and why a protective order is appropriate here (Part II).

### I. Constitutional Overview of the Speech or Debate Clause.

"[T]he whole American fabric has been erected" on the separation-of-powers principle. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803). "[N]one of [the three branches of the federal government] ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers." The Federalist No. 48 (James Madison).

The Founders were acutely aware that simply dividing the government into three separate branches would not ensure the vitality of this essential principle and thereby guarantee American liberty. Accordingly, they also included in the Constitution concrete mechanisms to make the separation of powers principle work, that is, mechanisms that would "provide some practical security for each [branch], against the invasion of the others." *Id.*; *see also* The Federalist No. 51

(Alexander Hamilton or James Madison) ("[T]he great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others."). One such concrete practical mechanism is the Speech or Debate Clause.

A.  **History and Purpose of the Clause.**

The Speech or Debate privilege is rooted in the struggle for parliamentary supremacy in 16th and 17th century England: "Behind these simple phrases lies a history of conflict between the Commons and the Tudor and Stuart monarchs during which successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators." *United States v. Johnson*, 383 U.S. 169, 178 (1966); *see also Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) ("In 1689, the Bill of Rights declared in unequivocal language: 'That the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament.'"). As a result of the English experience, "[f]reedom of speech and action in the legislature was taken as a matter of course" by the Founders and reflected in the Speech or Debate Clause of our own Constitution. *Id.*

"The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently. . . . [Its] 'central role' . . . is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'" *Eastland*, 421 U.S. at 502 (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)). "In the American governmental structure the clause serves the additional function of

reinforcing the separation of powers so deliberately established by the Founders." *Johnson*, 383 U.S. at 178.[4]

Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 550, 506 (1979). Accordingly, the Supreme Court has, "[w]ithout exception, . . . read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *see also McMillan*, 412 U.S. at 311; *Gravel*, 408 U.S. at 618; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

This broad reading has included extending the protections of the Clause "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel*, 408 U.S. at 618; *see also id.* at 616 (in applying Speech or Debate Clause, "a Member and his aide are to be treated as one" (quotation marks omitted)). This is so because "it is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants." *Gravel*, 408 U.S. at 616; *see also Eastland*, 421 U.S. at

---

[4] *See also Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) ("Ensuring a strong and independent legislative branch was essential to the framers' notion of separation of powers . . . . The Speech or Debate Clause is one manifestation of this practical security for protecting the independence of the legislative branch . . . ."); *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("[T]he Speech or Debate Clause . . . serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.").

reinforcing the separation of powers so deliberately established by the Founders." *Johnson*, 383 U.S. at 178.[4]

Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 550, 506 (1979). Accordingly, the Supreme Court has, "[w]ithout exception, . . . read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *see also McMillan*, 412 U.S. at 311; *Gravel*, 408 U.S. at 618; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

This broad reading has included extending the protections of the Clause "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel*, 408 U.S. at 618; *see also id.* at 616 (in applying Speech or Debate Clause, "a Member and his aide are to be treated as one" (quotation marks omitted)). This is so because "it is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants." *Gravel*, 408 U.S. at 616; *see also Eastland*, 421 U.S. at

---

[4] *See also Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) ("Ensuring a strong and independent legislative branch was essential to the framers' notion of separation of powers . . . . The Speech or Debate Clause is one manifestation of this practical security for protecting the independence of the legislative branch . . . ."); *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("[T]he Speech or Debate Clause . . . serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.").

507 (finding Senate committee aide, as well as Senators themselves, immune from suit under Speech or Debate Clause).[5]

Moreover, Speech or Debate Clause protections do not evaporate when a Member or aide leaves his or her position in Congress. *See, e.g.*, *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983) (barring questioning of former Member of Congress about legislative activities in which he engaged while a Member: "His present status with regard to public office . . . is irrelevant.").

And finally, the case law is clear that the Speech or Debate Clause applies in both the criminal and civil contexts. *See, e.g.*, *Eastland*, 421 U.S. 491 (civil suit); *Johnson*, 383 U.S. 169 (criminal trial); *Gravel*, 408 U.S. 606 (criminal investigation). Criminal and civil trials both "create[] a distraction," "force[] Members to divert their time, energy, and attention from their legislative tasks," and "may be used to delay and disrupt the legislative function." *Eastland*, 421 U.S. at 503. Moreover, whenever "judicial power is . . . brought to bear on Members of Congress[,] . . . legislative independence is imperiled." *Id.*

B.  **The Scope of the Clause.**

The protections afforded to Members by the Speech or Debate Clause, discussed in the next section below, apply to all activities "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312-13 (quoting *Gravel*, 408 U.S. at 624-25), which includes all activities that are

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters

---

[5] Because a congressional aide's privilege is derivative of the privilege of the Member or Committee for whom the aide works, it follows that the Member or Committee effectively authorizes the aide to testify about otherwise protected matters by declining to assert the privilege as to those matters. *See, e.g.*, *Gravel*, 408 U.S. at 622 n.13.

