SE~~CRET~~

**DECLASSIFIED**

/ / SE~~CRET~~ FRP: , , , , , , ,

-----------------------------------------------------------------

98 3775856 ASR PAGE 001
TOT: 182112Z DEC 98 LANGLEY 201443

-----------------------------------------------------------------

SE~~CRET~~
182113Z LANGLEY 201443
TO: CIA OFFICE #5 INFO CIA OFFICE #2

FROM:

CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT: PROPOSAL TO APPROACH IRANIAN SUBJECT 1 IN THE CP 1 OPERATION

REF: 201804Z NOV 98.

TEXT:

1. ACTION REQUIRED: COMMENTS PER BELOW.

2. AS DISCUSSED WITH MANAGEMENT DURING MR. S.'S RECENT TRIP, CP WOULD LIKE TO SUGGEST THAT WE APPROACH IRANIAN SUBJECT 1 IN THE CP 1 OPERATION. THIS OPERATION IS DESIGNED TO INTRODUCE FLAWED-BUT-AUTHENTIC-LOOKING PLANS FOR A NUCLEAR WEAPONS FIRE SET INTO THE IRANIAN PROGRAM, WITH THE INTENTION OF ENCOURAGING THE IRANIANS TO INVEST CONSIDERABLE TIME, MONEY AND EFFORT IN PURSUING THIS TECHNICAL DEAD END. DEPENDING ON HOW THE CASE DEVELOPS, WE MIGHT ALSO OBTAIN VALUABLE INFORMATION ON THE IRANIAN NUCLEAR WEAPONS PROGRAM AND SUCCED IN PARTIALLY DISCREDITING FORMER SOVIET NUCLEAR TECHNOLOGY AS WELL.

3. OVER THE PAST TWO YEARS CP DIVISION HAS USED THE EXPERTISE OF A FORMER SOVIET FIRE SET DESIGNER, HUMAN ASSET 2 (HA 2) — TO DEVELOP DETAILED PLANS FOR A CURRENTLY DEPLOYED RUSSIAN FIRE SET, THE TBA-480. THESE PLANS HAVE IN TURN BEEN CORRUPTED BY THE NATIONAL LABORATORY (LAB) SO THEY STILL LOOK GENUINE BUT WILL NEVER WORK. CIA OFFICE #2 ASSET MERLIN (M) IS ANOTHER FORMER SOVIET NUCLEAR WEAPONS ENGINEER, AND WAS INVOLVED WITH THE ASSEMBLY OF THE DEVICES AT ARZAMAS-16. HE HAS BEEN TRAINED AND VETTED OPERATIONALLY AND WILL BE THE VEHICLE FOR INTRODUCING THE FIRE SET DESIGN TO THE IRANIANS, CITING HIS TRUE BACKGROUND AND A LEGEND ABOUT SERVING AS AN INTERMEDIARY FOR THE (UNNAMED AND UNAVAILABLE) HA 2. M HAS RAISED HIS PROFILE WITH IRANIAN NUCLEAR-RELATED INDIVIDUALS AND INSTITUTIONS BY MAIL, INTERNET AND CONFERENCE ATTENDANCE FOR THE PAST YEAR, AND HAS NOW BEEN TRAINED ON THE FIRE SET PLANS.

4. WE BELIEVE THAT IRANIAN SUBJECT 1 IS AN IDEAL CANDIDATE FOR AN APPROACH BY M, GIVEN HIS NEW PUBLIC POSITION AND WHAT WE KNOW ABOUT HIS ROLE IN THE IRANIAN COVERT WEAPONS PROGRAM. REF INDICATED THAT HE

GOVERNMENT
EXHIBIT
16
1:10CR485

C02911

DECLASSIFIED

SECRET

ANTICIPATED ARRIVING IN VIENNA IN MID-DECEMBER TO ASSUME HIS NEW
DUTIES.

THIS WILL BE ESSENTIALLY A WALK-IN SCENARIO, BUT M WILL HAVE COPIES
OF HIS NUMEROUS EXCHANGES WITH IRANIAN ENTITIES AND WILL EXPLAIN THAT
HE HAS BEEN LOOKING FOR JUST THE RIGHT PERSON TO APPROACH WITH HIS
REAL OFFER, SOMETHING HE COULD NOT DO OVER THE NET.  HE WILL HAND
OVER THE FIRE SET PLANS AND A PARTS LIST, SAYING THAT THEY ARE LIKE
THE DEMONSTRATION VERSION OF SOFTWARE, ACCURATE BUT INCOMPLETE.  IF
THE IRANIANS WANT THE REST OF THE STORY THEY CAN CONTACT HIM VIA HIS
P.O. BOX AND THEN PAY HIM HANDSOMELY.  IN FACT, WE WILL BE SATISFIED IF IRANIAN
SUBJECT 1 SIMPLY ACCEPTS THE STORY AND THE PLANS AND SENDS THEM BACK FOR
STUDY, SINCE THIS WILL BE A SUCCESSFUL PLANT OF DISINFORMATION.  MORE
OPTIMISTICALLY, THE IRANIANS MAY DECIDE TO COME BACK TO  M  WITH
QUESTIONS AND ASK FOR FUTURE MEETINGS, WHICH WOULD PROVIDE US
VALUABLE INFORMATION ABOUT THEIR M.O. AND PERHAPS FURTHER INDICATIONS
OF WHERE EXACTLY THEY ARE IN THEIR NUCLEAR WEAPONS PROGRAM.  THE
MAJOR HURDLE HERE IS THAT NEITHER WE NOR  M  WANT HIM TO GO TO IRAN,
WHICH WOULD ALMOST CERTAINLY BE THEIR REQUEST, BUT IF WE HAVE PLANTED
THE INFORMATION AND STRUNG THEM ALONG A BIT BEFORE FACING THIS ISSUE
WE WOULD BE PREPARED TO LET THE OPERATION END AT THAT POINT IF
NECESSARY.

     5.   THESE ARE PRELIMINARY THOUGHTS ABOUT AN APPROACH TO  IRANIAN SUBJECT 1 AND
OF COURSE SUBJECT TO EXTENSIVE REFINEMENT.  WE WELCOME  CIA OFFICE #5 INPUT,
PARTICULARLY IN REGARD TO THE BEST WAY TO FIND AND MEET    IRANIAN SUBJECT 1
        IN A NON-ALERTING WAY
                                                           ANY
PUBLICATION OR INTERNET MENTION OF HIS NEW JOB WOULD BE PARTICULARLY
HELPFUL TOWARDS EXPLAINING HOW  M  FOUND HIM.


     6.  FILE:     CP 1

CL BY:  ID #  ,  CL REASON:  1.5 (C);  DECL ON:  X1;  DRV FROM:

CABLETYPE:
>
RELNO:      000000590
ORIG: CP,  (          MR. S.      );  AUTH:   CIA OFFICER 5   ; COORD:
JEFFREY STERLING,          TELECORD 18 DEC,        TELECORD 18 DEC; REL:
   DAVID SHEDD   ; CL BY   ID #  .

END OF MESSAGE                        SECRET

DECLASSIFIED



SECRET

**DECLASSIFIED**

/ /                                           SECRET                    FRP: , , , , , , ,

------------------------------------------------------------------
99 4056001   ASP              PAGE 001          IN 4056001
                    TOR: 192138Z JAN 99  CIA OFFICE #2 6899
------------------------------------------------------------------

S E C R E T 192137Z JAN 99

CITE CIA OFFICE #26899

TO: PRIORITY   LANGLEY

FOR:

                    CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT:  MERLIN (M) - 12 JAN MEETING

REF: NONE

TEXT:

   1.

   2.  ON 12 JAN 99, C/O JEFFREY STERLING HELD A MEETING WITH
      M        AT AN UPPER WEST SIDE HOTEL IN MANHATTAN.  DURING
THE TWO AND A HALF HOUR HOTEL ROOM MEETING,  M  UPDATED STERLING ON THE
ONGOING YET SOMEWHAT SLOW EFFORT ON M 'S PART TO ESTABLISH CONTACT
WITH IRANIANS WHO MAY BE INTERESTED IN HIS BACKGROUND.  THE REMAINDER
OF THE MEETING WAS USED TO ESTABLISH RAPPORT. THERE WERE NO
INCIDENTS BEFORE, DURING OR AFTER THE MEETING. STERLING SCHEDULED THE
NEXT MEETING FOR 2 FEB.

   3.  M  REPORTED THAT DURING HIS INTERNET SEARCHES, HE CAME
ACROSS A WEB SITE FOR IRANIAN INSTITUTION 1.  WITHIN THE IRANIAN
INSTITUTION 1 SITE, HE FOUND INFORMATION ON
        AN ORGANIZATION        .  M  WAS UNSURE WHAT THE
PURPOSE OF THIS ORGANIZATION WAS, BUT HE SENT TWO INTRODUCTION EMAILS
TO BOTH THE DIRECTOR AND ANOTHER INDIVIDUAL.  M  COULD NOT RECALL
THE NAMES OF THE INDIVIDUALS.  HE TOLD C/O THAT HE COMPOSED THE EMAIL
MESSAGES THROUGH USING LINKS TO THEIR EMAIL ADDRESSES.  HE ADDED THAT
HE WILL DO ADDITIONAL RESEARCH TO GATHER MORE INFORMATION ON THIS
ORGANIZATION.  TO DATE, M  HAS NOT RECEIVED ANY RESPONSES TO THOSE
TWO INQUIRIES.
   4.  M  PROVIDED C/O WITH A COPY OF A RESPONSE TO A 27 DEC 98
INQUIRY HE SENT TO  IRANIAN INSTITUTION 2  .  ON 27 DEC 98  M
WROTE:

"DEAR SIR/MADAM:
I AM AN EXPERIENCED RESEARCHER WITH MANY YEARS OF EXPERIENCE IN

SECRET

**DECLASSIFIED**

GOVERNMENT
EXHIBIT
17
1:10CR485

C02914



SE/RET    **DECLASSIFIED**

                                    RUSSIA.  I AM LOOKING
FOR CONTACTS WITH YOUR        DEPARTMENT.  MY MAJOR IS PRACTICAL
NUCLEAR PHYSICS.
BEST REGARDS, (SIGNED  M )

THE RESPONSE (2 JAN 99):

"DEAR MR.   M  :
YOU CAN CONTACT THE      **EMPLOYEES OF**      **IRANIAN INSTITUTION 2**
THROUGH OUR HOME PAGE.
**IRANIAN INSTITUTION 2** "

   M  SAID THAT HE WILL SEND INQUIRIES AS INSTRUCTED BY THE RESPONSE.

