UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                       ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .        Criminal No. 1:10cr485
                              .
      vs.                     .        Alexandria, Virginia
                              .        January 22, 2015
JEFFREY ALEXANDER STERLING,   .        9:53 a.m.
                              .
              Defendant.      .        EXCERPT
                              .
. . . . . . . . . .           .

                    TRANSCRIPT OF JURY TRIAL
         BEFORE THE HONORABLE LEONIE M. BRINKEMA
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:            JAMES L. TRUMP, AUSA
                               DENNIS M. FITZPATRICK, AUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314
                                 and
                               ERIC G. OLSHAN, Deputy Chief
                               Public Integrity Section of the
                               Criminal Division
                               United States Department of
                               Justice
                               1400 New York Avenue, N.W.
                               Suite 12100
                               Washington, D.C. 20005


FOR THE DEFENDANT:             EDWARD B. MAC MAHON, JR., ESQ.
                               Law Office of Edward B.
                               MacMahon, Jr.
                               107 East Washington Street
                               P.O. Box 25
                               Middleburg, VA 20118
                                 and
                               BARRY J. POLLACK, ESQ.
                               MIA P. HAESSLY, ESQ.
                               Miller & Chevalier Chartered
                               655 - 15th Street, N.W.
                               Suite 900
                               Washington, D.C. 20005-5701

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1   APPEARANCES:  (Cont'd.)

 2   CLASSIFIED INFORMATION        CHRISTINE E. GUNNING
     SECURITY OFFICERS:            MAURA PETERSON
 3

 4   ALSO PRESENT:                 GERARD FRANCISCO
                                   SA ASHLEY HUNT
 5                                 JENNIFER MULLIN, ESQ.

 6
     OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
 7                                 U.S. District Court, Fifth Floor
                                   401 Courthouse Square
 8                                 Alexandria, VA 22314
                                   (703)299-8595
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

P R O C E E D I N G S

(Defendant present, Jury out.)

THE CLERK:  Criminal Case 10-485, United States of America v. Jeffrey Alexander Sterling.  Would counsel please note their appearances for the record.

MR. TRUMP:  Good morning, Your Honor.  Jim Trump on behalf of the United States.

MR. OLSHAN:  Good morning, Your Honor.  Eric Olshan on behalf of the United States.

MR. FITZPATRICK:  Good morning, Your Honor.  Dennis Fitzpatrick on behalf of the United States.

THE COURT:  Good morning.

MR. POLLACK:  Good morning, Your Honor.  Barry Pollack on behalf of Mr. Sterling.

MR. MAC MAHON:  Edward MacMahon on behalf of Mr. Sterling, Your Honor.

MS. HAESSLY:  Good morning.  Mia Haessly on behalf of Mr. Sterling, Your Honor.

THE COURT:  Good morning.  All right, counsel, have a seat.  We're going to hopefully do this very quickly.

The verdict form that was submitted by the government, we've made -- the only change we've made to it is we always want the foreperson's printed signature as well, so that's been changed.  Otherwise, that's exactly as it was left with us.  There's been no objection, so that's the one we're

1    going to send to the jury.

2         In terms of the final charge, just so you know, we

3    did make two small typographical corrections since last night.

4    The instruction for Count 10, where it gives the elements, we

5    struck out the word "four" to "three," because there are only

6    three elements; and in the witness protection instruction,

7    there was a typo.  I think "on" was "no."  Whatever it was, it

8    was a one-letter typo, but it makes no change.

9         I looked at the government's request to change the

10   possession instruction.  I'm not going to add the requested

11   changes.  I think that's arguing your case.

12        The job of the instructions is simply to give

13   definitions of law to the jury but not necessarily to explain

14   how those definitions apply to the case.  In my view, that

15   would overly help the jury making a decision one way or the

16   other.

17        So I'm not going to make the changes that the

18   government requested, and as far as I can tell, other than the

19   classification markings instruction we just got, there were no

20   other requests to change anything in the charge.  Is that

21   correct?

22        MR. FITZPATRICK:  That's right, Your Honor.

23        THE COURT:  All right, that's fine, Mr. Fitzpatrick.

24        Now, the defense filed a series of objections.  I

25   don't think those objections require any changes to the

1    instructions to the extent that both the instruction as to the

2    witnesses and the exhibits that have -- that we had to handle

3    specially clearly told the jury not to draw any inferences, and

4    therefore, the language is already there, and I don't think the

5    additional language is helpful, so I'm not going to add that.

6           In terms of the description of the counts, including

7    language about the Eastern District of Virginia, I told the

8    defense the choice you have is either a brief summary of what's

9    involved in those counts or the indictment goes to the jury,

10   and you-all are much happier with the indictment not going in.

11   Those counts do allege Eastern District of Virginia, and I

12   think it is therefore appropriate that that be in the overall

13   very brief summary of those counts, so I'm overruling that

14   objection.

