**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:10CR485 |
| | ) | |
| | ) | |
| | ) | Hon. Leonie M. Brinkema |
| v. | ) | |
| | ) | |
| JEFFREY ALEXANDER STERLING | ) | |
| | ) | |
| Defendant. | ) | |

**JEFFREY STERLING'S MOTION FOR JUDGMENT OF ACQUITTAL
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Jeffrey Sterling, through counsel, respectfully moves the Court to enter an order for a judgment of acquittal on all Counts, pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial on all Counts, pursuant to Federal Rule of Criminal Procedure 33.

## BACKGROUND

Prior to the close of the government's case, on January 20, 2015, Mr. Sterling moved to dismiss the indictment on the grounds that testimony by two government witnesses had violated the Protective Order entered by the Court. *See* DE 416. The Court denied the motion at that time, and Mr. Sterling hereby renews it in order to further preserve his argument.[1]

On January 21, 2015, at the close of the government's case, Mr. Sterling moved for a judgment of acquittal on all counts. The Court reserved on that motion. On the same day, at the close of all evidence, Mr. Sterling renewed his motion. The Court entered a judgment of acquittal as to Count Eight, but denied Mr. Sterling's motion with respect to the remaining

---

[1] Mr. Sterling had also filed a Motion to Dismiss Based on Selective Prosecution, or, in the Alternative, To Take Discovery Related to Selective Prosecution on January 2, 2015. *See* DE 372. The Court reserved ruling on the issue, and Mr. Sterling hereby renews that motion as well.

counts.  Mr. Sterling also separately moved for a Judgment of Acquittal pursuant to Fed. R.

Crim. P. 29 on January 23, 2015 and, again, on January 25, 2015.  *See* DE 423, 426.  The Court

stated it would not decide either of those motions while the jury was deliberating.  On January

26, 2015, the jury returned a guilty verdict as to the remaining counts (Counts One-Seven, Nine

and Ten).  Following the verdict, the court ordered that counsel file post-trial motions within

three weeks.  *See* DE 428.

## ARGUMENT

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an

acquittal."  Fed. R. Crim. P. 29(c)(2).  A guilty verdict may only survive "if, viewing the

evidence in the light most favorable to the prosecution, the verdict is supported by substantial

evidence."  *United States v. Morris*, 575 Fed. Appx. 174, 176 (4th Cir. 2014) (citation and

quotations omitted).  Substantial evidence is "evidence that a reasonable finder of fact could

accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a

reasonable doubt."  *United States v. Baylor*, 537 Fed. Appx. 149, 163 (4th Cir. 2013) (citation

and quotations omitted).  Here, the verdict must be set aside for three reasons: (1) the

government failed to establish venue in the Eastern District of Virginia for each of the counts; (2)

the verdict is not supported by substantial evidence of Mr. Sterling's guilt beyond a reasonable

doubt; and (3) prosecution of Count Nine is barred by the statute of limitations.

Alternatively, "[u]pon the defendant's motion, the court may vacate [the] judgment and

grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  While "a court

should exercise its discretion to grant a new trial sparingly," it should do so "when the evidence

weighs heavily against the verdict."  *United States v. Sprouse*, 517 Fed. Appx. 199, 204 (4th Cir.

2013).  "When the motion attacks the weight of the evidence, the court's authority is much

broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "[T]he court may consider the credibility of witnesses and need not view the evidence in the light most favorable to the government in determining whether to grant a new trial." *United States v. Souder*, 436 Fed. Appx. 280, 289 (4th Cir. 2011) (citation omitted). Unlike the standard for entering a judgment of acquittal, "the trial court may grant relief if it determines that the evidence—even if legally sufficient to convict—weighs so heavily against the verdict that it would be unjust to enter judgment." *Id*. Thus, in *Souder*, the Fourth Circuit affirmed the district court's grant of a new trial when "the verdict was against the cumulative weight of the evidence[.]" *Id*. at 290 (citation and quotations omitted); *see also United States v. Campbell*, 977 F.2d 854, 860 n.6 (4th Cir. 1992) (same). Assuming *arguendo* that sufficient evidence existed to support Mr. Sterling's conviction, the Court should nonetheless set aside the verdict and grant a new trial because it was against the cumulative weight of the evidence.

## I. THE GOVERNMENT FAILED TO ESTABLISH VENUE FOR COUNTS ONE THROUGH SEVEN AND COUNT NINE OF THE INDICTMENT.

"Proper venue in a criminal prosecution is a constitutional right." *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000); *see also United States v. Bolden*, 305 Fed. Appx. 83, 84 (4th Cir. 2008) ("The right to trial where the criminal act occurred is rooted in the Sixth Amendment and Article III of the Constitution"). Thus, "[i]t is settled that, in a criminal case, venue must be narrowly construed, and venue must be proper for each separate count of a multi-count indictment." *United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012).

"The burden is on the government to prove venue by a preponderance of the evidence." *United States v. Babb*, 369 Fed. Appx. 503, 509 (4th Cir. 2010). To do so, the government must establish that an "essential conduct element" of each offense alleged against Mr. Sterling took

place in the Eastern District of Virginia.  *Jefferson*, 674 F.3d at 365; *see also Bowens*, 224 F.3d at 311 ("[T]he place where a criminal offense is committed is determined solely by the essential conduct elements of that offense"); *United States v. Barsanti*, 943 F.2d 428, 434 (4th Cir. 1991) ("Venue on a count is proper only in a district in which an essential conduct element of the offense took place").  "This inquiry is twofold."  *Jefferson*, 674 F.3d at 365 (citation omitted). The court must first identify the essential conduct constituting the offense and then determine where that criminal conduct was committed.  *Id*.

In this case, the government did not charge a conspiracy.  The only count that charged a scheme to defraud was dismissed.  The government did not pursue the theory of aiding and abetting, and the jury was not charged under this theory.  Thus, the government must establish venue based on an essential conduct element of discrete substantive offenses, not based on any theory of continuing activity.[2]

The government's case for venue under § 793 and § 641 is certainly novel.  Mr. Sterling is unaware of any other prosecution under the Espionage Act, even one involving aiding and abetting or conspiracy theories of liability, where venue lay in a district merely because a book containing classified information was distributed and sold there.  The Fourth Circuit has cautioned that venue must be "narrowly construed."  *Jefferson*, 674 F.3d at 365.  Permitting venue in this District would result in an expansive, rather than narrow, construction of venue for criminal statutes that do not contain broad venue provisions.

As the Supreme Court has explained, the constitutional underpinnings of requiring venue in the state or district where the crime was committed are rooted in the Framers' awareness "of

---

[2] *McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991) (the verdict cannot be sustained based on a theory of liability on which the jury was not instructed); *United States v. Winfield*, 997 F.2d 1076, 1081 (4th Cir. 1993) ("convictions based on theories not submitted to the jury cannot stand").

the unfairness and hardship to which a trial in an environment alien to the accused exposes him."

