UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:10cr485 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | January 22, 2015 |
| JEFFREY ALEXANDER STERLING, | . | 1:25 p.m. |
| | . | |
| Defendant. | . | EXCERPT OF P.M. SESSION |
| | . | |

. . . . . . . . . .

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:          JAMES L. TRUMP, AUSA
                             DENNIS M. FITZPATRICK, AUSA
                             United States Attorney's Office
                             2100 Jamieson Avenue
                             Alexandria, VA 22314
                               and
                             ERIC G. OLSHAN, Deputy Chief
                             Public Integrity Section of the
                             Criminal Division
                             United States Department of
                             Justice
                             1400 New York Avenue, N.W.
                             Suite 12100
                             Washington, D.C. 20005

FOR THE DEFENDANT:           EDWARD B. MAC MAHON, JR., ESQ.
                             Law Office of Edward B.
                             MacMahon, Jr.
                             107 East Washington Street
                             P.O. Box 25
                             Middleburg, VA 20118
                               and
                             BARRY J. POLLACK, ESQ.
                             MIA P. HAESSLY, ESQ.
                             Miller & Chevalier Chartered
                             655 - 15th Street, N.W.
                             Suite 900
                             Washington, D.C. 20005-5701

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1    APPEARANCES:  (Cont'd.)

2    CLASSIFIED INFORMATION          CHRISTINE E. GUNNING
     SECURITY OFFICERS:              MAURA PETERSON
3

4    ALSO PRESENT:                   GERARD FRANCISCO
                                     SA ASHLEY HUNT
5                                    JENNIFER MULLIN, ESQ.

6
     OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
7                                    U.S. District Court, Fifth Floor
                                     401 Courthouse Square
8                                    Alexandria, VA 22314
                                     (703)299-8595
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          A F T E R N O O N   S E S S I O N

2                    (Defendant present, Jury out.)

3          THE COURT:  All right, before we bring in the jury,

4    again the ground rules are while the Court's instructing, no in

5    and out of the courtroom, so I assume that's going to be taken

6    care of.

7          We gave you over the lunch break, there are four jury

8    instructions that have been slightly changed, and there's a new

9    one.  Let me take 11(a), the classification markings had been

10   submitted by the government, I think, earlier, but I needed

11   also -- and this comes from our court security people -- to

12   advise the jury as to how they must approach the three still

13   classified exhibits, so I want to know whether there's any

14   objection to the language.  It's 11(a).  It should be in the

15   small, independent package that each of you have, if there's

16   any objection to that additional language.

17          So what I've added there is, "Because Exhibits 142,

18   143, and 144 remain classified as Secret, you may not

19   communicate the contents of these exhibits to anyone after this

20   trial is concluded.  You should draw no inference as to the

21   guilt or innocence of the defendant from the fact that you

22   cannot communicate anything about these exhibits."

23          Is there any objection to that?

24          MR. MAC MAHON:  No objection from the defense, Your

25   Honor.

4

1            THE COURT:  I assume --

2            MR. TRUMP:  That's fine.

3            THE COURT:  All right, good.  All right, so that's

4    11(a) if you want to put it in your packet.

5            Then if you look at, we've made the modifications we

6    talked about to Exhibit -- to instruction page 24.  We've added

7    the exhibit numbers 142 through 145.  That's the 404(b)

8    evidence exhibit -- I'm sorry, instruction, and we in the last

9    paragraph struck out "or crimes."  So "the defendant is not on

10   trial for any acts not alleged in the indictment," all right?

11           MR. MAC MAHON:  Thank you, Your Honor.

12           THE COURT:  No objection to that, correct?

13           Okay.  Possession, which is 31, we have changed the

14   tense to the past tense in the paragraph for Counts 1, 4, and

15   6, so it says, "by a person who held an appropriate security

16   clearance and had a need to know at the time the person

17   acquired the classified information," and then we've added the

18   "namely, a letter related to Classified Program No. 1" in the

19   next paragraph.

20           Any problem with that new instruction?

21           MR. MAC MAHON:  No, Your Honor.

22           THE COURT:  All right?  So make sure you replace that

23   in your packets.

24           And then the only change we made to 41, we had

25   intended to have the date so that the jury doesn't have to go

| | |
|---|---|
| 1 | back and forth rummaging through the instructions, so we've |
| 2 | just added the dates that were alleged in that count.  All |
| 3 | right, any problem with that?  No? |
| 4 | MR. MAC MAHON:  Not from the defense, Your Honor. |
| 5 | THE COURT:  All right, then I believe we are about |
| 6 | ready to bring the jury in.  Are there any other last-minute |
| 7 | matters?  Were all the exhibits taken care of at the close of |
| 8 | business yesterday?  Was there any issue with any of the |
| 9 | physical exhibits? |
| 10 | MR. FITZPATRICK:  No, Your Honor. |
| 11 | THE COURT:  I'm sorry? |
| 12 | MR. FITZPATRICK:  No, Your Honor. |
| 13 | THE COURT:  No?  Mr. Olshan? |
| 14 | MR. OLSHAN:  As a housekeeping matter -- |
| 15 | THE COURT:  Yes, sir. |
| 16 | MR. OLSHAN:  -- Exhibit 176 was a stipulation. |
| 17 | It's the last one we moved in.  The exhibit that goes |
| 18 | to the jury just needs to be executed by the parties. |
| 19 | THE COURT:  Let's do that right now.  So let me have |
| 20 | 176 pulled out of the stack.  Do you have them? |
| 21 | MR. OLSHAN:  We don't have the official evidence |
| 22 | binder. |
| 23 | THE CLERK:  No, I have it. |
| 24 | MR. OLSHAN:  May I approach? |
| 25 | THE COURT:  Yes.  So you -- have you signed it?  Has |

1    anybody signed it?

2              MR. OLSHAN:  I don't believe so.

3              THE COURT:  All right.  So just pull 176 out.

4              Mr. MacMahon, while that's being done, was there some

5    issue you had as well?

6              MR. MAC MAHON:  No, Your Honor.

7              THE COURT:  Okay.

8              MR. MAC MAHON:  I'm just taking the chance to stand

9    up.

10             THE COURT:  You can do that during, during the charge

11   if you want.

12             MR. MAC MAHON:  I'll be fine, Your Honor.  Thank you

13   very much.

14             THE COURT:  I mean, frankly, you don't even have to

15   be here for the charge.  You know what I'm going to say.

16             MR. MAC MAHON:  I know, but I wouldn't do that, Your

17   Honor.

18             THE COURT:  All right, that's fine.

19             MR. OLSHAN:  One moment, Your Honor?

20             THE COURT:  Yes, sir.

21             MR. OLSHAN:  We need to grab a copy of that one.

22   It's just a stipulation.  It shouldn't be an issue.  If it's

23   easier to --

24             THE COURT:  I'm sorry?  You need a copy?

25             MR. OLSHAN:  The formal exhibit binder does not have

1   a version of it, have the exhibit.  If the defense has a copy,

2   we can just sign it.

3          MR. MAC MAHON:  We'll see if we have one.

4          THE COURT:  All right.  Did you-all do your indexes

5   of the exhibits?

6          MR. OLSHAN:  Yes.

7          THE COURT:  You're looking over your shoulder,

8   Mr. Olshan.  Is it in the courthouse -- courtroom?

9          MR. FRANCISCO:  Yes.

10         THE COURT:  We have it?

11         Did you show it to defense counsel?  Is there any

12  objection to the form of the index?  I usually have defense

13  counsel actually initial it just to make sure there's no

14  argument that there's something that was said in the index that

15  could be an issue.

16         All right, so 176 is fully endorsed now?  It's all

17  set.

18         MR. OLSHAN:  Thank you, Your Honor.

19         THE COURT:  All right.  And the -- again, the index,

20  no objections to the index?  Are you still looking at that,

21  Mr. Pollack?

22         MR. POLLACK:  Your Honor, if I can have just a

23  minute?

