IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| vs.    ) | Case No. 1:10-cr-00485-LMB |
| ) | |
| JEFFREY ALEXANDER STERLING,    ) | |
| ) | |
| Defendant.    ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT
OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

COMES NOW Jeffrey A. Sterling, by counsel, and for his Reply in Support of Motion for

Judgment of Acquittal or, in the alternative, for a New Trial, states as follows:

1.      **Introduction.**

On March 2, 2015, the United States filed its Opposition to the Defendant's Motion for

Judgment of Acquittal or, in the alternative, for a New Trial. In its Opposition, the government

repeatedly argues that the circumstantial evidence upon which the jury relied to convict Mr.

Sterling on all counts was sufficient to support the convictions. In so doing, the government

suggests that the Court's role in this regard is simply to affirm the jury verdict and not perform a

searching analysis of the record. On the contrary, the Court has a vital role to play and must

examine the flimsy and entirely circumstantial evidence that allegedly supports this verdict for

conduct that the government openly argued to the jury was treason. Of course, Mr. Sterling could

not have been charged with treason since that charge would have required, as a matter of

constitutional law, two witnesses to testify in court in support of each overt act. U.S.

Constitution, Art. III, § 3 ("No person shall be convicted of Treason unless on the testimony of two witnesses to the same overt act, or on confession in open court").   In this case, not even one witness was called with direct evidence of Mr. Sterling's guilt on a single charge.

In its brief, the government cites favorably to United States v. Bonner, 648 F. 3d 209 (4th Cir. 2011).   Opp. at 6.   While it is correct that the text of Bonner includes the statement that circumstantial evidence alone may support a verdict, the actual holding in Bonner requires the dismissal of all of the espionage charges in this case.   Like Mr. Sterling, Mr. Bonner was tried by a jury and convicted of several charges.   Upon the defense's Rule 29 motion, the district court examined the circumstantial evidence in the case and "determined that the evidence against Bonner was not sufficient for a reasonable trier of fact to conclude that he was guilty beyond a reasonable doubt."   648 F. 3d at 213.   The Fourth Circuit affirmed the judgment.   *Id.* at 210. The government in its Opposition ignores this standard and suggests that if there is any evidence from which one could conclude the defendant was guilty, the court must sustain the conviction. Rather, as Bonner illustrates, the court must evaluate all of the evidence independently and determine whether it can fairly lead a reasonable trier of fact to find guilt beyond a reasonable doubt.

More specifically, in affirming the dismissal of all charges in Bonner, the Fourth Circuit noted that the bank robbery verdict could not stand because of the absence of "'identity' evidence linking the defendant to the robbery." *Id.* at 214.   In language equally applicable to this case, the Court held that "while it is possible to convict a defendant solely on circumstantial evidence, in cases where the identity of the perpetrator is in dispute, usually there is some specific 'identity' evidence or uncontroverted physical evidence that links the evidence to the scene of the crime." *Id.* (citations omitted).

In this case, the Court can search the record with a fine tooth comb and find no evidence that beyond a reasonable doubt identifies Mr. Sterling as the source for Mr. Risen's rejected newspaper story in 2003 or for Chapter 9 of State of War.  And, flowing from the lack of evidence to support that conclusion is a lack of evidence that would support any argument that the government proved venue for any of the espionage charges.

2.      **There Was No Evidence that Mr. Sterling Was Mr. Risen's Source.**

In its Opposition, the government admits that it produced no direct evidence that Mr. Risen was given any national defense information by Mr. Sterling.  Instead, it argues that Mr. Sterling was privy to the information that was disclosed in Mr. Risen's book and that therefore he was a possible source.  Opp.at 8-10.  Of course, as the Court well knows, there were many other persons who were privy to the same information, and the government did not charge any of them and even failed to look for Mr. S's phone records or search Merlin's computer.  The government leaps to conclusion after conclusion but there is no direct evidence that Mr. Sterling was Mr. Risen's source or circumstantial evidence sufficient to prove that fact beyond a reasonable doubt.

There is no doubt that Mr. Sterling had a pre-existing relationship with Mr. Risen, and the government introduced phone records showing limited contact between the two men.  What is missing, however, is any proof of what was discussed during any of those calls.  The calls took place while Mr. Sterling was publicly litigating matters against the CIA, matters that were of interest to Mr. Risen.  None of the emails that the government produced contained any classified information at all much less any information about Classified Program No. 1.  There was no email conveying the text of the letter that Mr. Sterling was convicted of passing to Mr. Risen.  Instead, all the government has is speculation that Mr. Sterling was the source.

