Hunt - Cross                                                                88

1   Program No. 1 at all, correct?
2   A.   That's correct.
3   Q.   Did you, did you tell the grand jury -- or, excuse me, the
4   jury that there was a -- you found a FedEx receipt of
5   Mr. Risen's?  It's one of, one of his credit card records that
6   showed a FedEx receipt?
7   A.   A FedEx charge, yes.
8   Q.   A FedEx charge.
9            You wouldn't want to mislead the jury as to what that
10  was, would you, ma'am?
11  A.   I wouldn't want to mislead them about anything.
12  Q.   Right.  And you, you had actually served subpoenas for the
13  FedEx records of Mr. Risen, hadn't you?
14  A.   Yes.
15  Q.   Right.  And you served -- and you received FedEx records
16  dealing with Mr. Risen and his wife, correct?
17  A.   I don't recall exactly what was in the records.  I would
18  have to review them.
19  Q.   You asked for FedEx records just for Mr. Risen, correct?
20  A.   I would have to look at the records.
21  Q.   Well, you did get FedEx receipts from Mr. -- showing
22  communication between Mr. Risen and his lawyers, right?
23           MR. OLSHAN:  Objection, Your Honor.
24           THE COURT:  What's the basis for the objection?
25           MR. OLSHAN:  It's not relevant.

Hunt - Cross                                                                89

1           MR. MAC MAHON: Let me -- I'll ask it a different
2    way.
3           THE COURT: All right.
4    BY MR. MAC MAHON:
5    Q.   You did a thorough request of FedEx for all FedEx receipts
6    you could find, whether they were Mr. Sterling, Mr. Risen, or
7    Mr. Risen's wife, right?
8    A.   I would have to look back at my original request to FedEx.
9           THE COURT: You have it -- you've got papers in your
10   hand, Mr. MacMahon.
11   BY MR. MAC MAHON:
12   Q.   I don't want to put all these in evidence. The point,
13   ma'am, you do not have the FedEx receipt or charge you showed
14   the jury on that credit card, you don't have any evidence that
15   that was a FedEx that was sent from Mr. Risen to Mr. Sterling,
16   do you?
17   A.   I do not.
18   Q.   And you don't even know if it has anything to do with this
19   case, do you?
20   A.   I do not.
21   Q.   And again, you got all Mr. Sterling's FedEx records,
22   right?
23          MR. OLSHAN: Objection. Asked, asked and answered.
24          THE COURT: I think you've made your point.
25   BY MR. MAC MAHON:

```
         Hunt - Cross                                                90
 1   A.   And you didn't find any communication --
 2             THE COURT:  Mr. MacMahon, there was an objection.
 3             MR. MAC MAHON:  I'm sorry, Your Honor.
 4             THE COURT:  I'm sustaining the objection because
 5   you've made your point on that.
 6             MR. MAC MAHON:  Well, I just wanted to take it a
 7   little further, Your Honor, with respect to what was received,
 8   which is that you received all -- you didn't find any FedEx
 9   transactions whatsoever between Mr. Sterling and Mr. Risen,
10   correct?
11             THE WITNESS:  I did not, but FedEx no longer had the
12   underlying records for the FedEx shipment that was made on
13   June 11, 2004.  They could not provide me with that data in
14   response to my request.
15   BY MR. MAC MAHON:
16   Q.   So you don't know what it was?
17   A.   I don't.
18   Q.   Did you receive any FedEx receipts back into 2004 from
19   FedEx?
20   A.   I would have to look back at the date of my request.
21   Q.   When did you request the records?
22   A.   Without the record in front of me, I cannot recall.  What
23   I do recall is that FedEx only maintained records for a certain
24   time period, and going back, they -- the records for the
25   shipment on June 11, 2004, did not fall within the time period
```