UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:10cr485 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | October 10, 2014 |
| JEFFREY ALEXANDER STERLING, | . | 9:53 a.m. |
| | . | |
| Defendant. | . | |
| | . | |
| . . . . . . . . . . | . | |

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:              JAMES L. TRUMP, AUSA
                                 DENNIS M. FITZPATRICK, AUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314
                                   and
                                 ERIC G. OLSHAN, Deputy Chief
                                 Public Integrity Section of the
                                 Criminal Division
                                 United States Department of
                                 Justice
                                 1400 New York Avenue, N.W.
                                 Suite 12100
                                 Washington, D.C. 20005


FOR THE DEFENDANT:               EDWARD B. MAC MAHON, JR., ESQ.
                                 Law Office of Edward B.
                                 MacMahon, Jr.
                                 107 East Washington Street
                                 P.O. Box 25
                                 Middleburg, VA 20118


(APPEARANCES CONT'D. ON FOLLOWING PAGE)

(Pages 1 - 25)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1   APPEARANCES:  (Cont'd.)

 2   FOR THE DEFENDANT:            BARRY J. POLLACK, ESQ.
                                   Miller & Chevalier Chartered
 3                                 655 - 15th Street, N.W.
                                   Suite 900
 4                                 Washington, D.C. 20005-5701

 5
     CISO OFFICER:                 CHRISTINE GUNNING
 6

 7   OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
                                   U.S. District Court, Fifth Floor
 8                                 401 Courthouse Square
                                   Alexandria, VA 22314
 9                                 (703)299-8595

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1               P R O C E E D I N G S

2                    (Defendant not present.)

3          THE CLERK:  Criminal Case 10-485, United States of

4    America v. Jeffrey Alexander Sterling.  Would counsel please

5    note their appearances for the record.

6          MR. TRUMP:  Good morning, Your Honor.  Jim Trump,

7    Eric Olshan, and Dennis Fitzpatrick for the United States.

8          MR. OLSHAN:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10         MR. MAC MAHON:  Good morning, Your Honor.  Edward

11   MacMahon and Barry Pollack for Mr. Sterling.  Mr. Sterling has

12   signed the waiver.

13         THE COURT:  I saw the waiver.  I know that he's not

14   here.

15         All right, although this matter is captioned as a

16   status hearing, we actually have two motions that have been

17   filed, and I've not received to my knowledge a response from

18   the government as to either of the motions.  There's a motion

19   for discovery and a motion to compel.

20         Is someone going to respond to those motions,

21   Mr. Trump?

22         MR. TRUMP:  Your Honor, we can address those in

23   writing, and I think we should address those in writing given

24   the issues they raise.  For example, the motion for -- to

25   compel discovery, I've discussed with Mr. MacMahon some of the

1    things he's identified in that motion.  For example, there's

2    some FBI 302s that are classified that are sitting waiting for

3    him.  He has not yet reentered his SCIF, so it's been

4    impossible for the government to provide that information to

5    him.

6         THE COURT:  So are you not opposing that particular

7    motion then?  If you have the 302s, I would assume you're not

8    opposing that aspect of the motion.

9         MR. TRUMP:  No, there are other issues that are

10   raised by the motion.  For example, in the motion, Mr. MacMahon

11   claims that he's entitled to certain documents.  That misstates

12   *Giglio* law and impeachment information generally.

13        For example, the government's obligation is to

14   provide information.  It's not the government's obligation to

15   turn over the files from which that information came, so to the

16   extent that Mr. MacMahon is insisting that he have access to

17   the underlying files, we oppose that, and we would have to

18   litigate that before Your Honor.

19        THE COURT:  I'm not sure, maybe I misread his motion.

20   I did not think he wanted the entire file.  I think he wanted

21   the verbatim statements that those particular witnesses had

22   made.

23        MR. TRUMP:  And again, we would limit his entitlement

24   to some of that information.  For example, we provided -- I

25   will speak in hypothetical terms because the files are secret

1    and we can't discuss those in open court, but, for example, if

2    a government witness in, in a context of his employment

3    acknowledged that sometime in 1970, he took home a secret

4    document to work on, first of all, we would question the

5    impeachment value of that information.  It doesn't go to

6    truthfulness.  It doesn't go to honesty.  It says nothing about

7    the witness's ability to answer questions in court.

