1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:10cr485 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | December 16, 2014 |
| JEFFREY ALEXANDER STERLING, | . | 10:00 a.m. |
| | . | |
| Defendant. | . | |
| | . | |

. . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:      JAMES L. TRUMP, AUSA
                         DENNIS M. FITZPATRICK, AUSA
                         United States Attorney's Office
                         2100 Jamieson Avenue
                         Alexandria, VA 22314
                           and
                         ERIC G. OLSHAN, Deputy Chief
                         Public Integrity Section of the
                         Criminal Division
                         United States Department of
                         Justice
                         1400 New York Avenue, N.W.
                         Suite 12100
                         Washington, D.C. 20005


FOR THE DEFENDANT:       EDWARD B. MAC MAHON, JR., ESQ.
                         Law Office of Edward B.
                         MacMahon, Jr.
                         107 East Washington Street
                         P.O. Box 25
                         Middleburg, VA 20118


            (APPEARANCES CONT'D. ON FOLLOWING PAGE)

                       (Pages 1 - 12)

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
                                                                    2
 1   APPEARANCES:  (Cont'd.)

 2   FOR THE DEFENDANT:            BARRY J. POLLACK, ESQ.
                                   Miller & Chevalier Chartered
 3                                 655 - 15th Street, N.W.
                                   Suite 900
 4                                 Washington, D.C. 20005-5701


 5

     ALSO PRESENT:                 JOEL KURTZBERG, ESQ.
 6

 7   CISO OFFICER:                 CHRISTINE GUNNING

 8
     OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
 9                                 U.S. District Court, Fifth Floor
                                   401 Courthouse Square
10                                 Alexandria, VA 22314
                                   (703)299-8595
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2              (Defendant present.)

3          THE CLERK:  Criminal Case 10-485, United States of
America v. Jeffrey Alexander Sterling.  Would counsel please
note their appearances for the record.

6          MR. TRUMP:  Good morning, Your Honor.  Jim Trump on
behalf of the United States.

8          MR. OLSHAN:  Eric Olshan on behalf of the United
States.

10         MR. FITZPATRICK:  Good morning, Your Honor.  Dennis
Fitzpatrick on behalf of the United States.

12         THE COURT:  Good morning.

13         MR. MAC MAHON:  Good morning, Your Honor.  Edward
MacMahon for Mr. Sterling, who is present.

15         MR. POLLACK:  Good morning, Your Honor.  Barry
Pollack on behalf of Mr. Sterling.

17         THE COURT:  All right, I think what we're going to
have to do today is have this part of the hearing open, and
then I think we are going to have to go into a closed session
on some CIPA matters that have come up in the last few minutes,
but the first issue we want to address in the open court
proceeding is the United States' response concerning the
testimony of James Risen.

24         So as I now understand the situation, contrary to
what may have been in the media, the government is planning to

4

1  issue a subpoena to Mr. Risen, with a limitation as to those
2  sources of information about which he will be questioned; is
3  that correct?
4          MR. TRUMP:  That's correct, Your Honor.
5          THE COURT:  All right.  Now, we had also suggested
6  the possibility of avoiding actual testimony of Mr. Risen in
7  front of a jury by having what would be considered a moot court
8  proceeding with him.  Has that been discussed with defense
9  counsel?
10         MR. TRUMP:  The concept was, was discussed
11  previously, Your Honor, but because of the late notice, we have
12  not had time to discuss scheduling with defense counsel or
13  counsel for Mr. Risen.
14         THE COURT:  All right.  Is Mr. Risen's counsel here?
15         MR. KURTZBERG:  Yes, Your Honor.  Joel Kurtzberg on
16  behalf of Mr. Risen.
17         THE COURT:  Why don't you go up to the lectern for a
18  second.  I think this concept of having Mr. Risen in a less
19  formal setting without the jury here and having an opportunity
20  to see exactly what questions he would be willing to answer and
21  then possibly using that as a substitution for his testimony in
22  person during the trial has been discussed in the past, and I
23  assume you've discussed that possibility with him?
24         MR. KURTZBERG:  Your Honor, my understanding is that
25  what had previously been discussed was that there would be sort

