```
                 UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                    ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .        Criminal No. 1:10cr485
                              .
     vs.                      .        Alexandria, Virginia
                              .        January 23, 2015
JEFFREY ALEXANDER STERLING,   .        10:01 a.m.
                              .
              Defendant.      .
                              .
.  .  .  .  .  .  .  .  .  .  .

                   TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE LEONIE M. BRINKEMA
               UNITED STATES DISTRICT JUDGE

                        VOLUME VIII
```

APPEARANCES:

FOR THE GOVERNMENT:        JAMES L. TRUMP, AUSA
                           DENNIS M. FITZPATRICK, AUSA
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314
                             and
                           ERIC G. OLSHAN, Deputy Chief
                           Public Integrity Section of the
                           Criminal Division
                           United States Department of
                           Justice
                           1400 New York Avenue, N.W.
                           Suite 12100
                           Washington, D.C. 20005


FOR THE DEFENDANT:         EDWARD B. MAC MAHON, JR., ESQ.
                           Law Office of Edward B.
                           MacMahon, Jr.
                           107 East Washington Street
                           P.O. Box 25
                           Middleburg, VA 20118

              (APPEARANCES CONT'D. ON FOLLOWING PAGE)

                     (Pages 1578 - 1603)

          COMPUTERIZED TRANSCRIPTION OF STENOGRAHIC NOTES

```
 1   APPEARANCES:  (Cont'd.)

 2   FOR THE DEFENDANT:              BARRY J. POLLACK, ESQ.
                                     MIA P. HAESSLY, ESQ.
 3                                   Miller & Chevalier Chartered
                                     655 - 15th Street, N.W.
 4                                   Suite 900
                                     Washington, D.C. 20005-5701
 5

 6   CLASSIFIED INFORMATION         CHRISTINE E. GUNNING
     SECURITY OFFICERS:             MAURA PETERSON
 7

 8   ALSO PRESENT:                  GERARD FRANCISCO
                                     SA ASHLEY HUNT
 9                                   JENNIFER MULLIN, ESQ.

10
     OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
11                                   U.S. District Court, Fifth Floor
                                     401 Courthouse Square
12                                   Alexandria, VA 22314
                                     (703)299-8595
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    P R O C E E D I N G S

2         THE COURT:  All right, we need to call our criminal

3    case.  Mr. Wood, could you get the lawyers in here for the

4    criminal case?

5                      (Defendant present, Jury out.)

6         MR. MAC MAHON:  Good morning, Your Honor.

7         MR. TRUMP:  Good morning, Judge.

8         THE COURT:  All right, good morning.

9         THE CLERK:  Criminal Case 10-485, United States of

10   America v. Jeffrey Alexander Sterling.  Would counsel please

11   note their appearances for the record.

12        MR. TRUMP:  Jim Trump on behalf of the United States.

13   Good morning, Your Honor.

14        THE COURT:  Good morning.

15        MR. OLSHAN:  Eric Olshan on behalf of the United

16   States.  Good morning, Your Honor.

17        THE COURT:  Good morning.

18        MR. FITZPATRICK:  Good morning, Your Honor.  Dennis

19   Fitzpatrick for the United States.

20        THE COURT:  Good morning.

21        MR. POLLACK:  Good morning, Your Honor.  Barry

22   Pollack on behalf of Mr. Sterling.

23        THE COURT:  Good morning.

24        MR. MAC MAHON:  Edward MacMahon for Mr. Sterling,

25   Your Honor.  Good morning.

1581

```
1              THE COURT:  Good morning.

2              MS. HAESSLY:  Mia Haessly on behalf of Mr. Sterling.

3    Good morning.

4              THE COURT:  Good morning.

5              All right, very quickly, you've seen the note from

6    the jury.  They want to know if they can get copies of the

7    testimony -- transcripts of the testimony of Robert S. and

8    Merlin.  Our standard answer is they can't get copies.

9              I think I'd bring the jury in just to say good

10   morning to them anyway and explain to them that they have to

11   consider all the evidence, and so if we just give them the

12   transcript of one witness, that's highlighting that testimony,

13   which is a problem.

14             Anybody have an objection to that instruction?

15             MR. TRUMP:  Your Honor -- no, Your Honor.

16             MR. MAC MAHON:  Your Honor, only if your instruction,

17   the standard instruction, if you think they need to be told

18   that their memory of the witnesses --

19             THE COURT:  Sure.

20             MR. MAC MAHON:  With Merlin, they had a transcript in

21   front of them, and they didn't with anybody else, so that may

22   be the confusion.

