Case 1:10-cr-00485-LMB  Document 508  Filed 01/19/16  Page 1 of 19 PageID# 6403

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Filed with Classified
Information Security Officer

CISO Mleters

Date. 10 / 4 / 2011

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Case No. 1:10-cr-00485-LMB |
| ) | |
| JEFFREY ALEXANDER STERLING, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT JEFFREY A. STERLING'S MOTION *IN LIMINE* TO PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE RELATED TO MR. STERLING'S 2000 PERSONNEL APPRAISAL REPORT AND SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE EXHIBIT 132

COMES NOW Jeffrey A. Sterling, by counsel, and for his Motion *In Limine* to

Preclude the Government from Introducing Evidence Related to Mr. Sterling's 2000

Personnel Appraisal Report and Supplemental Memorandum in Opposition to the

Government's Motion *In Limine* to Introduce Exhibit 132 states as follows:

The Government has repeatedly suggested to this Court, without foundation, that

Mr. Sterling's Performance Appraisal Report (PAR) for the year 2000, a part of which

arguably references Human Asset No. 1 (not by name) and is directly quoted at page 197

in Chapter 9 of State of War, is and has always been a classified document.[1] This is

demonstrably untrue. In fact, as the Government must know, on March 8, 2001 the CIA

in its EEO process gave Mr. Sterling through his counsel a redacted unclassified version

---

[1] The Government designated Mr. Sterling's 2000 PAR as proposed Government Exhibit 60. For the Court's convenience, it is attached hereto as Exhibit 1.

1

232

Case 1:10-cr-00485-LMB  Document 508  Filed 01/19/16  Page 2 of 19 PageID# 6404

of his 2000 PAR.  See Exhibit 2 (Government Exhibit 58, Letter from CIA to Robert

Levy, dated March 8, 2001, enclosing Mr. Sterling's EEO investigative file "redacted to

remove any classified information"). This unclassified document contains the language

quoted in State of War.  See Indictment at ¶ 26 (referring to the 2000 PAR as a "redacted,

unclassified document that referenced Human Asset No. 1, although not by name"); State

of War at 197.

      The Government plainly now wishes to re-classify the document *ex post facto* and

argue to the jury that the fact that Mr. Sterling possessed this "classified" report and

allegedly provided it to Mr. Risen is evidence of a crime and of motive for the charged

conduct of providing Mr. Risen national defense information. The Court cannot, on this

record, allow this to occur when the language from Mr. Sterling's 2000 PAR that appears

in Chapter 9 comes from the redacted unclassified version of his 2000 PAR and not from

any classified or secret document of any sort.

## I.   Government Representations That Mr. Sterling's 2000 PAR Is a Classified Document

      The fact that the Government now wishes to confuse the Court and ultimately the

jury on the status of Mr. Sterling's 2000 PAR is evident from the record. The

Government designated Mr. Sterling's 2000 PAR under CIPA as its proposed Exhibit

60.[2] The Government argues that since Chapter 9 of State of War quotes from what the

book characterizes as this "secret CIA report," Mr. Risen likely obtained this "secret CIA

---

[2] The CIPA-designated document is, in fact, the redacted unclassified version of Mr. Sterling's 2000 PAR, which is the same document that was handed up to the Court in the CIPA hearing on September 28, 2011. On the Government's index to its proposed Exhibits, it characterized Exhibit 60 as the redacted unclassified version of Mr. Sterling's 2000 PAR.  See Exhibit 3.

report" from Mr. Sterling and thus received national defense information from the same source.

Indeed, the Government has repeatedly suggested to the Court that the 2000 PAR is a classified document. Further, as discussed below, it has argued to this Court that it should be able to admit a 1993 classified personnel report that Mr. Sterling possessed in his residence in Missouri, as 404(b) evidence that he possessed other classified documents in the Eastern District of Virginia, including Mr. Sterling's 2000 PAR, the "secret CIA report" that is quoted in State of War:

> Although not charged as separate counts, the evidence will show that the defendant provided to Risen **other classified documents, including, but not limited to, '[o]ne secret CIA report' that discussed Human Asset No.1 as a 'known handling problem,'** [State of War] at 197, and a copy of a written report relating to Human Asset No.1's trip to Vienna. *Id.* at 206. The quotation from the 'secret CIA report' appearing in Chapter Nine is a direct quote from the defendant's CIA personnel evaluation report for the year 2000.