> which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625 (quotation marks omitted); *accord Eastland*, 421 U.S. at 504.

The courts, broadly construing the concept of legislative activity, "have plainly not taken a literalistic approach in applying the privilege." *Gravel*, 408 U.S. at 617. Thus, the privilege covers all facets of the legislative process, including "[c]ommittee reports, resolutions, and the act of voting," *id.* at 617, as well as committee investigations and hearings, *see Eastland*, 421 U.S. at 504-05; *McMillan*, 412 U.S. at 313. The protections of the Clause also extend to preparations for, and information gathering in furtherance of, legislative activities, because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *see also, e.g., Miller*, 709 F.2d at 530 ("Obtaining information pertinent to potential legislation . . . is one of the things generally done in a session of House, concerning matters within the legitimate legislative sphere[.]" (citation and quotation marks omitted)). Information gathering through the formal committee processes, *see, e.g., Eastland*, 421 U.S. at 504, and informal collection of information by committees and individual Members are equally protected, *see, e.g., McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("[A]cquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus . . . within the ambit of the [Speech or Debate] privilege . . . ."); *accord Miller*, 709 F.2d at 530; *Gov't of V.I. v. Lee*, 775 F.2d 514, 520-21 (3d Cir. 1985); *United States v. Dowdy*, 479 F.2d 213, 221, 224 (4th Cir. 1973).

Critically, the Speech or Debate Clause protects information-gathering in furtherance of legislative activities even if no legislation is produced. The privilege requires only that

"'legislation *could* be had'" on the subject. *Eastland*, 421 U.S. at 504 n.15 (emphasis added; quoting *McGrain*, 273 U.S. at 177). "[T]he legitimacy of a congressional inquiry [is not] to be defined by what it produces. The very nature of the investigative function – like any research – is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises. To be a valid legislative inquiry there need be no predictable end result." *Id.* at 509.

C.  **The Protections Afforded by the Clause.**

In practice, the Speech or Debate Clause privilege comprises three broad protections, only one of which is pertinent here: a non-disclosure privilege that operates to protect Members and congressional staff from being compelled to provide testimony as to privileged legislative matters. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 30 (1980) ("[B]ased on the Speech or Debate Clause, we have held that Members of Congress need not respond to questions about their legislative acts . . . ."); *United States v. Helstoski*, 442 U.S. 477, 489 (1979) ("The Clause protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972))); *Gravel*, 408 U.S. at 616 ("We have no doubt that Senator Gravel may not be made to answer – either in terms of questions or in terms of defending himself from prosecution – for the events that occurred at the subcommittee meeting."); *Miller*, 709 F.2d at 528 (privilege is an "'absolute bar to interference'" when Members are acting within the "'legitimate legislative sphere'" (quoting *Eastland*, 421 U.S. at 503)).[6]

---

[6] This non-disclosure protection also operates to preclude the compelled production or seizure of privileged legislative documents. *See, e.g., United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 655-56, 660-62 (D.C. Cir. 2007); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859-61 (D.C. Cir. 1988); *McSurely*, 553 F.2d at 1296-97; *Dombrowski v. Burbank*, 358 F.2d 821, 823-24 (D.C. Cir. 1966) (dicta), *aff'd in part, rev'd in part sub nom. Dombrowski v. Eastland*,
(*Continued* . . .)

The Supreme Court draws no distinction between the three protections provided by the Clause. Rather, it has stated unequivocally that when the Clause applies – that is, when the Member or aide is acting within the "legislative sphere," broadly construed, as discussed above – its protections are "absolute." *Eastland*, 421 U.S. at 501, 503, 509; *see also Gravel*, 408 U.S. at 623 n.14; *MINPECO*, 844 F.2d at 862; *Peoples Temple*, 515 F. Supp. at 249 ("The Supreme Court has rarely spoken with greater clarity. Once it is determined . . . that [a Member's] actions fall within the legitimate legislative sphere, judicial inquiry is at an end." (quotation marks omitted)).