      5.   M  WAS SOMEWHAT ENCOURAGED WITH THE RESPONSE HE RECEIVED
BUT NOTED SOME FRUSTRATION WITH THE SLOWNESS, OR LACK OF RESPONSES
THAT HE HAS RECEIVED TO DATE.   M  SAID THAT AT THE ONSET OF THE
PROJECT, HE FELT THAT HE WOULD RECEIVE NUMEROUS RESPONSES AND THE
WHOLE PROJECT WOULD PROCEED RATHER QUICKLY.  C/O EXPLAINED THAT THE
PROJECT IS A RATHER TIME CONSUMING EFFORT AND THAT RESULTS MAY NOT BE
QUICKLY FORTHCOMING.  C/O FURTHER REITERATED THAT THE MOST IMPORTANT
THING WAS THAT  M  GET HIS NAME AND QUALIFICATIONS OUT THERE; THE
RESPONSES MAY BE SLOW, BUT CONSIDERING THE PROJECT, IT IS BETTER TO
PROCEED IN A SLOWER MANNER AS OPPOSED TO A HURRIED AND POSSIBLY
COUNTERPRODUCTIVE EFFORT.   M  AGREED AND SAID HE WOULD CONTINUE WITH
HIS EFFORTS.

      6.  HE GAVE C/O COPIES OF TWO LETTERS THAT HE RECENTLY SUBMITTED
TO                     **IRANIAN INSTITUTION 3**
           AND A FOLLOW-UP LETTER TO          **IRANIAN B**
                              .  THE LETTERS FOLLOWED THE
SAME FORMAT AS HIS OTHER INQUIRY LETTERS, BUT IN THIS GROUP HE DID
INCLUDE INFORMATION ON THE          ARTICLE ABOUT RUSSIAN SCIENTISTS
BEING ACTIVELY SOUGHT BY IRAN.

      7.  REGARDING HIS INTERNET SEARCHES,  M  REPORTED THAT HIS
SEARCHES HAVE BECOME LESS TIME CONSUMING AS SOME OF THE IRANIAN SITES
HAVE BEEN REDESIGNED IN ORDER TO DECREASE THE TIME IT TAKES TO ACCESS
THEM.   M  ALSO OPENED ANOTHER EMAIL ACCOUNT THROUGH HOTMAIL.    M
OPENED THE NEW ACCOUNT SO HIS FAMILY, WHO ALSO UTILIZES HIS AOL
ACCOUNT, CANNOT ACCESS HIS EMAIL RELATED TO THE PROJECT.  C/O AGREED
WITH  M' 'S REASONING AND INSTRUCTED  M  TO MAKE THE APPROPRIATE
CHANGES TO THE CLASSIFIED ADVERTISEMENTS THAT HE PLACED SOME TIME
AGO.  THOSE ADS WERE PLACED IN TWO SEPARATE IRANIAN SITES
                     . THE CONTACT INSTRUCTIONS FOR
THESE SITES LISTED  M 'S PREVIOUS EMAIL ACCOUNT.   M  SAID THAT HE
WILL ALSO CONSIDER UPDATING HIS INFORMATION ON THOSE SITES TO MAKE
THEM MORE ATTRACTIVE.  C/O TOLD  M  THAT UPDATING THE ADS IS
APPROPRIATE BUT TO TAKE CARE IN NOT MAKING THE ADS APPEAR SUSPICIOUS.

      8.  THE REMAINDER OF THE MEETING FOCUSED ON RAPPORT BUILDING
BETWEEN C/O AND  M .  C/O TOOK THE TIME TO EXPLAIN TO  M
                            HOW THERE MAY BE SOME SUBTLE
DIFFERENCES BETWEEN THE WAY THE PREVIOUS HANDLING OFFICER (
  MR. W. ) AND HE (C/O) WOULD CONDUCT MEETINGS.   M  AGREED TO MOVING
THE MEETING VENUES                          .  AT THIS
POINT,  M  PROVIDED C/O WITH STATEMENTS FOR PHONE BILLS AND POSTAGE
RELATED TO HIS INTERNET SEARCHES AND INQUIRY LETTERS.

      9.

                        **DECLASSIFIED**

                         SE/RET

                                                        C02915



SECRET
**DECLASSIFIED**

10.   PLANS:  C/O IS ENCOURAGED THAT  M  CONTINUES TO SHOW AN
EAGERNESS AND RESOURCEFULNESS WITH REGARD TO THE PROJECT.  THOUGH HE
HAS BEEN SOMEWHAT FRUSTRATED, HE IS UNDERSTANDING OF THE FACT THAT
THIS IS THE NATURE OF THE PROJECT.  C/O INSTRUCTED  M  TO CONTINUE
HIS EFFORT VIA THE INTERNET AND LETTERS.  C/O SCHEDULED THE NEXT
MEETING FOR 2 FEB AT ANOTHER UPPER WEST SIDE HOTEL.
     11.   FILE:     CP 1      DECL ON: X1, CL REASON: 1.5(C), CL BY:
   ID #   DRV               .

END OF MESSAGE                      SECRET



SECRET

**DECLASSIFIED**

/  /                              SECRET                 FRP:  , , , , , , ,

------------------------------------------------------------------------
--
99 4243491    ASP              PAGE 001          IN 4243491
                      TOR: 041728Z FEB 99  CIA OFFICE #2 6932
------------------------------------------------------------------------
--

S E C / R E T 041727Z FEB 99

CITE CIA OFFICE #2 6932

TO:  PRIORITY   LANGLEY

FOR:

                    CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT:  MERLIN (M) - 2 FEB MEETING; DETAILS ON CONTACT WITH      MERLIN (M)

REF:  CIA OFFICE #2 6899| 99 4056001 |

TEXT:


    2.  SUMMARY:  ON 2 FEB 99, C/O JEFFREY STERLING MET WITH      M
AT A MIDTOWN MANHATTAN HOTEL.  DURING THE MEETING,  M  PROVIDED
DETAILED INFORMATION ON RECENT RESPONSES HE RECEIVED TO HIS
EMAIL/DIRECT MAIL EFFORTS .   M  REPORTED THAT HE RECEIVED POSITIVE
RESPONSES FROM              IRANIAN INSTITUTION 4         WHICH
REQUESTED HIS RESUME AND ADDITIONAL INFORMATION.   M  WAS EXCITED
ABOUT FINALLY RECEIVING A RESPONSE, BUT NOTED SOME HESITANCY IN THE
DIRECTION THE PROJECT SHOULD NOW TAKE.  C/O AND  M  THEN DISCUSSED
THE TYPE OF RESPONSE THAT SHOULD BE SENT TO    IRANIAN INSTITUTION 4 IN ORDER TO
PROCEED FORWARD.


    3.   M  REPORTED ON HIS LATEST EFFORTS TO CONTACT INDIVIDUALS OF
INTEREST FOR THE    CP 1    PROJECT VIA THE INTERNET AND DIRECT MAIL.
BASED ON PREVIOUS SEARCHES,  M  FORWARDED A NOTE TO
    IRANIAN C     WHO IS THE DIRECTOR OF THE PREVIOUSLY NOTED
                    ORGANIZATION                AT        IRANIAN
INSTITUTION 1 (II-1).  ( M  MISTAKENLY REPORTED     THE WRONG NAME OF THE ORGANIZATION
                    AT IRANIAN INSTITUTION 1
     ).   M  ALSO PROVIDED INQUIRY LETTERS THAT HE HAS SENT TO
OTHER              MEMBERS AT IRANIAN INSTITUTION 1 .   M  OPINED
THAT IT MIGHT BE BENEFICIAL TO SEND MORE ENTICING LETTERS TO PEOPLE
IN SUCH POSITIONS.  C/O AGREED, BUT SAID THAT FOR THE MOMENT IT MAY
BE BEST TO FOCUS ON THE MORE ACTIVE CORRESPONDENCE.  M 'S 17 JAN
EMAIL FOLLOWS:

**DECLASSIFIED**

SECRET

GOVERNMENT
EXHIBIT
18
1:10CR485

C02918

DECLASSIFIED

SECRET

"DEAR MR    IRANIAN C
         I WOULD LIKE TO CONTACT TO SOMEBODY FROM YOUR            DEPT.  I
AM A FORMER ENGINEER/RESEARCHER FROM
                     RUSSIA.  I WORKED ON HUGE PROJECTS FOR REMOTE
CONTROL SYSTEMS.  YOU CAN FIND MORE INFORMATION ABOUT INSTITUTE ON
ITS WEBSITE:                    .
THANK YOU VERY MUCH FOR YOUR TIME AND COOPERATION.
   M
P.S. THE SECOND TIME APPLYING"

IN RESPONSE,  M  RECEIVED THE FOLLOWING DATED 17 JAN FROM EMAIL
ADDRESS                            :

"DEAR   M
      .  THANK YOU FOR YOUR MAIL.  I HAVE FORWARDED YOUR LETTER TO
         DEPT.  AND YOU WILL BE INFORMED IN THE FUTURE.  BUT YOU CAN
CONTACT WITH THE DEPARTMENT YOURSELF BY THE E-MAIL ADDRESS GIVEN
BELOW.  THIS E-MAIL BELONGS TO CHAIRPERSON OF THE DEPT.
                               IRANIAN D
             EMAIL ADDRESS
SINCERELY YOURS
;      IRANIAN E
ASSISTANT DIRECTOR"