15          And I didn't think there was any merit to any of the

16   others, but I'll hear any last-minute discussion of the

17   instructions.

18          The other thing I just want you to know so there's no

19   surprises, it's my standard practice when I give them the

20   direct and circumstantial evidence instruction to give them an

21   example, and it's usually it snowed in your front yard.  You

22   see a footprint.  You can draw an inference that there was

23   someone in your yard.  Most of you have heard me do that one

24   before.

25          And with possession, I am leaving constructive

1    possession in here because you have Mr. -- the allegation that

2    Mr. Risen got the possession from the defendant.  I give the

3    jury, my standard example is actual possession, I've got

4    physical control of this pen.  Constructive possession,

5    Ms. Guyton works for me, and therefore, I can tell her what to

6    do with her laptop computer, and therefore, I am considered in

7    the eyes of the law to have constructive possession of that

8    computer.

9            I'm not going to do joint and single.  That we don't

10   need.

11           And those should be the only two slight ad libs.

12           All right, Mr. MacMahon?

13           MR. MAC MAHON:  Yes, Your Honor, good morning.  Just

14   briefly, with respect to the -- can I read from here, Your

15   Honor?

16           THE COURT:  Yeah.  I know you're uncomfortable, yeah.

17           MR. MAC MAHON:  Judge, with respect to the venue

18   instruction, I understand the Court's ruling, but I did want to

19   put in the record -- I assume our objections are going to be

20   put in the record.  Do you want us to file them ECF?

21           THE COURT:  You should do them ECF so they're

22   formally on the record, yes.

23           MR. MAC MAHON:  We will do that, Your Honor, and I'll

24   hand Mr. Trump a copy.  We have one for you, Your Honor, but --

25           THE COURT:  Oh, my law clerk can get it from you.

```
 1            Ms. Copsey?

 2            MR. MAC MAHON:  Judge, I'm just handing you a page

 3  from your opinion on the grand jury subpoena of Mr. Risen just

 4  to put in the record here --

 5            THE COURT:  All right.

 6            MR. MAC MAHON:  -- as well.

 7            What you wrote on page 24 of the opinion, which is

 8  November 30, 2010, is -- and this, this is the substance of the

 9  instruction that we asked for and it was refused -- is that

10  prosecutions involving disclosure of classified information,

11  venue is proper both where the information is sent and where it

12  is received.

13            And you talk about venue --

14            THE COURT:  But read the next sentence:  "Then you

15  may be in multiple districts as long as part of the criminal

16  act took place in that district," and I think that's not

17  inconsistent with my statement that as long as an act in

18  furtherance of the crime occurred in the district, there's

19  venue.  So I --

20            MR. MAC MAHON:  Well, I understand your ruling, Your

21  Honor, but I don't -- the defendant objects to the instruction.

22            THE COURT:  I understand.

23            MR. MAC MAHON:  It doesn't say the disclosure, that

24  venue is proper where it's sent or received.  I'm just making

25  the record, Your Honor.  Thank you.
```

1          THE COURT:  That's fine, Mr. MacMahon.  Anything

2   else?

3          MR. TRUMP:  Yes.

4          THE COURT:  And, Mr. MacMahon, the other objections

5   you had as to a definition of "causation" and "classified

6   information," the Court not only gives the elements of the

7   offense to a jury in jury instructions, but it's also expected

8   to give legal definitions of key terms within the elements, and

9   "national defense information" is a key term that does have to

10  be explained, and some of the -- as does "willfully,"

11  "knowingly."

12          I mean, some of these are English language words, but

13  in any standard charge, you still give the jury some specific

14  help.  So to the extent that we've defined certain terms and

15  you've objected to that, I'm overruling that objection as well.

16          Now, Mr. Trump?

17          MR. TRUMP:  Yes, Your Honor.  On the possession

18  issue, and I don't believe there was any dispute from the

19  defense this morning, the definition, the fifth paragraph in

20  that instruction --

21          THE COURT:  All right, give me the number of the

22  instruction.

23          MR. TRUMP:  Possession defined.

24          THE COURT:  Yeah.  You've got page numbers.  Just I

25  can get it faster.  On the bottom of your -- go ahead.  While

```
 1    you're talking, let me look for it.  Go ahead.
 2              MR. TRUMP:  The way it reads is incorrect in terms of
 3    Counts 1, 4, and 6.  It should be in the past tense.  In other
 4    words, "In this case, lawful possession of classified
 5    information means possession" --
 6                             (Knocking on Jury Room door.)
 7              THE COURT:  Wait, wait, wait, wait, wait.
 8              MR. TRUMP:  Page 31, Your Honor.
 9              THE COURT:  Thank you.  Go ahead.
10              MR. TRUMP:  "For Counts 1, 4, and 6, a person has
11    lawful possession of something if he is entitled to have it.
12    In this case, lawful possession of classified information means
13    possession of classified information by a person who held an
14    appropriate security clearance at the time the person acquired
15    the information."
16              THE COURT:  Does the defense have any objection to
17    that?
18              MR. MAC MAHON:  No, Your Honor, not to that part of
19    it.  I mean, I've looked at it this morning.  The part about
20    the memories and otherwise, I think, is argumentative, but, you
21    know, the issue in the case is there's no question Mr. Sterling
22    had a clearance when he obtained this information and that all
23    the events that took place thereafter, he didn't, he didn't
24    have a need to know, so I think that is a clarification that
25    would be good.
```