*United States v. Johnson*, 323 U.S. 273, 275 (1944).   While the Court acknowledged that Congress could extend venue through the continuing offense doctrine, it also expressed that, "[p]lainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense[,] [i]t also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution."   *Id*.   The Court further explained that, "Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed."   *Id*. at 276. Therefore, "[i]t is significant that when Congress desires to give a choice of trial, it does so by specific venue provisions giving jurisdiction to prosecute in any criminal court of the United States through which a process of wrongdoing moves."   *Id*.

Thus, in determining where venue lay under the Federal Denture Act of 1942, the Court held that the crime committed by the sender (of unlawful goods) was complete when he used the mails, and trial should be restricted to that district from which he sent the goods.   *Id*. at 277-78. Trial in any intervening districts through which the mail passed or in the district where it was ultimately received was improper.   *Id*.   The Court concluded, "[t]he large policy back of the constitutional safeguards counsels against the unrestricted construction for which the Government contends when Congress has not commanded it; and no considerations of expediency require it."   *Id*. at 278.   Here, the criminal acts alleged under § 793 and § 641 are not continuing offenses, and the statutes do not contain specific venue provisions.[3]

---

[3] The Fourth Circuit has, in determining the applicable statute of limitations, construed different subsections of § 641 as constituting a "continuing offense."   *See United States v. Smith*, 373 F.3d 561, 567-68 (4th Cir. 2004) ("At least in those cases where the defendant created a recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's

**A.  None of the Essential Conduct Elements of the Offenses Took Place in the Eastern District of Virginia.**

The conduct constituting the offenses is set forth in the Indictment and the Jury Instructions provided by the Court.  The Instructions break down each count into a number of elements, some of which constitute a determinable act of conduct and some of which do not.  An element constituting an essential act of conduct for each count must have occurred in the Eastern District of Virginia in order for a conviction on that count to be sustained.[4]

Count One charges Mr. Sterling with transmitting national defense information that he lawfully possessed about Classified Program No. 1 and Human Asset No. 1 to the general public through the publication, distribution and delivery of James Risen's book *State of War*, in violation of 18 U.S.C. § 793(d).  *See* Indictment [DE 1] at ¶ 55.  As the Court's jury instructions set forth, upon establishing the first element of lawful possession of information relating to the national defense, the government must also establish beyond a reasonable doubt,

> the following three elements: *Second*, that the defendant had reason to believe that this national information could be used to the injury of the United States or to the advantage of any foreign nation.  *Third*, that the defendant willfully communicated, delivered, transmitted or caused to be communicated, delivered, or transmitted this national defense information.  *Fourth*, that the defendant did so to a person not entitled to receive it.

---

possession by the government, and maintained that scheme without need for affirmative acts linked to any particular receipt of funds - cases in which there is a strong temporal relationship between the [completion of the] offense and culpability [] - we think that Congress must have intended that such be considered a continuing offense for purposes of the statute of limitations") (citation and quotations omitted); *United States v. Blizzard*, 27 F.3d 100, 101 (4th Cir. 1994) (the offense of "*concealing and retaining* stolen government property is a continuing offense and [] the statute of limitations does not run during possession of the property") (emphasis added).  The holdings of these cases were limited to the application of the statute of limitations for the specific acts charged in the indictments, namely a recurring embezzlement scheme and continuing retention of stolen government property.  The criminal act charged here is that Mr. Sterling "conveyed a thing of value of the United States."  Jury Instructions, p. 46.  The act of conveyance is a single, definitive act that did not and could not continue after its completion.

[4] Among other objections, Mr. Sterling objected repeatedly to the Court's jury instruction on venue.  Mr. Sterling specifically requested an instruction that set forth the requirement that venue be based on where the proscribed act (*i.e.* the essential conduct element) occurred.

Jury Instructions, p. 30.

Count Two charges Mr. Sterling with transmitting national defense information that he was unauthorized to possess, a letter relating to Classified Program No. 1, to the general public through the publication, distribution and delivery of *State of War*, in violation of 18 U.S.C. § 793(e).  Indictment ¶¶ 56-57.  The government must first establish beyond a reasonable doubt the first element, that Mr. Sterling had unauthorized possession of the letter.  The second, third and fourth elements are the same as Count One.

Count Three charges Mr. Sterling with the unauthorized retention of the letter relating to Classified Program No. 1, in violation of 18 U.S.C. § 793(e).  *Id*. ¶¶ 58-59.  The jury instructions set forth two elements that the government must establish beyond a reasonable doubt:

> *First*, that beginning on or about January 31, 2002, and continuing thereafter through on or about April 20, 2003, the defendant had unauthorized possession or control over a document relating to the national defense of the United States; *Second*, that the defendant willfully retained the same document and failed to deliver the document to an officer and employee of the United States who was entitled to receive it.

Jury Instructions, p. 41.

Count Four charges Mr. Sterling with transmitting national defense information that he lawfully possessed about Classified Program No. 1 and Human Asset No. 1 to Mr. Risen, in violation of 18 U.S.C. § 793(d).  Indictment ¶¶ 60-61.  The elements are the same as Count One.

Count Five charges Mr. Sterling with transmitting national defense information that he was unauthorized to possess, a letter relating to Classified Program No. 1, to Mr. Risen, in violation of 18 U.S.C. § 793(e).  *Id*. ¶¶ 62-63.  The elements are the same as Count Two.

Count Six charges Mr. Sterling with attempting to transmit national defense information that he lawfully possessed about Classified Program No. 1 and Human Asset No. 1 to the public

through the publication of a newspaper article, which was never actually published, in violation of 18 U.S.C. § 793(d). *Id*. ¶¶ 64-65. The elements are the same as Count One.

Count Seven charges Mr. Sterling with attempting to transmit national defense information that he was unauthorized to possess, a letter relating to Classified Program No. 1, to the public through the publication of a newspaper article, which was never actually published, in violation of 18 U.S.C. § 793(e). *Id*. ¶¶ 66-67. The elements are the same as Count Two.

Finally, Count Nine charges Mr. Sterling with conveying information about Classified Program No. 1 to the public through the publication of Mr. Risen's book, in violation of 18 U.S.C. § 641. As the jury instructions set forth,

> the government must prove the following four essential elements beyond a reasonable doubt: *First*, that the defendant conveyed a thing of value of the United States; *Second*, that the defendant did not have the legal authority to do so; and *Third*, that the thing of value referred to in the indictment was of a value greater than $1,000.00, and *Fourth*, that the defendant acted knowingly.

Jury Instructions, p. 46.

Thus, Counts One, Two, and Nine are all related to the publication of *State of War*. Count Three relates to the retention of the letter. Counts Four and Five involve communications to Mr. Risen. Counts Six and Seven relate to the attempted publication of a newspaper article.

i. *The government did not show a single act of transmission or retention in the Eastern District of Virginia and therefore failed to prove venue for Counts Three, Four, Five, Six and Seven.*

After identifying the conduct constituting the offense, the second part of the inquiry is determining where the essential criminal conduct occurred. Counts Three through Seven are not premised on the transmission of classified information through the publication of Mr. Risen's book (as are Counts One, Two and Nine, discussed below). Rather, they are premised on the unlawful retention of national defense information, the transmission of that information to Mr.