24         THE COURT:  All right.  And the defense list is so

25  short, I'm assuming there's no objection to -- we don't have a

1   defense index.  Do you have one?

2          MS. HAESSLY:  Yes, we have one, Your Honor.

3          THE COURT:  All right.  Hold on.

4          Ms. Copsey, would you go get that?

5          All right, any objection, Mr. Trump?

6          MR. TRUMP:  No.

7          THE COURT:  All right, that's fine.  So the defense

8   list is in.

9          Well, I'll tell you what, I want to start charging

10  the jury.  Mr. Pollack, you can be looking at that at the same

11  time.  If there's an objection, we still haven't sent it in to

12  the jury, and we can correct that afterwards, all right?

13         MR. POLLACK:  Yes.  There are a couple of issues, but

14  we can take them up later.

15         THE COURT:  All right.  Mr. Wood, let's bring the

16  jury in.

17                   (Jury present.)

18         THE COURT:  Have a seat, ladies and gentlemen.  Thank

19  you.

20         All right, now that you have heard all of the

21  evidence to be received in this trial and each of the arguments

22  of counsel, it becomes my duty to give you the final

23  instructions of the Court as to the law that is applicable to

24  this case and which will guide you in your decisions.

25         All of the instructions of law given to you by the

1    Court -- those given to you at the beginning of the trial,

2    those given to you during the trial, and these final

3    instructions -- must guide and govern your deliberations.

4            It is your duty as jurors to follow the law as stated

5    in all of the instructions of the Court and to apply these

6    rules of law to the facts as you find them from the evidence

7    received during the trial.

8            Counsel have quite properly referred to some of the

9    applicable rules of law to you in their closing arguments.  If,

10   however, any difference appears to you between the law as

11   stated by counsel and that as stated by the Court in these

12   instructions, you are, of course, to be governed by the

13   instructions given to you by the Court.

14           You are not to single out any one instruction alone

15   as stating the law but must consider all of the instructions as

16   a whole in reaching your decisions.

17           Neither are you to be concerned with the wisdom of

18   any rule of law stated by the Court.  Regardless of any opinion

19   you may have as to what the law ought to be, it would be a

20   violation of your sworn duty to base any part of your verdict

21   upon any other view or opinion of the law than that given in

22   these instructions of the Court, just as it would be a

23   violation of your sworn duty as judges of the facts to base

24   your verdict upon anything but the evidence received in the

25   case.

1          You were chosen as jurors for this trial in order to

2    evaluate all of the evidence received and to decide each of the

3    factual questions presented by the allegations brought by the

4    government in the indictment and the pleas of not guilty of the

5    defendant.

6          In deciding the issues presented to you for decision

7    in this trial, you must not be persuaded by bias, prejudice, or

8    sympathy for or against any of the parties to this case or by

9    any public opinion.

10         Justice through trial by jury depends upon the

11   willingness of each individual juror to seek the truth from the

12   same evidence presented to all of the jurors here in the

13   courtroom and to arrive at a verdict by applying the same rules

14   of law as are now being given to each of you in these

15   instructions.

16         During this trial, I permitted you to take notes.  As

17   I advised you at the beginning of the trial, many courts do not

18   permit note taking by jurors.  You are instructed that your

19   notes are only a tool to aid your own individual memory, and

20   you should not compare your notes with those of other jurors in

21   determining the content of any testimony or in evaluating the

22   importance of any evidence.

23         Moreover, you are 12 coequal judges of the facts.

24   The memory or opinions about the evidence of a juror who took

25   extensive notes is no more or less deserving of consideration

1  than the memory or opinions about the evidence held by a juror

2  who took few or no notes.  Your notes are not evidence and are

3  by no means a complete outline of the proceedings or even a

4  list of the highlights of the trial.  Above all, your memory

5  should be your greatest asset when it comes time to deliberate

6  and render a decision in this case.

7          Now, the evidence in this case consists of the sworn

8  testimony of the witnesses, regardless of who may have called

9  them, all exhibits received in evidence, regardless of who may

10  have produced them, and all stipulations of fact agreed to by

11  the parties.

12          Any proposed testimony or proposed exhibit to which

13  an objection was sustained by the Court and any testimony or

14  exhibit ordered stricken by the Court must be entirely

15  disregarded.  Anything you may have seen or heard outside the

16  courtroom is not proper evidence and must be entirely

17  disregarded.

18          Questions of the lawyers are not evidence.  Only a

19  witness's answer to a question is evidence.  Objections,

20  statements, and arguments of counsel are not evidence in the

21  case.

22          You are to base your verdict only on the evidence

23  received during the trial.  In your consideration of the

24  evidence received, however, you are not limited to the literal

25  statements of the witnesses or to the literal assertions in the

1    exhibits.  In other words, you are not limited solely to what

2    you see and hear as the witnesses testify or as the exhibits

3    are admitted.  Instead, you are permitted to draw from the

4    testimony and exhibits which you find reliable such reasonable

5    inferences as you find justified in the light of your

6    experience and common sense.  Inferences are simply conclusions

7    which can reasonably be drawn from the evidence received during

8    the trial.

9            There is nothing particularly different in the way

10   that a juror should consider the evidence in a trial from that

11   in which any reasonable and careful person would treat any very

12   important question that must be resolved by examining facts,

13   opinions, and evidence.  You are expected to use your good

14   sense in considering and evaluating the evidence in the case

15   for only those purposes for which it has been received and to

16   give such evidence a reasonable and fair construction in the

17   light of your common knowledge of the natural tendencies and

18   inclinations of human beings.

19           If any reference to a witness's testimony or the

20   exhibits either by the Court or by counsel does not coincide

21   with your own memory of the evidence, it is your memory of the

22   evidence which controls during your deliberations and not that

23   of the Court or of counsel.

24           It is the duty of the Court to admonish an attorney

25   who out of zeal for his or her cause does something which I

1  feel is not in keeping with the rules of evidence or procedure.

2  You are to draw absolutely no inference against the side to

3  whom an admonition of the Court may have been addressed during

4  the trial of this case.

5        And during the course of the trial, I occasionally

6  asked questions of a witness.  Do not assume that I hold any

7  opinion on the matters to which my questions may relate.  The

8  Court may ask a question simply to clarify a matter, not to

9  help one side of the case or hurt the other side.

10        It is the sworn duty of an attorney on each side of a

11  case to object when the other side offers testimony or exhibits

12  which that attorney believes is not entirely admissible -- or

13  properly admissible.  Only by raising an objection can a lawyer

14  request and obtain a ruling from the Court on the admissibility

15  of the evidence being offered by the other side.  You should

16  not be influenced against an attorney or the attorney's client

17  because the attorney has made objections.

18        Moreover, do not attempt to interpret my rulings on

19  objections as somehow indicating to you who I believe should

20  win or lose the case.

21        Now, I'm going to talk in these next set of

22  instructions a little bit about evidence.  There are two types

23  of evidence which are generally presented during a trial --

24  direct evidence and circumstantial evidence.  Direct evidence

25  is the testimony of a person who asserts or claims to have

1  actual knowledge of a fact, such as an eyewitness.

2  Circumstantial evidence is proof of a chain of facts and

3  circumstances indicating the existence of a fact.

4        And I have a standard example I always give to juries

5  about circumstantial evidence.  You leave your home one morning

6  in, let's say it's February.  It's been cold out, but your

7  front yard is bare.  There's no snow on the ground.  And you

8  leave, let's say, at 9:00 in the morning, and you come home at

9  1:00 in the afternoon.

10       Now, in the meantime, it has snowed, and when you

11  come home at 1:00, there's a white blanket of snow in your

12  front yard, and you see a footprint in that snow.  You do not

13  see a person, but you see the facts -- you have the facts I've

14  just given you.