In its Opposition, the government seeks to buttress its convictions by claiming that the evidence proves that Mr. Risen sent a Federal Express package to Mr. Sterling in May of 2004. Opp. at 18 ("The jury could reasonably have inferred that when Risen, in fact, sent something via Federal Express the very next day, GX 125, he was sending a draft of 'the story' to the defendant"). No better example of the flimsiness of the government's case can be found.  While the government can spin this yarn in ink, there is absolutely no evidence in the record to support this tale.  First, there is no evidence that Mr. Risen ever sent any Federal Express package to Mr. Sterling anywhere.  The government sought all of the Federal Express records for Mr. Risen and Mr. Sterling and found no such records.  And, Special Agent Hunt conceded that there was no evidence at all that the Federal Express payment set forth in GX 125 was connected to Mr. Sterling in any way, yet the government clings to the record as evidence.  Special Agent Hunt testified:

Q.   Did you, did you tell the grand jury - - or, excuse me, the jury that there was a  - - you found a FedEx receipt of Mr. Risen's?  It's one of, one of his credit card records that showed a FedEx receipt?

A.   FedEx charge, yes.

Q.   A FedEx charge.  You wouldn't want to mislead the jury as to what that was, would you, ma'am?

A.   I wouldn't want to mislead them about anything.

Q.   Right.  And, you had actually served subpoenas for the FedEx records of Mr. Risen, hadn't you?

A.   Yes.

Q.   Right.  And you served - - and you received FedEx records dealing with Mr. Risen and his wife, correct?

A.   I don't recall exactly what was in the records.  I would have to re view them.

Q.   You asked for FedEx records just for Mr. Risen, correct?

A.      I would have to look at the records.

Q.      Well, you did get FedEx receipt from Mr. – showing communication between Mr. Risen and his lawyers, right?

MR. OLSHAN:       Objection, Your Honor.

THE COURT: What's the basis for the objection?

MR. OLSHAN:       It's not relevant.

MR. MACMAHON:  Let me - - I'll ask it a different way.

THE COURT: All right.

BY MR. MACMAHON:
Q.      You did a thorough request of FedEx for all FedEx receipts you could find, whether they were Mr. Sterling, Mr. Risen, or Mr. Risen's wife right?

A.      I would have to look back at my original request to FedEx.

THE COURT:    You have it - - you've got papers in your hand, Mr. MacMahon.

BY MR. MACMAHON:
Q.      I don't want to put all of these in evidence.  The point, ma'am you do not have the FedEx receipt or charge you showed the jury on that credit card, you don't have any evidence that that was a FedEx that was sent from Mr. Risen to Mr. Sterling, do you?

A.      I do not.

Q.      And you don't even know if it has anything to do with this case, do you?

A.      I do not.

Q.      And again, you got all Mr. Sterling's FedEx records, right?

MR. OLSHAN:       Objection.  Asked, asked and answered.

THE COURT: I think you've made your point.

BY MR. MACMAHON:
Q.      And you didn't find any communication - -

THE COURT: Mr. MacMahon, there was an objection.

MR. MACMAHON: I'm sorry, Your Honor.

THE COURT: I'm sustaining the objection because you've made your point on that.

MR. MACMAHON: Well, I just wanted to take it a little further, Your Honor, with respect to what was received which is that you received all – you didn't find any FedEx transactions whatsoever between Mr. Sterling and Mr. Risen, correct?

WITNESS: I did not, but FedEx no longer had the underlying records for the FedEx shipment that was made on June 11, 2004. They could not provide me with that data in response to my request.

BY MR. MACMAHON:
Q. So you don't know what it was?

A. I don't.

Agent Hunt's trial testimony excerpts, 88:3-90:17, attached hereto.

Desperate to the end, and in the face of the case agent's own admissions that there was no evidence to support the argument, the government still argues that it has proven that Mr. Risen sent a copy of Chapter 9 to Mr. Sterling by Federal Express in May of 2004. This is absurd and this Court cannot allow a verdict to stand that requires the government to make such baseless claims in the absence of any real evidence.

3.      **Count Nine Must Be Dismissed**.