8         But even if it remotely affected truthfulness, we

9    have other issues:  the age of the information, the context in

10   which it was provided, things like that, the probative value

11   versus prejudice, but all that the defense is entitled to is

12   the acknowledgement that during a background information, for

13   example, the witness acknowledged doing that.  There's nothing

14   more of any value that would be gained by, by providing a

15   document from a file.

16        So in that context, Judge, we do object to, to much

17   of what Mr. MacMahon is saying in his, in his motion.

18        The 302s are the interviews that were conducted with

19   the three individuals who had provided information about one of

20   the government witnesses.  We will also provide defense counsel

21   with contact information for those three individuals.  They can

22   contact them.  They can read the 302s and come to their own

23   conclusion as to whether there's any impeachment value in what

24   they say.

25        THE COURT:  All right.

1          MR. TRUMP:  The other point, Judge, is all these

2   witnesses will be before the Court at some point, so to the

3   extent that there is any question about what they have said on

4   prior occasions, they can certainly be voir-dired at some point

5   prior to their testimony.

6          THE COURT:  I think the one, the one problem may be,

7   because this case is set to be tried before a jury, as I

8   recall --

9          MR. TRUMP:  That's true, Your Honor.

10          THE COURT:  -- and because we have this issue of

11   whether or not particular witnesses' testimony might bump into

12   some CIPA problems, it's hard for defense counsel to know where

13   the CIPA problems might lie if they don't know what the witness

14   has said.

15          So I think you're correct that getting a detailed

16   response from the government -- I mean, to the extent you can

17   work things out, that's fine, but to the extent there are still

18   some areas that are not worked out between you-all, then I

19   think getting this in writing would be helpful, all right?

20          MR. TRUMP:  And that's what we were going to propose

21   here, Your Honor.  In addition to setting a trial date, there

22   are three general areas that we think the Court will need to

23   have a hearing.  One is Mr. Risen.

24          THE COURT:  Obviously.

25          MR. TRUMP:  There will be issues that will come up

1   with respect to him, some of which are noted in the defense

2   motion.

3            The second will be this, the issue of impeachment

4   information, what is admissible, what is not admissible, to

5   what extent is the defense entitled to any additional

6   information from the government.

7            And the third are CIPA issues which may overlap a

8   little bit with the *Giglio* question, but there are some loose

9   ends that have to be tied up in terms of CIPA.  For example,

10  there were a few things that are left to be resolved in terms

11  of given the lapse of time between 2011 and now, there may be

12  some witnesses whose cover is different today than they were in

13  2011 and vice versa.  So there are a few issues that will have

14  to be tied up in terms of the Court's -- getting some orders

15  from the Court with respect to how those things will be handled

16  at trial.

17           I don't know if there are any new CIPA issues that

18  will come up from the defense in terms of any additional

19  Section 5 notices or anything like that, but those are the

20  three general categories for which some hearing time will be

21  necessary.

22           THE COURT:  I would think the Risen matter needs to

23  get addressed as quickly as possible.  Are you about ready to

24  start addressing that issue?

25           MR. TRUMP:  Well, Your Honor, until we have a trial

8

1  date, we can't issue a subpoena, and there are new government

2  regulations that we have to go through in terms of the issuance

3  of a subpoena.  They are codified at 50.10 of the DOJ

4  regulations, and we are doing our best to go through that

5  process as efficiently and as diligently as possible.

6           I can't speak for Mr. Risen.  I can't speak for his

7  attorneys.  So their response to any subpoena should a subpoena

8  be issued will obviously be made known to the Court, and then

9  at that point, we can go forward.