1  of a run-through before Mr. Risen would testify.  That was back
2  several years ago.  This concept seems slightly different, that
3  it would be in lieu of any actual testimony, so no, I have not
4  had an opportunity to discuss that with my client.
5          THE COURT:  Well, again, I'm not sure if the defense
6  agrees with that, but, I mean, we're trying to tailor this
7  trial and make it as efficiently tried as possible.  If the
8  testimony of Mr. Risen -- because I expect based upon the
9  response of the government that we have in court, and this was
10 just filed this morning so I don't think it's even now in the
11 system yet, there would be a relatively small number of
12 questions that he's going to be willing to answer.
13         MR. KURTZBERG:  Okay, Your Honor.  I mean, I haven't
14 had a chance to discuss it with him.
15         THE COURT:  All right.  But, I mean, do you agree
16 that -- I mean, he has agreed to answer a few questions about
17 how he prepared the book.
18         MR. KURTZBERG:  I know that a couple of years back,
19 that he had agreed to do that.  I don't know what my client's
20 current position would be.  I haven't had a chance to discuss
21 with him the government's filing, which I just received this
22 morning.
23         Your Honor?
24         THE COURT:  Yes.
25         MR. KURTZBERG:  One question that I would have is

1  whether or not the areas of testimony that the government
2  outlines that they want Mr. Risen to speak to are things that
3  the defense might even stipulate to.  That's something that I
4  would have expected to have been discussed as part of the
5  process that the government says has concluded under the
6  regulation of 28 CFR 50.10.  They're supposed to look at
7  alternatives to seeking testimony of a journalist before they
8  issue a subpoena, but my understanding, again, I haven't had
9  this for very long, is that there haven't been any discussions
10 with defense counsel whatsoever about whether there would be a
11 stipulation on these points.
12         THE COURT:  All right.  Mr. MacMahon, I need to hear
13 from you then.
14         MR. MAC MAHON:  Good morning, Your Honor.
15         THE COURT:  Good morning.
16         MR. MAC MAHON:  Judge, we just -- Mr. Kurtzberg gave
17 me a copy of that filing when we came to court.
18         THE COURT:  I got it about ten minutes ago.
19         MR. MAC MAHON:  And I'm not faulting the government,
20 but living down in the SCIF, it's hard, we don't have any
21 Internet access, so Mr. Pollack and I and Mr. Sterling have
22 just had a minute to go over it.
23         I do want to reiterate our motion for discovery.
24 It's clear that the government is abandoning any attempts it
25 could have to compel Mr. Risen's testimony and thus threaten

1 him with jail, and I think that is *Brady* in the concept that
2 we've raised in various motions.  So that motion now is, is
3 ripe for the Court to inquire into further as to what other --
4 what may have happened in the past, because again, we don't
5 know anything about it.
6       My understanding, and I'll echo Mr. Kurtzberg, is
7 that the last time, you were going to have a dry run of his
8 testimony, but there wasn't a discussion of stipulating or as a
9 substitute kind of under CIPA for his live testimony, and we
10 haven't had a chance to look into that, either, but we're kind
11 of in a position where we don't know how to react to what we
12 have here.
13       We have lots of discovery about Mr. Risen that the
14 government has given us, FedEx records, credit card receipts,
15 tons of things that we may want to try to get in ourselves.  We
16 have Western Union transactions with his children, and we want
17 to know in terms of how this investigation was done why this,
18 this paper all here, none of this was done to any of these
19 other witnesses that we'll talk about in our CIPA hearings
20 before, but the idea that we could just sanitize this
21 completely by limiting this to two or three questions is hard
22 for us to fathom at this point in time, but we're willing to
23 listen and see what we can hear.
24       THE COURT:  Well, what I don't want to happen, have
25 happen is that Mr. Risen is called as a witness during the

1  trial and all of a sudden, he's being bombarded with questions
2  to which he has to say he's declining to answer.  I think
3  that's not appropriate, and so I want to make sure that the
4  parameters of Mr. Risen's testimony are absolutely set in
5  stone.
6          Whether he has to come into the jury trial and repeat
7  those answers to those questions is one thing, or whether after
8  we've heard from him, everybody is satisfied that the amount of
9  information he provides is so relatively small that it could be
10 done in a stipulation, and I -- because you are the defense
11 counsel, of course, you know, you have a right to make your
12 position known on that.
13         So we're not ready to really resolve yet the issue of
14 Mr. Risen.
15         MR. MAC MAHON:  It wouldn't appear that way, Your
16 Honor.
17         THE COURT:  All right. Mr. Trump?  And, Mr. Trump,
18 just for the record, my understanding is that you and your
19 office are really not directly involved in working out these
20 parameters.  Is that a fair statement?
21         MR. TRUMP:  No, that's not a fair statement --
22         THE COURT:  Okay.
23         MR. TRUMP:  -- in the sense of working out the
24 parameters for trial.
25         Obviously, the decision as reflected in docket 352

1  was the decision of the attorney general.