23             THE COURT:  That's why I need to explain to them

24   that, you know, we can't, we can't pick and choose which

25   witnesses.
```

1582

1    You know, the more interesting question, I've never

2    had this come up because we can't get a transcript done that

3    quickly, if a jury wanted a transcript of the entire case, I

4    think there we would have difficulty in not giving it to them

5    if we had it prepared and ready to go.

6    Judge Bryan way, way back in the history of time

7    actually got reversed once for telling a jury just

8    spontaneously, "Don't ask for transcripts.  You can't have

9    them."  So I'm always a bit, I'm a bit more subtle in how I

10    answer that question, all right?  So that's what I'll do.

11    Since we haven't seen them today and we could then

12    find out when they plan to do their lunch and their mid-morning

13    break, I think we'll have them come in, all right?  So you-all

14    have a seat for a second.  Mr. Wood will bring the jury in.

15    All right, let's bring the jury in.

16    (Jury present.)

17    THE COURT:  Is it cold in the jury room?  I see some

18    of you have jackets on.  Is it all right?

19    A JUROR:  It's okay.

20    THE COURT:  It's okay?  Good.

21    Well, good morning, ladies and gentlemen.  Again,

22    thank you for being here so promptly this morning, and I

23    thought I'd bring you in to answer your question because you

24    sent one to us, and the question is, "Is the jury allowed to

25    obtain a copy of the recorded/reported testimony of a witness.

1 If so, we would like the transcript of Robert S. and Merlin."

2          And the answer to that question is I'm unable to give

3 you transcripts, and the reason -- there are a couple of

4 reasons.  One is obviously, we don't have a transcript of the

5 entire trial yet.  It would take quite a while to do that.  It

6 is true that we do have a transcript of Merlin's testimony

7 because his deposition was taken at an earlier time, but the

8 law does not permit me to highlight specific evidence.

9          You have to consider all the evidence in the case, so

10 if I gave you the transcript of just one or two witnesses,

11 you'd be unduly focusing on just that evidence, whereas you

12 have to look at all of the evidence.  And again, it is your

13 collective memories of the evidence that must govern your

14 decision making.

15          So I hope that that answers your question, all right?

16          So while you're here, I had a question for you-all.

17 We were just curious as to what time, if at all, you plan to

18 take a mid-morning break so I can let these lawyers leave the

19 floor.  Had you thought about that yet?  If not, I don't want

20 to hear about your deliberations.  If you could let us know.

21          And also, you don't have to take an hour lunch break

22 if you're comfortable eating in less time.  I don't allow food

23 in the jury room, though, so you can't plan to eat while you're

24 working, but if you could just give us a note as to your plans

25 for your morning break and your, and your lunch break, we would

1584

1    appreciate that, all right?  Thank you.

2              All right, the jury may return.  We'll await their

3    verdict.

4                         (Jury out.)

5              THE COURT:  And just for the record again, was there

6    any objection to that supplementary instruction to the jury?

7              MR. TRUMP:  No, Your Honor.

8              THE COURT:  From the defense?

9              MR. MAC MAHON:  No, Your Honor.

10             THE COURT:  All right, fine.

11             All right, so we'll give you -- as soon as we know

12   what their schedule is, we'll get -- if you can wait outside or

13   wait in the courtroom, whatever you want to do, all right?

14   Thank you.

15             MR. MAC MAHON:  Thank you, Your Honor.

16             MR. TRUMP:  Thank you.

17             (Recess from 10:07 a.m., until 1:28 p.m.)

18

19

20

21

22

23

24

25

1585

```
 1                A F T E R N O O N    S E S S I O N

 2                        (Defendant present, Jury out.)

 3             THE COURT:  All right, we have another very

 4   articulate -- and just for the record, counsel, I have

 5   Mr. Trump and Mr. Olshan, Mr. Pollack, Mr. MacMahon.  I'm

 6   sorry, third counsel?

 7             MS. HAESSLY:  Ms. Haessly.

 8             THE COURT:  Yes, ma'am.

 9             And the defendant, Mr. Sterling, they're all here in

10   court.

11             All right, the next question from this obviously very

12   careful jury is, "Count 4 uses the phrase 'directly and

13   indirectly.'  Can you elaborate on the difference between these

14   terms.  In addition, are both direct and indirect

15   communications required."