Government's Motion *In Limine* to Admit Exhibits 129 Through 132 [DB 181] at 3 (emphasis added).[3] Similarly, the Government argued:

---

[3] See also id. at 8:

> Indeed, the defendant's possession of his classified CIA personnel evaluation report for the year 1993 in his residence tends to prove that the defendant retained his CIA personnel evaluation report for the year 2000 in his residence as well, thus affording the defendant the ability to provide that document to Risen for later use in Chapter Nine. Thus, the seized classified documents establish the defendant's identity as Risen's source both for the unsuccessful newspaper article in April 2003 and later for Chapter Nine because that evidence demonstrates the defendant's access and ability to provide both documentary and oral national defense information about Classified Program No.1 to Risen.

3

**REDACTED / CLEARED FOR PUBLIC RELEASE**

> The defendant's possession of the seized classified documents in his residence undermines that defense because his possession of those documents strengthens the defendant's connection to the letter and **his personnel evaluation report for the year 2000 and proves that he knowingly possessed those classified documents in his residence as well.** In addition, the extrinsic evidence explains the defendant's access to and ability to provide classified documents to Risen at a time when the defendant no longer had access to classified documents at the CIA. Where the defendant claims that other unnamed sources committed the crimes charged in the Indictment, and those unnamed sources purportedly had access to the same classified documents charged in the Indictment or cited in Chapter Nine, the defendant injects uncertainty into the case and creates doubt over identity.

Id. at 12 (emphasis added).[4]

The Government's suggestion that the 2000 PAR is a classified document has not been confined to its Motion *In Limine* argument. The Government had previously provided sworn written testimony to this Court making the same claim:

> [TS/            NF] On the top of page 197 in *State of War*, Risen writes:
>
>  
>
>                                 **This language is taken verbatim from Jeffrey Sterling's August 2000 PAR, which was also classified at the SECRET level.**

Declaration of Eric B. Bruce (6/18/10) at 50, fn. 31 (emphasis added).

---

[4] See also id. at 9:

> For a jury to accept the defendant's defense [that someone other than Mr. Sterling was the leak of the information in Chapter Nine], the jury must believe that some other unnamed confidential source(s) surreptitiously acquired the classified letter, the defendant's CIA personnel evaluation report for the year 2000, and other classified documents and provided those documents to Risen. The defendant's possession of the seized classified documents, such as the classified CIA personnel evaluation report for the year 1993, debunks that defense, showing instead that the defendant retained in his residence the very same type of document that Risen eventually cited to and quoted from in Chapter Nine.

4

**II.     The Government's Motion *In Limine***

The Government has moved *In limine* to admit Exhibit 132, Mr. Sterling's 1993

personnel evaluation as 404(b) evidence to prove venue.  As set forth above, the

Government argued that, while Mr. Sterling's dissemination of his classified 2000 PAR

to Mr. Risen is uncharged conduct, Mr. Sterling's retention of his 1993 classified

personnel evaluation is evidence that tends to prove that he retained his classified 2000

PAR, which the Government contends makes it more likely that he retained "other"

classified documents, including the letter charged in Counts Three and Five of the

Indictment and that he provided this document to Mr. Risen in the Eastern District of

Virginia.  The Government's argument misleads the Court because it is based on a false

premise -- that Mr. Sterling's 2000 PAR is and always has been a classified document

and that Mr. Sterling criminally possessed and disseminated it.  In fact, Mr. Sterling has

had in his possession a redacted unclassified version of his 2000 PAR since 2001 when

the CIA provided this document to him and his possession of that document was lawful.