### D. The Waiver and Balancing Issues.

The Supreme Court has never held that the protections of the Speech or Debate may be waived. Rather, it has stated that, assuming waiver is even possible, "waiver [could] only be found after explicit and unequivocal renunciation of the protection" because "[t]he ordinary rules for determining the appropriate standard of waiver do not apply in this setting." *Helstoski*, 442 U.S. at 490-91. In *Helstoski*, for instance, the Supreme Court rejected the prosecution's argument that the defendant Member had waived the Speech or Debate privilege for purposes of trial where the Member voluntarily testified before the grand jury ten times about his legislative activities and voluntarily produced records to the grand jury about those activities. *See id.* at

---

387 U.S. 82 (1967); *Hearst v. Black*, 87 F.2d 68, 71-72 (D.C. Cir. 1936); *Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations of the U.S. House of Representatives*, 20 F. Supp. 2d 41, 43-44 (D.D.C. 1998), *aff'd*, 194 F.3d 174 (D.C. Cir. 1999) (per curiam); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 248-49 (D.D.C. 1981).

The Clause's two other protections, which are not relevant here, are (i) an immunity from civil suits and prosecutions predicated on "actions within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312; *see also Eastland*, 421 U.S. at 491; *Dombrowski*, 387 U.S. at 82; and (ii) a non-evidentiary use privilege that bars prosecutors in a criminal case – and parties to a civil suit – from introducing "evidence of legislative acts" to advance their case against the Member, *see Helstoski*, 442 U.S. at 490; *see also Eastland*, 421 U.S. at 502-03; *Johnson*, 383 U.S. at 173-77.

480-83, 491; *see also Johnson*, 383 U.S. at 173-77 (reversing Member's conspiracy conviction because, *inter alia*, prosecution improperly cross-examined him about "the manner of preparation and the precise ingredients of [a] speech," and the Member's "motives for giving it," notwithstanding that Member previously had testified about the same legislative activity in his own defense); *Brown & Williamson*, 62 F.3d at 421 n.11 (in subpoena enforcement action against Member, rejecting argument that Member had waived protections of Clause through "statements made [voluntarily] during a radio broadcast interview"); *Pittston Coal Grp., Inc. v. Int'l Union, UMWA*, 894 F. Supp. 275, 278 n.5 (W.D. Va. 1995) (describing as "meritless" plaintiffs' argument that non-party Senator had waived protections of Clause by voluntarily disclosing certain records to defendant in litigation).

Moreover, because the protections of the Speech or Debate Clause are absolute, they are not subject to any sort of balancing, even as against the rights of criminal defendants. *See, e.g., United States v. Renzi*, 769 F.3d 731, 749 (9th Cir. 2014) (holding that right of defendant to present a defense does not override Speech or Debate protections); *United States v. Moussaoui*, Crim. No. 1:01-cr-455 (E.D. Va. Mar. 2, 2006) (ECF No. 1642) (quashing subpoena issued by defendant and directed to House Member), attached as Ex. E; Hr'g Tr. at 45:2-46:3, *United States v. Clemens*, Crim. No. 1:10-cr-223 (D.D.C. June 4, 2012) (quashing subpoenas issued by defendant and directed to House committee and committee Chairman), attached as Ex. F; Order at 2-4, *United States v. Arthur Andersen, LLP*, Crim. No. 4:02-cr-121 (S.D. Tex. May 14, 2002) (ECF No. 103) (quashing subpoena issued by defendant and directed to House committee), attached as Ex. G.

II. **Application of the Speech or Debate Clause in This Case.**

The legal principles discussed above apply in the following manner to this case.

*First*, the information Mr. Sheehy obtained at the meeting with Mr. Sterling in or about August 2000, is self-evidently Speech or Debate protected.  *See, e.g., Brown & Williamson*, 62 F.3d at 422-23 (documents voluntarily delivered to committee by private citizen protected); *Miller*, 709 F.2d at 530 (Clause protects "data" provided to Member by "[c]onstituents . . . to document their views when urging the Congressman to initiate or support some legislative action"); *Dowdy*, 479 F.2d at 221, 224 (Member's informal gathering of information from federal agencies in furtherance of legislative functions held protected); *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 54 (D.D.C. 2007) (privileged "information gathering may take the form of communications with organizations, constituents, or officials of a coordinate branch"); *id.* at 56 ("[T]he informality or passivity of the method through which Congress acquired the information did not lessen or negate the applicability of the Clause's protections."); *Webster v. Sun Co.*, 561 F. Supp. 1184, 1189-90 (D.D.C. 1983) (receipt of memorandum from lobbyist "was still well within the bounds of speech or debate privilege"), *vacated & remanded on other grounds*, 731 F.2d 1 (D.C. Cir. 1984); *Benford v. Am. Broad. Cos.*, 102 F.R.D. 208, 210 (D. Md. 1984) ("[I]nformation possessed by [unpaid, volunteer congressional committee investigators] and transmitted to, or received by, them in the execution of legislative functions, including legitimate information-gathering, is Constitutionally privileged from discovery in this lawsuit . . . ."); *United Transp. Union v. Springfield Terminal Ry. Co.*, Nos. 87-cv-03442 P & 88-cv-0117 P, 1989 WL 38131, at *1 (D. Me. Mar. 13, 1989) (Senator and Congressman's "monitoring" of a labor strike held protected); *see also generally supra* Argument, Parts I.B, I.C.