  M  PROVIDED INFORMATION ON THE ORG. AT I.I.1, HOWEVER THERE WAS NO LISTING
FOR          IRANIAN D      ).  ON 26 JAN,  M  RECEIVED THE FOLLOWING
EMAIL FROM    EMAIL
              ADDRESS              :

"DEAR   M  ,
ACCORDING TO YOUR RECENT LETTER, PLEASE SEND US YOUR RESUME AND MORE
INFORMATION ABOUT YOUR EXPERIENCE AND ABILITIES.
BEST REGARDS
;
]    DIVISION OF IRANIAN INSTITUTION 4

MUST NOTE THAT IT IS NOT CLEAR WHETHER THIS EMAIL IS A RESPONSE TO
 M 'S EMAIL INQUIRIES TO IRAN. INST. 1 OR FROM THE MANY OTHER INQUIRIES
HE HAS SENT VIA EMAIL OR DIRECT MAIL, INCLUDING THE SUMMER '98
EXCHANGES WITH    Iranian F        .  IT IS CERTAINLY POSSIBLE THAT
INDIVIDUALS AT THE  THE ORG. AT I.I.1 REFERRED M'S INQUIRY TO   IRAN. INST. 4.  IN
RESPONSE,  M  SENT THE FOLLOWING ON 27 JAN:

"DEAR SIR/MADAM:                      :
NO PROBLEM WITH SENDING RESUME.  BUT I PREFER TO DO IT BY MAIL,
CONFIDENTIALLY.                      :
PLEASE GIVE ME ANY ADDRESS, PO OR SOMETHING ELSE.
BEST REGARDS, (HERE  M  ONLY ENTERED     INITIALS)"

ON 30 JAN,  M  RECEIVED THE FOLLOWING, ALSO FROM   EMAIL
        ADDRESS     .

"DEAR   M  ,
OUR MAIL ADDRESS IS:
      IRANIAN F          ,
  IRANIAN INSTITUTION 4 :
        STREET
        ADDRESS
TEHRAN, IRAN.

BEST REGARDS"

SECRET

DECLASSIFIED

DECLASSIFIED

SECRET

4.  M  WAS CERTAINLY EXCITED TO RECEIVE THE ABOVE RESPONSES,
HOWEVER, HE NOTED SOME CONCERN THAT THE EMAILS MAY BE COMING FROM
IRANIAN INTELLIGENCE.  M  SAID THAT SOME STRANGE THINGS HAVE BEEN
HAPPENING SINCE HE RECEIVED THE FIRST RESPONSE.  ON TWO OCCASIONS,
 M  HAS BEEN UNABLE TO OPEN HIS HOTMAIL ACCOUNT.  ON BOTH OCCASIONS,
HE RECEIVED ERROR MESSAGES STATING "INTRUSION DETECTED".  M  SAID
THAT IT WAS EXPLAINED TO HIM THAT EVIDENTLY AT LEAST TWO PEOPLE HAD
TRIED TO OPEN THE ACCOUNT.  AFTER SOME DELAY,  M  WAS ABLE TO OPEN
HIS EMAIL ACCOUNT.  ALSO,  M  IS SUSPICIOUS THAT THERE IS NO NAME
SIGNED ON EITHER OF THE EMAILS FROM IRAN. INST. 4.  IN THAT SAME REGARD,
 M  WANTED TO KNOW WHERE THE PROJECT STOOD AND IF WE WERE READY TO
CONTINUE WITH A RESPONSE FROM HIM.  C/O EXPLAINED THAT EVERYTHING WAS
WORKING IN ACCORDANCE WITH THE PLAN.  C/O SAID THAT BEFORE THE
PROJECT COULD PROCEED ALL ASPECTS HAD TO BE CONSIDERED.

5.  M  THEN RAISED CONCERN ABOUT HIS PROFILE.  M  SAID THAT IT
MAY BE APPROPRIATE TO CHANGE THE PROFILE IN HIS RESUME AS IT
INDICATES INFORMATION THAT WILL NOT BE ABLE TO WITHSTAND THE SCRUTINY
WHICH MAY COME FROM THE IRANIANS.  M  WAS PARTICULARLY CONCERNED
ABOUT THE SCIENTIFIC ASPECT OF HIS RESUME THAT HE SAID WAS NOT
ENTIRELY ACCURATE.  M  SAID THAT THE INFORMATION ON HIS RESUME
RELATING HIS EXPERIENCE WITH          ARZAMAC 16 IS TOO SCIENTIFIC AND
THEY WOULD KNOW HE DID NOT HAVE SUCH EXPERIENCE IF THEY SHOULD CHECK.
C/O SAID THAT THERE SHOULD NOT BE MUCH CONCERN WITH REGARD TO WHAT IS
ON THE RESUME, BECAUSE THE OVERALL PURPOSE IS TO PRESENT  M  AS
SOMEONE WITH A BUSINESS OPPORTUNITY AND NOT SOMEONE SEEKING
EMPLOYMENT.  C/O EXPLAINED THAT THE RESUME WOULD ONLY BE NECESSARY TO
SHOW THE IRANIANS THAT HE ( M ) DOES HAVE THE NECESSARY BACKGROUND
AND AT LEAST A BASIC KNOWLEDGE OF THE ITEMS AND INFORMATION HE CAN
MAKE AVAILABLE TO THEM.  M  UNDERSTOOD, BUT STILL EXPRESSED
HESITANCY IN SENDING HIS RESUME.

6.  C/O AND  M  DISCUSSED THE BEST FORM OF RESPONSE THAT SHOULD
BE SENT.  M  OPINED THAT IT WOULD BE BEST TO GET A RESPONSE OUT AS
SOON AS POSSIBLE CONSIDERING THE QUICK RESPONSES THAT WERE SENT TO
HIM.  BEING EVER CAUTIOUS,  M  THEN EXPLAINED WHY HE SIGNED HIS 27
JAN EMAIL WITH ONLY          INITIALS AS OPPOSED TO FULL NAME.  M  SAID
THAT IN ANY MAIL RESPONSE, HE WILL ONLY USE          INITIALS SO THAT IF
THE LETTER REACHES THE WRONG HANDS, NO          CONNECTION CAN BE MADE TO
HIM.  HE SAID THAT ONLY     IRANIAN F     OR SOMEONE ELSE FAMILIAR WITH
HIS EMAIL SHOULD BE ABLE TO MATCH          INITIALS WITH THE LETTER AND
EMAIL.  C/O TOLD  M  THAT THE BEST RESPONSE MAY BE ONE IN WHICH  M
CLARIFIES HIS REASON FOR CONTACTING     IRANIAN F     'S ORGANIZATION AND
THE OTHERS.  A LETTER FROM  M  CAN EXPLAIN THAT HE ( M ) IS NOT
INTERESTED IN EMPLOYMENT, BUT RATHER A BUSINESS DEAL FOR THOSE IN
IRAN WHO MAY BE PARTICULARLY INTERESTED.  THE LETTER CAN EXPLAIN THAT
 M , THROUGH HIS BACKGROUND AND CONTACTS SINCE HE DEPARTED RUSSIA,
HAS PROVIDED HIM WITH ACCESS TO TECHNOLOGY AND INFORMATION WHICH MAY
PROVE HELPFUL TO IRAN'S EFFORTS IN THE FIELD OF NUCLEAR ENGINEERING.
IN THIS TONE, THE LETTER SHOULD BE ENOUGH TO PROMPT THE IRANIANS TO
CONTINUE THEIR DIALOG WITH  M  AND POSSIBLY REQUEST A MEETING WITH
 M  TO DISCUSS THE DEAL.  IN EXPLAINING THE APPROPRIATE TYPE OF
RESPONSE, C/O EMPHASIZED TO  M  THAT ONCE THE IRANIANS REALIZE THAT
HIS ( M 'S) INTEREST IS BUSINESS AS OPPOSED TO EMPLOYMENT, THE NEED
AND IMPORTANCE OF A RESUME WILL LESSEN, NEGATING THE POSSIBILITY OR
NEED OF AN EXTENSIVE BACKGROUND INVESTIGATION.  C/O INSTRUCTED  M  TO
CONTINUE HIS WORK ON A LETTER TO SEND TO IRAN. INST. 4 AND THAT HE SHOULD
BE PREPARED TO SEND A RESUME ALONG.

7.  PLANS:  CONSIDERING THIS IS ESSENTIALLY THE SECOND TIME THAT

SECRET



DECLASSIFIED

**DECLASSIFIED**

SECRET

M HAS HAD CORRESPONDENCE WITH   IRANIAN F   , WE BELIEVE THAT SOME
TYPE OF RESPONSE SHOULD BE SENT AS SOON AS POSSIBLE IN ORDER TO KEEP
TAKE FULL ADVANTAGE OF THIS LATEST ROUND OF EXCHANGES.  THAT SAID,
NOW MAY NOT BE THE OPPORTUNE TIME TO ACTUALLY SEND DETAILS ABOUT WHAT
M CAN PROVIDE PRIOR TO THE REQUISITE APPROVALS BEING OBTAINED FROM
THE HQS END.  IN THE INTERIM HOWEVER, C/O HAS SUGGESTED THAT M SEND
AN EMAIL EXPLAINING THAT HE WILL SEND A LETTER WITH THE REQUESTED
INFORMATION, BUT THAT HE MAY NEED SOME TIME TO GATHER IT.  ONCE A
CORRESPONDENCE IS SENT, M WILL NOTIFY.  IRANIAN F   VIA EMAIL AND
REQUEST CONFIRMATION OF ITS RECEIPT.  M WAS NOT ENTHUSIASTIC ABOUT
SUCH AN INTERIM LETTER, BUT THIS MAY BE THE ONLY OPTION AT THIS
POINT.  C/O WILL CONTACT M ON 5 FEB WITH FURTHER INSTRUCTIONS ON
HOW TO PROCEED.  A MEETING CAN BE SIGNALED FOR 6 FEB TO HAMMER OUT
DETAILS OF A CORRESPONDENCE TO BE SENT TO IRAN. INT 4 REQUEST HQS COMMENTS
REGARDING THE ABOVE.