1           The rest of it, I don't think it's necessary.

2           THE COURT:  All right, so let me go over that again.

3    "Possession of classified information by a person who held an

4    appropriate security clearance" --

5           MR. TRUMP:  -- "at the time the person acquired the

6    classified information."

7           THE COURT:  Wait a minute.  Do we need "and had a

8    need to know"?

9           MR. TRUMP:  "And had a need to know."

10          THE COURT:  "At the time he acquired"?

11          MR. TRUMP:  "At the time the person acquired the

12   classified information."

13          THE COURT:  We will add that.

14          I did omit to tell the government, you-all, I am

15   striking the 404(b) instruction.  It's not -- the defense

16   doesn't want it; the government doesn't need it.  It's normally

17   done to protect the defendant, so I agree with you, I don't

18   think in this case it helps your case very much, all right?

19          MR. MAC MAHON:  The instruction, Your Honor.

20          THE COURT:  I'm getting rid of the instruction.

21   That's what you wanted, and I think that's correct.

22          MR. MAC MAHON:  Well, the way it was written, Your

23   Honor, suggested it was evidence of other crimes.

24          THE COURT:  Well, I tried to make it other acts.  But

25   you don't want a 404(b) instruction; is that correct?  If you

1    look at the book, if you look at O'Malley, it has acts and it

2    has crimes.

3            MR. MAC MAHON:  Well, there's clearly going to be

4    argument about these letters and that they're not -- they

5    aren't part of the indictment, so I think the jury --

6            THE COURT:  It's not the letters.  It's the --

7            MR. MAC MAHON:  It's the phone number, whatever --

8            THE COURT:  It's the three documents that the

9    government maintained were still Secret when they were obtained

10   from your client's home, correct?

11           MR. MAC MAHON:  Yes.

12           THE COURT:  All right.  Do you want an instruction on

13   that or not?

14           MR. MAC MAHON:  Can I consult with Mr. Pollack, Your

15   Honor, briefly?

16           THE COURT:  All right.

17           MR. MAC MAHON:  Your Honor, the instruction goes to

18   other acts.  I think the jury is going to wonder, especially in

19   the manner in which they saw those, what those documents would

20   be.  The objection I filed last night was as to the -- there's

21   no, there's no 404(b) pattern type of evidence here that that

22   evidence would be, so it's hard to craft the instruction, I

23   understand.

24           THE COURT:  Well, all right.  That's why I omitted

25   the, the docket numbers.  I could do it now.  What I was going

1    to say and what it says now, "The government has introduced

2    evidence that defendant had classified documents," and I'm

3    going to do the exhibit numbers.  I think it's 141 through --

4              MR. MAC MAHON:  There's four of them.

5              THE COURT:  141, -42, -43.  It's just those three.

6              MR. MAC MAHON:  No, there were four, Your Honor.

7    There was also the, the report he had when he was a trainee.

8              MR. OLSHAN:  Your Honor, there was four exhibits,

9    only three of which were introduced by the silent witness rule.

10             THE COURT:  All right.  Is that 145 then?

11             MR. OLSHAN:  Correct.

12             THE COURT:  All right.  "In his custody when his

13   residence was searched."  And that's correct, and that evidence

14   did come in.

15             MR. MAC MAHON:  Yes.

16             THE COURT:  And I changed the instruction slightly.

17   "Evidence that an act was done by the defendant at some time is

18   not, of course, evidence or proof whatever that at another time

19   the defendant performed a similar act, including the offenses

20   charged in the indictment."

21             MR. MAC MAHON:  Yes.  We would request that

22   instruction.

23             THE COURT:  Well, that's what I gave you here.

24             MR. MAC MAHON:  Well, I thought there was more to it

25   that --

1          THE COURT:  Well, then it says, "Evidence of a

2    similar act may not be considered by the jury in determining

3    whether the defendant actually performed the physical acts."