8

Risen, and the attempt to cause Mr. Risen to publish it in a newspaper article.  The government failed entirely in meeting its burden to establish that any essential conduct related to these counts occurred in the Eastern District of Virginia.  Therefore, the Court should enter a judgment of acquittal on Counts Three, Four, Five, Six and Seven.

a.   <u>Counts Four and Five must be dismissed</u>.

The essential conduct elements in Counts Four and Five are the act of communication of lawfully possessed classified information (for Count Four) and the acts of possession and communication of an unlawfully possessed letter about Classified Program No. 1 (for Count Five).  Each count charges Mr. Sterling with the act of communication to Mr. Risen alone. Regardless of whether Mr. Risen later published a book or newspaper article, the offenses were complete and the crime fully committed upon the transmission of the information to Mr. Risen. The government presented no evidence of where Mr. Sterling possessed the letter about Classified Program No. 1, where he was when he transmitted national defense information to Mr. Risen or where Mr. Risen, whose office was in the District of Columbia and home was in Maryland, was when he received it.

The only evidence presented by the government with respect to events related to Counts Four and Five that occurred in the Eastern District of Virginia is that in 2003, Mr. Sterling and Mr. Risen had a number of brief telephone communications while Mr. Sterling was in the Eastern District of Virginia.  However, the government produced no evidence about the substance of those communications.  There is no evidence that national defense information was transmitted during those brief calls.  Assuming that Mr. Sterling transmitted national defense information to Mr. Risen and at some point gave him the letter, there simply is no evidence of when, where, or how Mr. Sterling did so.  The government did not prove by a preponderance of

the evidence that national defense information was transmitted in the phone calls from the Eastern District of Virginia and therefore did not establish venue with respect to Count Four. Further, Mr. Sterling could not have transmitted the letter to Mr. Risen through a phone call. Accordingly, there is no evidence at all that an essential conduct element of Count Five occurred in the Eastern District of Virginia.  Both counts must be dismissed.

### b.   Counts Six and Seven must be dismissed.

The conduct charged in Counts Six and Seven is the attempted transmission of national defense information to the public through the publication of a newspaper article.  Count Six deals with national defense information generally, and Count Seven deals with the national defense information contained in the letter.  By May 2003, when the *New York Times* told Dr. Rice's office that it was agreeing with her request not to publish the information, it was apparent that there would be no newspaper article.  No newspaper article was ever published, so it certainly was never distributed to the Eastern District of Virginia.

To prove an attempt by Mr. Sterling to have the information published in a newspaper article, the government would have to prove that he engaged in an essential conduct element of an attempt in the Eastern District of Virginia prior to May 2003.  The government failed to prove that Mr. Sterling took any substantial step in the Eastern District of Virginia toward the communication of national defense information to Mr. Risen for the purpose of causing Mr. Risen to publish it in a newspaper article.  As set forth above, the government did not present any evidence regarding the content of the brief telephone communications while Mr. Sterling was in the Eastern District of Virginia during the time that Mr. Risen was presumably working on a

newspaper article about Classified Program No. 1.  There is no evidence that those brief calls related to national defense information, much less that they related to the contents of the letter.[5]

As to the letter, even if the possession of the letter in the Eastern District of Virginia by Mr. Sterling were sufficient to be a substantial step toward the transmission of the letter to Mr. Risen in order for its contents to be published in a newspaper article, and therefore an attempt to do so, the government offered no evidence that Mr. Sterling possessed the letter in the Eastern District of Virginia.[6]  Instead, the government offers speculation on top of speculation.  The government posits that, despite the lack of evidence to support this contention, Merlin gave Mr. Sterling the letter in New York.  At that time, Mr. Sterling was authorized to possess the letter.  The government then speculates that at some point Mr. Sterling took a "soft file" out of the New

---

[5] The government produced evidence that Mr. Sterling sent Mr. Risen a link to a CNN.com article about the Iranian weapons program after he had met with the Senate Select Committee on Intelligence staffers.  While this is evidence that this topic had come up previously between Mr. Sterling and Mr. Risen, it is not evidence that Mr. Sterling took any substantial steps toward providing national defense information about the topic to Mr. Risen.  If Mr. Risen learned of Mr. Sterling's visit to the Hill by someone other than Mr. Sterling (and there was evidence, such as Mr. Divoll's failure to abide by Committee rules governing confidentiality and the relationship between Mr. Risen and other Hill staff members with whom Ms. Divoll communicated, from which this would be a reasonable inference), he likely would have called Mr. Sterling to try to get Mr. Sterling to talk to him about Classified Program No. 1.  An email from Mr. Sterling to Mr. Risen providing only a link to a CNN article is equally consistent with Mr. Sterling not having agreed to talk to Mr. Risen about Classified Program No. 1 as with him having agreed to do so.

[6] Indeed, the government never proved that Mr. Sterling possessed the letter at all.  The weight of the evidence was that the original of the letter was never brought back from Vienna.  The only version of the letter that existed was on the home computer of Human Asset No. 1 (also known by the alias Merlin).  The sole evidence that Merlin ever gave a copy of the final version of the letter (which is the version that appears in the book) to Mr. Sterling was Merlin's testimony for the first time on cross-examination that he gave a copy of the final letter to Mr. Sterling two weeks before he left for Vienna.  However, as reflected in the CIA cables, Merlin met alone with Mr. S. (not Mr. Sterling) about two weeks before Merlin left for Vienna.  The last time that Merlin met alone with Mr. Sterling before going to Vienna was two months earlier.  At that point, Mr. S. had not yet made his suggestion that the letter be edited to include explicit language that the nuclear plans were being offered for free.  That edit was necessarily made after the last meeting between Mr. Sterling and Merlin before Merlin's trip to Vienna, so Merlin could not have given Mr. Sterling a copy of the letter with that edit (as it appears in the book) at his meeting with Mr. Sterling as he testified.  Thus, there is no credible evidence that Mr. Sterling ever had a copy of the letter as it appears in the book.

York office that contained the letter.  There is no evidence that Mr. Sterling ever maintained a soft file, that if he did, it contained the letter, or that Mr. Sterling took the soft file with him.  The government then theorizes that Mr. Sterling took the letter with him when he moved to the Eastern District of Virginia and kept the letter in his residence there (as opposed to, for example, leaving it in a safe deposit box in a bank in New York or a myriad other possibilities if, in fact, Mr. Sterling retained the letter).