15       Now, you have direct evidence that it has snowed.

16  You know what time you left the house, you know what time

17  you've come back, you see the footprint, and you know from

18  ordinary human experience a human being normally is associated

19  with a footprint.

20       From those facts, you can draw the inference that

21  there was a person in your yard sometime between nine and one,

22  although you never saw the person.  That's an example of

23  circumstantial evidence.

24       Now, the law makes absolutely no distinction between

25  the weight or value to be given to either direct or

1    circumstantial evidence, nor is a greater degree of certainty

2    required of circumstantial evidence than of direct evidence.

3    In other words, you should weigh all the evidence in the case

4    in reaching your verdict.

5             During this trial, documents have been entered into

6    evidence that have had words and phrases and sometimes entire

7    paragraphs redacted or deleted.  In other instances, you have

8    seen that there have been words or phrases substituted for the

9    original words or phrases that may appear in a document.

10            I have decided to allow substitutions and redactions

11   in this fashion to protect national security interests.  Many

12   of the substitutions and redactions pertain to names and

13   specific locations, and those specific names themselves are

14   simply not relevant to the issues at hand.  Sometimes I have

15   permitted substitutions and redactions to protect sensitive and

16   highly classified matters, most of which have nothing to do

17   with this case.

18            I caution you that you should not consider the manner

19   in which substitutions and redactions have been used as an

20   expression of my opinion regarding the facts of this case.  It

21   is your job and your job alone to decide the facts of this

22   case.

23            A number of the exhibits received in evidence contain

24   their original classification markings, such as Secret.  Except

25   for Exhibits 142, 143, and 144, which I will address shortly,

1   all of these exhibits are now unclassified.  These unclassified

2   exhibits are public, are public record documents and do not

3   require any special handling procedures.

4        Because Exhibits 142, 143, and 144 remain classified

5   as Secret, and you're going to know that because they have a

6   red cover on them when you see them in the jury room, you may

7   not communicate the contents of these exhibits to anyone after

8   this trial is concluded.  You should drew no inference as to

9   the guilt or innocence of the defendant from the fact that you

10  cannot communicate anything about these exhibits.

11       Now, certain charts and summaries have been shown to

12  you in order to help explain the facts disclosed by the books,

13  records, and other documents which are in evidence in the case.

14  Such charts or summaries are not in and of themselves evidence

15  or proof of any facts.  If such charts or summaries do not

16  correctly reflect the facts or figures shown by the evidence in

17  the case, you should disregard them.

18       In other words, such charts and summaries are used

19  only as a matter of convenience.  So if, and to the extent that

20  you find they are not in truth summaries of facts or figures

21  shown by the evidence in the case, you are to disregard them

22  entirely.

23       The next group of instructions talk about witnesses

24  and how you go about approaching and evaluating witnesses, and

25  this next instruction also addresses evidence.

1          In evaluating the evidence, always consider the

2    quality of the evidence over the quantity.  You are not bound

3    to decide any issue of fact in accordance with the testimony of

4    any number of witnesses which does not produce in your minds

5    belief in the likelihood of truth, as against the testimony of

6    a lesser number of witnesses or other evidence which does

7    produce such belief in your minds.  In other words, the test is

8    not which side brings the greater number of witnesses or

9    presents the greater quantity of evidence but which witness and

10   which evidence appeals to your minds as being most accurate and

11   otherwise trustworthy.

12          The testimony of one witness or just a few witnesses

13   in whom you have complete confidence may outweigh the testimony

14   of several witnesses in whom you do not have such confidence.

15   Similarly, one or two exhibits which you find compelling may

16   outweigh numerous exhibits which you find less compelling.  So

17   it is the quality of the evidence, not the quantity of the

18   evidence, that you should be concerned with.

19          Now, you as jurors are the sole and exclusive judges

20   of the credibility of each of the witnesses called to testify.

21   Only you determine -- excuse me -- only you determine the

22   importance or the weight that their testimony deserves.  After

23   evaluating the credibility of a witness, you may decide to

24   believe all of that witness's testimony, only a portion of it,

25   or none of it at all.

1          In evaluating a witness's credibility, you should

2     carefully consider all of the testimony given, the

3     circumstances under which each witness has testified, and every

4     matter in evidence which tends to show whether a witness in

5     your opinion is worthy of belief.  Consider each witness's

6     intelligence, motive to falsify, state of mind, and appearance

7     and manner while on the witness stand.  Consider the witness's

8     ability to observe the matters as to which he or she has

9     testified, and consider whether the witness impresses you as

10    having an accurate memory or recollection of these matters.

11    Consider also any relation a witness may bear to either side of

12    the case, the manner in which each witness might be affected by

13    your verdict, and the extent to which, if at all, each witness

14    is either supported or contradicted by other evidence in the

15    case.

16          Inconsistencies or discrepancies in the testimony of

17    a witness or between the testimony of different witnesses may

18    or may not cause you to disbelieve or discredit such testimony.

19    Two or more persons witnessing an incident may simply see or

20    hear it differently.  Innocent mistakes in remembering

21    something is not an uncommon human experience.  In evaluating

22    the effect of a discrepancy, however, always consider whether

23    it pertains to a matter of importance or to an insignificant

24    detail, and consider whether the discrepancy results from

25    innocent error or from intentional falsehood.

1          After making your own judgment concerning the

2     believability of a witness, you can then attach such importance

3     or weight to that testimony, if any, that you feel it deserves.

4          The rules of evidence ordinarily do not permit

5     witnesses to testify as to opinions or conclusions.  An

6     exception to this rule exists as to those whom we call expert

7     witnesses.  Witnesses who by education and experience have

8     become expert in some art, science, profession, or calling may

9     state their opinions as to relevant and material matters in

10    which they profess to be expert and may also state their

11    reasons for the opinions.

12         You should consider each expert opinion received in

13    evidence and give it such weight as you think it deserves.  If

14    you should decide that the opinion of an expert witness is not

15    based upon sufficient education and experience or if you should

16    conclude that the reason given in support of the opinion --

17    reasons given in support of the opinion are not sound, or if

18    you feel that it is outweighed by other evidence, you may

19    disregard the opinion entirely.

20         A witness may be discredited -- and the technical

21    term is "impeached" -- by contradictory evidence or by evidence

22    that at some other time, the witness has said or done something

23    or has failed to say or do something that is inconsistent with

24    the witness's present testimony.

25         If you believe any witness has been impeached and

1    thus discredited, it is your exclusive province to give the

2    testimony of that witness such credibility, if any, as you may

3    think it deserves.

4           If a witness is shown knowingly to have testified

5    falsely concerning any material matter, you have a right to

6    distrust such witness's testimony in other particulars, and you

7    may reject all the testimony of that witness or give it such

8    credibility as you may think it deserves.

9           An act or omission is knowingly done if voluntarily

10   and intentionally done and not done because of a mistake or

11   accident or other innocent reason.

12          Now, during the trial of this case, the testimony of

13   Mr. Merlin was presented to you by way of video deposition

14   which consisted of sworn recorded answers to questions asked of

15   the witness in advance of the trial by the attorneys for the

16   parties to the case.  The testimony of a witness who for some

17   reason cannot be present to testify from the witness stand may

18   be presented through a video recording played on a television

19   set.  Such testimony is entitled to the same consideration and

20   is to be judged as to credibility and weighed and otherwise

21   considered by the jury insofar as possible in the same way as

22   if the witness had been physically present in the courtroom and

23   had testified from the witness stand.

24          During this trial, you heard testimony from witnesses

25   who are currently employed by the Central Intelligence Agency.