In its Opposition, the government argues that it proved beyond a reasonable doubt that Mr. Sterling caused the unlawful conveyance of government property, with a value in excess of $1,000, to the general public through the publication of State of War.[1]  The defense is correct, as set forth in detail in its Memorandum, that the government abandoned its aiding and abetting theory of the case. The transcript supports that fact, and the government does not quibble with

---

[1] The defense also rejects the argument that the $1,000 element was proven. The government introduced by stipulation an estimate of the funds spent on Classified Program No. 1, but there is no evidence that the entire program was conveyed to anyone.

that assertion.   Instead, the government argues that Mr. Sterling's claim that he was charged after the statute of limitations had expired fails because Mr. Risen published his book within the five year time period set forth in 18 U.S.C. § 3282(a).   In so arguing, it is the government, and not the defense, that conflates arguments.

No matter when Mr. Risen decided to publish his book, the last act that the government can ascribe to Mr. Sterling – an alleged phone call with Mr. Risen – occurred more than five years before the indictment was returned on December 20, 2010.   That means, as a matter of fact, that the last act Mr. Sterling could have taken – even to cause the alleged conveyance – was on that date.   Having abandoned its aiding and abetting theory, the government simply cannot rely upon anything Mr. Risen did to save this charge.   Otherwise, there would essentially be no statute of limitations for a charge under this statute.   Count Nine must be dismissed.

4.     **The Evidence That Mr. Sterling Retained a Copy of the Letter About Classified Program No. 1 is Entirely Speculative**.

In its Opposition, the government relies almost entirely upon the incredible testimony of Merlin to establish that Mr. Sterling was the last person to have a copy of the letter published in State of War.   Opp. at 24.   Frankly, it is stunning that the government would rely on this uncorroborated testimony as to this matter to support any conviction.   The cables that were introduced in evidence by the Government established that there was no such meeting between Mr. Sterling and Merlin.   And, witness after witness established that cables were written after each and every meeting between a source and a handler.   Finally, it is patently false that Merlin would actually recall the exact language of a letter in a book he hardly read much less be able to compare it to one he may have seen and then given away 15 years ago.

Furthermore, the government's argument that it proved beyond a reasonable doubt that Mr. Sterling retained the letter is based upon pure speculation and no actual evidence. Not one witness was ever called that identified Mr. Sterling as having actual possession of a single classified document about Classified Program No. 1, much less the specific letter at issue. That he refused to sign an exit agreement is not proof that he retained any classified documents much less the specific document at issue. And, the fact that Mr. Harlow said Mr. Risen told him he had "documents" is meaningless. There was no evidence that in April 2003, when Mr. Risen spoke to Mr. Harlow, Mr. Risen actually had documents or that the letter in question was one of them.

Instead, the government merely proves why admitting GX 142-145 was an error. The Court surely recalls that the government argued that these exhibits should be admitted to show venue; it argued that possession of these exhibits would allow the jury to infer possession in Virginia of the letter related to Classified Program No. 1. In its Opposition, it now argues that the verdict should be sustained, in part, because it proved "the defendant's penchant for holding onto CIA material, GX 142-145 [thus allowing the jury to] conclude that the defendant kept the hard copy Merlin gave him, removed it from the CIA space when he was transferred back to Washington, and provided it to Risen for ultimate reproduction in Chapter 9." Opp. at 25-26. "As a result, the evidence was sufficient to establish that the defendant was in unauthorized possession of the letter for purposes of Counts Two, Five, and Seven, and likewise willfully retained the document for purposes of Count Three." *Id.* at 26.

There, in one sentence, the government admits that the jury had to jump through at least four speculative hoops to find the defendant guilty. And, it admits that the real reason it sought to admit GX 142-145 was for the precise purpose that Rule 404 prohibits – showing Mr. Sterling's "penchant" for holding onto CIA material. Fed. R. Evid. 404 ("Evidence of a crime, wrong, or

other act is not admissible is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character").

5.      **There Was No Evidence that the Defendant Obstructed Justice**.

In the Opposition, the government also admits that there is no evidence that Mr. Sterling deleted the email at issue.   It offers no explanation as to how the email came to be deleted from Hotmail's records between April and July of 2006.   Of course, there was time between April, 2006 and June 16, 2006 within which the email could have been deleted by Hotmail or anyone else. The government, which called a computer expert, did not offer any evidence that Mr. Sterling logged onto any computer and deleted anything.   And, it is a bizarre stretch for the government – which could have demanded by subpoena that Mr. Sterling maintain and produce to the grand jury emails or correspondence with Mr. Risen – to argue that a CNN story about Iran concerns the CIA or its operations, sources or methods.   Opp. at. 27.   The email does not even mention the CIA. That email is plainly not responsive to the subpoena and like any defendant, Mr. Sterling should be entitled to notice when a subpoena is issued and to receive clear notice as to what the government is seeking.   Count Ten must be dismissed.

6.      **Venue Was Never Proven**.