10          THE COURT:  But, I mean, obviously, the Justice

11 Department has to have been considering whether or not a

12 subpoena would be issued for some period of time.  I mean, you

13 don't have a trial date, so technically, you can't issue a

14 subpoena, but the decision as to whether or not a subpoena is

15 going to be issued should not take much time to --

16          MR. TRUMP:  And I don't think it will take much time.

17          THE COURT:  All right.

18          MR. TRUMP:  We have gone through our end of the

19 process.  The prosecutor's end of the process is nearly

20 complete.  The only additional information we need is a trial

21 date and then --

22          THE COURT:  Which you're going to get, yeah.

23          MR. TRUMP:  -- it is up to, for example, the new

24 regulations require the director of national intelligence to

25 make a certification with respect to the case and to transmit

1    that to the attorney general.  So there is a process that will

2    take some time, but I do not expect it will take very long.

3              THE COURT:  Well, why don't you give me a ballpark

4    figure as to how long you think it will be.

5              MR. TRUMP:  A few weeks.

6              THE COURT:  A few weeks?  All right.

7              Have you and defense counsel spoken about a possible

8    trial date given the various hurdles?

9              MR. TRUMP:  We've spoken very generally, Your Honor.

10   Our position is that we would like to try the case as soon as

11   the Court's docket would allow us.

12             THE COURT:  I could try it next week, so you don't

13   really mean that, Mr. Trump.

14             MR. TRUMP:  Well, I think we -- the logistics are

15   that we have between 40 and 50 witnesses.  We would not need

16   that many if we can reach stipulation on certain issues, but if

17   we can't, that's roughly the number of witnesses.

18             Maybe half are local.  The others are all over the

19   world.  So the logistics of making travel arrangements and

20   hotel reservations, things like that, I think we would need

21   about a month to get all that ready, but after that, Judge,

22   we're at your mercy, so to speak, with respect to your calendar

23   and your docket, and we would like to try it as soon as your

24   calendar would allow.

25             THE COURT:  And I'm assuming given that number of

1   witnesses and the potential for having CIPA issues that still

2   can pop up in a trial of this sort, five to ten trial days, but

3   no more than that?

4          MR. TRUMP:  That's roughly the ballpark from least to

5   most, yes.

6          THE COURT:  All right.

7          MR. TRUMP:  From our standpoint.  We're not speaking

8   for the defense.

9          THE COURT:  All right.  All right, Mr. MacMahon?

10         MR. MAC MAHON:  Thank you, Your Honor.

11         THE COURT:  First of all, let me just ask you, do you

12  think five to ten trial days is about right from the way you

13  see things?

14         MR. MAC MAHON:  I would think so, Your Honor, from my

15  experience trying cases in your courtroom.

16         THE COURT:  All right.

17         MR. MAC MAHON:  It may take a little longer but I

18  would say it's more on the outside.  With that many witnesses

19  coming and going, it's going to take a while.

20         THE COURT:  Assuming you-all don't work some issues

21  out, which I would expect, you know, you'd make a good effort

22  to do if you can.

23         MR. MAC MAHON:  We would if it was something we could

24  work out, Your Honor.

25         THE COURT:  All right.

1        MR. MAC MAHON:  With respect to the *Giglio* matter,

2   Your Honor, Mr. Pollack has been working on all of that, but if

3   the government is going to file a response in writing, we can

4   obviously just defer the argument and the resolution of that

5   matter for a specific hearing date, and the same with respect

6   to Mr. Risen as well.

7        So I guess the question really is you want to know

8   about a trial date.

9        THE COURT:  Correct.

10       MR. MAC MAHON:  And I guess our concerns now about

11  having it too soon, I know you're not going to give me too

12  long, we were ready to try the case three years ago, when the

13  case got delayed.

14       But Ms. Gunning is here.  We're going to go down into

15  the SCIF now and reopen it.  We basically have to start over in

16  terms of reorganizing everything that's down there.

17       Mr. Trump and I talked.  We actually already have

18  witness lists and exhibit lists that are ready to go, but we

19  still need to refresh our recollections of what's in there and

20  maybe look at some other issues.  In the last three years,

21  there have been some other issues that are going to have to be

22  litigated by other national defense issues in this case.

23  Again, I apologize being circumspect, but, you know, that's

24  kind of the way we have to deal with this.