2            THE COURT:  All right.

3            MR. TRUMP:  With respect to comments by defense
4  counsel, first of all, with respect to anything that defense
5  counsel may have received in discovery, he's had four years to
6  go to Mr. Risen's attorneys and to ask to speak to Mr. Risen or
7  them about any of those matters.

8            If there are legitimate questions about those, that's
9  one reason why we should have this, a hearing outside of the
10 presence of the jury so that defense counsel can question
11 Mr. Risen as to any of those matters and see what the answer
12 is, but we, we suspect that for the most part, it would largely
13 be irrelevant.

14           In addition, Your Honor, defense counsel is not under
15 the restrictions that we're under with respect to the questions
16 that could be posed to Mr. Risen or any further proceedings
17 with respect to Mr. Risen.  Defense counsel can ask any
18 question he wants without restriction and can address the Court
19 as to any appropriate position they have with respect to the
20 Sixth Amendment issues that might arise.  These are things that
21 we discussed as the rationale for having such a hearing.

22           For example, if the government were to elicit the
23 information in this pleading and Mr. Risen agreed to provide
24 that testimony, we have no idea what questions defense counsel
25 would want to ask Mr. Risen.  Some may be relevant; some may be

```
 1  not; but that's the whole purpose to have, have a hearing.
 2          We're completely in the dark as to what questions the
 3  defendant would pose to Mr. Risen, and we asked for a proffer
 4  of that previously, and for good reason, they said they were
 5  not going to provide that, that information as a matter of
 6  trial strategy, but at some point, it's time to get this out in
 7  the open and to address any Sixth Amendment issues that might
 8  arise and then proceed from there.
 9          THE COURT:  All right.  Mr. Kurtzberg, come back up
10  for a second.  When would you and your client be available for
11  a hearing of that sort?
12          MR. KURTZBERG:  I've spoken to my client about his
13  availability, and we would be available January 5th, 6th, or
14  8th.
15          THE COURT:  Let's do it the 5th because that's the
16  furthest out.  I assume all the other attorneys can make it on
17  Monday the 5th?  Yes?
18          All right, I have a matter already set at 10:00.  Why
19  don't we set this for 10:30 Monday morning, January 5.  Does
20  that work for defense counsel?
21          MR. MAC MAHON:  Just a second, Your Honor.
22          THE COURT:  Yes, sir.
23          MR. MAC MAHON:  I'm sorry.
24          It works, Your Honor.
25          THE COURT:  All right.  10:30, all right?  So do we
```

```
 1   need to issue a subpoena to Mr. Kurtzberg, or will he --
 2   Mr. Kurtzberg, to your client, or will you make sure that
 3   Mr. Risen will be here at that time?
 4            MR. KURTZBERG:  We have not received -- I certainly
 5   can make sure that -- you want my client at that hearing?
 6            THE COURT:  Oh, yes.
 7            MR. KURTZBERG:  I certainly can make sure that he'll
 8   be here, but I do think that we would like a subpoena to issue.
 9   We have not received a subpoena from the government.  He's
10   certainly not volunteering to be here.
11            THE COURT:  All right.  So, Mr. Trump, go ahead
12   and --
13            MR. TRUMP:  Yes, we will issue a subpoena.
14            THE COURT:  All right, that's good.  All right, then
15   that's set.
16            Are there any other matters that can be discussed in
17   open court?  If not, we'll need to take about a ten-minute
18   recess to reset the courtroom.
19            MR. TRUMP:  Can we have 15 minutes?  Because we have
20   to go back to the SCIF and gather up some materials.
21            THE COURT:  All right.  Will 15 minutes be enough to
22   get the courtroom set up, Ms. Gunning?
23            MS. GUNNING:  Yes, Your Honor.
24            THE COURT:  It will, all right.  Then we're going to
25   recess court for 15 minutes, and the public, unfortunately,
```

1   will have to leave because it will be a sealed hearing under
2   CIPA.  All right.
3                        (Which were all the proceedings
4                         had at this time.)
5
6                   CERTIFICATE OF THE REPORTER
7      I certify that the foregoing is a correct transcript of
8   the record of proceedings in the above-entitled matter.
9
10
11                                     /s/
                                  Anneliese J. Thomson
12
13
14
15
16
17
18
19
20
21
22
23
24
25