16             Well, the last sentence is the easy one, of course,

17   because of the way the law works.  They're not both required,

18   and "and" meaning really "or."  Either direct or indirect.

19             Does anybody disagree with that?

20             MR. POLLACK:  Your Honor, in this case, I think that

21   there has to be direct communication because that's the only --

22   the government's only theory was that he directly communicated

23   with Risen.  My concern here is if the jury is looking at if

24   Mr. Sterling told somebody on the Hill, somebody at SSCI, and

25   then that person turned around and told Mr. Risen, that would
```

1    be indirectly getting to Mr. Risen, but, of course, that would

2    not be a basis to convict.

3            The entire theory was that he directly communicated.

4    So I think the jury needs to be told both that there has to be

5    direct communication and that if Mr. Sterling told someone,

6    gave the information to someone lawfully entitled to receive it

7    and that person in turn gave it to Mr. Risen, that that is not

8    a basis to find Mr. Sterling guilty.

9            THE COURT:  All right, let me hear if the government

10   agrees with that at least as to the second sentence.

11           MR. TRUMP:  I think you should instruct them, Judge,

12   that what they're reading from on page 25 is a summary of the

13   offenses as charged but that the elements of the offense that

14   they must find, and they must find each and every element, is

15   on page 30, and that for Count 4, they must find that the

16   defendant willfully communicated, delivered, transmitted, or

17   caused to be communicated, delivered, or transmitted national

18   defense information.  That's the element of the offense.

19           I don't think the Court should be opining on the

20   evidence or giving them illustrations of evidence.  Just refer

21   them to the elements of the offense rather than page 25,

22   because there, if a defendant with intent to communicate

23   something to Mr. Risen did so, that's indirect.  Direct would

24   be face to face.

25           But that's not what they're looking at.  They're

1587

1    looking at the way it was charged, and I think the Court should

2    simply refer them to page 30, the elements of the offense, and

3    instruct them that as to Count 4, as with every count, you must

4    find each and every element, and those elements are listed on

5    page 30.

6              The words "direct and indirect" do not appear in the

7    statute.

8              THE COURT:  I understand that.  I went back and just

9    looked at the book, but they do appear in the indictment.  You

10   charged it that way.

11             MR. TRUMP:  Correct.

12             THE COURT:  And I don't know why you -- in the

13   future, it would make life a little bit easier, don't add

14   language that's not needed.

15             MR. TRUMP:  Well, Judge, what's on page 25 is not a

16   complete statement of what's in the indictment.

17             THE COURT:  No, I know that.

18             MR. TRUMP:  The indictment includes all the necessary

19   elements, which would include intent as well.  You can intend

20   to do something indirectly.

21             But I think the response to their question should

22   simply be that the nature of the offense charged, Counts 1, 4,

23   and 6, is the description of how the offense was charged by the

24   government.  The elements of the offense are on page 30, and

25   you must find each and every element of the offense beyond a

1    reasonable doubt as I've enumerated in these instructions.

2           THE COURT:  I think to make it easier for them, I

3    should just -- I'll say that but also say that whether

4    something was done directly or indirectly is not an element of

5    the offense.

6           MR. POLLACK:  Your Honor, there is no evidence or

7    theory under which it could have been done indirectly.  The

8    government did not, for example, put on evidence that

9    Mr. Sterling told SSCI because he knew SSCI would then turn

10   around and tell Mr. Risen.  There is no theory under which he

11   indirectly in a way that would be unlawful told Mr. Risen.

12           I think the jury needs to be told --

13           THE COURT:  All right.

14           MR. POLLACK:  -- in order to respond to this question

15   that the government's theory is that it was direct

16   communication and that he -- if they find that all of the

17   elements are met and there was direct communication, that is

18   sufficient, and conversely, if they find that he communicated

19   only with people who were lawfully entitled to receive the

20   information, then they must find him not guilty.

21           There just isn't evidence to support a theory of

22   indirect communication.

23           THE COURT:  I really want to help this jury because

24   they're working hard, and help them get through some fairly

25   dense law, so a simple example of direct communication is I

1   speak directly to you, right?  Or I give you directly a letter

2   or I send an e-mail directly to you.  That's an example of

3   direct communication, correct?

4           MR. POLLACK:  Certainly.

5           THE COURT:  You wouldn't disagree with that?

6           MR. POLLACK:  That's -- I don't disagree with that.