The Government should not be permitted to admit a classified 1993 personnel

report to prove that Mr. Sterling retained an unclassified 2000 PAR, which he was plainly

allowed to retain.  The Government's argument misleadingly suggests Mr. Sterling was

not allowed to retain the 2000 PAR.  When it is understood that Mr. Sterling lawfully

possessed his 2000 PAR, the evidence of his arguably unlawful possession of his 1993

classified personnel report is not probative, is unduly prejudicial, and is likely to lead to

confusion.

Nor should the Government be able to admit the 2000 PAR as a classified exhibit

when the 2000 PAR has, in fact, been available to Mr. Sterling in unclassified form since

5

2001. Indeed, the Government's proposed Exhibit 60 contains more significant redactions than the unclassified version of the document that was provided Mr. Sterling in 2001.

The fact is that Mr. Sterling has lawfully possessed his unclassified 2000 PAR since 2001. The Court should not allow the Government to claim otherwise or base arguments on the false premise that the 2000 PAR was classified and that Mr. Sterling was violating the criminal law by retaining a copy of it or providing a copy of it to a journalist. There is a great potential for confusion of the jury on this matter under F.R.E. 403.

From the discovery that has been produced, and the Government's representations to the Court to date, it is apparent that the Government wants to create the impression to the jury that the 2000 PAR was classified, that Mr. Sterling was not entitled to take it home, and that he was not entitled to allow anyone to see it.

Indeed, it would appear that the Government has already influenced potential witnesses by fostering the same misimpression. For example, the Government recently produced to the defense a 302 of a witness who apparently wrote Mr. Sterling's 2000 PAR. A copy of that 302 is attached for the convenience of the Court. See Exhibit 4. The Court can see that the FBI agent never tells the witness that Mr. Sterling had been given a redacted unclassified version of the document.

> L[      ] agreed that the quote in the book appears to have been taken from the PAR L[      ] prepared. When asked, L[      ] advised the following individuals would have had access to the PAR: the chief of support/human resources, the chief of operations, the deputy chief of [            ] the chief of [            ], and the chief of administration.
>
> L[      ] confirmed an officer can keep hard copies of his PARs. L[      ]'s practice was to keep copies of his own PARs, which he

6

REDACTED / CLEARED FOR PUBLIC RELEASE

kept in a personal folder and forwarded from one assignment to his next. When asked if an officer is ever allowed to take a PAR home, L[____] replied, "Absolutely not. They're classified SECRET."

L[____] did not recall any discussion with Sterling regarding the substance of his PAR or any question as to whether Sterling could take a copy of it home. There was no reason Sterling would have had any other understanding with regard to not being able to remove a PAR from CIA space. To take his PAR home would have been a clear security violation. This would have been clear to anyone working at the CIA.

FBI 302 Report of Mark L___, dated 8/24/2011.

The defense can provide no better example of how this evidence will confuse the jury. And, it should not have to rely upon cross examination to provide to the jury the fact that Mr. Sterling, because of the EEO case, was in fact given a redacted copy of this PAR and that he was allowed to possess it at his residence or anywhere else. Given the extreme risk of confusion and prejudice that would arise from such testimony, the Government should not be allowed to elicit this type of testimony in this case or admit exhibits that are offered to show that he possessed a document he was allowed to possess.

## CONCLUSION

For the reasons set forth above and in Mr. Sterling's Opposition to the Government's Motion *In Limine* to Admit Exhibits 129-132, the Government's Motion *In Limine* should be denied. Further, the Government should be precluded from introducing Government Exhibit 60 or other evidence related to Mr. Sterling's 2000 PAR, since he lawfully possessed this unclassified document and evidence pertaining to this document could only serve to confuse the jury with respect to charged conduct in this case.

7

REDACTED / CLEARED FOR PUBLIC RELEASE

JEFFREY A. STERLING
By Counsel

Edward B. MacMahon, Jr.