The same thing is true of other information Mr. Sheehy might possess regarding Mr. Sterling and matters pertinent to this case and obtained by Mr. Sheehy in the course of his

Committee employment. This is so because the work of House committees is inherently legislative in nature. *See* Judy Schneider, Cong. Research Serv., RS20794, The Committee System in the U.S. Congress 1 (2009) (Committees and subcommittees exist to "gather information; compare and evaluate legislative alternatives; identify policy problems and propose solutions to them; select, determine the text of, and report out measures for the full chambers to consider; monitor executive branch performance of duties (oversight); and look into allegations of wrongdoing (investigation)."), attached as Ex. H.[7] Accordingly, virtually everything committees do is protected by the Speech or Debate Clause. *See, e.g., Brown & Williamson*, 62 F.3d at 422-23 (documents voluntarily delivered to committee by private citizen protected).

*Second*, the House Intelligence Committee's decision to permit Mr. Sheehy to testify about – and to not assert the Speech or Debate Clause with respect to – the meeting between Mr. Sterling and Committee staff does not constitute a waiver of the Speech or Debate privilege, nor does it otherwise not open the door to questioning of Mr. Sheehy, by either party, beyond the scope of that authorization. *See supra* Argument, Part I.D.

*Third*, Mr. Sheehy is entitled to assert the Speech or Debate privilege with respect to questions that seek to elicit information about Committee legislative activities and that are beyond the scope of the Committee's authorization. *See supra* Argument, Part I.A.

Under these circumstances, a protective order is appropriate. By clearly defining in advance the limits to the scope of permissible questioning of Mr. Sheehy, the Court will reduce (and hopefully eliminate) the need for counsel to interpose objections at trial. Because we file this motion in advance of any actual trial appearance by Mr. Sheehy, we do not ask the Court to

---

[7] In contrast, individual Members may engage in some official activities, such as, for example, constituent casework, that is not legislative in nature and, therefore, not Speech or Debate protected. *See, e.g., Brewster*, 408 U.S. at 512.

decide now whether any particular question or line of questions seeks to elicit information that is privileged under the Speech or Debate Clause. Instead, the Court can and should rule on the permissibility of particular questions if and as counsel for Mr. Sheehy interposes objections at trial.

## CONCLUSION

For all the foregoing reasons, the Court should grant this motion for a protective order.

Respectfully submitted,

_____
Kerry W. Kircher, General Counsel
William Pittard, Deputy General Counsel
Todd B. Tatelman, Assistant Counsel
Eleni M. Roumel, Assistant Counsel
Isaac B. Rosenberg, Assistant Counsel
Kimberly Hamm, Assistant Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone:   (202) 225-9700
Facsimile:   (202) 226-1360
Kerry.Kircher@mail.house.gov

*Counsel for Non-Party Michael W. Sheehy*

December 24, 2014

## CERTIFICATE OF SERVICE

I certify that on December 24, 2014, I served a copy of the foregoing Memorandum of Points and Authorities in Support of Motion of Non-Party Michael W. Sheehy For Protective Order by first-class mail, postage prepaid, and by electronic mail (.pdf format) on each of the following:

Eric G. Olshan, Deputy Chief
Public Integrity Section of the Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW, Suite 12100
Washington, D.C. 20005
eric.olshan@usdoj.gov
*Counsel for United States*

Dennis M. Fitzpatrick, Esq.
U.S. Attorney's Office for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
dennis.fitzpatrick@usdoj.gov
*Counsel for United States*

Edward B. MacMahon, Esq.
Law Offices of Edward B. MacMahon Jr.
107 East Washington Street
P.O. Box 25
Middleburg, VA 20118
ebmjr@macmahon-law.com
*Counsel for Defendant*

Barry Joel Pollack, Esq.
Miller & Chevalier
655 Fifteenth Street, NW, Suite 900
Washington, D.C. 20005-5701
bpollack@milchev.com
*Counsel for Defendant*

Peter King Stackhouse, Esq.
219 Loyds Lane
Alexandria, VA  22302
pstackhouse@comcast.net
*Counsel for James Risen*

_____
Kerry W. Kircher