    8.  FILE:    CP 1     DECL ON: X1, CL REASON: 1.5(C), CL BY:
    ID # DRV

END OF MESSAGE                          SECRET

**DECLASSIFIED**

SECRET

C02921

SECRET

**DECLASSIFIED**

/ / SECRET FRP: , , , , , , ,

------------------------------------------------------------------------
--
99 4367202    ASP              PAGE 001          IN 4367202
                       TOR: 162052Z FEB 99   CIA OFFICE #2 6954
------------------------------------------------------------------------
--

S E C R E T 162053Z FEB 99

CITE CIA OFFICE #2 6954 (MR. S. 2 ACTING)

TO:  PRIORITY    LANGLEY   .

FOR:

                       CLASSIFIED PROGRAM NO.1 (CP 1)


SUBJECT:  MERLIN (M) - BRIEF MEETING ON 6 FEB

REF:  CIA OFFICE #2 6932| 99 4243491 |

TEXT:

     1.  ACTION REQUIRED:  REQUEST HQS INPUT ON AN APPROPRIATE
RESPONSE TO BE FORWARDED BY      M      PER BELOW.

     2.  ON 6 FEB, C/O JEFFREY STERLING HELD A BRIEF ENCOUNTER WITH
      M        ' AT AN UPPER WEST SIDE COFFEE SHOP IN MANHATTAN.
DURING THE MEETING,  M  PASSED A PROPOSED RESPONSE LETTER TO THE MOST
RECENT EMAIL CORRESPONDENCE HE HAS RECEIVED FROM IRAN (REF).  DURING
THE MEETING, C/O INSTRUCTED  M  TO CONTINUE HIS EFFORTS DIRECTED AT
OTHER IRANIANS WHO MAY BE INTERESTED IN HIS CREDENTIALS AND THAT AN
APPROPRIATE RESPONSE WILL BE FORMULATED.

     3.  FOLLOWING IS THE VERBATIM TEXT OF THE LETTER THAT  M
PROPOSES (PASSED TO  CIA OFFICER 5  DURING C/O TDY TO HQS AREA):

"DEAR MR.   IRANIAN F  :

     I AM APPLYING TO YOU TO TELL MORE ABOUT MY EXPERIENCE AND
ABILITIES ACCORDING TO RECENT E-MAIL FROM   A DIVISION OF IRANIAN INSTITUTION 4.
HONESTLY SPEAKING, AT THIS TIME I AM NOT LOOKING ANY MORE FOR JOB
OPPORTUNITIES BECAUSE I CHANGED MY MIND BUT ADDITIONALLY TO IT I HAVE
A GREAT BUSINESS PROPOSITION FOR YOU OR PEOPLE WHO CAN BE INTERESTED
IN IT.  I HAVE BEEN GETTING AN EXCELLENT AND USEFUL INFORMATION
RELATED TO MY PREVIOUS EXPERIENCE.  THAT IS NOT COMPLETED BUT ALREADY
THIS REAL DEVICE HAS DOCUMENTATION, MATERIAL'S DESCRIPTION AND SOME
OTHER ASPECTS.  THAT, IT SEEMS LETS TO PRODUCE THEM IN THE FUTURE.
THIS DEVICE IS USED FOR INITIATION OF GAS DYNAMIC PROCESSES TO GET AN
APPROPRIATE STARTING ENVIRONMENT FOR A FAMOUS REACTION.  AT THIS TIME
I AM NOT ON EXPERT LEVEL IN NP BUT I WORKED OVER 20 YEARS IN THIS
FIELD, MOST OF THEM IN THE SECONDARY NUCLEAR PRODUCTION, AND I CAN DO
THIS EVALUATION PROPERLY.

SECRET

**DECLASSIFIED**

GOVERNMENT
EXHIBIT
19
1:10CR485

C02926

**DECLASSIFIED**

SECRET

I AM SURE THIS ON CAN SAVE A LOT OF MONEY ON YOUR RESEARCH AND DESIGN
EXPENSES.  THAT IS ONE OF MOST IMPORTANT AND SOPHISTICATED DEVICES IN
A TECHNOLOGICAL CHAIN.
ALSO LET ME TO TELL YOU ABOUT MYSELF.
CURRENTLY, IN THIS COUNTRY, I HAVE BEEN WORKING AS A
                    .  YOU UNDERSTAND I HAD TO CHANGE MY PROFILE
BECAUSE MY PREVIOUS PROFESSION IS ABSOLUTELY NOT HOT THERE AND I HAD
NO CHANCE WITH MY BROKEN ENGLISH TO FIND ANY APPROPRIATE POSITION.
BUT WHEN I WORKED IN INSTITUTE WE USED SOME PROGRAMMING LANGUAGES FOR
COMPLICATED CALCULATIONS AND STATISTIC DEVELOPMENT AND IT HELPED ME
TO FIND A GOOD JOB WITH A PERFECT SALARY AND SECURE FUTURE.  THANKS A
GOD FOR THAT.  IN PAST I WORKED ALSO AT THE SECONDARY NUCLEAR
ASSEMBLY PRODUCTION
I AM THINKING THAT IS GOOD ENOUGH FOR FIRST IMPRESSION.

THANK YOU VERY MUCH FOR YOUR TIME, COOPERATION AND FUTURE ASSISTANCE.

BEST REGARDS, ( M      INITIALS)"

    4.  M HAS OBVIOUSLY PUT SOME THOUGHT INTO THE FORMULATION OF
THIS LETTER.  THOUGH  M  HIT ON SOME KEY AREAS IN HIS LETTER, IT MAY
IN FACT SAY TOO MUCH.  C/O'S SUGGESTS A RESPONSE THAT INITIALLY MAKES
IT CLEAR THAT  M  IS NOT INTERESTED IN A JOB, BUT RATHER A BUSINESS
OPPORTUNITY.  THE LANGUAGE SHOULD BE SPECIFIC ENOUGH THAT THE
PARTICULAR INTEREST OF THE IRANIANS IS CAPTURED, BUT VAGUE ENOUGH
THAT THE IRANIANS WILL CONTINUE INTEREST IN  M  TO ASCERTAIN WHAT
EXACTLY IT IS HE HAS TO OFFER.  CONSIDERING THE NECESSARY PROCESS FOR
CONTINUING WITH THE PROJECT, FEEL THE LONGER THE IRANIANS CAN BE
STRUNG ALONG, THE BETTER.  REQUEST HQS INPUT TO THE ABOVE LETTER.

    5.  C/O TOLD  M  THAT HIS TEXT WILL BE CONSIDERED IN THE
FORMULATION OF AN APPROPRIATE RESPONSE.  C/O ALSO TOLD  M  THAT AN
IMMEDIATE RESPONSE WILL NOT BE SENT OUT.  C/O EXPLAINED THAT IT IS
OBVIOUS THAT                         HE ( M ) NOW HAS AN
ADDRESS.  WHEN THE APPROPRIATE RESPONSE IS SENT, THE IRANIANS WILL
KNOW FROM WHOM IT COMES, NO MATTER THE TIMING.   M  ACCEPTED THIS
EXPLANATION AND AGREED TO CONTINUE HIS EFFORTS TO CONTACT OTHER
IRANIANS OF INTEREST.

    6.  PLANS:  C/O WILL NOT MEET WITH  M  UNTIL CA 23 FEB.  DURING
THIS MEETING, FEEL IT WILL BE APPROPRIATE TO HAVE SOME SORT OF
RESPONSE FOR  M  TO SEND.  FEEL THAT PROLONGED INACTIVITY ON OUR PART
WILL CAUSE  M  TO HAVE SOME SECOND THOUGHTS ABOUT OUR PREPAREDNESS
FOR THIS PROJECT.   M  DOES APPEAR TO BE SOMEWHAT EXCITED ABOUT THE
PROSPECT THAT THE PROJECT IS COMING TO FRUITION AND IT WILL ONLY
BEHOOVE THE PROJECT TO BE ABLE TO BUILD UPON HIS ENTHUSIASM.  LOOK
FORWARD TO HQS THOUGHTS/COMMENTS.

    7.  FILE:        CP 1       DECL ON: X1, CL REASON: 1.5(C), CL BY:
 ID #   DRV

END OF MESSAGE                          SECRET

**DECLASSIFIED**

SECRET

~~SECRET~~
## DECLASSIFIED

/ /                              ~~SECRET~~              . FRP: , , , , , , ,

```
----------------------------------------------------------------
--
99 4502607    ASP               PAGE 001         IN 4502607
                       TOR: 262046Z FEB 99  CIA OFFICE #26970
----------------------------------------------------------------
--
```

S E C R E T 262042Z FEB 99

CITE CIA OFFICE #26970

TO: PRIORITY   LANGLEY   .

FOR:

                    CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT:  MERLIN (M) - NEXT CONTACT WITH   IRANIAN INSTITUTION 4

REF:    LANGLEY   277216 | 99 4408903 |

TEXT:

    1.  ACTION REQUIRED:  REQUEST HQS REVIEW OF BELOW LETTER AND
REPLY ASAP.

    2.  DURING THE 24 FEB 99 MEETING, C/O JEFFREY STERLING AND
    M           DRAFTED A RESPONSE LETTER TO BE SENT TO     IRANIAN F
    AT IRAN.INST. 4       BASED ON THE MOST RECENT EMAIL
CORRESPONDENCE.  PER REF, THE PERSONAL INFORMATION ON  M  WAS OMITTED
IN LIEU OF HIS RESUME AND INFORMATION ON  M 'S FAVORABLE FINANCIAL
STATUS WAS ALSO DELETED.  WE BELIEVE THAT THE FOLLOWING VERSION SAYS
JUST ENOUGH TO PIQUE THE IRANIANS' INTEREST IN WHAT  M  HAS TO OFFER
THEM.  LARGELY BASED ON REF, C/O AND  M  EDITED THE ORIGINAL VERSION
AS FOLLOWS:

"DEAR MR.  IRANIAN F    ,

    THANK YOU FOR YOUR RESPONSE AND ATTENTION TO ME.  BUT, HONESTLY
SPEAKING, AT THIS TIME I AM NOT LOOKING ANYMORE FOR JOB
OPPORTUNITIES.  MY REASON FOR CONTACTING YOU IS THAT I HAVE A GREAT
BUSINESS OPPORTUNITY FOR YOU OR PEOPLE WHO CAN BE INTERESTED IN IT.