4          MR. MAC MAHON:  Mr. Pollack is asking that it be

5    "another act," because there isn't a similarity here between

6    the acts and the way the evidence came in, but I think the jury

7    does need to be instructed that it's just an act and how it

8    could be considered, because it was proffered just as evidence

9    of venue, and they don't need to be told -- I'm sure they'll be

10   told that in the argument, but --

11         THE COURT:  All right, I believe I got the

12   word "other crimes" out, but I think I still left it in the

13   last paragraph, but, I mean, the way I modified the standard

14   404(b) instruction was to get out "evidence of other crimes"

15   and do it "evidence of other acts," all right?  And that's

16   relevant only to the issue of intent.

17         Yeah.

18         MR. OLSHAN:  Would the Court mind just reading the

19   portion of the instruction that the Court has as to what they

20   may consider it for?

21         THE COURT:  Look at 24.

22         MR. OLSHAN:  Page 24.

23         MR. MAC MAHON:  Page 24, Your Honor?

24         THE COURT:  Page 24 is where I've got it.

25         So the key -- I think the key paragraph, "If the jury

1   should find a reasonable doubt from other evidence in the case

2   that the defendant did the act or acts alleged in the

3   particular count under consideration, the jury may then

4   consider evidence as to an alleged earlier act of a like nature

5   in determining the state of mind or intent with which the

6   defendant actually did the act or acts charged in the

7   particular count."

8          Now, that's verbatim from the standard jury

9   instruction.

10         MR. MAC MAHON:  I think that's a model instruction,

11  isn't it, Your Honor?

12         THE COURT:  It is a model instruction.  I took out

13  the word "crime," so it's been modified, frankly, in your favor

14  in that respect.  And then I have to take the word "crimes" out

15  of the last paragraph.

16         MR. MAC MAHON:  They've already been told he's not on

17  trial for any other crimes.

18         THE COURT:  Correct.  And I've got it in the previous

19  instruction, on 23.  So, I mean, it's been told twice.

20         MR. POLLACK:  I'm sorry, Your Honor, in the first

21  paragraph, you're going to say that at another time, the

22  defendant performed another act, or is it going to say a

23  similar act?

24         THE COURT:  It just says, "The government has

25  introduced evidence that defendant had classified documents,

1  Exhibits 141 through 145" -- right?  I'm going to add that.

2         MR. OLSHAN:  142 through 145.

3         THE COURT:  142 through 145.

4         MR. POLLACK:  Yes.

5         THE COURT:  ". . . in his custody when his residence

6  was searched.  Evidence that an act was done by the defendant

7  at some other time is not, of course, any evidence or proof

8  whatever that at another time, the defendant performed a

9  similar act, including the offenses charged in the indictment."

10        That's absolutely, I mean, that's absolutely -- other

11  than I took the word "crimes" out as to the 404(b) evidence,

12  all right?

13        MR. POLLACK:  Yeah.  And I understand, Your Honor.  I

14  just -- I would in that last line say "performed another act"

15  rather than "a similar act."

16        THE COURT:  I'm not going to do that.  I think I'm

17  sticking with the language.  I've changed enough of it.

18        MR. MAC MAHON:  Your Honor, can I talk to Mr. Trump

19  for one second about this instruction?

20        THE COURT:  Go ahead.

21        MR. MAC MAHON:  Your Honor, with respect to the

22  possession defined instruction?

23        THE COURT:  Yes.

24        MR. MAC MAHON:  In the government's revised draft on

25  the new paragraph 6?

1          THE COURT:  Go ahead.

2          MR. MAC MAHON:  It says, "unauthorized possession of

3   classified information means possession of classified

4   information," and what was handed to me is a, is a statement,

5   namely, a letter related to Classified Program No. --

6          THE COURT:  I don't have that.  I did not agree to

7   put that request in this instruction.

8          MR. MAC MAHON:  Okay.  That's fine, Your Honor.

9          THE COURT:  Okay?

10          MR. MAC MAHON:  I didn't know that that had been -- I

11   think it may help the jury.  So it can't be -- but that's fine;

12   I accept that.

13          THE COURT:  Do you want --

14          MR. MAC MAHON:  I mean, I would think that rather

15   than thinking that it was all the classified information that

16   may have been in his head or other things, that we're limited

17   to the letter about Classified Program No. 1, which is the

18   chart.

19          THE COURT:  If you -- if both sides want that, I'll

20   be glad to enter it.