The government bases this speculation on the fact that in 2006, when his home in Missouri was searched, the government found old classified documents that had nothing to do with any classified operation, much less Classified Program No. 1.  Thus, the government argues that Mr. Sterling is the type of person who keeps classified documents in his home, the kind of argument that is prohibited under Federal Rule of Evidence 404.  The government's speculation layered on top of speculation is not evidence that proves Mr. Sterling possessed the letter in the Eastern District of Virginia, much less proves it by a preponderance of the evidence.  The government failed to prove that the unlawful retention of the letter, even if that were a substantial step toward causing a newspaper article to be published, occurred in the Eastern District of Virginia.  Counts Six and Seven must be dismissed.

c.  <u>Count Three must be dismissed</u>.

Not only does this failure to establish that Mr. Sterling possessed the letter in the Eastern District of Virginia defeat any argument that the government has established venue for Count Seven, it equally demonstrates that the government failed to prove venue in the Eastern District of Virginia for Count Three, the unlawful retention of the letter.  The government cannot prove venue for the unlawful retention of the letter through a series of speculation that suggests the letter may have been retained in the Eastern District of Virginia.   Rather, it must present

evidence that establishes this fact by a preponderance of the evidence.  It has not done so, and Count Three must be dismissed.

There is simply no venue in the Eastern District of Virginia for Counts Three through Seven.  Mr. Sterling's convictions for these Counts must be dismissed under Rule 29.

> ii.   *The government did not show that Mr. Risen received or transmitted national defense information in the Eastern District of Virginia, and therefore Counts One, Two and Nine must be dismissed.*

In order to determine venue, "[t]he location of the criminal acts is determinative." *United States v. Umaña*, 750 F.3d 320, 334 (4th Cir. 2014).  Venue does not lie merely where "effects" of a criminal act are felt.  Courts have only found venue where the "effects" of a crime are felt when Congress "has defined the essential conduct elements in terms of those effects." *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329-30 (4th Cir. 2012).  The defendants in *Oceanpro* were charged with giving false statements in violation of 18 U.S.C. § 1001. *Id*. at 326. Because § 1001 requires a finding of materiality, the effects of the false statement were an essential conduct element of the offense, and their location could therefore provide a basis for venue. *Id*. at 329-330.  Here, in contrast, materiality is not an element of 18 U.S.C. § 793 or 18 U.S.C. § 641.  Accordingly, venue cannot lie merely where the "effects" of a violation of § 793 or § 641 are felt, and the focus must remain on where the actual criminal act occurred.

Applying this inquiry, the government has also failed to prove venue as to Counts One, Two and Nine.  These charges allege that Mr. Sterling communicated national defense information or unlawfully conveyed government property to the general public through the publication of Mr. Risen's book, which the government demonstrated was distributed to the Eastern District of Virginia.  Sections 793(d) and (e) and § 641 all prohibit a definitive criminal act: the transmission or retention of classified information and the conveyance of government

property.   The essential conduct elements of these statutes are not defined in terms of their "effects," and thus, the "effect" of the ultimate distribution of Mr. Risen's book cannot establish venue for these counts.

> a.   Counts One and Two must be dismissed.

Counts One and Two allege that Mr. Sterling caused the communication of national defense information to the public through the publication of Mr. Risen's book.   The conduit of this information is Mr. Risen.   As the jury instruction on causation under § 793 set forth,

> [t]o establish that the defendant caused an act to be done, the government must prove beyond a reasonable doubt: *First*, that another person performed the acts that constituted the crime of unauthorized communication of national defense information or committed an indispensable element of that crime; and *Second*, that the defendant willfully caused these acts, even though he did not personally commit these acts.

Jury Instructions, p. 36.   Under these instructions, the acts by *Mr. Risen* (caused by Mr. Sterling) of the possession or transmission of national defense information must have occurred in the Eastern District of Virginia.   What is relevant to this inquiry is the location of *Mr. Risen* when he undertook his acts in publishing the book, not where the book was disseminated by others or where the effects of the book were felt after it was published.

There is no evidence in the record of where Mr. Risen was located when he received national defense information or where he was located when he provided this information to others, such as his editor or publisher for publication in the book, much less that any of this occurred in the Eastern District of Virginia.   The evidence showed that Mr. Risen's office was in the District of Columbia and that his residence was in Maryland.   The sole evidence regarding the location of any event pertaining to the book was that the book, *after it was published*, was shipped from New Jersey to Virginia for distribution in the Eastern District of Virginia.   That is evidence of the ultimate effects of conduct by Mr. Risen in the Eastern District of Virginia, not

evidence of conduct by Mr. Risen in the Eastern District of Virginia.   This is a wholly insufficient basis for venue.

It is indisputable that Mr. Sterling himself never communicated or transmitted information to the general public.   As discussed below, the government abandoned its aiding and abetting theory, and the jury was not instructed on this theory.   To subject Mr. Sterling to prosecution in the Eastern District of Virginia as a principal merely because, after he communicated information somewhere that caused someone else (Mr. Risen) somewhere to communicate information somewhere so that a book could be published somewhere that was later shipped to and sold in this District, would be to subject Mr. Sterling to criminal prosecution nationwide, as *State of War* was presumably distributed throughout the country.   Such an expansive conception of venue for § 793 would violate Mr. Sterling's constitutional right to be tried in the district where the crime was committed.

The case law on venue under § 793 is scant.   One Fourth Circuit decision discussing venue, however is clear: "venue for § 794(a) and § 793(e) charges was properly laid in the Eastern District of Virginia" because "the proscribed act, *the act of transmission*, took place in Alexandria."   *United States v. Truong Dinh Hung*, 629 F.2d 908, 919 n.11 (4th Cir. 1980) (emphasis added).   In that case, the defendant Truong provided a confidential informant, Krall, with national defense information, to deliver to the Vietnamese in Paris.   *Id*.   Venue was proper in the Eastern District of Virginia because that was the location where the defendant delivered the information.   *Id*.   The transmission of information in *Truong* is similar to the facts alleged against Mr. Sterling in Counts One and Two because both cases involve the use of an intermediary for the information: the confidential informant in *Truong*, and Mr. Risen in this case.   And, as in *Truong*, venue must lie where the "proscribed act" – where Mr. Risen took

possession of the information or where he was when he transmitted it to the general public –
occurred.  There is no evidence that any of these acts occurred in the Eastern District of Virginia.
Counts One and Two must be dismissed.

b.  <u>Count Nine must be dismissed</u>.

Count Nine charges Mr. Sterling with the unlawful conveyance of government property
to the public through Mr. Risen's book, in violation of 18 U.S.C. § 641, which provides, in part,
that:

> Whoever . . . without authority, sells, conveys or disposes of any record, voucher,
> money, or thing of value of the United States or of any department or agency
> thereof, or any property made or being made under contract for the United States
> or any department or agency thereof . . . shall be guilty of an offense against the
> United States.