1    You also heard testimony from former employees of the Central

2    Intelligence Agency, some of whom continue to work for the

3    agency as contractors, and you heard the testimony of Human

4    Asset No. 1 by video deposition and that of his wife.  These

5    witnesses testified either by using only initials or using a

6    made-up name -- Merlin, that's a made-up name -- if you were

7    not told their true names.  These witnesses also testified with

8    a screen preventing the general public from seeing them.

9            The disclosure of the witnesses' names and their

10   physical identity could potentially compromise either their

11   continued work for the CIA or expose them to safety issues.

12           As I have explained to you, one of your roles as

13   jurors will be to assess the credibility of each witness who

14   has testified during this trial.  You should not make any

15   judgments about the credibility of those witnesses simply

16   because you do not know their full names or because they

17   testified with the screen.  Moreover, you should not consider

18   the manner in which such witnesses testified as an expression

19   of my opinion as to any of the facts of this case.  Again, it

20   is your job and your job alone to decide the facts of this

21   case.

22           The defendant in a criminal case has an absolute

23   right under our Constitution not to testify.  The fact that the

24   defendant, Jeffrey Alexander Sterling, did not testify must not

25   be discussed or considered by the jury in any way when

1    deliberating and in arriving at your verdict.  No inference of

2    any kind may be drawn from the fact that a defendant decided to

3    exercise his privilege under the Constitution and did not

4    testify.

5              As I stated earlier, the law never imposes upon a

6    defendant in a criminal case the burden or duty of calling any

7    witnesses or of producing any evidence.

8              Now, the next series of instructions are going to

9    talk about the indictment, which is the document used to bring

10   the charges, and then the specific charges involved in this

11   case, and we'll also be giving you some definitions of some of

12   the terms that are involved in those charges.

13             An indictment is a formal method used by the

14   government to accuse a person of a crime.  It is not evidence

15   of any kind against a person.  Mr. Sterling is presumed to be

16   innocent of the crimes charged.  Even though the indictment has

17   been returned against Mr. Sterling, he begins this trial with

18   absolutely no evidence against him.

19             Mr. Sterling has pleaded not guilty to all the

20   charges in this indictment and therefore denies that he is

21   guilty of the charges.

22             A separate crime is alleged against the defendant in

23   each count of the indictment.  Each alleged offense and any

24   evidence pertaining to it should be considered separately by

25   the jury.  The fact that you find the defendant guilty or not

1    guilty of one of the offenses charged should not control your

2    verdict as to any other offense charged against the defendant.

3         In other words, you must give separate and individual

4    consideration to each charge against the defendant.

5         The indictment charges that the alleged offenses were

6    committed between on or about certain dates.  Although it is

7    necessary for the government to prove beyond a reasonable doubt

8    that each offense was committed on a date reasonably near the

9    date or dates alleged in the specific count being considered,

10   it is not necessary for the government to prove that each

11   offense was committed precisely on the dates charged.

12        The defendant is not on trial for any act or any

13   conduct not specifically charged in the indictment.

14        Now, the government has introduced evidence that

15   defendant had classified documents, and these are Exhibits 142

16   through 145, in his custody when his residence was searched.

17   Evidence that an act was done by the defendant at some other

18   time is not, of course, any evidence or proof whatever that at

19   another time, the defendant performed a similar act, including

20   the offenses charged in this indictment.

21        Evidence of a similar act may not be considered by

22   the jury in determining whether the defendant actually

23   performed the physical acts charged in this indictment.  Nor

24   may such evidence be considered for any other purpose

25   whatsoever unless the jury first finds beyond a reasonable

1  doubt from other evidence in the case standing alone that the

2  defendant did the acts charged in the indictment.

3        If the jury should find beyond a reasonable doubt

4  from other evidence in the case that the defendant did the act

5  or acts alleged in the particular count under consideration,

6  the jury may then consider evidence as to an alleged earlier

7  act of a like nature in determining the state of mind or intent

8  with which the defendant actually did the act or acts charged

9  in that particular count.

10       As previously stated, the defendant is not on trial

11  for any acts not alleged in the indictment.  Nor may a

12  defendant be convicted of the crimes charged even if you were

13  to find that he committed other acts, even acts similar to the

14  one charged in this indictment.

15       Now, the defendant has been charged in the indictment

16  with knowingly and willfully communicating national defense

17  information to another not entitled to receive such information

18  while being in lawful possession of such information.  Count 1

19  charges specifically that the defendant caused national defense

20  information, namely, information about Classified Program No. 1

21  and Human Asset No. 1, to be communicated, delivered, and

22  transmitted to any person of the general public not entitled to

23  receive this information, including foreign adversaries,

24  through the publication, distribution, and delivery of *State of*

25  *War* into the Eastern District of Virginia in approximately late

1   December and early January of 2006.

2          It's further alleged in Count 1 that the defendant

3   did so while having reason to believe that this national

4   defense information could be used to the injury of the United

5   States or to the advantage of any foreign nation.

6          Count 4 charges that the defendant communicated,

7   delivered, and transmitted national defense information,

8   namely, information about Classified Program No. 1 and Human

9   Asset No. 1, directly and indirectly to James Risen, a person

10  of the general public not entitled to receive this information,

11  between February 12 and April 30 of 2003.  It's further alleged

12  that the defendant did so while having reason to believe that

13  this national defense information could be used to the injury

14  of the United States or to the advantage of any foreign nation.

15         Finally, Count 6 charges that the defendant attempted

16  to communicate, deliver, and transmit national defense

17  information, namely, information about Classified Program No. 1

18  and Human Asset No. 1, to any person of the general public not

19  entitled to receive this information, including foreign

20  adversaries, through the publication, distribution, and

21  delivery of a *New York Times* article in the Eastern District of

22  Virginia between February 27, 2003, and April 30, 2003.  And

23  it's further alleged that the defendant did so while having

24  reason to believe that this national defense information could

25  be used to the injury of the United States or to the advantage

1    of any foreign nation.

2            Now, the statute defining the offenses charged -- the

3    offense charged in Counts 1, 4, and 6 is Title 18 of the United

4    States Code, Section 793(d), and that code provides in part:

5            Whoever, lawfully having possession of, access to,

6    control over, or being entrusted with any document,

7    writing, . . ., or note relating to the national defense, or

8    information relating to the national defense which information

9    the possessor has reason to believe could be used to the injury

10   of the United States or to the advantage of any foreign nation,

11   willfully communicates, delivers, transmits, or causes to be

12   communicated, delivered, or transmitted . . . the same to any

13   person not entitled to receive it . . . shall be guilty of an

14   offense against the United States.

15           The defendant -- and I'm going to now talk about

16   Counts 2, 5, and 7.  The defendant has been charged in the

17   indictment with knowingly and willfully disclosing -- I'm

18   sorry, communicating national defense information to another

19   not entitled to receive said information while not being in

20   lawful possession of this information.

21           Count 2 charges that the defendant caused national

22   defense information, namely, a letter relating to Classified

23   Program No. 1, to be communicated, delivered, and transmitted

24   to any person of the general public not entitled to receive

25   this information, including foreign adversaries, through the

1    publication, distribution, and delivery of *State of War* into

2    the Eastern District of Virginia in approximately late December

3    and early January 2006.  The defendant did so while having

4    reason to believe that this national defense information -- I'm

5    sorry, it's alleged that the defendant did so while having

6    reason to believe that this national defense information could

7    be used to the injury of the United States or to the advantage

8    of any foreign nation.