Having received the venue instructions it requested at trial, there is no surprise that the government argues the jury was properly instructed.   The defendant has preserved his objections to the instructions and will not reargue these matters here.

The government's arguments as to the factual proof it offered for venue are exceedingly thin.   The government concedes in its Opposition that "'venue is proper in any district where the subject crime was committed'" and "[a]s such, the venue inquiry focuses on the 'essential conduct elements' of the charged offense."   Opp. at 28 (citations omitted).   After establishing the law on

venue, however, the government proceeds to argue that venue was proven in this case despite the absolute lack of evidence that any essential conduct element of the charged offenses occurred in the Eastern District of Virginia. Counts One, Two and Nine of the indictment alleged that Mr. Sterling caused the communication of national defense information to the general public and the conveyance of government property to the general public through the publication of State of War. In its Opposition, the government argues that because the book was delivered to the Eastern District of Virginia and, notwithstanding Julia Perriello's uncertainty as to whether she purchased the book in Virginia or Maryland, presumably sold to the general public in this district, venue is proper. The government then claims that Mr. Sterling "attempts to sidestep [a] straightforward venue analysis by claiming that venue for Counts One, Two, and Nine can only be determined based on Risen's conduct" and "provides no basis for this theory." Opp. at 30.

The government ignores the plain fact that Mr. Sterling's "theory" for Counts One and Two is based on the Court's actual jury instructions. The instructions set forth that causation under § 793 requires that "another person performed the acts that constituted the crime of unauthorized communication of national defense information or committed an indispensable element of that crime" and that "the defendant willfully caused these acts." The person who performed the acts constituting communication of national defense information to the general public was Mr. Risen. Thus, the location of his acts is determinative in establishing venue for these two Counts. And, as Mr. Sterling previously set forth, the government provided no evidence of Mr. Risen's location when he received or transmitted classified information. The publication of the book is simply insufficient to sustain venue.

For Count Nine, contrary to the government's assertion, Mr. Sterling did not argue that venue is based on Mr. Risen's conduct. Rather, Mr. Sterling argued that, because § 641 does not

contain a causation element and because the government abandoned its aiding and abetting theory of liability, "Mr. Risen's acts cannot be used to establish venue." Motion for Judgment of Acquittal at 16. The essential conduct element of that charge was Mr. Sterling's conveyance of classified information to Mr. Risen, and the crime was complete upon conveyance. And again, the government provided no evidence that this occurred in the Eastern District of Virginia.

As for Counts Three through Seven, there remain the indisputable facts that (1) there is no evidence in this record that the defendant ever provided any national defense information to Mr. Risen in the Eastern District of Virginia; (2) there is no evidence that Mr. Sterling ever possessed the letter related to Classified Program No. 1 in the Eastern District of Virginia; and; (3) there is no evidence that Mr. Sterling ever gave a copy of that letter to Mr. Risen in the Eastern District of Virginia. Indeed, Special Agent Hunt admitted as much.[2] Accordingly, all that is left for the government is to reargue the speculation it repeats about the circumstantial nature of its case. In sum, there was no evidence that Mr. Sterling delivered or communicated anything to Mr. Risen in this district, and as such there was no evidence to support the charged venue.

WHEREFORE, the defendant requests that the instant motion be granted.

JEFFREY A. STERLING
By Counsel

---

[2] As Ms. Hunt is an agent of the government, this admission by the government should preclude it from arguing otherwise.

-11-

By:     _____/s/_____
        Edward B. MacMahon, Jr.
        VSB No.   25432
        Edward B. MacMahon, Jr., PLC
        P.O.   Box 25
        107 East Washington Street
        Middleburg, VA     20118
        (540) 687-3902
        (540) 687-6366
        ebmjr@macmahon-law.com


        _____/s/_____
        Barry J. Pollack (admitted *pro hac vice*)
        Mia P. Haessly (admitted *pro hac vice*)
        Miller & Chevalier Chartered
        655 Fifteenth St. N.W. Suite 900
        Washington, DC 20005
        (202) 626-5830
        (202) 626-5801 (facsimile)
        bpollack@milchev.com
        mhaessly@milchev.com

        *Counsel for Jeffrey A. Sterling*

CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By:    _____/s/_____
Edward B. MacMahon, Jr. (VSB # 25432)
Edward B. MacMahon, Jr., PLC
107 East Washington Street
P.O. Box 25
Middleburg, VA 20118
(540) 687-3902
ebmjr@macmahon-law.com

*Counsel for Jeffrey A. Sterling*