25       I mean, we don't think -- Mr. Pollack and I don't

1    think that really, going into next year, given our other trial

2    schedule, is really the best we can do for the Court and to

3    provide effective assistance to Mr. Sterling, who obviously is

4    entitled to that.  I know the Court is very sensitive of that,

5    but we've thought February would be, would be the earliest that

6    we could, could give you a date where we could litigate.

7           I mean, the Risen issue may be more complicated than

8    just a two-week issue with the -- and we think it's going to

9    be -- more than just going to the attorney general and asking

10   what he's going to do, because then we have to find out what

11   Mr. Risen is going to do and then what the Court thinks the

12   legal issues that may arise if, for example, he refuses to

13   testify, and there is some understanding about repercussions if

14   he doesn't.

15          These things are going to be complicated, we believe,

16   and many are of first impression.  So there's no -- I don't

17   think there's a rush after three years of appellate litigation

18   to get this done in a way that prejudices Mr. Sterling, so our

19   proposal is February, Your Honor.

20          THE COURT:  Mr. Trump?

21          MR. TRUMP:  Judge, I've been around for about almost

22   24 years, and I've never made this request, but I can't try

23   this case for personal reasons in February or March.

24          THE COURT:  All right.

25          MR. TRUMP:  I can explain to the Court what they are

1    if the Court wants to hear, but --

2              THE COURT:  You've -- the Court knows you as an

3    officer.  If you have that problem, whatever problem it is, I

4    would respect that.

5              I was actually looking at mid-January.  I think, I

6    think trying this case -- to set it in 2014 is problematic.

7    First of all, for purposes of the record, I'm making a finding

8    this is a complex case.  The Speedy Trial Act clearly, the time

9    periods within that act clearly would not apply to this case

10   because of the significant classified information issues, the

11   complexity with the Risen matter, and I assume there's no

12   objection that the Speedy Trial Act --

13             MR. MAC MAHON:  No.

14             THE COURT:  I think they were waived before, but I

15   just for the record want to just be --

16             MR. MAC MAHON:  It will be waived again, Your Honor.

17             THE COURT:  All right.  Mr. Trump, you'd agree with

18   that?

19             MR. TRUMP:  I agree, Your Honor.

20             THE COURT:  Okay.  What I don't want to do is set a

21   trial date and have to change it again.  That's, that's bad

22   practice.

23             MR. TRUMP:  What we were going to suggest, Judge --

24             THE COURT:  Yeah.

25             MR. TRUMP:  -- is a trial date of the 12th or the

1    13th of January, if we go into January, and then schedule

2    hearings for CIPA and *Giglio* matters in December, in early

3    December.

4              The Risen matter, I think we, we can handle that in

5    December, but I don't want to speak for Mr. Risen's counsel.

6              THE COURT:  Do we have any counsel here for Mr. Risen

7    today in the courtroom?  Is there anybody?

8                        (No response.)

9              THE COURT:  No.

10             MR. TRUMP:  I don't expect them to be.  I had a

11   telephone call with them this week, and I told them that we

12   would be suggesting that we would have a hearing date to

13   discuss those issues, and they asked me that if there is going

14   to be a hearing, to discuss with them possible dates, and I

15   would suggest to the Court that the first two weeks of

16   December, we could have hearing dates for these three general

17   categories, whether they be on the same day or two days or

18   three days, it doesn't really matter to us, but I can call

19   Mr. Risen's counsel and find out what days they're available in

20   December.

21             THE COURT:  Actually, I think the Risen matter needs

22   to be pushed up sooner if we're going to keep to a January

23   trial date.  I'm available every Friday in November except the

24   Friday after Thanksgiving, we're not holding court that day, so

25   the 28th is out, but any other Friday motions docket, and given

1   the nature of this case, we might even want to not do it on a

2   Friday.

3          But I think the better thing would be for you to get

4   that subpoena out as soon as possible, if you're going to issue

5   the subpoena, and you thought you might be able to do it within

6   two or three weeks, or is this clearing process going to take

7   longer than that?