7           THE COURT:  All right.  So I can tell the jury what

8   the law means -- what we mean by direct communication is that

9   kind of an example, all right?  And only direct communication

10  is involved in Count 4.

11          Would the defense be comfortable with that?

12          MR. POLLACK:  Yeah, I think that responds to their

13  question.

14          THE COURT:  That answers their question because

15  basically I'm telling them you don't have to worry about

16  indirect.

17          And I think, I think you're correct, I don't recall

18  any evidence or argument that there was indirect communication.

19          MR. POLLACK:  No, I think what the Court just said in

20  combination with what Mr. Trump suggested would do it.

21          THE COURT:  And then tell them that the elements for

22  these offenses are in paragraph -- on page 30.

23          MR. TRUMP:  One moment?

24          MR. POLLACK:  I believe that -- Mr. MacMahon is

25  asking, I guess, for clarification on the first point.  You

1   would tell them what is alleged here is direct communication,

2   then give your example of direct communication.

3           THE COURT:  I would say the communication at issue in

4   Count 4 is only direct communication.  An example of direct

5   communication would be I'm speaking directly to you.  I send an

6   e-mail directly to you.

7           MR. POLLACK:  Okay.

8           THE COURT:  That's what's at issue in this case, and

9   refer them back to page 30.

10          I'm going to have this written out.  Before I have

11  the jury come in, I'm going to read you exactly what I'm going

12  to say.  And then remind them the elements of the offense are

13  spelled out explicitly on page 30.

14          MR. POLLACK:  Okay.  Thank you.

15          THE COURT:  All right?  Let me hear if there's

16  anything else the government wants me to add.

17          MR. OLSHAN:  One moment, Your Honor?

18          THE COURT:  Yes.

19          MR. TRUMP:  I think as long as your instruction is

20  specific to Count 4, we're fine with that, but there could be

21  the possibility of confusion if it were not specific, for

22  example, Counts 1 and 2.

23          THE COURT:  They have not asked about Counts 1 and 2.

24  They've asked about Count 4.

25          MR. TRUMP:  As long as the instruction going -- the

1   clarification going back is directed to Count 4, we're --

2          THE COURT:  That's how I'm going to phrase it.  I'm

3   going to -- we're going to write it up, so before I give it to

4   the jury, I'll have run it by you again, and you'll have a copy

5   for your records, all right?

6          All right, hold on a second.

7          All right, so what I'm going to say is the

8   communication at issue in Count 4 is only direct communication.

9   An example of direct communication is if I say something face

10  to face, directly to somebody, all right?  Or I e-mail a

11  message directly to you or I send a letter directly to you, all

12  right?  That's an example of direct communication.

13         And then say that I want to remind you that the

14  elements for Count 4 are spelled out on page 30 of your

15  instructions, all right?  Yes?

16         All right, I will write this up a little bit more

17  formal than that, all right?  So we'll be right back.

18         All right, recess court.

19            (Recess from 1:38 p.m., until 1:50 p.m.)

20                          (Defendant present, Jury out.)

21         THE COURT:  All right, we've given you our proposed

22  written instruction.  Any problems with it, anybody?

23         MR. TRUMP:  No, Your Honor.

24         THE COURT:  Mr. Pollack?

25         MR. POLLACK:  Your Honor, I think that the

1   instruction is correct.  I think to avoid confusion on their

2   part, they should be told specifically that there is not

3   evidence of indirect communication.

4           THE COURT:  No, no, I'm not going to -- we don't

5   comment on the evidence.  But all right, so this is what we

6   said in court.

7           MR. POLLACK:  All right, I certainly understand the

8   Court's ruling.

9           THE COURT:  All right, let's bring the jury in,

10  Mr. Wood.

11                        (Jury present.)

12          THE COURT:  It hasn't started snowing yet.  I saw you

13  looking out the window.  It's all right.

14          All right, ladies and gentlemen, you asked this

15  following question:  "Count 4 uses the phrase 'directly and

16  indirectly.'  Can you elaborate on the difference between these

17  terms.  In addition, are both direct and indirect

18  communications required."

19          The only type of communication at issue in Count 4 is

20  direct communication.  Examples of direct communication would

21  include if I say something to someone face to face or send a

22  letter to that person or an e-mail to someone.  Direct

23  communication is not a specific element of Count 4, and

24  therefore, you should carefully review the elements of Count 4

25  on page 30 of your instructions.

1593

1    I hope that answers your question.  Again, we'll give

2    you a written copy of this, all right?

3    And I understand you're planning to leave at 4:30

4    today.  Again, about 4:27, we'll bring you in here just so I

5    can say good night to you because it is the long weekend,

6    two-day weekend we have ahead of us.