Edward B. MacMahon, Jr.
VSB No. 25432
Law Office of Edward B. MacMahon, Jr.
P.O. Box 25
107 East Washington Street
Middleburg, VA 20118
(540) 687-3902
(540) 687-6366
ebmjr@verizon.net

Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered
655 Fifteenth St. N.W. Suite 900
Washington, DC 20005
(202) 626-5830
(202) 626-5801 (facsimile)
bpollack@milchev.com

*Counsel for Defendant Jeffrey A. Sterling*

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

## CERTIFICATE OF SERVICE

I hereby certify that on October the 3rd, 2011, I delivered an original of the following, Defendant Jeffrey A. Sterling's Motion *In Limine* To Preclude The Government From Introducing Evidence Related To Mr. Sterling's 2000 Personnel Appraisal Report And Supplemental Memorandum In Opposition To The Government's Motion In Limine To Introduce Exhibit 132 (with attachments) to the CISO as directed by the Classified Information Protective Order issued in this case.

By: *Edward B. MacMahon/pjp*
Edward B. MacMahon, Jr. (VSB #25432)

*Counsel for Jeffrey A. Sterling*

9

REDACTED / CLEARED FOR PUBLIC RELEASE

Samuel L. Crawford
SSN:
GS-12/3 OO
DO/NE (DO/NR)

00-1440564

FRP: . . . . . . .

STAFF

---

PAGE 001
TOR: 23    AUG 00

---

S       T 23    AUG 00 STAFF

CITE

TO: DIRECTOR.

FOR: NO DISSEM C/NR/███████ INFO C/NE/███████, C/NR/███████
████████████████

SUBJECT: EYES ONLY - PAR FOR Samuel L. Crawford

REF: NONE

TEXT:

    1.  THE FOLLOWING IS PAR FOR Samuel L. Crawford.

        A.  GENERAL INFORMATION:

            1)  GRADE:  GS-12

            2)  OCCUPATIONAL TITLE:  OPERATIONS OFFICER

            3)  REPORTING PERIOD:  1 AUGUST 1999 - 31 JULY 2000

            4)  TYPE OF REPORT:  ANNUAL

            5)  DATE REPORT DUE IN OP:  31 AUGUST 2000

        B.  OVERALL PERFORMANCE RATING:...............()

E-1
ATT. 2

X00040

C. KEY JOB ELEMENTS STANDING/RATING

D. NARRATIVE COMMENTS

1) BY SUPERVISOR ( Mr. L ▮ ▮ EMPLOYEE NO.
▮ ▮ CHIEF/▮ ▮ BRANCH▮

I CERTIFY THAT SUBJECT HAS FAILED TO MASTER ALL THE
COMPETENCIES REQUIRED OF AN OPERATIONS OFFICER TO ADVANCE TO GS-13.

SUBJECT IS A GS-12 OPERATIONS OFFICER ASSIGNED AS AN
OPERATIONS OFFICER IN THE ▮ ▮ WHICH IS COMPRISED
OF ▮ ▮ ▮ ▮ ▮ SUBJECT'S
PRIMARY JOB RESPONSIBILITY WAS TO ▮ interface with ▮
FOREIGN TARGETS, HANDLE ONGOING CASES AND SERVE AS ▮ office ▮'S ▮
TARGETING REFERENT. ON 18 JULY 2000, I REQUESTED THAT SUBJECT
PROVIDE INFORMATION FOR THIS PAR, I.E. PAR NOTES, BY COB 04 AUGUST.
I MADE A SECOND REQUEST ON 07 AUGUST AND EXTENDED THE DEADLINE TO COB
09 AUGUST BUT DID NOT RECEIVE ANY PAR NOTES FROM SUBJECT.