    I HAVE BEEN GETTING AN EXCELLENT AND USEFUL INFORMATION ABOUT A
REAL DEVICE RELATED TO MY PREVIOUS EXPERIENCE.  IT WAS USED IN SOME
REAL SYSTEMS AND THIS DEVICE IS ONE OF KEY ELEMENTS OF MODERN
TECHNOLOGICAL CHAIN.  THIS INFORMATION IS NOT COMPLETED, BUT IT HAS
DOCUMENTATION AND MATERIALS DESCRIPTION.  I AM SURE THIS ONE CAN SAVE
A LOT OF MONEY ON YOUR RESEARCH AND DESIGN EXPENSES.  THAT IS ONE OF
MOST IMPORTANT AND SOPHISTICATED DEVICES.

    I CAN NOT TELL YOU ABOUT DETAILS BECAUSE YOU UNDERSTAND IT CAN
BE TOO RISKY FOR ME IN MY SITUATION.  ALSO, I PREFER TO GET A CLEAR

~~SECRET~~
## DECLASSIFIED

GOVERNMENT
EXHIBIT
20
1:10CR485

C02932

DECLASSIFIED

SECRET

RESPONSE FROM YOU USING YOUR AND MY PRIVATE MAIL ADDRESSES, NOT YOUR
ORGANIZATION. YOU HAVE MY MAIL ADDRESS IN MY PREVIOUS LETTERS.

THANK YOU FOR YOUR TIME, CONSIDERATION AND FUTURE ASSISTANCE.

BEST REGARDS, ( M 'S      INITIALS)"

     3. DURING FORMULATION OF THIS LETTER, M RAISED SEVERAL
CONCERNS. HE INITIALLY OBJECTED TO SENDING HIS RESUME ALONG WITH IT.
IN A SOMEWHAT PERSISTENT MANNER, C/O EXPLAINED TO M THAT A RESUME
IS IMPORTANT WITH THE COVER LETTER BECAUSE MOST OF M 'S PERSONAL
DESCRIPTION HAS BEEN TAKEN OUT. TO APPEASE M 'S CONCERNS, C/O
EXPLAINED THAT ONCE THE IRANIANS REALIZE THAT M IS NOT INTERESTED
IN EMPLOYMENT, THE FOCUS WILL BE ON THE PRODUCT BEING OFFERED. THE
RESUME WILL BE USED ONLY TO PROVIDE THE IRANIANS AN IDEA OF WHAT TYPE
OF ITEM IS BEING OFFERED AND TO CONFER THAT M IN FACT DOES HAVE
KNOWLEDGE OF THE WARES THAT HE IS TRYING TO PEDDLE. AS SUCH, ANY
SCRUTINY INTO M 'S BACKGROUND WILL NOT BE AS NECESSARY. M FINALLY
AGREED TO INCLUSION OF A RESUME WITH THE CAVEAT THAT HE SHOULD BE
PREPARED WITH NAMES SUCH AS SUPERVISORS, COWORKERS, ETC. AT THE
INSTITUTES SO THAT HE APPEARS GENUINE. C/O SAID THAT AS PART OF
PREPARATION FOR THE PROJECT, M WILL HAVE APPROPRIATE LEGEND
          THAT WILL BE USED TO COUNTER POSSIBLE IRANIAN SCRUTINY. TO
ASSUAGE M , C/O INSTRUCTED M TO START DEVELOPING HIS OWN
 LEGEND   RELATED TO HIS RESUME.

     4. M IS ALSO VERY RELUCTANT TO PLACE HIS P.O. BOX ADDRESS IN
THE BODY OF THE LETTER. M REASONED THAT THEY (THE IRANIANS) HAVE
HIS ADDRESS FROM THE PREVIOUS LETTERS AND OMITTING THE ADDRESS WILL
PROTECT HIM AND HIS FAMILY SHOULD THE LETTER FALL INTO THE HANDS OF
SOMEONE OTHER THAN THE INTENDED AUDIENCE. M WAS QUITE UNWAVERING
DESPITE C/O'S EXPLANATION THAT THE ADDRESS MAY BE NECESSARY TO
EXPEDITE A RESPONSE. C/O ALSO NOTED THAT THE PREVIOUS LETTERS HAVE
GONE TO VARIOUS ADDRESSES AND THAT IT IS POSSIBLE THEY HAVE BEEN
LOST. NONETHELESS, M DOES NOT WANT TO PLACE THE ADDRESS IN THE
LETTER.

     5. M 'S CONCERNS OVER THE LETTER AND WHAT SHOULD BE INCLUDED
SHOWS THAT HE IS INDEED PLACING THOUGHT INTO THE PROJECT, EVEN IF HE
WANTS TO BE SOMEWHAT TOO SURREPTITIOUS. M 'S OVERLY CAUTIOUS
TENDENCIES MAY REFLECT HIS BELIEF THAT THE PROJECT IS REACHING A
STAGE WHERE HE MAY ACTUALLY HAVE TO MEET WITH THE IRANIANS. THIS IS
NOT TO SAY THAT M IS SHOWING AN UNWILLINGNESS TO CONTINUE THE
PROJECT; HE IS JUST LETTING HIS CAUTIONS BE KNOWN. M CONTINUES TO
DEMONSTRATE HIS EAGERNESS FOR THE PROJECT. THE DILIGENT WORK ON 24
FEB ON THE LETTER CLEARLY DEMONSTRATED THAT TO C/O.

     6. PLANS: C/O EXPLAINED TO M THAT THE ABOVE VERSION WILL BE
REVIEWED. AFTERWARDS, M WILL BE CONTACTED ON WHAT CHANGES IF ANY
ARE TO BE MADE AND THEN INSTRUCTED TO FORWARD THE FINAL VERSION ALONG
WITH HIS RESUME. C/O WILL CONTACT M ON 1 MAR 99 WITH A STATUS
UPDATE AND INSTRUCTIONS TO EDIT OR SEND. LOOK FORWARD TO INPUT FROM
HEADQUARTERS.

     7. FILE:      CP 1      DECL ON: X1, CL REASON: 1.5(C), CL BY:
 ID # DRV

END OF MESSAGE                     SECRET

                    DECLASSIFIED

                         SECRET

C02933

SECRET

# DECLASSIFIED

/   /                          SECRET              FRP: , , , , , , , ,

--------------------------------------------------------------------------
--
99 4527257    ASR              PAGE 001          IN 4527257
                      TOR: 012027Z MAR 99 CIA OFFICE #26973
--------------------------------------------------------------------------
--

S E C R E T 012023Z MAR 99
      CIA OFFICE #2
CITE      6973 (MR. S. 2 ACTING)

TO:    LANGLEY  .

FOR:

              CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT:   MERLIN (M) - 24 FEB MEETING

REF:  A.  CIA OFFICE #2 | 99 4502607 |
      B.    LANGLEY    286924| 99 4482038 |

TEXT:

    1.  ACTION REQUIRED:  HQS THOUGHTS/COMMENTS ON A SALARY INCREASE
FOR  M  PER BELOW.

    2.  ON 24 FEB, C/O  JEFFREY STERLING  HELD A THREE HOUR PERSONAL
MEETING WITH      M       AT AN UPPER WEST SIDE HOTEL IN
MANHATTAN.  DURING THE MEETING, C/O AND  M  EDITED A VERSION OF A
RESPONSE LETTER TO BE SENT TO IRANIAN INSTITUTION 4.  ALSO DURING THE
MEETING, C/O AND  M  DISCUSSED SEVERAL FINANCIAL ISSUES RELATED TO
 M 'S WORK WITH      CIA   .  THE NEXT SCHEDULED MEETING WITH  M
WILL BE 9 MARCH IN MANHATTAN.

    3.  A MAJORITY OF THE MEETING WAS SPENT ON THE LETTER TO BE
SUBMITTED IN FURTHERANCE OF THE    CP 1    PROJECT (REF A).  PRIOR TO
WORK ON THE LETTER,  M  INFORMED C/O THAT HE HAD RECEIVED NO FURTHER
RESPONSES TO HIS EMAILS OR LETTERS.   M  SAID THAT HIS INTERNET
SEARCHES CONTINUE AND HE HAS SENT EMAILS TO SOME   EMPLOYEES OF
 IRAN. INSTITUTION 1 AND OTHER         INSTITUTIONS OF INTEREST IN
IRAN.  M  AGREED WITH C/O SUGGESTION THAT IT WILL BE IN ORDER FOR
 M  TO SEND FRIENDLY REMINDERS TO THOSE  EMPLOYEES  TO WHOM HE HAS
SENT INQUIRY MESSAGES.

    4.  EMAIL ACCOUNTS:  M  SAID THAT HE HAS NOT RECEIVED FURTHER
"INTRUSION" MESSAGES ON HIS HOTMAIL ACCOUNT.  HE DID SAY THAT HE IS
HAVING SOME DIFFICULTY WITH HIS AOL ACCOUNT.   M  SAID THAT ONCE HE
NOTIFIED THE AOL OPERATOR THAT HIS ACCOUNT WAS WORKING PROPERLY, HE
WAS NOT OFFERED MUCH ASSISTANCE WITH REGARD TO SECURITY ON HIS
INTERNET ACCOUNT.  C/O TOLD  M  TO REMAIN COGNIZANT OF ANY
ABNORMALITIES ON HIS EMAIL ACCOUNTS AND REPORT THEM ACCORDINGLY.  C/O
DID REITERATE THAT THE DIFFICULTY MAY POSSIBLY LIE IN MOMENTARY

SECRET
# DECLASSIFIED



GOVERNMENT
EXHIBIT
21
1:10CR485

C02935

**DECLASSIFIED**

SECRET

GLITCHES OR OPERATOR ERROR.