21          MR. TRUMP:  For those counts, 2, 5, and 7, it's taken

22   directly from the indictment, namely, a letter related to

23   Classified Program No. 1.

24          MR. MAC MAHON:  And I think that would eliminate the

25   potential for confusion of the jury as they try to decide what

```
1    exact classified information.
2              THE COURT:  All right, tell me which line in that you
3    want it.  "In this case, unauthorized possession of classified
4    information means possession of classified information by a
5    person."
6              MR. MAC MAHON:  After "classified information" is
7    comma, "namely, a letter related to Classified Program No. 1."
8              THE COURT:  All right, I will add that.
9              MR. POLLACK:  Your Honor, Mr. Trump said that applies
10   to Counts 2, 5, and 7.  I think it also applies to Count 3.
11             THE COURT:  Well, we're not talking about Count 3
12   here.
13             MR. POLLACK:  I understand, but I think the same
14   should be on the Count 3 instruction.  The national defense
15   information we're talking about in Count 3 is the letter.
16             THE COURT:  All right, does the government agree with
17   that?  What we could do is on page 41, where we're giving the
18   elements of Count 3, and the first element, "that on or about
19   the date set forth in the indictment" -- I thought we had put
20   the date in there because I want to help the jury not have to
21   search for those things -- "the defendant had unauthorized
22   possession or control over a document relating to the national
23   defense, specifically, a letter."
24             MR. POLLACK:  Yeah, it looks like you already have
25   it, Your Honor, I'm sorry, on page 39.
```

```
 1              MR. MAC MAHON:  I'm sorry to be double-teaming you,
 2    Your Honor.  We're all trying to get this done.  But on page
 3    39, the nature of the offense on Count 3, says "namely, a
 4    letter relating to Classified" --
 5              THE COURT:  So it's there.  And the date --
 6              MR. MAC MAHON:  It's there, but it's not described as
 7    an element of the offense.
 8              THE COURT:  Well, it's not really an element.  It's
 9    not an element.  That's the, that's the item that fulfills that
10    element.
11              MR. MAC MAHON:  Thank you, Your Honor.
12              THE COURT:  So all right, it's there.
13              All right, is there anything else?  Because we want
14    to get the jury --
15              MR. TRUMP:  Yes, yes, Your Honor.  The modification
16    to your 404(b) evidence does not take into account the other
17    permissible uses of 404(b).  We did not offer it for proof of
18    intent.  We offered it for proof of opportunity, intent,
19    preparation, plan, and knowledge.  All of those should be in
20    the instruction.
21              THE COURT:  What book are you looking at?  Because
22    the one I took it --
23              MR. TRUMP:  I'm looking at the rule, Your Honor.
24              THE COURT:  I'm sorry?
25              MR. TRUMP:  I'm looking at the rule, Rule 404(b).  I
```

1   mean, typically, 404(b) in many cases is offered for intent,

2   but that is not the purpose here.

3           THE COURT:  I'm using the standard jury instruction,

4   which is not a misstatement of the law.  And you can argue.