*See* Jury Instructions, p. 45 (quoting 18 U.S.C. § 641).  Again, Mr. Risen is the conduit for the
conveyance of this information.  However, the statutory language of § 641 contains no causation
element, the government did not pursue an aiding and abetting theory, and thus, Mr. Risen's acts
cannot be used to establish venue.  The essential conduct element under this statute is Mr.
Sterling's conveyance of classified information to Mr. Risen.  As above, this act must have
occurred in the Eastern District of Virginia for venue to lie, and the government has failed
entirely to adduce any evidence that this occurred.

As charged in Count Nine, the crime was complete when Mr. Risen received the national
defense information from Mr. Sterling.  The trial can only occur where this event occurred.
Because there is no evidence that the information was conveyed to Mr. Risen in the Eastern
District of Virginia, Count Nine must be dismissed.

## II. THE GOVERNMENT DID NOT PRESENT SUFFICIENT EVIDENCE TO CONVICT MR. STERLING OF ANY COUNTS OF THE INDICTMENT.

The Court should also enter a judgment of acquittal because, even taken in the light most favorable to the government, there was insufficient evidence at trial to establish beyond a reasonable doubt that Mr. Sterling committed any of the counts alleged in the indictment. To be sure, the government presented an impressive number of witnesses with distinguished resumes, including former Secretary of State Condoleezza Rice. However, the actual substance of the witnesses' testimony can be boiled down to the following categories: (1) the significance and closely-held nature of Classified Program No. 1; (2) the potential consequences of the disclosure of Classified Program No. 1 and Human Asset No. 1 to unauthorized recipients; (3) Mr. Sterling's uniform use of lawful avenues to file his discrimination claim against the CIA, attempt to publish his memoirs, and communicate his concerns with Congressional oversight committees; and (4) Mr. Sterling's unauthorized retention of classified information unrelated to Classified Program No. 1. None of the witnesses could testify that Mr. Sterling communicated national defense information about Classified Program No. 1 or Human Asset No. 1 to anybody not authorized to receive it, much less to Mr. Risen. Nor did the government present any documentary evidence establishing such conduct.

### A. Counts One Through Seven and Nine Must Be Dismissed Because the Government Failed to Establish Beyond a Reasonable Doubt that Mr. Sterling Communicated National Defense Information to Mr. Risen.

The government's key witness, Special Agent Ashley Hunt, testified explicitly that, during her 12-year investigation into the leak to Mr. Risen, she found no evidence that Mr. Sterling ever provided national defense information to Mr. Risen:

> Q: [Y]ou can't testify today that Mr. Sterling ever gave any classified documents
> to Mr. Risen whatsoever, correct?

A: That's correct.

Q: And you can't say where, if at all, Mr. Risen or Mr. Sterling ever talked about classified matters, correct?

A: I'm not certain.  I can only make deductions from phone records.

Q: The phone records don't tell you what people are talking about, do they, ma'am?

A: They don't.

Jan. 21, 2015 Tr. Transcript 91–92; *see also id*. at 117 (Q: "And in the last 12 years, you still haven't come up with any proof that Mr. Sterling ever talked to Mr. Risen about Classified Program No. 1 or Merlin, right?"  A: "Correct").

In addition to having no evidence as to the content of Mr. Risen and Mr. Sterling's telephone conversations, Ms. Hunt offered no proof that Mr. Sterling and Mr. Risen actually met in person at any point, much less the location of any such meeting or what may have been discussed.  *Id*. at 94, 107.  Ms. Hunt testified that she did not obtain the phone records or email traffic for other possible sources for Mr. Risen, such as Mr. S.  *Id*. at 92-93.  Nor did she obtain Mr. Risen's email traffic to establish who else he was talking to during the applicable period.  *Id*. at 93.  Ms. Hunt, did, however, obtain phone records for the Senate Select Committee on Intelligence ("SSCI"), which inexplicably did not reveal that Mr. Risen had called SSCI staffer Donald Stone at his office shortly after Mr. Sterling's visit to that office, as Mr. Stone testified. *Id*. at 100.

With respect to the letter about Classified Program No. 1 that Mr. Sterling allegedly possessed and gave to Mr. Risen (the basis for Counts Two, Three, Five and Seven), as set forth above, there was no evidence at all that Mr. Sterling ever had that letter.  *Id*. at 94-95.  Indeed, the evidence pointed to quite the opposite conclusion: Mr. Sterling could not possibly have

possessed the letter in the form published in *State of War*.  Merlin wrote the letter to provide to the Iranians during his trip to Vienna.  Both he and Mr. S. testified that the only final version of that letter resided on Merlin's computer, which the government never searched.  Merlin testified that he did not bring a copy of the letter back from Vienna.  The only evidence that Mr. Sterling ever had a copy of the letter in the form provided to Mr. Risen is Merlin's testimony on cross-examination that he provided a copy of it to Mr. Sterling during a meeting he had alone with him two weeks before leaving for Vienna.  However, the cable traffic, which was corroborated by Mr. S., established that there was no such meeting.  The cables demonstrated that the last time Merlin met alone with Mr. Sterling before the Vienna trip was two months prior to Merlin's departure, at which time the final version of the letter did not exist.  Therefore, Merlin could not have given the letter to Mr. Sterling as he testified.  And certainly, if Mr. Sterling never had the letter, he could not have given it to Mr. Risen.

Taken in the light most favorable to the government, this evidence establishes only that Mr. Sterling communicated with Mr. Risen via telephone and email, facts that Mr. Sterling does not dispute.  It does not establish, beyond a reasonable doubt, that during any of those communications, Mr. Sterling ever transmitted national defense information to Mr. Risen.  This is particularly true given the evidence that these communications could have been about topics wholly unrelated to Classified Program No. 1.  Mr. Risen covered Mr. Sterling's discrimination lawsuit against the CIA.  This suit was on-going during the entire duration of the telephone and email communications between Mr. Sterling and Mr. Risen.  Further, Mr. Sterling filed a lawsuit against the CIA pertaining to his memoirs.  This was a publicly filed suit and may well have been of interest to Mr. Risen and, if not, Mr. Sterling may have been attempting to get publicity for that suit.  Mr. Risen never published a follow-up article to his article about Mr. Sterling's

discrimination suit and never published an article about the suit over the memoirs.  On May 16, 2004, Mr. Risen emailed Mr. Sterling, writing "I'm sorry if I failed you so far but I really enjoy talking to you and would like to continue."  *See* Indictment ¶ 48.  This is evidence that the subject of the communications between Mr. Sterling and Mr. Risen was the publicly filed lawsuits, rather than Classified Program No. 1.  While Mr. Risen was not writing about the former, he was writing a book about the latter.

Accordingly, the Court should enter a judgment of acquittal on Counts One through Seven and Nine.