9            Count 5 charges that the defendant communicated,

10   delivered, and transmitted national defense information,

11   namely, a letter relating to Classified Program No. 1, directly

12   and indirectly to James Risen, a person of the general public

13   not entitled to receive this information, between February 12,

14   2003, and April 30, 2003.  And it's further alleged that the

15   defendant did so while having reason to believe that this

16   national defense information could be used to the injury of the

17   United States or to the advantage of any foreign nation.

18           Finally, Count 7 charges that the defendant attempted

19   to communicate, deliver, and transmit national defense

20   information, namely, a letter about Classified Program No. 1,

21   to any person of the general public not entitled to receive

22   this information, including foreign adversaries, through the

23   publication, distribution, and delivery of a *New York Times*

24   article in the Eastern District of Virginia between February 27

25   and April 30 of 2003.  And it's further alleged that the

1    defendant did so while having reason to believe that this

2    national defense information could be used to the injury of the

3    United States or to the advantage of any foreign nation.

4          Now, Counts 2, 5, and 7 involve a different

5    subsection of Section 793 of Title 18 of the United States

6    Code, and (e) provides in relevant part that:  Whoever,

7    unlawfully having possession of, access to, control over, or

8    being entrusted with any document, writing, . . ., or note

9    relating to the national defense, or information relating to

10   the national defense which information the possessor has reason

11   to believe could be used to the injury of the United States or

12   to the advantage of any foreign nation, willfully communicates,

13   delivers, transmits, or causes to be communicated, delivered,

14   or transmitted . . . the same to any person not entitled to

15   receive it . . . shall be guilty of an offense against the

16   United States.

17         Now, every crime has what are called elements.  These

18   are actually the essential components of that crime, and in a

19   criminal case, in order for a person to be found guilty of a

20   particular crime, the government must produce enough evidence

21   to establish each and every element beyond a reasonable doubt.

22   So if you have a crime with four elements and you're satisfied

23   the government has proven three of those four elements beyond a

24   reasonable doubt but not the fourth element, the government has

25   not met its burden, and you would have to acquit the defendant

1    for that particular count.

2            So in order to meet its burden of proof on Counts 1,

3    2, and 4 through 7, that is, the counts I've just summarized

4    for you, the government must prove beyond a reasonable doubt

5    the following elements:

6            First, for Counts 1, 4, and 6, that the defendant

7    lawfully had possession of, access to, control over, or was

8    entrusted with intangible or oral information relating to the

9    national defense.

10           For Counts 2, 5, and 7, the first element is that the

11   defendant had unauthorized possession of, access to, control

12   over, or was entrusted with a document, writing, or note

13   relating to the national defense.

14           So the first element is different for Counts 1, 4,

15   and 6.  It's one first element.  There's a different first

16   element for Counts 2, 5, and 7.  But the second, third, and

17   fourth elements for these offenses are the same.

18           The second element -- this applies then to all of

19   those counts -- is that the defendant had reason to believe

20   that this national defense information could be used to the

21   injury of the United States or to the advantage of any foreign

22   nation.

23           The third element that's common to all of those

24   counts is that the defendant willfully communicated, delivered,

25   transmitted, or caused to be communicated, delivered, or

 1    transmitted this national defense information.

 2            And the fourth element common to all of those counts

 3    is that the defendant did so to a person not entitled to

 4    receive it.  A person is not entitled to receive classified

 5    information if he did not hold a security clearance or if he

 6    holds a security clearance but has no need to know the

 7    information.

 8            Now, the word "possess" means to own or to exert

 9    control over something.  The word "possession" can take on

10    several different but related meanings.

11            The law recognizes two kinds of possession -- actual

12    possession and constructive possession.  A person who knowingly

13    has direct physical control over a thing at a given time is in

14    actual possession of it.  The example is I'm holding this blue

15    pen in my hand.  I have actual, physical possession of this

16    blue pen.

17            Now, a person who although not in actual possession,

18    knowingly has both the power and intention at a given time to

19    exercise dominion or control over a thing, either directly or

20    through another person or persons, is said to have constructive

21    possession of it.  My courtroom deputy, Ms. Guyton, sitting

22    right here, works for me.  She's got the computer.  If I direct

23    her to send an e-mail message to my secretary, I at that time

24    have constructive possession of that computer because I'm in

25    the position to control how it's being used.

1          Now, you may find that the element of possession as

2     that term is used in these instructions is present if you find

3     beyond a reasonable doubt that the defendant had actual or

4     constructive possession of the thing at issue.

5          For Counts 1, 4, and 6, I'm now going to define two

6     key terms:  "lawful possession" and "unlawful possession,"

7     because that's what differentiates that first element for these

8     counts.  So for Counts 1, 4, and 6, a person has lawful

9     possession of something if he is entitled to have it.  In this

10    case, lawful possession of classified information means

11    possession of classified information by a person who held an

12    appropriate security clearance and had a need to know at the

13    time the person acquired the classified information.

14          For Counts 2, 5, and 7, a person has unauthorized

15    possession of something if he is not entitled to have it.  In

16    this case, unauthorized possession of classified information,

17    namely, a letter related to Classified Program No. 1, means

18    possession of classified information by a person who does not

19    hold a security clearance or by a person who holds a security

20    clearance without the need to know, or by a person who holds a

21    security clearance, has a need to know, but removed the

22    classified information from the official premise without

23    authorization.

24          The term "need to know" means a determination made by

25    an authorized holder of classified information that a

1    prospective recipient requires access to specific classified

2    information in order to perform or assist in a lawful and

3    authorized government function.

4            For those first six counts, that is, for Counts 1, 2,

5    and 4 through 7, the term "information relating to the national

6    defense" broadly refers to all matters that directly or may

7    reasonably be connected with the national defense of the United

8    States against any of its enemies, including matters relating

9    to the nation's intelligence capabilities.

10           The term "national defense" is a generic concept of

11   broad connotation referring not only to military, naval, and

12   air establishments, but also to all related activities of

13   national defense preparedness.  National defense information

14   can be oral or intangible information.

15           To prove that documents, writings, or intangible

16   information relate to the national defense, there are two

17   things that the government must prove.  First, it must prove

18   that the disclosure of the material would be potentially

19   damaging to the United States or might be useful to an enemy of

20   the United States.  Second, it must prove that the material is

21   closely held by the United States government.

22           The disclosure of the information relating to the

23   national defense need not cause actual damage or harm to the

24   United States.  Instead, potential damage or harm to the United

25   States is sufficient to establish this prong of the essential

1   element.

2           In determining whether material is closely held, you

3   may consider whether it has been classified by appropriate

4   authorities and whether it remained classified on the date or

5   dates pertinent to the indictment.  Where the indictment has

6   been made public by the United -- I'm sorry, where the

7   information has been made public by the United States

8   government and is found in sources lawfully available to the

9   general public, it does not relate to the national defense.

10  Similarly, where the sources of information are lawfully

11  available to the public and the United States government has

12  made no effort to guard such information, the information

13  itself does not relate to the national defense.

14          In deciding this issue, you should examine the

15  information and also consider the testimony of witnesses who

16  testified as to the content and significance of the information

17  and who described the purpose and the use to which the

18  information contained therein could be put.

19          During the trial, you may have heard the attorneys

20  refer to certain evidence or materials as classified

21  information or that certain information was classified.

22  Classified information is information that has been determined

23  pursuant to a system established by the Executive Branch to

24  require protection against unauthorized disclosure.

25          As I have previously instructed you, when considering

1   Counts 1, 2, and 4 through 7, you are to determine whether

2   certain information in this case was national defense

3   information.  That is not the same as classified information.

4   However, you may consider the fact that information was

5   classified in determining whether the information at issue was

6   national defense information.

7        For Counts 1, 2, and 4 through 7, the phrase "with

8   reason to believe that it could be used to the injury of the

9   United States or to the advantage of a foreign nation" means

10  that the defendant knew facts from which he concluded or

11  reasonably should have concluded that the documents, writings,

12  or intangible information relating to the national defense

13  could be used for the prohibited purposes.  In considering

14  whether or not the defendant acted with the intent or having

15  reason to believe that the material could be used to the injury

16  of the United States or to the advantage of a foreign country,

17  you may consider the nature of the documents or information

18  involved.

19       The government does not have to prove that the

20  documents or information could be used both to injure the

21  United States and to the advantage of a foreign country.  The

22  statute reads in the alternative, so proof of either will

23  suffice.