8          MR. TRUMP:  A few weeks.  The regulations are brand

9   new.  This is the first time anyone at the department is going

10  through them, but we, we hope to have everything wrapped up

11  within a few weeks.  I don't --

12         THE COURT:  So that's why you're saying December,

13  because you don't think by November you would have gotten the

14  subpoena out and there would have been enough time for the

15  Risen attorneys to file a motion to quash or whatever they're

16  going to file and then you to respond to it.  I mean, that's

17  why you're looking at December?

18         MR. TRUMP:  That's what I'm thinking, that if, if,

19  for example, all the decisions were made by November 1, I'm

20  sure his attorneys want some time to file whatever they're

21  going to file, and then we could have a hearing in early

22  December, but that was just my gut feeling, Your Honor.

23         I'm certainly willing to contact counsel for

24  Mr. Risen and find out generally what their, their availability

25  would be.

1        THE COURT:  Yeah, I think you ought to do that before

2   we set a hearing date.  All I'm going to do today is set the

3   trial date, and what I am looking at, I mean, I already have a

4   trial scheduled for January 12, but quite frankly, it's

5   beginning to plead out, so I don't know whether that's going to

6   go forward.

7        Mr. Trump, are you -- do you absolutely disappear or

8   become unavailable as of February 2?  In other words, the whole

9   month of February, you're gone or unavailable?

10        MR. TRUMP:  Well, my wife is expecting, so --

11        THE COURT:  Oh, that's exciting.

12        MR. TRUMP:  -- those days are somewhat --

13        THE COURT:  Oh, yes.  But if we started the trial on

14   Tuesday, January 20 --

15        MR. TRUMP:  That really pushes it for me, Your Honor.

16   That's all I can say.

17        THE COURT:  That's getting too close to that time

18   period, yeah.

19        MR. TRUMP:  But what I was going to suggest, Your

20   Honor, if we, if we start the case on the 12th or 13th, if we

21   have resolved all of the CIPA issues, the *Giglio* issues, the

22   Risen issues well in advance, I was also going to suggest that,

23   for example, because of the screen and all the issues of

24   logistics of the courtroom, that we actually do jury selection

25   a few days before trial so that we have plenty of time to

1    handle all the logistics of setting up the courtroom and

2    everything and we just hit the ground running when trial

3    starts.

4           The reason I suggest that, in the *Torrez* trial before

5    Judge O'Grady, we, we actually did jury selection several weeks

6    before the evidence was heard.  We were a little worried how

7    that might affect the jurors and their ability not to do

8    research and things like that, but it actually worked out.

9           THE COURT:  We did it with *Moussaoui*, too.  There was

10   a break between the selection of the *Moussaoui* jury and the

11   start of that trial, so that's been done before.

12          MR. TRUMP:  If we did start trial on January 13, for

13   example, the Wednesday or Thursday before, we could handle all

14   the issues relating to jury selection, and that would give us a

15   full week of trial then, that week and the following, and we

16   might be wrapped up by the 22nd or 23rd.

17          THE COURT:  The only problem I have is I have a trial

18   on the 12th, and I'm not, I'm not sure -- it's a

19   multi-defendant case.  I'm not sure every defendant will plead

20   out.  I've taken two pleas so far.

21          And the week of the 19th, that Monday is a federal

22   holiday.

23          MR. TRUMP:  Correct.

24          THE COURT:  So that's only a four-day week that week.

25          Well, I think what we could do is I'm going to set

1    the trial to start Wednesday, the 14th of January, and I will,

2    I will conduct trial on that Friday, so we'll get three full

3    trial days that week.  That is going to create a three-day

4    break on the long weekend, but then we have -- and again, we

5    can try the case on Friday, the 23rd, so there would be four

6    more days that week, and then by the week of the 26th, I mean,

7    the case could very well, because I try cases, as you know,

8    fairly fast, it might be done.

9            If worst came to worst, though, Mr. Trump, could you

10   arrange your presentation of evidence such that your cocounsel

11   could be working towards the end of the trial?

12           MR. TRUMP:  I'm sure cocounsel will be --

13           THE COURT:  Will that work on --

14           MR. TRUMP:  -- well-versed in the case by that time

15   and can adequately take over.