7    And again, because the weather is a little funny

8    right now, you-all have Ms. Guyton's phone number, so if there

9    should be issues Monday morning, you know, she'll be your

10   contact person.

11   Should the federal government be closed, you have the

12   day off.  If the federal government is open late, then,

13   frankly, I think we should sort of set a default option, all

14   right, and let's say 11:00 start time?  That should get the

15   roads reasonably clear and/or give you enough time to call if

16   we have problems, all right?  So that's how we'll proceed on

17   Monday, all right?

18   All right, we'll let you go back, and we'll have a

19   couple of copies of this instruction for you.

20               (Recess from 1:53 p.m., until 3:42 p.m.)

21                     (Defendant present, Jury out.)

22   THE COURT:  All right, as long as I have one counsel

23   per side, that's all that we need, so, Mr. Olshan, you're on

24   the board.

25   Okay.  The first question they have is, "May we have

1    another copy of the jury instructions.  We only have three

2    copies."

3            We've made them two more full sets, with the two

4    supplementals that we added, okay?  So I assume there's no

5    objection to that?

6            MR. OLSHAN:  No.

7            MR. MAC MAHON:  No, Your Honor.

8            THE COURT:  All right, that's fine.

9            And the second note from the jury:  "If there is no

10   government delay or closing on Monday, we will be starting at

11   10 a.m.," all right?

12           So Monday morning is ten unless there's a government

13   problem, all right?  And we'll face that when we come to it.

14           All right, now, the substantive question:  "Count 3

15   states that the document was in his residence.  The elements do

16   not use the term 'residence.'  Do the words in the count take

17   precedence over the words in the elements."

18           The answer is it's the words in the elements.  Any

19   dispute about that?

20           MR. OLSHAN:  No, Your Honor.  I think it would just

21   be useful for the Court to remind them, as with the question

22   about the other count, that the count instructions are

23   summaries of the allegations, and what should control their

24   decision making is the specific elements laid out in the

25   respective offense element instructions.

1595

1    THE COURT:  So you want me to tell them the counts --

2  the description of the counts are just a brief summary of the

3  specific charge, and what they must use in determining whether

4  or not the government has proven the charge beyond a reasonable

5  doubt are the specific elements contained in these

6  instructions.

7    MR. OLSHAN:  Correct.

8    THE COURT:  Is that comfortable -- does that sit well

9  with you?  I want to give it to them quickly so that I don't

10  have to type it again.

11    MR. MAC MAHON:  No, I'm sorry, Your Honor.  I think

12  this is a problem with these nature of the offense

13  instructions, which describes the actual possession of the

14  letter at his residence here in Virginia.  It's going to get us

15  back to the venue question as far as I can see.

16    I think what they need to be told is -- I agree with

17  what Mr. Olshan says is that the elements are not set forth in

18  these nature of the charge instructions, but that, but the

19  element to be guilty of this count, what it said has to have

20  unauthorized possession or control over a document relating to

21  the national defense of the United States.

22    It did say in the indictment that it was in his

23  residence in the Eastern District of Virginia, and that if

24  that's what they're asking is does it have to use the term

25  "residence," they still need to find that it was in his, in his

1   possession in the Eastern District of Virginia between January

2   31, '02, and '03.

3           So I don't know if they're confused about the term

4   "residence" or about anything else, but that is part of the

5   offense that has to be charged.  So I think just telling them

6   that they should look at the elements is not the whole answer

7   to their question, is what are they also meaning by in the

8   relevance, because, of course, the relevance of the residence

9   in the, in the nature of the charge instruction is because of

10  the venue issue, he had to possess it here in the Eastern

11  District of Virginia, and so that issue is right in front of

12  them, and I think they should be told that they have to find

13  that it was, you know, that letter was possessed in the Eastern

14  District.

15          THE COURT:  Mr. Olshan?

16          MR. OLSHAN:  Your Honor, as I recall, there were two

17  options before the jury was instructed.  One was to just give

18  them a copy of the indictment versus summaries of each of the

19  offenses.  Obviously, if the Court had given the jury the

20  actual indictment, it would have contained all the factual

21  allegations in the indictment, not just what has been

22  summarized for purposes of these summary of the offense

23  instructions.  So this issue would have come up either way, but

24  what controls the jury's decision is what the actual elements

25  of the offenses are, not all of the specific factual

1597

1    allegations.

2         So I agree with Mr. MacMahon that they must conclude