HIGHLIGHTS:

SUBJECT EFFECTIVELY HANDLED A FOREIGN SOURCE UNDER ▮ ▮
▮ ▮ WHO PRODUCED ▮ ▮ REPORTS ON THE ▮ ▮
TARGET. ONE REPORT PROVIDED THE FIRST DETAILS OF A NEW ▮ ▮ ▮
▮ ▮. SUBJECT CONVINCED THE SOURCE TO ACCEPT
▮ ▮ WHICH REPRESENTED A KEY OPERATIONAL
DEVELOPMENT IN THE PROGRESS OF THIS CASE.

SUBJECT HANDLED A SENSITIVE ASSET WHO SUCCESSFULLY
COMPLETED THE FIRST STAGE OF A COMPLEX ▮ ▮ ▮
▮ ▮ TARGET WHICH WON PRAISE FROM DCI.

SUBJECT'S SECURE AND PRODUCTIVE HANDLING OF ANOTHER
▮ ▮ RESULTED IN WELL-RECEIVED REPORTING ON ▮ ▮
▮

▮ ▮ SUBJECT DID NOT FULLY MEET EXPECTATIONS DUE TO A
LACK OF ▮ ▮ WORK. SUBJECT HAD NO SUSTAINED ▮
OPERATIONS DURING THIS REVIEWING PERIOD WHICH PRECLUDED HIM FROM
HAVING ANY REAL OPPORTUNITY TO WORK TOWARD THE RECRUITMENT OF NEW
SOURCES. SUBJECT WAS COUNSELED ON HIS PERFORMANCE IN THIS AREA BUT
WITH NO APPRECIABLE IMPROVEMENT. SUBJECT MET WITH AN ▮ ▮
OFFICIAL BUT AFTER A COUPLE OF MEETINGS SUBJECT DROPPED THE CONTACT
DUE TO TARGET'S LACK OF ACCESS. TO HIS CREDIT, SUBJECT USED HIS
▮ ▮ EFFECTIVELY TO MEET A HIGH PRIORITY ▮ ▮ ▮
SUBJECT ATTEMPTED SEVERAL TIMES TO GET A SECOND MEETING WITH THE
▮ ▮ BUT THE TARGET BACKED OUT OF ONE INVITATION AND PROVED
DIFFICULT TO RECONTACT. SUBJECT ATTENDED A FEW FUNCTIONS FOR
▮ ▮ PURPOSES BUT DID NOT MEET ANY VALID ▮ ▮ LEADS.

▮ ▮ SUBJECT FULLY MET EXPECTATIONS.
SUBJECT DEMONSTRATED HIS AMPLE TRADECRAFT SKILLS IN HIS HANDLING OF
ONGOING CASES. SUBJECT SECURELY AND PRODUCTIVELY HANDLED A SENSITIVE
ASSET WHO HAS A KNOWN HANDLING PROBLEM DUE TO HIS DEMANDING AND

E-1

OVERBEARING NATURE. SUBJECT PERSEVERED WITH THIS ASSET AND APPLIED
██TRADECRAFT SKILLS TO WORK AROUND THESE PROBLEMS AND GUIDE THE
ASSET THROUGH THE SUCCESSFUL FIRST STAGE OF A HIGH PRIORITY ██classified█
OPERATION. SUBJECT EFFECTIVELY USED █████████████ IN HIS
HANDLING█. ████████████ AND SUBJECT'S ABILITY TO MOVE THIS
CASE INTO FULL ██ MODE WAS HIGHLY COMMENDABLE.

██████████: SUBJECT FULLY MET EXPECTATIONS.
SUBJECT EXHIBITED GOOD ██ AND ██ SECURITY AWARENESS IN HIS HANDLING
CASES. [── ── ─── ── ─ ── ]

████████████, THE ASSET CONDUCTED THE
OPERATION SUCCESSFULLY THANKS IN LARGE PART TO SUBJECT'S GUIDANCE.