5.   FINANCIAL MATTERS:  DURING THE MEETING C/O PAID AND RECEIVED
A RECEIPT FROM  M  FOR ONE-THIRD OF HIS '98 SALARY (USD 20,000.00);
PHONE BILLS (USD 186.57), COMPUTER SOFTWARE PURCHASE (USD 64.34) AND
RUDIMENTARY REIMBURSEMENT FOR TRAVEL INTO MANHATTAN (USD 30.00).
AFTERWARDS, C/O DISCUSSED THE MATTER OF REIMBURSEMENT FOR  M 'S PHONE
BILLS.  C/O EXPLAINED THAT ANY REIMBURSEMENTS MADE TO  M  HAD TO BE
FOR EXPENSES MADE IN FURTHERANCE OF THE PROJECT.  C/O SAID THAT IT
WAS QUITE CONFUSING THAT  M  WAS BEING REIMBURSED FOR TWO PHONE BILLS
WHEN INTERNET ACCESS IS USUALLY OBTAINED VIA LOCAL TELEPHONE CALLS.
 M  SEEMED TO UNDERSTAND C/O'S INQUIRY AND SAID THAT SOMETIMES HE HAS
TO USE LONG DISTANCE TO LOGON BECAUSE THE NUMBERS IN HIS AREA ARE
SOMETIMES BUSY AND THAT                  MR. W.              PAID THE
BILLS.  C/O WENT ON TO SAY THAT FROM THAT MOMENT ON,  M  WOULD ONLY
BE REIMBURSED FOR THE PHONE LINE DEDICATED FOR USE BY  M  IN
FURTHERANCE OF THE PROJECT.  C/O FURTHER EXPLAINED THAT  M  WOULD
CERTAINLY BE REIMBURSED FOR ANY OTHER EXPENSES RELATED TO THE PROJECT
SUCH AS POSTAGE, HIS INTERNET ACCOUNT FEES AND TRAVEL AND OTHER
EXPENSES, AS NECESSARY.  M  SAID THAT HE UNDERSTOOD.

6.   ALMOST IMMEDIATELY,  M  SAID THAT RELATED TO SUCH MATTERS,
HE HAS SOME ISSUES REGARDING HIS SALARY.  M  SAID THAT HE HAS BEEN
MAKING THE SAME AMOUNT FOR THE PAST TWO YEARS AND THAT SOME
ADJUSTMENT MAY BE IN ORDER.  M  MENTIONED THAT HIS EXPENSES HAVE
GROWN DURING HIS WORK FOR      CIA      , YET HIS SALARY HAS NOT.
RELATED TO HIS REIMBURSABLE EXPENSES,  M  SAID THAT AN APPROPRIATE
SALARY INCREASE WILL OBVIATE THE NEED TO CONTINUE WITH SUCH
COMPLICATED AND TIME-CONSUMING ITEMS SUCH AS TELEPHONE BILLS AND
TRAVEL INTO THE CITY.  M  WOULD THEN JUST HAVE HIS SALARY AND LARGE
EXPENSES SUCH AS AIRLINE TRAVEL.  M  ADDED THAT AT A MINIMUM HE
WOULD LIKE TO HAVE SOME LIFE INSURANCE FOR HIS FAMILY CONSIDERING THE
POSSIBILITY OF HAVING CONTACT WITH THE IRANIANS IN FURTHERANCE OF THE
PROJECT.  C/O TOLD  M  THAT THOSE WERE VERY VALID ARGUMENTS AND THAT
EVERYTHING WOULD BE CONSIDERED.

7.

8.   AS IS TYPICAL WITH  M  IT APPEARS THAT HE HAS TAKEN AN
AMOUNT OF TIME TO PRESENT HIS ARGUMENTS FOR A SALARY INCREASE.  GIVEN
THAT  M  HAS NOT RECEIVED A SALARY INCREASE IN TWO YEARS AND HIS
CONTINUING EAGERNESS WITH THIS CRUCIAL PROJECT; A SALARY INCREASE MAY
BE WARRANTED.  A SALARY INCREASE SHOULD AT LEAST ENCOMPASS  M 'S
RUDIMENTARY OPS EXPENSES SUCH AS TELEPHONE AND TRAVEL FOR OPS
MEETINGS (APPROXIMATELY USD 100 PER MONTH).  WITH THIS IN MIND,  CIA
OFFICE #2 RECOMMENDS A RAISE OF AT LEAST USD 250 PER MONTH FOR  M .
C/O WILL CONTINUE TO REIMBURSE FOR ITEMS SUCH AS THE P.O BOX,
NECESSARY COMPUTER PURCHASES; OPS RELATED TRAVEL              , AND
ANY OTHER SIZABLE RELEVANT EXPENSES.  SHOULD HQS AGREE WITH THE
ABOVE, OFFICE #2 WILL ADJUST  M 'S AGMT ACCORDINGLY.  ALSO, REQUEST HQS

SECRET

**DECLASSIFIED**



C02936

DECLASSIFIED

SECRET

COMMENTS ON THE LIFE INSURANCE OPTION FOR  M .

    9.   FILE:      CP 1       DECL ON: X1, CL REASON: 1.5(C), CL BY:
ID #   DRV

END OF MESSAGE                        SECRET

SECRET
DECLASSIFIED

C02937

SECRET

**DECLASSIFIED**

/ /                          SECRET                  FRP:  , , , , , , ,

--------------------------------------------------------------------------------
99 4776897   ASR                    PAGE 001            IN 4776897
                          TOR: 221952Z MAR 99 CIA OFFICE #2 7011
--------------------------------------------------------------------------------

S E C R E T 221951Z MAR 99
        CIA OFFICE #2
CITE          7011

TO:     LANGLEY

FOR:

                    CLASSIFIED PROGRAM NO. 1 (CP 1)


SUBJECT:   MERLIN (M) - 16 MARCH MEETING

REF:     LANGLEY   293632| 99 4543087 |

TEXT:

     1.  ACTION REQUIRED:  NONE/FYI.

     2.  ON 16 MAR 99, C/O JEFFREY STERLING HELD A PERSONAL MEETING WITH
     M            AT AN UPPER WEST SIDE HOTEL IN MANHATTAN.  THERE
WERE NO SECURITY INCIDENTS.  DURING THE MEETING, M  PROVIDED
INFORMATION ON THE MATERIALS HE SENT TO IRAN INST. 4 AND RECENT CONTACTS
VIA HIS EMAIL ACCOUNT.  THE NEXT MEETING IS SCHEDULED FOR 06 APR 99.

     3.  AT THE ONSET OF THE MEETING, C/O REQUESTED AN UPDATE FROM
     M  ON THE LETTER SENT TO       IRANIAN F AT IRANIAN INSTITUTION 4
             .  BEING EVER SECURITY CONSCIOUS, M  MAILED THE
LETTER AND HIS RESUME SEPARATELY.  M  MAILED THE RESUME FIRST ON 5
MARCH AND THE LETTER (EDITED PER REF) WAS MAILED A FEW DAYS LATER. M
WAS UNSURE OF THE EXACT DATE BUT BELIEVED THAT IT WAS 08 MAR 99.
PRIOR TO THE MAILINGS, M/2 SENT AN EMAIL TO    IRANIAN F   EXPLAINING
THAT TWO SEPARATE LETTERS WILL BE COMING.  C/O TASKED  M  TO SEND
ANOTHER MESSAGE REQUESTING ACKNOWLEDGMENT OF RECEIPT OF THE LETTERS
AND M AGREED.  M  APPEARED EXCITED ABOUT SENDING THE LETTERS AND
IS ANXIOUS TO GET A RESPONSE.  M  DID EXPRESS A BIT OF CONCERN ABOUT
THE TIMING OF THE LETTERS.  HE FELT THAT HIS LETTERS MAY GET LOST
BECAUSE NO ONE WILL LOOK AT THEY MAY ARRIVE DURING THE IRANIAN NEW
YEAR CELEBRATIONS.  C/O ADDRESSED M 'S CONCERNS BY EXPLAINING THAT
THE EMAIL CORRESPONDENCE WILL SERVE AS ADEQUATE ALERT THAT THE
LETTERS ARE COMING AND   IRANIAN F   SHOULD THEREFORE BE EXPECTING
THEM IRRESPECTIVE OF THE FACT HE MIGHT TAKE SOME HOLIDAY FOR NOWRUZ
CELEBRATIONS.
     4.  M  SHOWED C/O COPY OF AN EMAIL MESSAGE DATED 5 MARCH.  THE
MESSAGE WAS FROM IRANIAN G AT EMAIL ADDRESS: 
                    :

SECRET

**DECLASSIFIED**

GOVERNMENT
EXHIBIT
22
1:10CR485

C02941

**DECLASSIFIED**

SECRET

"DEAR ( M     ),

I SAW YOUR AD.  CAN YOU SEND ME BETTER ABOUT YOU.  OUR WORK IS ABOUT
POWER LASER, CNC CONTROL STEP AND DC MOTOR,...

THANKS,
    IRANIAN G

M   SAID THE MESSAGE IS MOST LIKELY IN RESPONSE TO THE AD ABOUT
HIMSELF HE PLACED ON THE                    WEB PAGE.  M  NOTED THAT HE
RECENTLY UPDATED THAT AD AND HAS NOT INCLUDED HIS RESUME IN THE AD.
C/O INSTRUCTED  M  TO SEND A RESPONSE STATING THAT HE WILL BE HAPPY
TO SEND MORE INFORMATION, BUT PRIOR TO THAT HE WOULD LIKE TO KNOW
INFORMATION ABOUT IRANIAN G AND WHAT TYPE OF ORGANIZATION OR COMPANY HE
REPRESENTS.  M  AGREED TO SEND THE MESSAGE SOON.  C/O ALSO
INSTRUCTED  M  TO BRING COPIES OF ALL CORRESPONDENCE HE SENDS AND
RECEIVES

    5.   M  SAID THAT HE HAS NOT RECEIVED REPLIES TO THE MESSAGES HE
HAS SENT TO THE    EMPLOYEES AT IRANIAN INSTITUTIONS 1 AND 2
           .    M   THEN SUGGESTED THAT IN SOME OF HIS FUTURE MESSAGES,
HE MAY MAKE MENTION OF THE RECENT REVELATION THAT ANOTHER COUNTRY HAD SECURED
NUCLEAR SECRETS FROM THE U.S.  M 'S REASONING WAS THAT OTHERS NOW
SEE THAT IT IS POSSIBLE TO OBTAIN NUCLEAR SECRETS WHICH CAN ADVANCE
THEIR PROGRAMS; AND THAT THE PROJECT CAN BUILD UPON THAT SUPPOSITION
TO ENTICE THE IRANIANS.  C/O LAUDED  M  FOR HIS THINKING, BUT SAID
SOME THOUGHT WOULD NEED TO BE GIVEN TO SUCH A PROPOSITION PRIOR TO
 M  IMPLEMENTING IT.