5   You can argue.  I've ruled on that.

6           All right, anything else, Mr. Trump?

7           MR. TRUMP:  No, Your Honor.

8           *         *         *         *         *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              *        *        *        *        *
 2         (Recess from 2:46 p.m., until 4:22 p.m.)
 3                      (Defendant present, Jury out.)
 4         THE COURT:  Well, I told you-all this was a smart
 5    jury.  I just, I love the questions that we get.  It shows that
 6    they're reading and thinking.
 7         All right, the answer for the first question is easy.
 8    "The jury would like further clarification on 'venue' (page 56
 9    of the jury instructions).  More directly, Count 10, how is
10    venue determined?"
11         And there is a Fourth Circuit case that I think is
12    right on point.  It's Rodriguez-Moreno and Bowens v. United
13    States, but they both seem to hold the proposition that venue
14    is proper in the district where the effects of the offense
15    would be felt, concluding that because the effects of the
16    materially false statements were felt by those conducting a
17    federal investigation in Maryland, venue was proper in that
18    district.
19         So the effect for Count 10 would be felt by the grand
20    jury in the Eastern District of Virginia, and that's why that's
21    a relatively easy answer.
22         MR. TRUMP:  Yes, it's --
23         THE COURT:  Because they're specifically concerned
24    about Count 10.
25         MR. TRUMP:  Yeah, it's in the statute, Judge.  A
```

1    prosecution under this section may be brought in the district

2    in which the official proceeding was intended to be affected.

3              THE COURT:  That's even easier.  Hold on a second.

4                        (Laughter.)

5              THE COURT:  Always start with the statute.  You're

6    correct, Mr. Trump.  All right, let me -- what's our code

7    section for that?

8              MR. TRUMP:  1512(g) -- excuse me, (h)(i).

9              THE COURT:  All right, 1512(g)?

10             MR. TRUMP:  (H).

11             THE COURT:  I'm sorry, (h).

12             MR. TRUMP:  1512(h)(i).  Excuse me, it's just -- I'm

13   misreading that.  It's 1512(i).

14             THE COURT:  Correct, you're right.  So a prosecution

15   under -- the prosecution under Count 10 may be brought in the

16   district in which the official proceeding was intended to be

17   affected, all right?  Or in the district.  So I'm going to read

18   it that way, all right?  That's from the statute.

19             And I think that's the only answer they are

20   requesting at this point.

21             MR. MAC MAHON:  Well, Your Honor, if I may, I think

22   that the question about clarification on venue, I know they're

23   just asking about Count 10 here, and, and I think that the

24   instruction that we proffered before about where the element of

25   these other offenses where the information was disclosed or

1    where somebody was when they heard it is the proper venue in

2    the 793 counts, and I think that's what they're asking as well,

3    and I think that's what they should be told.

4            THE COURT:  Well, I'm not going to go beyond the

5    specifics of the question, and because they did it

6    specifically, I'm going to address that.  If they have further

7    questions, they are not going to be shy about coming back, all

8    right?

9            MR. MAC MAHON:  Your Honor, your answer is just,

10   you're going to be very clear that it pertains only to Count

11   10?

12           THE COURT:  To Count 10, yes.  All right?

13           MR. MAC MAHON:  It doesn't affect venue for any other

14   count.

15           THE COURT:  Correct.  I will say, though, in doing a

16   quick check of my book on Fourth Circuit criminal law, the

17   concept on venue does seem to be very statute specific, so I

18   suggest since this issue may come up again, the government --

19   both sides may want to do some specific research on these -- on

20   the other counts for venue issues.

21           Again, what I said years ago in the context of, you

22   know, deciding on the Risen issue is not necessarily a complete

23   or full instruction.  That was never the intention of the Court

24   back then.  You've been citing me to me.  I'm not reversing

25   myself; I just want to -- there must be other judges who have

1    also addressed the issue of venue for these statutes, maybe

2    not.

3              MR. MAC MAHON:  We'd like the cite Brinkema on venue,

4    Your Honor.

5              THE COURT:  Yeah, Brinkema on venue, right.

6              But anyway, let's get the jury in.  They want to go

7    home at 5:15 tonight.  I will bring them in here before I send

8    them home.

9              MR. OLSHAN:  Your Honor?

10             THE COURT:  Yeah.

11             MR. OLSHAN:  There was a second question that just

12   came out?

13             THE COURT:  Yeah.  They want to stick sticky notes on

14   the wall, all right?  We're telling them they can't do that.

15   They have to use the board.

16             We're giving you every note that we get, and I

17   don't -- if you didn't get those yet --

18             MR. OLSHAN:  I think it literally just came out as

19   the Court was coming out.

20             THE COURT:  Yeah.  Do you like our snazzy new forms?

21   We're giving them some structure.  Okay.

22                          (Jury present.)

23             THE COURT:  Again, folks, you can really sit anywhere

24   in the box where you're comfortable.  That's all right.  You

25   like your seats.  Have a seat, please.

1     I was just telling the attorneys I knew you were a

2 sharp jury, and that was a very smart question you sent.  Let

3 me address the easier question.  You can have all the Post-it

4 notes you want, but you can't put masking tape on my walls,

5 okay?

6          A JUROR:  I thought you might say that.

7          THE COURT:  Okay.  You can put masking tape on the

8 tripod; you know, we've given you an easel; and the sticky

9 notes, the Post-it notes won't hurt the walls.  I don't care if

10 you want to put those on the walls, all right?  But, you know,

11 it's government property.  You don't want to be destroying it.

12 All right.

13          Now, in terms of the substantive question, you've

14 asked:  "The jury would like further clarification on 'venue.'

15 More directly, Count 10, how is venue determined?"