**B.  Count Seven Must Also Be Dismissed Because the Government Did Not Prove Beyond a Reasonable Doubt that Mr. Sterling Attempted to Publish National Defense Information Through a Newspaper Article.**

There was no evidence of when Mr. Sterling allegedly transmitted the letter to Mr. Risen. If he transmitted the letter to Mr. Risen after the *New York Times* had decided not to publish the story, the transmission of the letter would not have been an attempt to transmit the contents of the letter to the public through the publication of a newspaper article.  The only evidence in support of the contention that Mr. Sterling transmitted the letter for use in a newspaper article is that Mr. Risen claimed to have documents when he called Mr. Harlow in April 2003.  However, there was no evidence, assuming this claim was true, as to which documents he had at that point. Mr. Risen made no reference to the letter in his call with Mr. Harlow.  The letter is published in the book.  It is at least equally likely that it was transmitted to Mr. Risen at some point after it was clear that there would be no newspaper article for use in writing his book than it is that it was transmitted to Mr. Risen while he was still working on a newspaper article.  In any event, the government did not prove beyond a reasonable doubt that Mr. Sterling transmitted the letter

to Mr. Risen at a time that Mr. Sterling believed that Mr. Risen would use it in a newspaper article.  For this independent reason, Count Seven must be dismissed.

### C.  Count Nine Must Also Be Dismissed Because the Government Did Not Prove Beyond a Reasonable Doubt that Mr. Sterling Himself Conveyed Information About Classified Program No. 1 to the General Public.

The Court should also enter a judgment of acquittal on Count Nine.  The Indictment alleged that:

> Between on or about December 24, 2005, and on or about January 5, 2006, in the Eastern District of Virginia, JEFFREY ALEXANDER STERLING, the defendant herein, did knowingly cause to be conveyed without authority property of the United States, namely classified information about Classified Program No. 1, having a value of more than $1,000.00 and having come into defendant STERLING's possession by virtue of his employment with the CIA, to any member of the general public not entitled to receive said information, including foreign adversaries, through the publication, distribution and delivery of Author A's book for retail sale in the Eastern District of Virginia.

> All in violation of Title 18, United States Code, Section 641, and Title 18, United States Code, Section 2.

While the indictment alleged aiding and abetting pursuant to 18 U.S.C. § 2, at the conclusion of the trial, the government decided not to pursue that theory of liability and, rather, to rely solely on Mr. Sterling's own alleged conduct.  *See* Jan. 21, 2015 Tr. Transcript at 126 (Mr. Olshan: "Your Honor, we're not asking for a specific aiding and abetting instruction.  The only utility to Section 2 in this case would be 2(b), which is the causation prong, when you willfully cause an innocent intermediary to effectively complete the crime.  Because 793, as I mentioned before, already has in its statutory language causes, there's no need to provide a separate instruction on Section 2(b)").  The government repeatedly made clear that it intended to rely on the causation language in § 793 and therefore did not need an aiding and abetting instruction.  *Id.* at 128-29 (Mr. Olshan: "Mr. Sterling caused Mr. Risen to communicate this information, and that is contained in Section 793, and the causation instruction that we submitted

21

accounts for that."   The Court: "And therefore, I don't need a 2(b) instruction."   Mr. Olshan: "That's exactly right, Your Honor.").

The government made no mention of retaining the aiding and abetting instruction for purposes of § 641 (Count Nine), which does *not* contain any causation language:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.
>
> The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

18 U.S.C. § 641.

The jury was not instructed that it could find Mr. Sterling guilty of Count Nine under § 2. The government's only theory of liability against Mr. Sterling on Count Nine was thus that he conveyed government property – classified information about Classified Program No. 1 – to members of the general public through the publication, distribution, and delivery of *State of War* for retail sale in the Eastern District of Virginia.  There was no evidence at trial that supports this theory of liability.  Plainly, Mr. Sterling did not publish, distribute, or deliver *State of War* for sale to the public in the Eastern District of Virginia or anywhere else.  Without an aiding and abetting theory, Mr. Sterling cannot be guilty of the conduct alleged in Count Nine, and no reasonable juror could have convicted him for this conduct.

### D.  The Government Failed to Establish Beyond a Reasonable Doubt that Mr. Sterling Obstructed Justice, and Therefore Count Ten Must Be Dismissed.

The Court should also enter a judgment of acquittal as to Count Ten, Obstruction of Justice.  The government failed to establish both that Mr. Sterling actually deleted the email in question, much less that he did so after having received the grand jury subpoena, and that he did so with "the intent to impair the object's integrity or availability for use in an official proceeding."  18 U.S.C. § 1512(c)(1).

First, Agent Hunt could only testify that the March 10, 2003 email from Mr. Sterling to Mr. Risen appeared in a "snapshot" of Hotmail's records in April, 2006, and did not appear in another "snapshot" of Hotmail's records in July, 2006.  *See, e.g.,* January 21, 2015 Trial Tr. at 10 ("MSN Hotmail sent a disc to the FBI in the mail, and the disc had the data captured in April, the data captured in July, and the data captured in October.  *I'm not sure exactly how this was done*, but the disc and the data was given to a filter agent who then printed all the data from the disc[.]") (emphasis added).  There are two obvious explanations for the appearance of the 2003 email in the April 2006 snapshot and its failure to appear in the July 2006 snapshot.  One is that Mr. Sterling deleted the email during that period, as the government contends.  The other is that Hotmail deleted the email.  The government offered no evidence as to which was more likely, much less did it prove beyond a reasonable doubt that it was the former.

Presumably, Hotmail retains a copy of the emails of its subscribers for some period of time.  The government offered no evidence of what that time period is.  Nor did the government offer evidence that other emails dating from 2003 appeared in the July 2006 snapshot.  Moreover, the government offered no evidence of how the data retained by Hotmail is affected, if at all, by its customer deleting an email.  It does not make sense that if a customer deletes an email from his computer, the provider no longer retains a copy of the email.  Indeed, law

enforcement routinely subpoenas data from a provider to compare against the user's computer. This is precisely because it allows law enforcement to obtain emails that the user may have deleted.  If the provider still has the email and the user does not, it is evidence he or she deleted it.   Here, however, there was no testimony that the government determined from reviewing a computer used by Mr. Sterling that he deleted this email off his computer at any point in time.

If Hotmail's retention policy dictated that Hotmail would retain the email in April 2006, the email would be there in April 2006, regardless of if or when Mr. Sterling deleted it from his computer.  If under Hotmail's retention policy, the email would have no longer been retained by July 2006, Hotmail would no longer have it then, regardless of if or when Mr. Sterling deleted it from his computer.  In other words, by relying solely on Hotmail's records and not a review of Mr. Sterling's computer, the government's evidence tells us more about what Hotmail did and when it did it than about what Mr. Sterling did and when he did it.  Indeed, the government's evidence says nothing at all about the latter.

Moreover, Mr. Sterling did not receive the grand jury subpoena until June 16, 2006. Even if the Hotmail snapshots track when the email appeared on a computer used by Mr. Sterling (a proposition for which the government offered no evidence at all) and therefore demonstrate that he took some action to delete it sometime between April and July 2006, the evidence does not establish whether Mr. Sterling deleted the email before or after he received the subpoena on June 16th.  Since the government concedes that Mr. Sterling would not have known there was a proceeding prior to June 16th, the government cannot prove obstruction unless it can prove the deletion occurred after that date.  The government has not done so.