24       If a defendant willfully causes an act to be done by

25  another, the defendant is responsible for those acts as though

1    he personally committed them.  To establish that the defendant

2    caused an act to be done, the government must prove beyond a

3    reasonable doubt:

4             First, that another person performed the acts that

5    constituted the crime of unauthorized communication of national

6    defense information or committed an indispensable element of

7    that crime; and

8             Two, that the defendant willfully caused these acts

9    even though he did not personally commit these acts.

10            The government need not prove that the person who

11   performed the acts that constituted the crime of unauthorized

12   communication of national defense information did so with

13   criminal intent.  That person may be an innocent intermediary

14   or pawn.

15            The defendant need not perform acts that constitute

16   the crime of unauthorized communication of national defense

17   information, be present when it was performed, or be aware of

18   the details of its execution to be guilty of causing an act to

19   be done by another.  However, a general suspicion that a lawful

20   act may occur or that something criminal is happening is not

21   enough.  Mere knowledge that the unauthorized communication of

22   national defense information is being committed without more is

23   also not sufficient to establish causing an act to be done

24   through another.

25            As I have instructed you, an act is done willfully if

1   done voluntarily and intentionally with the intent that

2   something the law forbids be done, that is to say, with bad

3   purpose, either to disobey or disregard the law.

4          For Counts 1, 2, and 4 through 7, an act is done

5   willfully -- and I'm just going to repeat this because it comes

6   through all the instructions -- if it is done voluntarily and

7   intentionally and with the specific intent to do something the

8   law forbids, that is, with a purpose to disobey the law.

9          Now, for Counts 1, 2, and 4 through 7, the government

10  must prove beyond a reasonable doubt each and every element of

11  these offenses as I have explained them to you.  The

12  government, however, does not have to prove that the defendant

13  was the only person who communicated the national defense

14  information alleged in the indictment.  Your duty as jurors is

15  limited to determining whether the government has proved beyond

16  a reasonable doubt that the defendant committed the offenses

17  charged, irrespective of whether other persons may have

18  communicated the same or similar information.

19         Now, we're moving on to Count 3.  The defendant has

20  been charged in Count 3 of the indictment with knowingly and

21  willfully retaining national defense information while having

22  unauthorized possession of that information.

23         Count 3 charges specifically that the defendant

24  unlawfully retained a document relating to the national

25  defense, namely, a letter relating to Classified Program No. 1,

1  at his residence beginning in or about January 31, 2002, and

2  continuing through approximately April 30 of 2003.

3          The statute, and this is another section of 793 -- of

4  Title 18, United States Code, 793(a) -- (e), 793(e), provides

5  that:  Whoever having unauthorized possession of . . . any

6  document . . . relating to the national defense . . . willfully

7  retains the same and fails to deliver it to the office or

8  employee of the United States entitled to receive it . . .

9  shall be guilty of an offense against the United States.

10          And for this offense, for Count 3, there are two

11  essential elements:

12          First, that beginning in or about January 31 of

13  2012 -- that's 2002; that's a typo -- and continuing thereafter

14  through on or about April 20 of 2003, the defendant had

15  unauthorized possession or control over a document relating to

16  the national defense of the United States; and

17          Two, that the defendant willfully retained the same

18  document and failed to deliver the document to an officer or an

19  employee of the United States who was entitled to receive it.

20          The first element the government must prove for this

21  defense is that the defendant had unauthorized possession of or

22  control over information that relates to the national defense.

23  The definitions I previously provided you with respect to

24  unauthorized possession and information relating to the

25  national defense apply equally to this count.

 1          The second element the government must prove beyond a

 2   reasonable doubt is that the defendant willfully retained the

 3   document in question and failed to deliver it to an officer or

 4   employee of the United States authorized to receive the

 5   document.

 6          As I've instructed you already, an act is done

 7   willfully if it is done voluntarily and intentionally and with

 8   the specific intent to do something the law forbids, that is,

 9   with a bad purpose either to disobey or disregard the law.

10   Unlike the intent element for Counts 1, 2, and 4 through 7, for

11   Count 3, the government does not have to prove that the

12   defendant acted with the intent or reason to believe that his

13   retention of the document could be used to the injury of the

14   United States or to the advantage of any foreign nation.

15   Instead, the government only must prove that the defendant

16   acted willfully as defined above.

17          Now, Count 9 of the indictment charges that between

18   on or about December 24, 2005, and on or about January 5, 2006,

19   the defendant caused to be conveyed without authority property

20   of the United States, namely, classified information about

21   Classified Program No. 1, which had a value of more than

22   $1,000, and came into the defendant's possession by virtue of

23   his employment with the Central Intelligence Agency, to any

24   member of the general public not entitled to receive said

25   information, including foreign adversaries, through the

1   publication, distribution, and delivery of the *State of War* for

2   retail sale in the Eastern District of Virginia.

3        Title 18 of the United States Code, Section 641,

4   provides:  Whoever . . . without authority sells, conveys, or

5   disposes of any record, voucher, money, or thing of value of

6   the United States or of any department or agency thereof, or

7   any property made or being made under control for the United

8   States or any department or agency thereof . . . shall be

9   guilty of an offense against the United States.

10       And there are four essential elements for this

11  offense.  Again, the government must prove each and every one

12  of these beyond a reasonable doubt:

13       First, that the defendant conveyed a thing of value

14  of the United States;

15       Second, that the defendant did not have the legal

16  authority to do so;

17       Third, that the thing of value referred to in the

18  indictment was of a value greater than $1,000; and

19       Four, that the defendant acted knowingly.

20       The word "convey" means to transfer or deliver or

21  caused to be transferred or delivered to another.  The

22  term "without authority" means without actual permission from

23  someone who has the legal capacity to give permission.

24       The term "value" can mean face value, par value,

25  market value, or cost price, either wholesale or retail,

1    whichever is greater.  A thing of value can be any thing,

2    including oral information or intangible property, that has

3    value.

4           An individual acts knowingly if he was conscious and

5    aware of his actions, realized what he was doing or what was

6    happening around him, and did not act because of ignorance,

7    mistake, or accident.  Thus, if the defendant acted in good

8    faith, he cannot be guilty of the crime.  The burden to prove

9    intent, as with all other elements of the crime, rests with the

10   government.

11          Intent or knowledge may not ordinarily be proven

12   directly because there's no way of directly scrutinizing the

13   workings of the human mind.  In determining what the defendant

14   knew or intended at a particular time, you may consider any

15   statements made or acts done or omitted by the defendant and

16   all other facts and circumstances received in evidence that may

17   aid in your determination of the defendant's knowledge or

18   intent.  You may infer, but you certainly are not required to

19   infer, that a person intends the natural and probable

20   consequences of acts knowingly done or knowingly omitted.  It

21   is entirely up to you, however, to decide what facts are proven

22   by the evidence received during this trial.

23          Intent and motive are different concepts and should

24   not be confused.  Motive is what prompts a person to act or

25   fail to act.  Intent refers only to the state of mind with

1    which the act is done or omitted.

2          Good motive alone is never a defense where the act

3    done or omitted is a crime.  The motive of the defendant is

4    therefore immaterial except insofar as evidence of motive may

5    aid in the determination of state of mind or the intent of the

6    defendant.

7          This is now the last count that you have to consider:

8    Count 10 of the indictment charges that the defendant knowingly

9    and corruptly destroyed the March 10, 2003, e-mail from himself

10   to James Risen that had a link to a CNN article about the

11   Iranian nuclear weapons program.  The defendant is alleged to

12   have deleted this e-mail from his e-mail account with the

13   intent to impair the e-mail's integrity and availability for

14   use in an investigation before a federal grand jury empaneled

15   in the Eastern District of Virginia between approximately April

16   18, 2006, and July 28, 2006.