16           THE COURT:  All right.  Would that schedule work for

17   the government?

18           MR. TRUMP:  That would work for the government.

19           THE COURT:  So what we would do then is probably do

20   the jury selection maybe on, like, the 8th, and I'll go with

21   your recommendation that we have the jury in place.

22           If between now and then this case that I have set for

23   the 12th, if the total -- case totally pleads out, I'll let

24   you-all know, and maybe we can push the start date back two

25   days, all right?

1          MR. TRUMP:  Okay.

2          THE COURT:  Does that, does that work on defense

3    counsel's calendars?

4          MR. MAC MAHON:  It does, Your Honor.

5          THE COURT:  All right.  So what I'm going to do is

6    I'm going to say that the trial actually begins on Thursday,

7    January 8, with the selection of jury, all right?  And that

8    would be at 10:00.  And then hopefully, we can start the trial

9    on the 12th if I've gotten rid of the other case.  If not, I

10   will get rid of the other case in time so that we can start on

11   the 14th.

12         Does that sound all right to everybody?

13         MR. TRUMP:  That sounds fine.

14         THE COURT:  All right.  And then just again, the

15   heads up, right now because we've got that holiday season,

16   there are no dockets scheduled for January 2 or December 26, no

17   formal Friday dockets, and staff is thin those two weeks.  Now,

18   I'm not out of the area, so if we have emergency issues that

19   come up, you-all better get me plenty of notice so I have

20   enough staff here to cover, all right?

21         But right now, most problems have to get resolved by

22   December 19 or flip over into the week of January 5, all right?

23   There's going to be that two-week window when it's going to be

24   hard to get much heard, but I will arrange to have it heard if

25   it has to be done, but you've got to just give me enough time.

1   If you, if you file something and expect a hearing in two or

2   three days, it might not happen.  I might not have enough staff

3   to do it.  Okay?

4           MR. MAC MAHON:  I'm going to be on vacation between

5   Christmas and New Year's.

6           THE COURT:  Great.  So then nothing is going to

7   happen, all right?

8           MR. TRUMP:  We'll try to make as much happen during

9   that period of time.

10          THE COURT:  Well, it won't happen, Mr. Trump, if

11  Mr. MacMahon can't be here, so -- all right.  So --

12          MR. TRUMP:  We would suggest that about 30 days for

13  any additional motions.

14          THE COURT:  I'll set it -- all right, any additional

15  motions within 30 days of today's date.  I would expect -- I

16  think we should do some of the scheduling of motions by a phone

17  conference.  You know, we've done that before in this case.

18          MR. MAC MAHON:  Sure.

19          THE COURT:  That way -- because I think especially

20  with CIPA, I wouldn't do that on a Friday motions docket, so

21  we're going to have to have set dates for that.  And then

22  again, coordinating with Mr. Risen's counsel, if we have to

23  have a hearing there, again probably a Friday motions docket is

24  not the ideal time.  So we're going to need to do some

25  scheduling along those lines, all right?

1          MR. MAC MAHON:  We'll cooperate and get that done.

2          THE COURT:  Yeah, I expect you-all to work well on

3    that.

4          MR. TRUMP:  Just so the Court is aware, for example,

5    we know that our witness list has changed a little bit because

6    of retirements, things like that.  Plus, we had to bring

7    up-to-date review of witness files.  We've already done that.

8    The information is secret, so it has to go through a

9    classification process, but we will be getting that -- whatever

10   little additional information there is about witnesses, we'll

11   get to Mr. MacMahon so that to the extent that there is any

12   motions relating to that, such as the one he's already filed,

13   it can all be done at one, at one time.

14         THE COURT:  All right, that's fine.

15         All right, we're all set on this then?

16         MR. MAC MAHON:  Yes, Your Honor.  Thank you.

17         THE COURT:  Very good.  Thank you.

18         MR. POLLACK:  Thank you, Your Honor.

19         MR. OLSHAN:  Thank you, Your Honor.

20         MR. TRUMP:  Judge?

21         THE COURT:  Yes, Mr. Trump.

22         MR. TRUMP:  The discovery order is written with

23   respect to days before trial, so it's our position that nothing

24   has to change with respect to the discovery order.  I don't

25   anticipate there being any issues, but all the dates in the

1    discovery order are calculated within so many days of trial.