3    that there was unlawful retention of this document in the

4    Eastern District of Virginia, but I believe by pointing them

5    back to the elements, that's sufficient.

6         MR. MAC MAHON:  And I'll just rest, Your Honor.  The

7    elements --

8         THE COURT:  Wait, wait, wait, wait, wait.  I'm

9    writing.  Hold on one second.

10        MR. MAC MAHON:  Thank you.

11        THE COURT:  All right, how about this:  It is not an

12   element of Count 3 that the document was in defendant's

13   residence.  To find the defendant guilty of Count 3, you must

14   be satisfied beyond a reasonable doubt that the government has

15   proven the two elements described on page 41 and proven venue

16   in the Eastern District of Virginia by a preponderance of the

17   evidence.  See Instruction 56.

18        Is the government satisfied with that?

19        MR. OLSHAN:  Yes, Your Honor.

20        THE COURT:  Mr. MacMahon?

21        MR. MAC MAHON:  Your Honor, my only suggestion would

22   be as to the document, it is the letter itself, if the Court

23   wants to clarify that.

24        THE COURT:  Should I say "the letter"?  Does

25   everybody agree that's what they're talking about?  They use

1598

1    the word "document."  Count 3 states that the document was in

2    his residence, and that refers to the letter.

3              MR. OLSHAN:  That's fine, Your Honor.

4              THE COURT:  All right.  So, all right, I'm going to

5    really go over this one more time:  It is not an element of

6    Count 3 that the letter -- shall I say "the letter at issue" so

7    there's no question about it?

8              MR. MAC MAHON:  That's fine.

9              THE COURT:  The letter at issue was in defendant's

10   residence.  To find the defendant guilty of Count 3, you must

11   be satisfied beyond a reasonable doubt that the government has

12   proven the two elements described on page 41 and proven venue

13   in the Eastern District of Virginia by a preponderance of the

14   evidence as explained in the instruction on page 56.

15             All right?  We're going to type that up and get it to

16   the jury.  Yes?

17             MR. OLSHAN:  That's fine.

18             THE COURT:  Any objection from defense?

19             MR. MAC MAHON:  Your Honor, I know you haven't given

20   us this before, but I'll just say it for the record:  I think

21   that the venue can only be by retaining the document itself in

22   the Eastern District on this count and that when you say

23   "venue," I think that the issue of retention again is coming to

24   the fore.  There's no proper venue to be found in the Eastern

25   District unless they find that that document was retained here,

1    but that may be beyond the scope of the question.

2           In fact, the instruction says it was willfully

3    retained, the same document.  As Mr. Pollack points out, it's

4    on page 41, Your Honor.

5           THE COURT:  But the offense -- would not the offense

6    also occur in any district where it was failed to be delivered?

7    In other words, if I retained a document in Maryland which

8    should have been returned to the CIA in Virginia, is the, is

9    the offense, is the offense --

10          MR. MAC MAHON:  Judge, I don't think so.  I don't

11   think there's any evidence of a request whatsoever in this

12   case.

13          THE COURT:  All right.

14          MR. MAC MAHON:  The one, the one time that the, we

15   heard testimony of anyone talking about documents was in New

16   York, when he was read out anyway.

17          THE COURT:  Well, no, you also have the debrief.

18          MR. MAC MAHON:  That was in New York, Your Honor.

19          THE COURT:  The debriefing was in New York?

20          MR. OLSHAN:  The debriefing was at the CIA, and the

21   date that's alleged in Count 3 is the date that he left that

22   agency, which is January 31, 2002.  Ms. Scherlis asked him if

23   he had any additional -- any classified documents, and he said

24   no.

25          THE COURT:  But where did that occur?

1600

1       MR. OLSHAN:  In Langley.

2       THE COURT:  In headquarters.  That's what I thought.

3       MR. OLSHAN:  He had returned to headquarters after he

4  left New York in August 2000.

5       MR. MAC MAHON:  He'd still have to retain the

6  document.  They still have to find that he retained the

7  document.  If he hadn't retained it, he couldn't have failed to

8  deliver it even if the jury construed her request as applying

9  to --

10       THE COURT:  All right.  It is not an element of Count

11  3 that the letter at issue was in defendant's residence.  The

12  issue is did he willfully retain the document in the Eastern

13  District of Virginia.

14       MR. MAC MAHON:  That's fine, Your Honor.

15       THE COURT:  Right?

16       MR. OLSHAN:  One moment, Your Honor.

17       THE COURT:  Yeah, I'm going back to square one on

18  this one.

19       All right, here's what I'm going to give them:  It is

20  not an element of Count 3 that the defendant willfully retained

21  the letter in his residence.  To find the defendant guilty of

22  Count 3, you must be satisfied that the government has proven

23  the two elements explained on page 41 beyond a reasonable doubt

24  and that the willful retention occurred in the Eastern District

25  of Virginia by a preponderance of the evidence.