████████████: SUBJECT FULLY MET EXPECTATIONS. SUBJECT
PRODUCED[ ]INTELLIGENCE REPORTS DURING THIS PERIOD. IN ADDITION TO
THE WELL-RECEIVED[─── ─── ─── ]REPORTING MENTIONED IN THE HIGHLIGHTS,
SUBJECT WAS EFFECTIVE IN DIRECTING AN [ ─────]AGENT TO REPORT
ON ██ MATTERS WHICH RESULTED IN WELL-RECEIVED REPORTING ON[ ]
[ ]THE 1999 [─ ─── ─── ─
SUBJECT ALSO PRODUCED A TIMELY SERIES OF USEFUL REPORTS FROM ███
█████ASSETS ON THE ██ STATUS OF FOREIGN COUNTRIES.
INITIATIVE AND LEADERSHIP: SUBJECT DID NOT FULLY MEET EXPECTATIONS
DUE PRIMARILY TO A LACK OF INITIATIVE IN GENERATING NEW███████
OPERATIONS. IN HIS ROLE AS ██office██'S ─────── ─]COORDINATOR
SUBJECT SUPPORTED ██office██ OFFICERS IN[ ──────]OFFICIALS IN
[ ─ ─]. SUBJECT MADE SOLID PROGRESS ON ██office██'S BEHALF IN
DEVELOPING A PRODUCTIVE WORKING RELATIONSHIP WITH COUNTERPARTS AT THE
[─ ───── ─── ─]OFFICE RESPONSIBLE[── ───]WHICH HAS BEEN
STRAINED IN THE PAST.
LEARNING: SUBJECT FULLY MET EXPECTATIONS. SUBJECT CONTINUED TO
EXPAND HIS [ ]EXPERTISE THROUGH HIS ACTIVE PARTICIPATION IN TWO
[ ────]RELATED OPS CONFERENCES. SUBJECT ALSO WORKED ON IMPROVING
HIS[ ]LANGUAGE CAPABILITIES BY USING[ ]
TRANSLATING[ ]LANGUAGE DOCUMENTS RECEIVED FROM ████████

    2)  BY REVIEWING OFFICIAL [ [ ] ██████████
(AIN: [

          THERE IS NO APPROPRIATE REVIEWING OFFICIAL. PLEASE
SEE SEPARATE CABLE TRAFFIC FROM[ ]REGARDING SUBJECT'S REFUSAL
TO READ, SIGN, OR ACKNOWLEDGE THIS PAR] AS PART OF THE STANDARD
PREPROGRAMMED PAR CABLE FORMAT. PARAGRAPH SEVEN BELOW CANNOT BE
DELETED OR MODIFIED BY ██office██. THEREFORE, IN PARAGRAPH SEVEN BELOW,
THE LINE "AND HAS BEEN ACKNOWLEDGED BY THE EMPLOYEE" IS NOT ACCURATE
AND SHOULD BE DELETED.

    3)  TOTAL MONTHS IN POSITION:  (18)

    4)  TOTAL MONTHS UNDER SUPERVISION:  (12)

    5)  INTERIM DISCUSSIONS WERE HELD:  14 OCTOBER 1999; 05
JANUARY 2000; 06 APRIL 2000

E-1
Att 2

X00042

6) EMPLOYEE COMMENTS:

7) CERTIFICATION: I CERTIFY THAT THE ABOVE PERFORMANCE APPRAISAL WAS PREPARED BY ▮Mr. L▮ ⸝ EMPLOYEE NO. [      ] ▮▮▮ (AIN: [        ], AND HAS BEEN ACKNOWLEDGED BY THE EMPLOYEE. BRANCH, REVIEWED BY ▮▮▮

▮ Head of the office ▮

DATE:  8/23/00

2.  FILE:  NONE.  CL BY: [      ] CL REASON: 1.5(C), DECL ON: X1, DRV FROM: HCS 4-99.

CABLETYPE:  CICO FPAR 2.6.
END OF MESSAGE

E-1
ATT. 2

X00043

Case 1:10-cr-00485-LMB Document 508 Filed 01/19/16 Page 14 of 19 PageID# 6416

Central Intelligence Agency



Washington, D.C. 20505

8 March 2001

Robert Levy, Esq.
Bantle & Levy
817 Broadway, 6th Floor
New York, New York 10003

RE:   EEO Complaint No. 00-23, Samuel L. Crawford

Dear Mr. Levy:

This is to inform you that the investigation of your
client's EEO Complaint 00-23 has been completed. A copy of
the investigative file, redacted to remove any classified
information it may have contained, is enclosed. You are being
provided this information pursuant to the provisions of Title
29, Code of Federal Regulations, Part 1614. This information
is being provided solely for use in official USG/Agency
business; some of it pertains to internal Agency regulations
and use in the EEO process is deemed to remain
administrative/internal use only; portions of it are protected
from [public] disclosure by the Privacy Act and other
provisions of the law. At the end of your client's case, your
official need for internal Agency regulations will have
concluded. Please return all copies of such regulations to us
at the following address:

Office of Equal Employment Opportunity
Room 1B17
Central Intelligence Agency
Washington, DC 20505

Your client now has the right to request a hearing before
an EEOC administrative judge pursuant to Title 29 C.F.R.
§ 1614.109 (enclosed), or an immediate Final Agency Decision
(FAD) pursuant to 29 C.F.R. § 1614.110 (enclosed). The
regulations provide that the FAD will be rendered in 60 days;
a hearing before the EEOC may take 180 days or more. The
request must be made in writing within 30 days of the receipt
of this notice.

X00034

Robert Levy, Esq.

If your client requests a hearing, the request must be sent to:

Equal Employment Opportunity Commission
1400 L Street, N.W., Suite 200
Washington, D.C. 20005

You also must certify to the Administrative Judge that a copy of the request was sent to the Agency at the following address:

Director of Equal Employment Opportunity
Central Intelligence Agency
Washington, D.C. 20505

A copy of REQUEST FOR A HEARING FORM is attached.

If you have any questions, you may call ▮▮ E▮▮▮▮▮ on ▮▮▮▮▮▮▮.

Sincerely,

Ms. ▮▮▮▮

Ms. ▮

Chief, Counseling & Investigation Staff

Enclosures
  A.  Investigative File 00-23
  B.  Regulations 29 C.F.R. § 1614.109
      and § 1614.110
  C.  Request for Hearing Form

cc: Samuel L. Crawford

2

X00035

Robert Levy, Esq.

SUBJECT:  Letter Transmitting Investigative File -
          Complainant Samuel L. Crawford(Case No. 00-23)


Distribution:
Original - Addressee w/att
       1 - Chron w/o att
       1 - Complainant
       1 - Claimant's File w/o att
       1 - WR█████████ w/o att

EEO/DCI ██████████████ (8 March 2001)

3

X00036

United States v Jeffrey Sterling
CIPA Section 6 Exhibit List

| GX# | DESCRIPTION | DISCOVERY BEGIN BATES | DISCOVERY END BATES | CIPA BEGIN BATES | CIPA END BATES |
|-----|-------------|----------------------|---------------------|------------------|----------------|
| 053 | Lotus Note, dated 08/08/00, Memorializing Meeting with Michael Sheehy and Wyndee Parker by David Shedd | Q00551 | Q00553 | X00160 | X00162 |
| 054 | Equal Employment Opportunity Formal Complaint of Jeffrey Sterling, dated August 15, 2000 | E03537 | E03539 | X00020 | X00022 |
| 055 | Letter, dated 09/13/00, Regarding Equal Employment Opportunity Complaint of Jeffrey Sterling from CIA to Attorney Nick Brustin | E03594 | E03599 | X00023 | X00028 |
| 056 | Letter, dated 09/28/00, Regarding Change in Attorneys from Jeffrey Sterling to CIA | E04828 | E04828 | X00029 | X00029 |
| 057 | Letter, dated 11/16/00, Regarding Settlement Offer from Bantle & Levy on behalf of Jeffrey Sterling to CIA | E04540 | E04541 | X00030 | X00031 |
| 058 | Letter, dated 03/08/01, Regarding Completion of Investigation and Enclosure of Copy of Investigation Report from CIA to Bantle & Levy and Jeffrey Sterling | E03474 | E03475 | X00034 | X00036 |
| 059 | Redacted, Unclassified 1999 PAR, dated 09/14/99, Provided to Jeffrey Sterling As Part of EEO Investigative File | E05209 | E05211 | X00037 | X00039 |
| 060 | Redacted, Unclassified 2000 PAR, dated 08/23/00, Provided to Jeffrey Sterling as Part of EEO Investigative File | E04848 | E04851 | X00040 | X00043 |
| 061 | Letter, dated 03/21/01, Regarding Request for Final Decision from Jeffrey Sterling to CIA | P00780 | P00781 | X00044 | X00045 |