    6.  FINANCIAL MATTERS:  C/O MENTIONED TO  M  THAT WHEN READY,
 M 'S NEW   AGMT   WILL INCLUDE AN INCREASE OF USD 1000.00 IN HIS
MONTHLY SALARY.  C/O SAID THAT WITH SUCH A SIZABLE RAISE, THERE WOULD
BE SOME CHANGES WITH REGARD TO THE REIMBURSEMENTS THAT  M  HAS BEEN
RECEIVING.  C/O EXPLAINED THAT  M  WOULD NO LONGER BE REIMBURSED FOR
PHONE EXPENSES RELATED TO HIS USE OF THE INTERNET FOR THE PROJECT.
C/O ADVISED  M  THAT HE WOULD BE REIMBURSED FOR MAJOR EXPENSES SUCH
AS TRIPS AND THOSE EXPENSES DIRECTLY RELATED TO HIS WORK FOR THE
PROJECT (I.E., P.O. BOX, POSTAGE EXPENSES, AND PURCHASES FOR HIS
COMPUTER) WHICH MUST BE PRE-APPROVED BY C/O.  M  SAID THAT THE
LITTLE EXPENSES ARE OF NO IMPORTANCE AND THEY CAN BE FORGOTTEN
INCLUDING AOL
        .  C/O ALSO TOLD  M  THAT WITH SUCH A SIZABLE RAISE,  M  WAS
ON HIS OWN WITH REGARD TO LIFE INSURANCE.

    7.  AS USUAL, C/O IS ENCOURAGED BY THE EFFORT AND THOUGHT THAT
 M  IS PUTTING INTO THE PROJECT.  AT THE NEXT SCHEDULED MEETING, C/O
WILL PAY  M  THE FINAL INSTALLMENT FOR HIS '98 SALARY.

    8.  FILE:     CP 1      DECL ON: X1, CL REASON: 1.5(C), CL BY:
 ID #   DRV

END OF MESSAGE                       SECRET

**DECLASSIFIED**

SECRET

C02942

SECRET .

**DECLASSIFIED**

/  /                        SECRET                FRP:  , , , , , , ,

```
-------------------------------------------------------------------------
--
99 5037738   ASR                   PAGE 001            IN 5037738
                        TOR: 121528Z APR 99 CIA OFFICE #2 7040
-------------------------------------------------------------------------
--
```

S E C R E T 121529Z APR 99
CITE    CIA OFFICE #2
          7040

TO:      LANGLEY   .

FOR:

                    CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT:  MERLIN (M) - 6 APRIL MEETING

REF: CIA OFFICE #2 7011 |  99 4776897 |

TEXT:

     1.  ACTION REQUIRED:  PLS PROVIDE AN UPDATE ON STATUS OF PROJECT
APPROVALS AND AGMT PROCESSING.

     2.  ON 6 APR 99, C/O JEFFREY STERLING HELD A MEETING WITH
     M           AT A MIDTOWN MANHATTAN HOTEL.  DURING THE MEETING,
M DISCUSSED HIS MOST RECENT CONTACT WITH
                    A DIVISION OF IRANIAN INSTITUTION 4 (DIV)
     . A GOOD PORTION OF THE MEETING WAS ALSO SPENT DISCUSSING
PERCEIVED DISCREPANCIES WITH REGARD TO M'S '98 SALARY.  THE NEXT
MEETING IS SCHEDULED FOR 29 APRIL.

     3.  AT THE ONSET OF THE MEETING, M TOLD C/O THAT HE HAD HAD A
RECENT CONTACT FROM THE DIV. WITH REGARD TO THE LETTERS HE SUBMITTED
(REF).  M SAID THAT ON 3 APRIL, HE RECEIVED AN EMAIL FROM EMAIL
ADDRESS:              .   M DID NOT HAVE A COPY OF THE
EMAIL WITH HIM, BUT SAID THAT THE NOTE INDICATED THAT THEY RECEIVED
HIS FIRST LETTER (RESUME), BUT THAT THE SECOND LETTER HAD NOT BEEN
RECEIVED.  THE SECOND LETTER INTIMATED THAT M HAD A BUSINESS DEAL
IN MIND FOR INTERESTED IRANIANS.  IN AN EMAIL HE SENT PRIOR TO
MAILING THE LETTERS, M INDICTED THAT THE SECOND LETTER WAS MORE
IMPORTANT.  THE EMAIL FROM THE DIV. REFLECTED THIS BY REPEATING THE
ASSERTION MADE BY M AND REQUESTED THAT HE RESEND IT AS SOON AS
POSSIBLE.
     4.  M SAID THAT HE CONTEMPLATED CONTACTING C/O TO GET GUIDANCE
AS FAR AS WHAT TO DO, BUT HE SENT THE BELOW RESPONSE THE FOLLOWING
DAY (4 APRIL) VIA EMAIL:

"HI EVERYONE,

I AM WONDERING WHY YOU DID NOT GET IT.  YOU SHOULD HAVE THIS PAPERS

SECRET

**DECLASSIFIED**



GOVERNMENT
EXHIBIT
23
1:10CR485

C02944

**DECLASSIFIED**

SECRET

ALREADY. LET'S WAIT FOR A COUPLE OF DAYS AND I WILL SEND OVER AGAIN. PLEASE THINK ABOUT SENDING THIS INFO TO A PRIVATE ADDRESS, PRIVATE PERSON WITH THE SAME FINAL APPROPRIATE DESTINATION. YOU KNOW AN ABBREVIATION THAT I USED CAN BE INTERESTING FOR MANY OTHERS, VERY UNDESIRED FOR ME PEOPLE. I MEAN A NAME OF YOUR ORGANIZATION. I AM VERY WORRIED IF THIS PACKAGE GOT LOST. IF I WILL NOT GET YOUR CONFIRMATION ABOUT GETTING AT APRIL 10 I SEND IT AGAIN SIGNED SSB AND M. ASFARI.

THANK YOU"

WITH REGARD TO RESENDING THE LETTER, M PRESENTED ANOTHER OPTION. M SUGGESTED ESTABLISHING AN . EMAIL ACCOUNT FROM WHICH TO SEND THE LETTER TO THE DIV. M MENTIONED THAT IT WOULD BE BETTER ALSO TO SEND IT FROM A PHONE NUMBER OTHER THAN HIS HOME NUMBER. AS THE PROJECT SEEMS TO BE COMING CLOSER TO FRUITION, M IS CONCERNED THAT THE IRANIANS MAY BE ABLE TO TRACK HIM TO HIS RESIDENCE VIA THE EMAILS.

C/O AGREED WITH M 'S REASONING, BUT SAID IT WOULD PROBABLY BE BEST TO MAIL THE LETTER AS WAS DONE INITIALLY. WE BELIEVE THAT SENDING THE LETTER VIA EMAIL WILL BE A DEPARTURE FROM THE CORRESPONDENCE PATTERN ALREADY ESTABLISHED. THE CURRENT PATTERN REFLECTS A CONCERN FOR CONFIDENTIALITY TO WHICH AN EMAIL WOULD BE SOMEWHAT CONTRARY. SHOULD M NOT RECEIVE NOTIFICATION THAT THE ORIGINAL LETTER HAS BEEN RECEIVED, C/O WILL CONTACT M ON 10 APRIL AND INSTRUCT HIM TO MAIL THE LETTER. THE EMAIL OPTION WILL BE TRIED SHOULD THE SECOND MAILING NOT WORK.

5. THIS IS CERTAINLY A POSITIVE DEVELOPMENT OF EVENTS FOR THE PROJECT. M IN FACT EXPRESSED EXTREME PLEASURE AND EXCITEMENT THAT THE IRANIANS ARE SHOWING INTEREST AND THE PROJECT IS PROCEEDING. THE NECESSITY TO CONSIDER AND EXPLORE THE NEXT STEPS OF THE PROJECT IS BECOMING VERY APPARENT. GIVEN THE INTEREST SHOWN TO DATE, IT IS QUITE CONCEIVABLE THAT THE IRANIANS WILL WANT TO MEET WITH M . PREPARING FOR SUCH AN EVENTUALITY, C/O ASSURED M THAT EVERY POSSIBILITY WILL BE EXAMINED WITH REGARD TO ANY DIRECT CONTACT WITH THE IRANIANS. AS SUCH, REQUEST AN UPDATE ON THE PROJECT'S PROGRESS FROM THE HQS STANDPOINT.

6. M ONCE AGAIN NOTED HIS CONCERNS ABOUT THE LEVEL OF SCRUTINY THE IRANIANS WILL PLACE UPON M AND HIS BACKGROUND NOTED IN THE RESUME. C/O EXPLAINED TO M THAT WHAT WILL TRANSPIRE IS A BUSINESS DEAL FROM WHICH THE IRANIANS SHOULD BE MORE INTERESTED IN WHAT M HAS TO OFFER AS OPPOSED TO PERSONAL CREDENTIALS. M CAN ALWAYS INDICATE A DESIRE TO PEDDLE HIS WARES TO ANOTHER INTERESTED PARTY . C/O IS PLEASED AT THE LEVEL OF EFFORT BEING PUT FORTH BY M . HE HAS CERTAINLY IMMERSED HIMSELF IN THE PROJECT AND IS FOR THE MOST PART MAKING APPROPRIATE DECISIONS. THOUGH M IS SOMETIMES A LITTLE OVER SURREPTITIOUS, AS NOTED IN THE ABOVE EMAIL RESPONSE, C/O DOES NOT BELIEVE THAT HE HAS REACHED A LEVEL AS TO RAISE POSSIBLE IRANIAN CONCERNS.