16          I understand that's your question.  And for Count 10,

17 which is again the obstruction charge, that's actually -- the

18 venue provision is actually in the statute, and I probably

19 should have given that to you.  So a prosecution under this

20 section may be brought in the district in which the official

21 proceeding (whether or not pending or about to be instituted)

22 was intended to be affected or in the district in which the

23 conduct constituting the alleged offense occurred.

24          And what I'll do is I'm going to photocopy just that

25 section to give to the jury so they have it as an additional

1    instruction along with the other ones.

2              Any objection to doing that?

3              MR. MAC MAHON:  No objection.

4              MR. TRUMP:  (Shaking head.)

5              THE COURT:  All right.  So this additional

6    instruction, I'll put another -- I'll put it in the, give you a

7    page number so it's sort of logical, and it will say for Count

8    10, so you don't mix it up with anything else, but for Count

9    10, there's actually a statutory provision, all right?  And

10   I'll get that to you, all right?

11             The other thing is, folks, I know you want to leave

12   at 5:15 today, and that's fine, but our, our practice will be

13   before any session is ended for the day, I always want to bring

14   you back in just to make sure I remind you about, you know, how

15   you have to behave from here on out, all right?

16             So we'll recess court to await your decision.

17                  (Recess from 4:30 p.m., until 5:18 p.m.)

18                            (Defendant and Jury present.)

19             THE COURT:  Ah, the jury has indicated they want to

20   start at 8:30 tomorrow morning, bright and early, so I'll

21   require at least one attorney for each side to be in the

22   courtroom.  That's great, ladies and gentlemen.

23             Now, it's pretty cold in the courtroom right now.

24   Was the jury room comfortable when you were in there?

25                            (Jurors nodding heads.)

1           THE COURT:  All right.  Don't be -- you won't be shy,

2    I don't even have to say that, about sending us notes.  The

3    temperature is tough to keep under control, but we'll try to

4    make it as comfortable for you as possible.

5           All right, so I'm going to send you home for the

6    evening.  Please remember my cautions:  You must not try to

7    communicate with each other or your two former colleagues.

8    Don't discuss this case with anyone.  Again, some of your

9    family may know what case you're sitting on.  If they want to

10   talk to you about the article in *The Post* or anything else,

11   you've got to tell them, "Judge said absolutely no."  Do not do

12   it.

13          And don't take any of the evidence home with you.

14   You can't be studying it overnight.  If you're reading the

15   chapter, Exhibit 132, you need to read it here in the jury

16   room.

17          So just -- you've been a great jury.  Don't let

18   anything mess up our case at this point.  And we'll see you

19   back here at 8:30.  I'm not going to bring you back into court.

20   You can just report to the jury room, and once all 12 of you

21   are there, you can start deliberating.  Again, until you're all

22   12 in the room, you can make pleasantries about the weather or

23   the upcoming weekend, but do not discuss the case, all right?

24   Thank you.  We'll let you-all go.

25          I'll stay in session for a few minutes.

1          MR. MAC MAHON:  Thank you, Your Honor.

2                      (Jury out.)

3          THE COURT:  Mr. MacMahon, you had an issue you wanted

4    to raise?

5          MR. MAC MAHON:  Yes, Your Honor.  You invited us to

6    go do some more research on the venue question.

7          THE COURT:  Yeah.

8          MR. MAC MAHON:  And --

9          THE COURT:  Have you shared your results with the

10   government, or are they hearing it for --

11         MR. MAC MAHON:  It's hot off the press, Your Honor.

12         THE COURT:  Right.

13         MR. MAC MAHON:  And I'm happy to share it with them

14   now as well, and I have a copy for you, but the *Truong*, I think

15   it's the *Truong* case --

16         THE COURT:  Oh, that's an old case out of the Vietnam

17   War, yep.

18         MR. MAC MAHON:  Well, this, this -- we have a copy

19   for the Court as well.

20         THE COURT:  All right, if you'd give it to Mr. Wood?

21   Yeah.

22              They have an exhibit for me.

23         MR. MAC MAHON:  Judge, it's footnote 11.  The way

24   this printed out is not -- but this is *U.S. v. Truong*,

25   T-r-u-o-n-g.

1          THE COURT:  I know the case.  I was around in those

2    days, yeah.

3          MR. MAC MAHON:  I was just giving it for the court

4    reporter, Your Honor.  I was getting that look from the court

5    reporter.

6          THE COURT:  Oh, I'm sorry.  Go ahead.

7          MR. MAC MAHON:  And it's 629 F.2d 908.

8          But, Judge, in footnote 11 in the *Truong* case, there

9    was -- and this was a search for venue questions in espionage,

10   and this was a 793 conviction and a 794 case, but what the

11   Fourth Circuit did in affirming in that case was language in a

12   footnote which is found on page 18, footnote 11 -- and it came

13   out double-sided; I'm sorry, Your Honor -- but the defendant in

14   that case complained about venue in an espionage case, and

15   there's the language about how it's constitutional and why it's

16   important that venue be established since the defendant has the

17   right to be charged in the district where the crime occurred,

18   and it says in 11 that since Krall was the means by which the

19   documents were carried to the Vietnamese in Paris, the

20   proscribed act, the act of transmission took place in

21   Alexandria.

22         So in that case, albeit in a footnote, there is a

23   Fourth Circuit opinion that says the proscribed act under 793

24   is the act of transmission, which is what we've been arguing to

25   the Court.  It's not all the other peripheral instances that

1  happened or may have happened in this case or even in the

2  *Truong* case.

3          And the cite there is to *U.S. v. Walden*, which I

4  think you cited to us a couple days before, and the *Walden*

5  case, which we pulled up, also, deals with how it's -- it is