Further, the subpoena requested certain categories of documents such as documents related to Mr. Sterling's work at the CIA or classified information in Mr. Sterling's possession.

Notably missing from the subpoena is a request for any communications between Mr. Sterling and Mr. Risen, despite the fact that the very focus of the investigation was a possible leak to Mr. Risen. A reasonable person in receipt of this subpoena would have concluded that an email forwarding publicly-available information to Mr. Risen was not responsive to the subpoena. Indeed, the government does not contend otherwise. Thus, assuming that the email was actually deleted by Mr. Sterling after receipt of the grand jury subpoena, the government also failed to establish that Mr. Sterling possessed the requisite intent to impair that proceeding by deleting an email that was not responsive to the grand jury's request. To the extent that the subpoena communicated to Mr. Sterling the existence of the grand jury and areas of interest to it, the subpoena also communicated that the grand jury was *not* interested in the email at issue.[7]

## III. THE COURT MUST ENTER A JUDGMENT OF ACQUITTAL AS TO COUNT NINE BECAUSE IT IS BARRED BY THE STATUTE OF LIMITATIONS.

Finally, the Court must enter a judgment of acquittal as to Count Nine for the independent reason that, based on the evidence adduced at trial, the statute of limitations should have barred the jury's consideration of Count Nine.

"Federal statutes of limitations should be applied strictly in order to further the congressional policy favoring repose." *United States v. Hare*, 618 F.2d 1085, 1087 (4th Cir. 1980). Since the statute of limitations for 18 U.S.C. § 641 is not enumerated elsewhere, the applicable limitations period is five years, pursuant to 18 U.S.C. § 3282. As set forth above, the indictment alleges that Mr. Sterling conveyed government property – classified information about Classified Program No. 1 – through the publication of *State of War*. Without an aiding and abetting theory of liability, the only possible alleged conveyance of government property that the

---

[7] Plainly, Mr. Sterling did not destroy his performance evaluation dating from when he was a trainee or the telephone procedure documents, all of which were responsive to the subpoena.

evidence adduced at trial could arguably support would be the alleged conveyance of that property by Mr. Sterling to Mr. Risen.

However, even if the indictment could be read to charge Mr. Sterling for his alleged conveyance of this property to Mr. Risen, rather than to the general public through the publication of the book, Count Nine would be time-barred.  The evidence adduced at trial was that the last time Mr. Sterling communicated with Mr. Risen was on November 20, 2005, when they had a 42-second telephone call.  *See* Government Exhibit 98.  The indictment in this case was returned on December 22, 2010.  *See* Indictment [DE 1].  Since this is more than five years after the last possible time that the evidence could arguably support a finding that Mr. Sterling conveyed government property to Mr. Risen, Mr. Sterling's motion for a judgment of acquittal on Count Nine must be granted.  *See Toussie v. United States*, 397 U.S. 112, 124 (1970) ("when a court concludes that the statute does bar a given prosecution, it must give effect to the clear expression of congressional will that in such a case 'no person shall be prosecuted, tried, or punished.'  The judgment of conviction in this case must therefore be reversed").[8]

## IV.    ALTERNATIVELY, MR. STERLING SHOULD BE GRANTED A NEW TRIAL PURSUANT TO RULE 33.

In the event the Court denies Mr. Sterling's motion for judgment of acquittal, the Court should grant his motion for a new trial for two reasons: (1) the Court gave an improper jury instruction with respect to venue; and (2) the cumulative weight of the evidence does not support a judgment of guilt.

---

[8] Mr. Sterling first made this motion at trial, prior to the jury reaching a verdict.  Since the statute of limitations defense raised here was not available to him prior to trial when the indictment alleged an aiding and abetting theory of liability and premised Count Nine on Mr. Risen's actions, not on those of Mr. Sterling, Mr. Sterling could not have raised this defense prior to trial.  Accordingly, Mr. Sterling's motion for a judgment of acquittal on Count Nine based on the statute of limitations was timely.

**A. Even if There Were Sufficient Evidence for the Government to Establish Venue, Since the Jury was Improperly Instructed on Venue, Mr. Sterling is Entitled to a New Trial on Counts One Through Seven and Nine.**

The Court should grant a motion for a new trial on Counts One through Seven and Nine because the jury received an improper jury instruction on venue with respect to these counts. Despite clear Fourth Circuit precedent that venue may only be based where an essential conduct element of each charged offense took place and Mr. Sterling's repeated requests for such an instruction, the jury was never instructed on this point.   Mr. Sterling requested a venue instruction that was based, in part, on the Court's explanation of venue in its November 30, 2010 Memorandum Opinion, issued during the grand jury proceedings in this case.  On page 24 of that opinion, the Court wrote that in prosecutions involving disclosure of classified information, venue is proper both where the information is sent and where it is received.  However, in contrast to Fourth Circuit case law and the Court's 2010 opinion, the jury instructions provided only that:

> In addition to the elements of the specific charges which the government must prove beyond a reasonable doubt, as to each charge the government must also establish the venue of that charge in the Eastern District of Virginia because a defendant has a right to be tried in the district where the offense was committed. Although the government has the burden to prove venue, it is not required to prove venue beyond a reasonable doubt.  Rather, the government must establish venue by a preponderance of the evidence which is a lower standard of proof requiring that it is more likely than not that at least one act in furtherance of that offense occurred in the Eastern District of Virginia. The government must establish venue as to each charged offense.  If the government fails to establish venue for a particular charge, the jury must acquit the defendant of that charge.

Jury Instructions, p. 56.  *Compare with United States v. Kowalczyck*, No. 88 CR 701, 1990 U.S. Dist. LEXIS 14758, at *7-8 (E.D.N.Y. Oct. 24, 1990) (with respect to venue, instructing jury, *inter alia*, that it "must also find that the acts or the elements of the offenses charged in counts one through six of the indictment were committed within the jurisdiction of the Eastern District").  This instruction is in error since, as set forth above, a mere act in furtherance of an

27

offense that is not a continuing offense does not suffice to establish venue. Rather, an essential conduct element must have occurred in the district in which the case was tried.