17         Title 10 involves a violation of section 1512(c) of

18   Title 18 of the United States Code, which provides in part:

19   Whoever corruptly alters, destroys, mutilates, or conceals a

20   record, document, or other object, or attempts to do so with

21   the intent to impair the object's integrity or availability for

22   use in an official proceeding; or otherwise obstructs,

23   influences, or impedes any official proceeding, or attempts to

24   do so, shall be guilty of an offense against the United States.

25         There are three essential elements, again, all of

1    which must be proven beyond a reasonable doubt in order for

2    there to be a conviction on Count 10.

3            First is that the defendant altered, destroyed,

4    mutilated, or concealed a record, document, or other object, or

5    attempted to do so, or otherwise obstructed, influenced, or

6    impeded an official proceeding;

7            Two, that the defendant did so with the intent to

8    impair the object's integrity or availability for use in an

9    official proceeding; and

10           Third, that the defendant did so corruptly.

11           The document destroyed need not, need not be material

12   to the official proceeding.

13           An "official proceeding" means any proceeding,

14   including an investigation before a federal grand jury.

15           To act "corruptly" as that word is used in these

16   instructions means to act voluntarily and deliberately and for

17   the purpose of improperly influencing, or improperly

18   obstructing, or improperly interfering with the administration

19   of justice.  The defendant's conduct must have the natural and

20   probable effect of interfering with the due administration of

21   justice.  The government, however, does not have to prove that

22   the act of obstruction in fact obstructed the official

23   proceeding or was successful.

24           In addition to the elements of the specific charges

25   which the government must prove beyond a reasonable doubt, as

1    to each charge, the government must also establish the venue of

2    that charge in the Eastern District of Virginia because a

3    defendant has a right to be tried in the district where the

4    offense was committed.

5         Although, although the government has the burden to

6    prove venue, it is not required to prove venue beyond a

7    reasonable doubt.  Rather, the government must establish venue

8    by a preponderance of the evidence, which is a lower standard

9    of proof and requires that it is more likely than not that at

10   least one act in furtherance of that offense occurred in the

11   Eastern District of Virginia.  The government must establish

12   venue as to each charged offense.

13        If the government fails to establish venue for a

14   particular charge, the jury must acquit the defendant of that

15   charge.

16        I instruct you that you must presume the defendant to

17   be innocent of the crimes charged.  Thus, the defendant,

18   although accused of crimes in the indictment, begins the trial

19   with a clean slate, that is, with no evidence against him.  The

20   indictment, as you already know, is not evidence of any kind.

21   The defendant is, of course, not on trial for any act or crime

22   not contained in the indictment.  The law permits nothing but

23   legal evidence presented before the jury in court to be

24   considered in support of any charge against the defendant, and

25   the presumption of innocence alone therefore is sufficient to

1    acquit the defendant.

2         The burden is always upon the prosecution to prove

3    guilt beyond a reasonable doubt.  That burden never shifts to

4    the defendant for the law never imposes upon a defendant in a

5    criminal case the burden or duty of calling any witnesses or

6    producing any evidence.  The defendant is not even obligated to

7    produce any evidence by cross-examining the witnesses for the

8    government.

9         It is not required that the government prove guilt

10   beyond all possible doubt.  The test is one of reasonable

11   doubt.  And I can't give you a definition for that term.  Those

12   are not technical legal terms.  English language.

13        Unless the government proves beyond a reasonable

14   doubt that the defendant has committed each and every element

15   of the offenses charged in the indictment, you must find the

16   defendant not guilty of the offenses.  If the jury views the

17   evidence in the case as reasonably permitting either of two

18   conclusions, one of innocence and one of guilt, the jury must,

19   of course, adopt the conclusion of innocence.

20        Now, this is the last instruction, and I know you've

21   been with this for almost an hour.  Upon retiring to the jury

22   room to begin your deliberations, you will elect one of your

23   members to act as your foreperson.  The foreperson will preside

24   over your deliberations, will be your spokesperson here in

25   court, and will sign the verdict form on your behalf.

1           Your verdict must represent the collective judgment

2    of the jury.  In order to return a verdict, it is necessary

3    that each juror agree to it.  That is what unanimity means.  In

4    other words, your verdict must be unanimous.

5           It is your duty as jurors to consult with one another

6    and to deliberate with one another with a view towards reaching

7    an agreement if you can do so without violence to your

8    individual judgment.  Each of you must decide the case for

9    yourself, but do so only after an impartial consideration of

10   all the evidence in the case with all the other jurors.  In the

11   course of your deliberations, do not hesitate to reexamine your

12   own views and to change your opinion if convinced it is

13   erroneous.  Do not surrender your honest conviction, however,

14   solely because of the opinion of the other jurors or for the

15   mere purpose of returning a verdict.

16          Remember at all times you are not partisans.  You

17   don't represent the government; you don't represent the

18   defendant.  Instead, you are judges, specifically, judges of

19   the facts of this case.  And your sole interest is to seek the

20   truth from the evidence received during the trial.

21          Your verdict must be based solely upon the evidence

22   received in the case.  Nothing you have seen or read outside of

23   court may be considered.  Nothing that I have said or done

24   during the course of this trial is intended in any way to

25   somehow suggest to you what I think your verdict should be.

1          The punishment provided by law for the offenses

2    charged in the indictment is a matter exclusively within the

3    province of the Court and should never be considered by the

4    jury in any way in arriving at an impartial verdict as to the

5    offenses charged.

6          Nothing said in these instructions and nothing in the

7    verdict form prepared for your convenience is to suggest or

8    convey to you in any way or manner any intimation as to what

9    verdict I think you should return.  What the verdict shall be

10   is the exclusive duty and responsibility of the jury.  As I've

11   told you many times before, you are the sole judges of the

12   facts.

13         Now, a verdict form has been prepared for your

14   convenience, and you will notice that it skips from Count 7 to

15   Count 9.  There is no Count 8 at issue in this case, so don't

16   worry about the missed number.

17         You will take this verdict form to the jury room, and

18   when you have reached your unanimous agreement as to your

19   verdict, the foreperson will write your verdict, date and sign

20   the form, and return with your verdict to the courtroom.

21         Let me go over the verdict form with you right now.

22   So it begins with the caption of the case, United States of

23   America v. Jeffrey Alexander Sterling, and it has the case

24   number, and then we've listed each count.

25         Count 1 -- and you can go back to the jury

1  instructions and find exactly what that count is referring to.

2  And it just says:  "With respect to Count 1, unauthorized

3  disclosure of national defense information," and then it has

4  the code section, "we, the jury, unanimously find the

5  defendant, Jeffrey Alexander Sterling," and there are two

6  choices:  Guilty/Not Guilty.  "G" comes before "N," so the fact

7  that Guilty is listed first in no respect suggests that that

8  should be your answer, but we have to put the thing someplace,

9  and alphabetical seems as easy as any other way of doing it.

10       And then we go through each count that way, so then

11  there's a separate line for Count 2.  Each one of these counts

12  gets an individual evaluation and individual decision, and

13  again, any decision as to any count must be unanimous.

14       At the very end then, the foreperson will date the

15  verdict form with the date the decision, the final decision is

16  made.  We'll ask the foreperson to sign his or her name and

17  then please print it underneath since we often can't read your

18  signatures.

19       Now, you will take this verdict form into the jury

20  room.  You will also have all of the physical exhibits that

21  were entered into evidence, and I asked the attorneys to

22  provide you with an index of those, so you'll have the exhibit

23  number and a little title of what the exhibit is to help you

24  find them because you have a lot of evidence in this case.

25       I will also, I have to correct a few typos, but I

1    will have for you a couple of copies of these written jury

2    instructions as well so you can refresh yourselves as to any

3    matter that we've talked about in these instructions.  You may

4    take your notebooks with you as well.