2            THE COURT:  Well, again, as I recall, this case was

3    set to start on a Monday, and I think either Thursday or

4    Friday, we had motions and you-all took the appeal and it

5    stopped.

6            MR. TRUMP:  Right.

7            THE COURT:  So I would think the defense got or had

8    on the eve of the first trial date all of that, and I suspect

9    the problem right now is it hopefully is in the SCIF.

10   Mr. MacMahon, you need to go back over it.

11           But here's my point:  The case should be immediately

12   put back to the point it was at when it stopped.  So to the

13   extent that the government -- I don't think you have, but if

14   you were to have taken back any of the *Giglio* or Jencks that

15   you had provided at that point, you need to immediately give it

16   back to defense counsel.

17           MR. TRUMP:  And we will.

18           THE COURT:  Yes.

19           MR. TRUMP:  As the Court is aware, as we go through

20   trial prep and witnesses are interviewed, things come up that

21   have to be disclosed, so as that process continues, we will

22   continue to make whatever disclosures that we have to make, and

23   in the three years, things have happened, and so we may have to

24   replace a witness who has retired, for example, with another

25   witness.  There may be witnesses that aren't available.

1                 THE COURT:  Right.

2                 MR. TRUMP:  So all that will be communicated to

3     defense counsel, and whatever disclosures have to be made will

4     be made promptly.

5                 MR. MAC MAHON:  And for the record, Your Honor, I

6     don't believe that -- the *Giglio* that we received a couple days

7     before the trial was just in the form of a letter.  We didn't

8     get any of the underlying information.  Mr. Trump tells me he's

9     about to give me some more, but that's the subject of the

10    motion dealing with the *Giglio* as to whether there's a

11    requirement of more, and that, of course, could lead to CIPA

12    litigation, too.

13                THE COURT:  Well, before -- we don't know if there's

14    an issue there or not.  Why don't you wait and see what you get

15    first from Mr. Trump, and then we'll see where there is an

16    issue.  About Jencks, though, you would have had, given the

17    practice in this court, you should have all the Jencks for the

18    original witnesses who were going to be called.

19                MR. MAC MAHON:  I would expect so, Your Honor.

20                THE COURT:  Right.  And so the only thing that

21    Mr. Trump is saying is that some of that Jencks may be moot at

22    this point because that witness isn't going to be called,

23    either he may have died or just become unable to be a witness,

24    and they may have some new witnesses.

25                I do think that you should, both sides should keep

1   each other apprised of any major changes.  In other words,

2   whatever you had previously filed so that everybody was

3   expecting to go to trial on that information, if it has changed

4   and you were obligated to have exchanged it, you need to update

5   that promptly, all right?

6           MR. MAC MAHON:  In terms of amending witness list and

7   their exhibit list?

8           THE COURT:  That sort of thing.

9           MR. MAC MAHON:  We'll work it out.

10          THE COURT:  Okay.  I expect you-all to work it out.

11          MR. TRUMP:  I appreciate that.  I don't know if the

12  position of the defense with respect to their expert has

13  changed at all.  If it has, then we would expect --

14          MR. MAC MAHON:  We've got to go find him, and then --

15          MR. TRUMP:  An amended notice.

16          THE COURT:  Right, exactly.  Exactly.

17          MR. TRUMP:  Things like that can be resolved, and if

18  not, then we will file whatever we have to file.

19          THE COURT:  I know you will.  All right, very good.

20          MR. TRUMP:  Thank you.

21          MR. MAC MAHON:  Thank you, Judge.

22                      (Which were all the proceedings

23                       had at this time.)

24

25

1                    CERTIFICATE OF THE REPORTER

2          I certify that the foregoing is a correct transcript of

3     the record of proceedings in the above-entitled matter.

4

5

6                                          /s/
                                  _____
7                                    Anneliese J. Thomson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25