```
 1              MR. OLSHAN:  That's fine, Your Honor.

 2              THE COURT:  All right?  Last call to the defense, any

 3   objection?

 4              MR. MAC MAHON:  Yes, Your Honor, that's fine.

 5              THE COURT:  All right.

 6              MR. MAC MAHON:  There are, there are actually two --

 7   that's fine, Your Honor.

 8              THE COURT:  All right, that's what we're going to

 9   type up.  Again, you'll have it before we give it to the jury.

10              We'll recess court.

11              (Recess from 3:58 p.m., until 4:07 p.m.)

12                         (Defendant and Jury present.)

13              THE COURT:  All right, ladies and gentlemen, I'm

14   going to give you another supplemental instruction.  I'll just

15   read it to you now, and it will be 41(a) if you're putting it

16   in your packets.

17              It is not -- I'm sorry, the question that you asked

18   was, "Count 3 states that the document was in his residence.

19   The elements do not use the term 'residence.'  Do the words in

20   the count take precedence over the words in the elements."

21              Well, the words in the elements always take

22   precedence, but let me go over this more specifically with you:

23   It is not an element of Count 3 that the defendant willfully

24   retained the letter at issue in his residence.  To find the

25   defendant guilty of Count 3, you must be satisfied that the
```

1602

1    government has proven the two elements explained on page 41 of

2    the instructions beyond a reasonable doubt and that the willful

3    retention occurred in the Eastern District of Virginia by a

4    preponderance of the evidence.

5         Because that's the venue issue that I explained to

6    you, and I think that may be Instruction 56.

7         All right, I hope that explains it.  You've now got

8    five sets of instructions, right?  So we'll give you five of

9    these packages so you can keep your packets together.

10        Any objection from counsel?

11        MR. OLSHAN:  No, Your Honor.

12        MR. MAC MAHON:  No, Your Honor.  Thank you.

13        THE COURT:  All right, thank you, ladies and

14   gentlemen.  We'll send you back to continue your deliberations.

15        (Recess from 4:07 p.m., until 4:29 p.m.)

16                      (Defendant and Jury present.)

17        THE COURT:  Well, it's 4:30, and you-all told us you

18   wanted to stop, so I again want to just send you off for the

19   weekend and again hope that you have a restful weekend.  Please

20   remember, no work on the case whatsoever.  No communications

21   with anybody.

22        I know one of you became a carpooler with one of the

23   alternate jurors.  Make sure you don't have any contact with

24   her.

25        And again, just continue doing what you're doing, and

1603

1    we'll see you hopefully at 10:00 Monday morning so there are no

2    weather issues, all right?

3         Again, we're going to leave the evidence in the room

4    other than the three exhibits that have to be specially locked

5    up.  Otherwise, everything will stay as you've left it, all

6    right?  If there's nothing further, we'll recess.

7         And then, counsel, you don't need to be back here

8    until 10:00 Monday.

9         Oh, I did want to warn you there is one thing.  I'm

10   starting another jury trial Monday morning.  I'm going to use a

11   different jury room for that jury, but because I am going to

12   have some matters going on in here, there may be a little bit

13   more of a delay in getting back to you-all with questions.  And

14   that trial is going to start at 10:00 in this courtroom.

15        So, counsel, you should know that, too, all right?

16   We'll recess court for the day.  Thank you.

17    (Recess from 4:31 p.m., until 10:00 a.m., January 26, 2015.)

18

19                  CERTIFICATE OF THE REPORTER

20       I certify that the foregoing is a correct transcript of

21   the record of proceedings in the above-entitled matter.

22

23

24   _____/s/_____
                                     Anneliese J. Thomson
25