August 22, 2011

-4-

FD-302 (Rev. 10-6-95)

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    09/15/2011

    (U)  On August 24, 2011, Mark L[____], a retired officer of the Central Intelligence Agency (CIA), was interviewed at a CIA facility in [____], [____] by Federal Bureau of Investigation (FBI), Washington Field Office Special Agent Ashley K. Hunt.

    (U)  L[____] was aware that Jeffrey Sterling has been charged with an unauthorized disclosure of national defense information specifically related to a sensitive CIA operation targeting Iran which was described in James Risen's book *State of War, The Secret History of the CIA and the Bush Administration*. L[____] has never read the book.

    (U)  At the beginning of the interview, L[____] was afforded an opportunity to review an FD-302 previously prepared by the FBI in connection with its 2006 interview of L[____]

    (S)  While assigned to New York as a branch chief in 2000, L[____] never heard any complaints from Sterling, who was under L[____]'s direct supervision, or anyone else related to the Iranian operation in question. The operation was for the most part directed by Washington.

    (S)  L[____] had no specific recollection of releasing cables prepared by Sterling related to the operation and asset involved. With regard to any comments in cables prepared by Sterling suggesting he had concerns about the operation, L[____] responded, "No, I never read that." When asked if he would have removed such comments from cables prepared by Sterling, L[____] stated, "There is no way I would remove that or any other issue from a cable."

    (S)  L[____] was shown a performance appraisal review (PAR) he prepared in mid-2000 as Sterling's direct supervisor. He was also shown the following quote at the top of page 197 in Risen's book: [_____]

    (U)      Derived From : FBI NSISCG-20090615
                  Declassify On: 20360915

Investigation on    08/24/2011    at [____]  [____]

File #    _____    Date dictated    _____

by    SA Ashley K. Hunt:akh

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

F00780

SECRET/NOFORN

Continuation of FD-302 of ___Mark I[          ]_____ , On _08/24/2011_ , Page __2__

[                                                                    ]

(S)  I[        ] agreed that the quote in the book appears to
have been taken from the PAR I[        ] prepared.  When asked, I[ ]
advised the following individuals would have had access to the PAR:
the chief of support/human resources, the chief of operations, the
deputy chief of [        ], the chief of [        ], and the chief of
administration.

(U)  I[        ] confirmed an officer can keep hard copies of
his PARs.  I[     ]s practice was to keep copies of his own PARs,
which he kept in a personal folder and forwarded from one
assignment to his next.  When asked if an officer is ever allowed
to take a PAR home, I[      ] replied, "Absolutely not.  They're
classified SECRET."

(U)  I[        ] did not recall any discussion with Sterling
regarding the substance of his PAR or any question as to whether
Sterling could take a copy of it home.  There was no reason
Sterling would have had any other understanding with regard to not
being able to remove a PAR from CIA space.  To take his PAR home
would have been a clear security violation.  This would have been
clear to anyone working at the CIA.

(U)  I[        ] advised he does not know James Risen, does
not know what Risen looks like, and never gave Risen a copy of the
PAR I[        ] prepared regarding Sterling in mid-2000.

(U)  I[      ] was served a trial subpoena at the
conclusion of the interview.

SECRET/NOFORN