7. FINANCIAL MATTERS: AFTER SUBSTANTIVE DISCUSSION ON THE PROJECT, C/O HAD TO INFORM M THAT THE BALANCE OF HIS 1998 SALARY IS USD 55,000.00 AS OPPOSED TO USD 60,000.00. UPON HEARING THE AMOUNT, M THREATENED TO QUIT SINCE THE MONEY DISCREPANCIES SEEM TO CROP UP EVERY YEAR. C/O IMMEDIATELY CHALLENGED M ON HIS STATEMENT ASKING M IF HE WAS READY TO QUIT BASED ON A MERE USD 5,000.00 (ESPECIALLY IN LIGHT OF THE TOTAL AMOUNT OF HIS SALARY). C/O REQUESTED A POINT BLANK ANSWER FROM M ON WHAT HIS ACTIONS WILL BE. M CALMED DOWN AND SAID THAT HE IS WEARY OF THE SAME PAY DISCREPANCIES OCCURRING YEAR AFTER YEAR, BUT SAID THAT HE WILL NOT QUIT THE PROJECT. C/O



SECRET

**DECLASSIFIED**

C02945

DECLASSIFIED

SECRET

TOLD  M  THAT THE REASON FOR THE DISCREPANCY WILL BE FOUND, AND THAT
IT IS NOT BEYOND THE REALM OF POSSIBILITY THAT  M  HAS ALREADY BEEN
PAID FOR ONE MONTH OUT OF '98 WHICH WOULD MAKE HIS '98 TOTAL USD
55,000.00.   M  THEN SIGNED A RECEIPT FOR USD 35,000.00.  TO DATE,
C/O HAS PAID  M  USD 55,000.00 REPRESENTING HIS 1998 SALARY.

    8.

                                        ALSO, REQUEST A STATUS
UPDATE ON AGMT PROCESSING FOR M/2'S FEB 1999 - JAN 2000   AGMT
PERIOD.

    9.  FILE:    CP 1     DECL ON: X1, CL REASON: 1.5(C), CL BY:
  ID #   DRV

END OF MESSAGE                         SECRET

SECRET
DECLASSIFIED

C02946

SECRET

**DECLASSIFIED**

/  /                          SECRET                FRP: , , , , , , , ,

------------------------------------------------------------------------
--
99 5440287    ASR              PAGE 001          IN 5440287
                         TOR: 131435Z MAY 99 CIA OFFICE #27084
------------------------------------------------------------------------
--

S E C R E T 131435Z MAY 99
        CIA OFFICE #2
CITE          7084

TO:    LANGLEY   .

FOR:

                    CLASSIFIED PROGRAM NO.1 (CP 1)

SUBJECT:  MERLIN (M) - 05 APR 99 MEETING

REF: CIA OFFICE #2 7040| 99 5037738 |

TEXT:

    1.  ACTION REQUIRED:  NONE, FYI.

    2.  ON 05 APR 99, C/O JEFFREY STERLING HELD A MEETING WITH
      M        AT AN UPPER WEST SIDE RESTAURANT.  DURING THE
MEETING,  M INDICATED THAT HE HAD NOT RECEIVED ANY ADDITIONAL
RESPONSES FROM HIS MOST RECENT MAILINGS.  C/O SCHEDULED THE NEXT
MEETING FOR THE WEEK OF 24 MAY 99.

    3.   M PROVIDED C/O WITH COPIES OF THE LETTER THAT HE SUBMITTED
A SECOND TIME PER REF.  M EXPLAINED THAT FOR SECURITY REASONS, HE
MAILED THE LETTER FROM NEW JERSEY.  M ADDED THAT HE MAILED THE
INITIAL SET OF LETTERS (PER REF) FROM CONNECTICUT AND NEW JERSEY.  ON
3 MAY, M SENT AN EMAIL MESSAGE TO           IRANIAN F    ) AT
EMAIL ADDRESS              NOTING THAT THE SECOND
LETTER HAD BEEN MAILED AND THAT IT SHOULD BE EXPECTED THE WEEK OF 3
MAY AND REQUESTED CONFIRMATION OF RECEIPT.  AS OF THE TIME OF THE
MEETING, M HAD RECEIVED NO CORRESPONDENCE.  M SAID THAT HE HAD
SENT AROUND TWO OTHER INQUIRIES TO OTHER ADDRESSES FOUND ON THE
INTERNET; ALL WITH NO RESPONSES.  M PROVIDED C/O WITH COPIES OF THE
LETTERS THAT HE SUBMITTED, INCLUDING AN ADDITIONAL LETTER.  M SAID
THAT HE WOULD LIKE C/O TO SEND THE LETTER EITHER VIA POST ( M EVEN
PROVIDED AN AIR MAIL STAMP) OR EMAIL FROM A DIFFERENT LOCATION SHOULD
THE IRANIANS NOT RECEIVE HIS SECOND LETTER.  C/O AGREED WITH  M 'S
LOGIC, BUT SAID THAT THE NECESSITY OF SUCH WILL BE WEIGHED DEPENDING
ON THE IRANIAN RESPONSE.

    4.  C/O TOOK THE OPPORTUNITY TO CONGRATULATE  M ON HIS FINE
WORK AND NOTED THAT THE PACE OF THE PROJECT WAS GOING AT A
COMFORTABLE LEVEL.  THIS WAS MAINLY IN RESPONSE TO  M 'S INQUIRY
ABOUT WHAT THE NEXT STEP WILL BE SHOULD HE RECEIVE A RESPONSE FROM

.SECRET

**DECLASSIFIED**



C02948

# DECLASSIFIED

SECRET

IRANIAN F    OR THE        DIVISION OF IRANIAN INSTITUTION 4       . C/O
EXPLAINED THAT EVERY ASPECT OF THE PROJECT HAS BEEN CONSIDERED AND
THAT THE NECESSARY STEPS WILL BE TAKEN AS WARRANTED.  C/O MENTIONED
THAT  M  SHOULD BE PREPARED POSSIBLY TO TRAVEL AT SOME POINT TO MEET
WITH SPECIFIC INDIVIDUALS WHO MAY BE INTERESTED IN WHAT  M
OSTENSIBLY WILL HAVE TO OFFER.  (C/O HAS NOT MENTIONED SPECIFIC NAMES
TO  M  WITH REGARD TO THIS ASPECT OF THE PROJECT IN AN EFFORT NOT TO
GIVE  M  THE FEELING OF BEING RUSHED).  C/O THEN MENTIONED TO  M
THAT AS THE PROJECT DEVELOPS,  M  SHOULD EXPECT A VISIT FROM MR. S.
WHO WILL PROVIDE AN UPDATE ON THE DEFINITE DIRECTION OF THE PROJECT.
 M  UNDERSTANDS THAT THERE ARE ASPECTS OF THE PROJECT THAT REQUIRE
CERTAIN APPROVALS BEYOND THE PURVIEW OF C/O.   M  SAID THAT HE LOOKED
FORWARD TO SEEING MR. S. ONCE AGAIN AND NOTED HIS OWN PLEASURE AT THE
PACE OF THE PROJECT.

     5.  M  CONTINUES TO SHOW AN EAGERNESS TOWARDS THE PROJECT AND
HIS INTEREST IS CERTAINLY PIQUED AT WHAT THE NEXT STEPS WILL ENTAIL.
WE BELIEVE THAT A VISIT BY  MR. S.  WILL BE A DEFINITE PLUS FOR  M
AND HIS ATTITUDE WITH REGARD TO THE PROJECT.  BASED ON AN ANTICIPATED
VISIT BY  MR. S.   C/O SCHEDULED THE NEXT MEETING FOR THE WEEK OF 24
MAY.  C/O TASKED  M  TO CONTINUE HIS EMAIL EFFORTS AND EFFORT TO
FIND INFORMATION ON                 OFFICIAL IRANIANS        .

     6.  FINANCIAL MATTERS:  C/O PAID  M  USD 5,000.00 AS THE BALANCE
OF HIS 1998 SALARY (USD 60,000.00).  C/O BELIEVES THAT THE PREVIOUS
CONFUSION WITH REGARD TO THE AMOUNT OF  M 'S 1998 SALARY WAS BASED ON
THE FACT THAT HIS    AGMT   SPANS A FEB - JAN TIMEFRAME WHICH IS
SOMEWHAT DIFFERENT FROM THE NORMAL FISCAL YEAR TIMEFRAME OF JAN -
DEC.  WHATEVER THE REASON FOR THE PREVIOUS DISPARITY, IT IS NOW
SETTLED AND  M  IS SATISFIED THAT HE HAS RECEIVED ALL OF HIS 1998
SALARY.  C/O TOLD  M  THAT HIS    AGMT    WILL BE READY FOR SIGNING
DURING THE NEXT MEETING.  WITH REGARD TO THE   AGMT   ,  M  REQUESTED
THAT THE LANGUAGE OF THE   AGMT   BE CHANGED TO NOTE THAT HE DOES
"COMPUTER CONSULTING" WORK FOR THE USG.  M  EXPRESSED CONCERN ABOUT
WHAT SHOULD HAPPEN IF HIS    AGMT    IS EVER DISCOVERED BY SOMEONE AND
HOW HE WOULD BE ABLE TO EXPLAIN HIS WORK FOR THE USG.  C/O SAID THAT
 M  SHOULD NOT WORRY ABOUT HIS CONTRACT EVER SURFACING OUTSIDE OF
   CIA

     7.  FILE:     CP 1      DECL ON: X1, CL REASON: 1.5(C), CL BY:
ID #   DRV        .

END OF MESSAGE                         SECRET

# DECLASSIFIED

SECRET

C02949