6  element specific, the acts of venue, because of the

7  constitutional right to be tried in the, in the district where

8  the crime is committed.  They cite --

9          THE COURT:  But, you know, the other issue -- and

10 again, I'm going to let the government research this overnight.

11 It's early enough in the jury's deliberations if we have to

12 refine the venue instruction, it's not going to be a problem,

13 but there's also a pretty well-established principle that

14 where, where a -- where the effects of a crime are felt can be

15 part of the continuity of venue.  I mean, again, the government

16 has alleged that these disclosures, among the places where

17 there was an unlawful disclosure are here in Virginia.

18         MR. MAC MAHON:  All right, Judge.  There's a couple

19 counts that deal with that but not every count, and really, I

20 don't think that in -- if the government needs time to research

21 it, it's fine, but what these, what these cases are saying is

22 that it's the proscribed act in the case.  It's not an

23 ephemeral concept that we decide where, where a crime -- in

24 very few cases is there an issue of venue.  Normally in all of

25 our plea agreements or cases we have, someone says, "I was in

1    the Eastern District of Virginia."  It's never an issue in

2    almost any case that we've ever had -- that I've ever had in

3    front of you.  I've never had the issue come up.

4              THE COURT:  But I've had the issue come up.  I

5    mentioned a couple examples to you yesterday.

6              MR. MAC MAHON:  But I don't, I don't believe -- I

7    think when you read *Walden* and you read this *Truong* case, that

8    you have to find an act that was element specific.  It says in

9    this *Truong* footnote --

10             THE COURT:  Wait.  But why is not at least, for

11   example, causing the disclosure or causing the communication --

12   part of the problem is the communication occurs, part of the

13   communication is in the Eastern District of Virginia.  That is,

14   when the book enters Virginia, there has been --

15             MR. MAC MAHON:  And that's very few counts, Judge.

16             THE COURT:  I'm sorry?

17             MR. MAC MAHON:  Not every count deals with the

18   publication of the book in Virginia.

19             THE COURT:  No, I recognize that.

20             MR. MAC MAHON:  There's attempts.  There's conveyance

21   of property.  There's other counts that it's possible you

22   could -- I mean, we would again renew the Rule 29 on this

23   issue, and I don't expect the Court to grant it at this time,

24   but there isn't any evidence of transmission of this

25   information.  The four phone calls add up to about a minute,

1    and it has to be element-specific.

2           It can't just be the sale of the book.  If it's just

3    the sale of the book, then every count but that has to go out

4    because there isn't any evidence of venue, and that was the

5    instruction that we gave you before, which is they have -- the

6    government has to prove where the act of transmission or

7    receipt took place here in the Eastern District of Virginia,

8    and there's no evidence of that whatsoever.

9           THE COURT:  All right, what I'm going to do, I mean,

10   the jury has this case now.

11          Mr. Trump, are you ready to respond?

12          MR. TRUMP:  Your Honor, in the *Truong* case, it was a

13   conspiracy case, and Truong and Humphrey were coconspirators.

14          THE COURT:  I know.

15          MR. TRUMP:  They were arguing the case that they

16   should have been charged in D.C. because that's where the

17   conspiracy was located, but they were prosecuted in Virginia

18   because they transferred the documents to the unwitting person

19   who then flew to Paris from Virginia.

20          So it was a question of in that case, that the

21   defendant was claiming I should have been charged in D.C., and

22   the court said no, there was an act of transmission occurring

23   in Virginia.  You could have been charged in D.C., but you

24   weren't.  You were charged in Virginia.

25          So it's not, it's not a definitive statement that the

 1    only place the case could have been charged was in Virginia.

 2         THE COURT:  And the even more general proposition of

 3    law was that there was an act in furtherance of the conspiracy

 4    that occurred in the Eastern District of Virginia in that case.

 5         MR. TRUMP:  Well, there was also conspiracy to

 6    violate 793, but even in the 793 context, it wasn't a

 7    definitive statement that the only place it could have been

 8    charged was, was Eastern District of Virginia, but there's also

 9    a fundamental point that the jury has been instructed and we

10    argued the case based upon the proffered instruction.

11         I think at this point, if it's error, it's error, and

12    we'll find out at some point if the defendant is convicted, but

13    if we are to revise the instruction now, we can't go back and

14    reargue the case.

15         THE COURT:  Well, I don't think it was that major an

16    argument in the case, but I'll let it be as it is.  As I said,

17    if we get questions, we'll have to address the specific

18    questions that come up from the jury, and at this point, as I

19    said, I'm not uncomfortable with the venue instruction, and

20    that's what it is.

21         So you've made the record, Mr. MacMahon, and I'm not

22    changing --

23         MR. MAC MAHON:  We'll do more research, Your Honor,

24    if you want us to.  We'll go back to the library.

25         THE COURT:  I never discourage counsel from reading

1    the law; that's wonderful; but in any case, I do think, though,

2    out of fairness to the government and to the Court, you need to

3    send it to us in writing so that we have a chance to look at it

4    and not just have to, you know, think about it from the bench,

5    okay?

6              MR. MAC MAHON:  We'll draft something.

7              THE COURT:  All right.  So tomorrow morning, 8:30.

8    We'll recess court until then.

9        (Recess from 5:28 p.m., until 8:30 a.m., January 23, 2015.)

10

11                   CERTIFICATE OF THE REPORTER

12       I certify that the foregoing is a correct excerpt of the

13   record of proceedings in the above-entitled matter.

14

15

16   _____
                         /s/
17                  Anneliese J. Thomson

18

19

20

21

22

23

24

25