Clearly needing more guidance on venue, the jury's first substantive question to the Court was delivered only a couple hours into its deliberations and stated, "The jury would like further clarification on 'venue.' (pg. 56 of the Jury Instructions). More directly, Count 10, How is venue determined?" *See* Note from Jury, 1/22/15, 4:07 p.m. In response to this query, the Court provided the following guidance: "For purposes of Count Ten, venue lies 'in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.'" Jury Instructions, p. 56(a). The jury was given no guidance with respect to the other counts and remained unaware that venue must be premised on where an essential conduct element of each offense occurred.[9]

When assessing a claim of an erroneous jury instruction, the Court must determine whether, "taken as a whole, the instruction fairly states the controlling law." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). Here, the instruction delivered to the jury did not fairly state the controlling law because it did not state the requirement that the government must prove that an essential conduct element of each offense occurred in this District. Because the jury never received the proper instruction on venue, it may have convicted Mr. Sterling without

---

[9] When the jury asked for further clarification on Count Three, namely whether an element of that offense included the location of a classified document in Mr. Sterling's residence (*see* Note from Jury, 1/23/15/, 3:25 p.m.), the Court provided another supplemental instruction, explaining, "To find the defendant guilty of Count Three, you must be satisfied that the government has proven the two elements explained on page 41 of the instructions beyond a reasonable doubt and that the willful retention occurred in the Eastern District of Virginia by a preponderance of the evidence." Jury Instructions, p. 41(a). This was the closest that the Court came to explaining the "essential conduct element" requirement for venue to the jury, but was limited to Count Three alone and did not use the language set forth in the Fourth Circuit case law on venue cited above. To the extent that this supplemental instruction cured the error with respect to Count Three, it plainly did not cure the error with respect to the other counts.

finding that an essential conduct element of each count occurred in the Eastern District of Virginia. For this reason, the Court should vacate the judgment and grant a new trial on Counts One through Seven and Nine. *See Cobb*, 905 F.2d at 789 n.8 (reversal is appropriate when there is a "reasonable likelihood" that the jury misconstrued an instruction) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)); *see also United States v. Strain*, 396 F.3d 689, 697 (5th Cir. 2005) (reversing and remanding to district court for an entry of a judgment of acquittal where jury's finding of venue was not supported by the evidence).

### B. The Weight of the Evidence Does Not Support a Conviction.

Independently, assuming that the evidence, viewed with all inferences in the government's favor, was sufficient for a reasonable jury to find guilt beyond a reasonable doubt, the verdict was nonetheless against the cumulative weight of that evidence. The Court is permitted to assess the credibility of each witness and is not required to view the evidence in the light most favorable to the government in deciding a Rule 33 motion for a new trial. Considering the totality of the evidence, the following points become clear:

- Mr. Sterling consistently followed the law in deciding with whom to communicate and the substantive scope of his communications. He filed discrimination claims through the appropriate channels, using cleared counsel. When interested in publishing his memoirs, he submitted his work to the Publications Review Board ("PRB"), which PRB officials testified did not always occur. He spoke with appropriate members of the House Permanent Select Committee on Intelligence and Senate Select Committee on Intelligence ("SSCI") about his concerns with the CIA. In sum, Mr. Sterling exhibited a pattern of behavior that respected and abided by the secrecy agreements he had signed when beginning his employment with the CIA.

- Mr. Sterling's supervisors uniformly testified that they never once saw Mr. Sterling mishandle classified information or take a single document out of CIA offices.  His performance appraisal reports stated that he handled his classified assignment and human asset well.

- Mr. Risen testified unequivocally that he had "multiple" sources for Chapter 9 of *State of War*.

- At least 90 people affiliated with the CIA were aware of Classified Program No. 1 at some point during its existence, which Mr. S. stated was a conservative estimate.

- Several SSCI staffers also became aware of Classified Program No. 1 after Mr. Sterling lawfully brought his concerns about the program to the Committee.  One of those SSCI staffers, Vicki Divoll, was later fired for leaking information she was not authorized to disclose, which was published by Mr. Risen.

- Chapter 9 of *State of War* contained details about the delivery of the package in Vienna of which Mr. Sterling was not aware and other details he would have had no reason to remember, but of which testimony by Mr. S. and Mr. Merlin confirmed their knowledge and memory.  In addition, Chapter 9 described CIA operations about which Mr. Sterling could not possibly have known, as they post-dated his separation from the Agency.

- Howard Gilby's testimony made clear that circumstantial evidence pointing to Mr. Sterling's guilt, such as the location of an item named "Merlin.doc" on a computer to which Mr. Sterling had access, was entirely unrelated to the case and was not in the least inculpatory.

In contrast, the government could not demonstrate through a single document or witness that Mr. Sterling ever unlawfully retained classified documents or shared classified information

with Mr. Risen.  *See* Section II.A above; *see also* Jan. 21, 2015 Tr. Transcript at 94-95 (Special Agent Hunt testifying that, during her 12-year investigation, she did not find a single witness who ever saw Mr. Sterling leave the CIA with classified documents and that she never located a copy of the letter about Classified Program No. 1 that appeared in Chapter 9).

Moreover, as more fully discussed above, there is absolutely no evidence that Mr. Sterling possessed the letter written by Merlin, as charged in Counts Two, Three, Five and Seven.  Agent Hunt testified that she had no evidence of that letter being in Mr. Sterling's possession at any time.  *Id.*  Mr. S. testified that the final version of the letter could only be found on Merlin's computer.  Merlin's testimony that he provided a copy of the letter to Mr. Sterling during a meeting between the two of them two weeks prior to his departure for Vienna is wholly contradicted by cable traffic that indicates Mr. Sterling's last solo meeting with Merlin was in fact two months before the Vienna trip.  The jury's conclusion that Mr. Sterling possessed the letter and provided it to Mr. Risen is clearly against the cumulative weight of the evidence.

Taking all of this together, the weight of the evidence cannot support Mr. Sterling's conviction.  Justice plainly requires the Court to vacate the verdict and order a new trial on each count.

## CONCLUSION

For the foregoing reasons, Mr. Sterling respectfully requests the Court grant his Motion and enter a judgment of acquittal on all counts.  In the alternative, Mr. Sterling requests the Court order a new trial on all counts.

Dated: February 16, 2015                    Respectfully submitted,


                                            JEFFREY A. STERLING

                                     By:_____/s/_____
                                            Edward B. MacMahon, Jr. (VSB # 25432)
                                            Law Office of Edward B. MacMahon, Jr.
                                            107 East Washington Street
                                            P.O. Box 25
                                            Middleburg, VA 20118
                                            (540) 687-3902
                                            (540) 687-6366 (facsimile)
                                            ebmjr@verizon.net


                                            _____/s/_____
                                            Barry J. Pollack (admitted *pro hac vice*)
                                            Mia Haessly (admitted *pro hac vice*)
                                            Miller & Chevalier Chartered
                                            655 Fifteenth St. N.W. Suite 900
                                            Washington, D.C. 20005
                                            (202) 626-5830
                                            (202) 626-5801 (facsimile)
                                            bpollack@milchev.com

                                            *Counsel for Jeffrey A. Sterling*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2015, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to all counsel of record.


By:_____/s/_____
     Edward B. MacMahon, Jr. (VSB # 25432)
     Law Office of Edward B. MacMahon, Jr.
     107 East Washington Street
     P.O. Box 25
     Middleburg, VA 20118
     (540) 687-3902
     (540) 687-6366 (facsimile)
     ebmjr@verizon.net
     *Counsel for Jeffrey A. Sterling*