5           If it becomes necessary during your deliberations to

6    communicate with the Court, you may send a note signed and

7    dated by your foreperson or by any of the other members of the

8    jury, and you do that by knocking on the door and giving the

9    note folded over to Mr. Wood, my court security officer.  Of

10   course, he is forbidden to communicate in any way or manner

11   with any member of the jury on any subject touching the merits

12   of the case.

13          No member of the jury should ever attempt to

14   communicate with the Court by any means other than a signed

15   writing, and the Court will never communicate with any member

16   of the jury on any subject touching the merits of the case

17   other than via writing or orally here in court.

18          Also, please bear in mind that you are never to

19   reveal to any person, not even the Court, how the jury stands

20   numerically or otherwise on any issue until after you've

21   reached the unanimous verdict.

22          All right, counsel, approach the bench.

23          (Bench conference on the record.)

24          THE COURT:  All right, you may have noticed as I read

25   I'm going to switch the word "communicate" on two of those

1   instructions.  That's how I read them.  They're just typed

2   wrong, okay, for those counts.  Because we were using the word

3   "communicate" rather than "disclose."

4           MR. OLSHAN:  That's fine.

5           THE COURT:  Any objection from the government to the

6   charge that's just been given to the jury?

7           MR. OLSHAN:  No, Your Honor.

8           MR. TRUMP:  No.

9           THE COURT:  Are there any changes, corrections,

10  anything you want the Court to change?

11          MR. OLSHAN:  No.

12          THE COURT:  No?

13          How about the defense?  Other than the objections

14  you've already put on the record, are there any additional

15  objections to the charge other than what you've already

16  objected to?

17          MR. MAC MAHON:  No, Your Honor.

18          THE COURT:  Are there any additional things you want

19  me to tell the jury?

20          MR. MAC MAHON:  No, Your Honor.

21          THE COURT:  We're set to go then, right?

22          MR. MAC MAHON:  We have to get rid of two jurors.

23          THE COURT:  I know.  We have to do the alternates.

24  That's the next thing, okay.  The practice here is that

25  Ms. Guyton should have all 14 jurors' names in the box.  Are

1   you ready to do it?

2            Is everyone watching?  All right.

3            No, you do it.

4            All right, who is that?  All right, the first one is

5   David Harrison, Juror No. 42, all right?  So he's the alternate

6   No. 1.  And the second one is Suzanne Yerks, Juror No. 101.

7   She's No. 2.  All right?

8            Why don't you go back, and I'll excuse them.

9            MR. MAC MAHON:  Thank you, Your Honor.

10           (End of bench conference.)

11           THE COURT:  Now, ladies and gentlemen, I know you've

12  been a very smart and attentive jury, and I bet at least one of

13  you has been wondering, There are 14 of us, but juries are only

14  made up of 12 people.  It turns out two of you have been

15  selected to be alternates, and, Mr. Harrison, you're alternate

16  No. 1; Ms. Yerks, you are alternate No. 2.

17           Where's Ms. Yerks?

18                    (Juror Yerks raised hand.)

19           THE COURT:  I want to first of all tell you folks we

20  really appreciate the time you've spent listening to this case.

21  Now, your job is not over yet.  You will not be able to

22  deliberate with the 12 people who remain in the jury.  We have

23  to have alternates because should any of you have had a family

24  emergency or, you know, get sick, the flu is around, and would

25  have been unable to come to the courthouse, we have to have 12

1    jurors in a criminal case.  We would have had enough extra

2    people here to make sure we could get this case finished, but

3    at this point, I can't have more than 12 people in the jury

4    room.

5            If, however, during the course of the deliberations a

6    juror should get ill or for some reason before the jury is

7    finished we lose somebody, then, Mr. Harrison, we would call

8    you to come back in.  And, Ms. Yerks, if we lost two jurors,

9    then we'd have to call you back in.

10           Therefore, it's extremely important, and I know this

11   is terribly unfair, but I have to keep you under the same

12   caution:  You must still continue to avoid any publicity about

13   this case.  It was discussed on the first page of *The*

14   *Washington Post* this morning, so stay away from the paper or at

15   least go to the sports section.  Do not discuss this case.

16           The 12 of you can't e-mail or send any notes or have

17   any communication with your two former colleagues.

18           If you will leave your phone numbers with Ms. Guyton,

19   we will call you so that you know either that we need you back

20   here or the case is over so that you can then read the paper,

21   and other than anything you might remember about those three

22   classified exhibits, there's nothing that prohibits you from

23   talking about this case, although again, you may want to

24   respect the thoughts of your fellow jurors and not.

25           But at this point, we're going to let Mr. Harrison

1   and Ms. Yerks go.  Leave your notebooks here.  We'll keep them

2   so that should you have to come back and deliberate -- and as I

3   said, do leave us a note with your phone number on it, okay?

4   And I think we can let you folks go right now, all right?

5   Thank you.  We'll stay in session for another minute.

6           You should check out with the Clerk's Office,

7   Ms. Yerks and Mr. Harrison.  Let them know that you are

8   alternates so that you're not going to be coming back unless we

9   have to call you back, and just leave your phone numbers,

10  unless we already have them.

11          Is there a problem?

12          (Discussion off the record between the Court and the

13  Court Security Officer.)

14          THE COURT:  All right.  Well, you're going to get a

15  break now anyway, so what we'll do is this:  We're going to

16  give you your afternoon break.  What I would like you to do,

17  once the two alternates have left, so you need to step outside

18  while this is being done, the 12 of you decide who wants to be

19  the foreperson, all right?  And then if the foreperson could

20  let me know in a written note how long a break you want to

21  take, all right?  During that time, Ms. Yerks can retrieve her

22  cell phone from the car of one of the rest of you, all right?

23          And then you might want to decide how long you want

24  to deliberate today.  There's -- once a jury starts

25  deliberating, the schedule can change dramatically.  If you

 1    want to stay past 5:30, that's fine.  If you're going to stay

 2    much later than that, I need to know so I can keep some heat on

 3    in the room for you.  If you want to stop at 5:30, which has

 4    been our normal time, that's also fine.

 5           You should know also that if you have a question, I

 6    can't answer your question without running it by the attorneys,

 7    and so I require at least one lawyer per side to always stay in

 8    my courtroom.  That does mean, however, that if you are going

 9    to be on a break, I can let those lawyers leave the courtroom

10    for that time period.

11           So anytime you take a lunch break or a coffee break,

12    I want you to let me know, you know:  We're breaking at this

13    time for 15 minutes, and that way I'll let everybody go so that

14    we don't waste your time.  If you have a question and I have to

15    track lawyers down, you know, you might wait a half an hour for

16    an answer, and we don't want to do that, all right?

17           You also might want to think about what time you want

18    to start tomorrow morning.  As I told you, I have other matters

19    unrelated to this case in my courtroom.  You'll be my first

20    priority, but the point is you can start at 9:00, you can start

21    at 8:30, frankly, whenever you want to start, but you can't

22    start until you're all together.

23           Jury deliberation is a collaborative process, and it

24    means that each of you must be listening to the other

25    discussing the evidence, so if someone's in the restroom, you

1    should stop deliberating.  If someone's run downstairs to get a

2    coffee, you've got to stop deliberating because it's important

3    that you hear each other, all right?

4            All right, we're going to let the jury go now, and if

5    you'd let us know who's going to be the foreperson, how long a

6    break you want, that will be just fine.

7            We'll recess court.

8            (Recess from 2:46 p.m., until 4:22 p.m.)

9        *         *         *         *         *

10

11                    CERTIFICATE OF THE REPORTER

12    I certify that the foregoing is a correct excerpt of the

13    record of proceedings in the above-entitled matter.

14

15

16    _____
                        /s/
                 Anneliese J. Thomson

17

18

19

20

21

22

23

24

25